IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREA CONSTAND, | : |
| | : |
| Plaintiff, | : |
| | : No. 05-cv-1099 |
| v. | : |
| | : |
| WILLIAM H. COSBY, JR., | : |
| | : |
| Defendant. | : |

**MEMORANDUM IN OPPOSITION TO THE MOTION OF
THE ASSOCIATED PRESS TO INTERVENE AND TO FILE
OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

Defendant respectfully submits this memorandum in opposition to the Motion of the Associated Press ("AP") to Intervene and to File Opposition to Defendant's Motion for Protective Order. Defendant does not, in this memorandum, repeat the factual or legal bases for his Motion for Protective Order, except to the extent specifically necessary to respond to the AP's memorandum. Rather, he incorporates and presumes the Court's familiarity with his memorandum and reply memorandum in support of his motion.

**I.   INTRODUCTION**

A Protective Order limiting the public dissemination of confidential and private discovery materials is neither unconstitutional nor a violation of the common law. Indeed, the entry of such orders in civil litigation is routine. The Protective Order requested in this case is reasonable and lawful, and should be entered by the Court.

The need for a Protective Order in this case is self-evident. The lawsuit involves subject matters that are unquestionably personal and private. Plaintiff accuses Defendant of drugging and touching her without her consent, allegations that the Defendant strenuously denies. At the

appropriate juncture, there will be a trial. Plaintiff will present her case, Defendant will respond, and the jury will render its verdict.

In the interim period leading up to trial, however, Defendant wishes to prevent the public disclosure of confidential and private discovery materials, including allegations of sexual misconduct made by unidentified individuals who have chosen to remain anonymous.[1] These allegations are untested and prejudicial, and they may well be ruled inadmissible at trial. It would serve no legitimate purpose to publicize them before trial, in the judicial record or otherwise. Regrettably, in the absence of a Protective Order, these discovery materials will almost certainly be the subject of widespread media attention.

To date, nearly all of the filings in this case, even the most inconsequential (such as the order granting counsel's admission *pro hac vice*), have been the subject of press reports. There is no reason to expect that future filings, especially if they contain confidential and private discovery materials, will not garner similar attention. The resulting prejudice to the parties and damage to the integrity of the judicial process would be overwhelming. The only practical solution is to require that documents and pleadings that reference or attach discovery materials that the parties have designated as confidential be filed under seal, at least until this Court has had an opportunity to review the information and determine whether it should remain confidential or instead be disclosed. The AP's protestations notwithstanding, there is nothing unusual or untoward about such a procedure. Indeed, it represents the norm in civil litigation, not the exception.

---

[1] Notably, the AP does not insist that it has a First Amendment or common law right to report the *names* of Defendant's anonymous accusers. Like the Plaintiff, the AP apparently wishes to disclose only the *allegations* against him. This tactic, if allowed by the Court, would effectively deprive the Defendant of any meaningful right to respond to the allegations, no matter how false and malicious they may be. This is less of a concern at trial where the witnesses will testify in open court and be subject to cross-examination.

In seeking unfettered access to discovery materials before trial and before the Court has had an opportunity to review them, the AP demands much more access than is normally available in a civil case.  In order to avoid giving this impression, however, the AP's motion mischaracterizes the relief that Defendant actually seeks.  It begins by arguing that the requested Protective Order would do what it plainly would not do, which is to conceal every aspect of these proceedings from the public, even those that are not confidential.  The AP thus asserts that Defendant seeks a "blanket sealing of judicial records" and a "wholesale sealing of court papers."  (AP's Mem. at 5, 9.)  Of course, as reflected in the proposed Protective Order that accompanies Defendant's motion, that is not what he is seeking at all.  Nevertheless, the AP goes on to argue that the Protective Order would bar it from publicizing "accusations being made in court proceedings." (Id. at 6.)  That is not true, either.  The crux of Defendant's argument is that *none* of the discovery materials at issue, especially the statements by the so-called "Jane Doe witnesses," has ever been aired in a court proceeding.  In short, the AP targets a phantom Protective Order that has never been requested and does not exist.

That said, it seems apparent that the AP would oppose the entry of *any* Protective Order, however it is characterized and whatever its actual effect.  Even so, the Court's consideration of the Defendant's request for a Protective Order should be guided by what Defendant's motion actually seeks, rather than what the AP says it seeks.  The Court should bear in mind that the controlling Supreme Court case, Seattle Times, draws a clear distinction between pretrial discovery materials (which generally are not public) and judicial proceedings (which generally are public).  When analyzed appropriately under the governing legal standards, Defendant's motion should be granted.

**II.     THERE IS NO PUBLIC RIGHT OF ACCESS TO PRETRIAL DISCOVERY MATERIALS.**

Although the Protective Order sought by Defendant would not result in the "blanket sealing of judicial records" or the "wholesale sealing of court papers," it would affect the ability of the parties to disseminate the raw fruits of discovery to the public.  In this respect, the Protective Order is perfectly proper, because there is no right of access to pretrial discovery materials.

> [P]retrial depositions and interrogatories are not public components of a civil trial.  Such proceedings were not open to the public at common law, and, in general, they are conducted in private as a matter of modern practice.  Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action.  Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information.

Seattle Times Co. v. Rhinehart, 476 U.S. 20, 33 (1984) (citations and footnotes omitted).

The AP's argument that the Protective Order somehow impinges on a public right fails to take account of the distinction between pretrial discovery materials and judicial proceedings.  Indeed, it treats discovery and trial as though they were one and the same, arguing that, now that the facts of the case "are about to be tested in the crucible of discovery, it is all the more important for the public to have access to the facts that will explain what has occurred in this matter and why."  (AP's Mem. at 8.)

The notion that the facts "are about to be tested in the crucible of discovery" is sheer nonsense.  Discovery is not a "crucible" for anything, and it is certainly not the arena in which the "facts that will explain what has occurred" will be determined.  As in every case, the facts will be determined at trial, not in discovery.  The trial will be open to the public, and there will

4

be ample opportunity to learn what actually occurred and why. The Protective Order sought by Defendant has nothing to do with the conduct of the trial, and, as such, treads on no public right.[2]

Because the requested Protective Order will have no effect on the trial of this case, the only legitimate question before the Court is whether Defendant's request for a Protective Order meets the "good cause" requirement of Federal Rule of Civil Procedure 26(c). As Defendant demonstrated in his motion papers, it does. One of Rule 26(c)'s express purposes is to protect litigants from potential "embarrassment," especially where the potential embarrassment is "particularly serious." Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986).

This is precisely the sort of case where a Protective Order is needed most. Much of the discovery in this case—including the police files, the parties' interrogatory answers, and the parties' and witnesses depositions—will concern personal relationships, alleged sexual misconduct, possible drug use, and the psychological and emotional well-being of the parties and witnesses. All of this information (whether it is true or false) is unquestionably private and confidential. The fact that the AP's reporters are eager to obtain and report this material is besides the point. "There is no reason whatsoever for allowing public access to information that is damaging or embarrassing to a party or a witness merely because it makes good press copy or will engage the public's interest." Jack H. Friedenthal, Secrecy in Civil Litigation: Discovery & Party Agreements, J.L. & Pol'y 67, 86 (2000). See also Seattle Times, 476 U.S. at 34-35 ("Because of the liberality of pretrial discovery permitted by Rule 26(b)(1), . . . . [t]here is an

---

[2] Again displaying the very overreaching that Seattle Times warned against, the AP insists that "the public is entitled to know how the District Attorney came to the conclusion that Mr. Cosby should not be charged with a crime." (AP's Mem. at 8.) If that were true, there would be a public right to view the police and District Attorney's files, regardless of whether a civil suit is subsequently filed. There is no such right, and therein lies Defendant's point. Police investigatory records are not public and they should not become available to the media simply because the parties subpoena them in discovery.

opportunity . . . for litigants to obtain—incidentally or purposefully—information that not only is irrelevant but if publicly released could be damaging to reputation and privacy.").[3]

Thus, the Rule 26(c) standard is clearly met in this case. Indeed, it would appear that Plaintiff's purpose in seeking to publicize anonymous allegations against the Defendant is to embarrass him, deprive him of the opportunity to respond, and undermine his reputation in the community. The AP's apparent willingness to go along with this tactic does not render the tactic more legitimate, just more damaging.

The sealing of discovery materials in cases involving allegations of sexual misconduct is appropriate even where the public's interest in the allegations is far more legitimate than it is here. In Jones v. Clinton, 1998 U.S. Dist. LEXIS 2923 (D. Ark. 1998), for example, a case involving alleged sexual harassment by a sitting U.S. President, the court sealed discovery and court filings dealing with discovery. Id. at *22. Citing Seattle Times, the court held that the protective order was justified on the following grounds:

> Rule 26(c) thus protects privacy interests and specifically includes among its express purposes the protection of a party or person from embarrassment. . . . . Much of the discovery in this case of alleged sexual harassment has delved deeply into the personal lives of individuals and elicited information that, regardless of its truth or falsity, could prove damaging to reputation and privacy. Many in the media have shown no restraint in their willingness to place such personal information in the public domain despite the pain it may cause. Driven by profit and intense competition, gossip, speculation, and innuendo have replaced legitimate sources and attribution as the tools of the trade for many of these media representatives. Stories are apparently no longer subjected to

---

[3] Other discovery material, even material that might not be considered confidential in other cases, may be confidential in this case because of Defendant's celebrity status. For example, the press should not be given access to Defendant's private telephone numbers, much less his personal financial information, just because Plaintiff is seeking this information in discovery. Airing this information in public would seriously compromise the privacy interests of the Defendant, members of his family, and numerous other individuals, yet its release would serve no legitimate public purpose.

>critical examination prior to being printed.  Indeed, the printing of
>a story in one publication is itself now considered newsworthy and
>justification for its reprinting in other publications, without critical
>examination for accuracy and bias.  Thus, stories without
>attribution and based on gossip, speculation, and innuendo fly
>through media outlets with blinding speed only later to be placed in
>context or subjected to clarification and/or retraction, as the case
>may be.  The Court finds there is good cause under Rule 26(c) in
>attempting to protect private individuals from the stigma of being
>associated with a case that involves alleged sexual indiscretions
>and which is being played out on a national stage.

Id. at *31.

A Protective Order barring the dissemination of confidential discovery material does not implicate the public's right of access to judicial proceedings.  A Protective Order is appropriate under Rule 26(c) because Defendant has shown good cause.[4]

### III.   THE PUBLIC HAS A PRESUMED BUT LIMITED RIGHT OF ACCESS TO JUDICIAL PROCEEDINGS AND RECORDS.

The Protective Order sought by Defendant would also apply, at least theoretically, to court filings that reference or attach discovery materials that have been designated confidential. The parties would be required to file such materials under seal, permitting the Court, with the parties' participation, to determine whether they should remain sealed or whether any part of them should be released.

This procedure is sensible and proper.  Although there is a presumed "right of access to judicial proceedings and judicial records," Pansy v. Borough of Stroudsburg, 23 F.3d 772, 780–81, there is a correlative principle that "the right of access . . . is not absolute."  Bank of Am.

---

[4]  As Defendant pointed out in his earlier memoranda, the Court may also restrict the public availability of information to preserve a fair trial.  See Anderson v. Cryovac, Inc., 805 F.2d 1, 8 (1st Cir. 1986) ("The district court was concerned that the extensive publicity . . . would inhibit and perhaps prevent the selection of an impartial jury. . . . Because it was faced with specific instances of massive and potentially harmful publicity, we find there was good cause for the district court to issue the protective order.").

Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs., 800 F.2d 339, 344 (3d Cir. 1986). In determining whether the public should be given access to judicial records, the Court is required to balance competing public and private interests. Thus, the "presumption of access [to judicial records] must be balanced against the factors militating against access." Id.

The balancing test applicable to the sealing of judicial records does not apply to every court filing, however, because not everything that is filed in court is considered a "judicial record." In particular, there is no presumed right of access to filings that relate to "discovery motions and their supporting documents." Leucadia, Inc. v. Applied Extrusion Technologies, Inc., 998 F.2d 157, 165 (3d Cir. 1993). As the Leucadia court explained: "[A] holding that discovery motions and supporting materials are subject to a presumptive right of access would make raw discovery, ordinarily inaccessible to the public, accessible merely because it had to be included in motions precipitated by inadequate discovery responses or overly aggressive discovery demands." Id. at 164. Therefore, to the extent that the requested Protective Order would require the parties to file discovery motions and exhibits under seal, it would not implicate the public's presumed right of access to judicial records.

The Second Circuit has also emphasized that not every court filing implicates the presumed right of public access. It articulated several reasons why this is so, including a number of reasons that apply squarely to the discovery materials at issue here:

> [I]t must be recognized that an abundance of statements and documents generated in federal litigation actually have little or no bearing on the exercise of Article III judicial power. The relevance or reliability of a statement or document cannot be determined until heard or read by counsel, and, if necessary, by the court or other judicial officer. As a result, the temptation to leave no stone unturned in the search for evidence material to a judicial proceeding turns up a vast amount of not only irrelevant but also unreliable material. *Unlimited access to every item turned up in the course of litigation would be unthinkable. Reputations would be impaired,*

8

> *personal relationships ruined, and businesses destroyed on the basis of misleading or downright false information.*

United States v. Amodeo, 71 F.3d 1044, 1048-49 (2d Cir. 1995) (emphasis added).

Thus, despite the broad sweep of the AP's memorandum, the AP's concern about access to "judicial records" does not even apply unless and until one of the parties seeks to file a non-discovery motion that references or attaches confidential discovery materials, such as a motion for summary judgment. Yet, even at that point, the AP's claim that Defendant seeks a "blanket sealing" of all such records, at the sole discretion of the parties, is not correct. Defendant's motion seeks merely to establish a prophylactic procedure that would enable the Court to consider and decide whether particular filings should be considered confidential, without the issue becoming moot by the mere filing of the material in question.[5]

If either Plaintiff or Defendant wishes to challenge the initial requirement that she or he file confidential discovery materials under seal, such party may do so, with the burden properly on the party seeking confidentiality to establish good cause for sealing the material at issue. Each such filing would be accompanied by a redacted, publicly filed version of the same pleading, thereby enabling the AP to ascertain in general terms the nature of the information under seal. If the AP chooses, it can move to unseal the information. This was the procedure followed and approved in Leucadia, a case cited by the AP. See 998 F.2d at 166.

The AP's next argument is that Defendant is not entitled to a Protective Order under Pansy because he is a "public person" and "one of the important entertainment icons and role models this City has ever produced." (AP's Mem. at 8.) This argument misreads the Pansy

---

[5]   Although the AP is correct that the law prevents parties from unilaterally deciding, without court supervision, what judicial documents should be sealed, the law is equally clear that parties may not unilaterally decide to make confidential materials public, through the unsupervised and wholly discretionary act of filing a document in the public court file.

9

decision.  A person's privacy interests are not diminished because he or she happens to be a celebrity.  The Pansy court's reference to persons "subject to legitimate public scrutiny" and "issues or parties of a public nature"—such as the litigation against a municipality at issue before it—was based on precedents concerning persons "who serve [the public] in office," "a government agency and matters of public concern," and "information important to public health and safety."  Id. at 787-88 (citations and quotation marks omitted).  Defendant in this case fits none of these categories.  To the contrary, "[m]ore than mere celebrity interest" is required to tip the balance against privacy.  Condit v. Dunne, 225 F.R.D. 113, 120 (S.D.N.Y. 2004); see also Paisley Park Enters. v. Uptown Prods., 54 F. Supp. 2d 347, 348 (S.D.N.Y. 1999) (holding that, where opposing party had history of sharing information with media, rock star Prince's motion for protective order would be granted).

In addition, the Supreme Court has explained that courts have inherent "supervisory power" to deny access to court files where "court files might have become a vehicle for improper purposes" and to "insure that its records are not 'used to gratify private spite or promote public scandal.'"  Nixon v. Warner Communications, Inc., 425 U.S. 589, 598, 603 (1978) (citation omitted).  Moreover, in cases like this, where much of the discovery material will likely be inadmissible at trial, a Protective Order does not interfere with a legitimate public interest.  United States v. McVeigh, 119 F.3d 806, 813 (10th Cir. 1997) ("[n]either tradition nor logic supports public access to inadmissible evidence.").  Thus, a Protective Order that precludes the parties from publishing incendiary and scandalous information, which is inadmissible and judicially useless, is entirely appropriate, particularly given the strong countervailing privacy interests at stake.  See id.

10

Defendant's proposed Protective Order imposes a requirement that discovery materials that are designated as confidential should be filed under seal, but it leaves for another day the resolution of specific disputes concerning whether particular discovery materials should remain sealed. Defendant is not seeking to seal the trial record, or any other actual court proceeding. Thus, most of the cases the AP cites in its motion to intervene are inapplicable. See Press-Enterprise Co. v. Superior Court, 464 U.S. 501 (1984) (concerning the tradition of open criminal trials); Press-Enterprise Co. v. Superior Court, 478 U.S. 1 (1986) (concerning sealed transcripts of criminal preliminary hearing); Publicker Indus., Inc. v. Cohen, 733 F.2d 1059 (3d Cir. 1984) (concerning closed hearing on preliminary injunction motions); North Jersey Media Group, Inc. v. Ashcroft, 308 F.2d 198 (3d Cir. 2002) (concerning closed hearings over deportation of suspected terrorists).

**IV.    CONCLUSION**

Plaintiff and the AP each give their own reasons for opposing Defendant's motion for a Protective Order. Plaintiff argues that the motion somehow represents an attempt by the Defendant to "silence his accusers" and bring "shame, self doubt, and humiliation" on victims of sexual assault. The AP argues that the motion somehow treads on the public's right of access to judicial records and proceedings and would deny the public "access to the facts that will explain what has occurred in this matter and why." Neither argument comes anywhere close to the mark.

Defendant's request for a Protective Order harms no one and treads on no public right. It seeks merely to prevent the prevent the dissemination of confidential discovery materials before trial. Entry of a Protective Order will help to preserve the integrity of the jury pool, ensure fairness, and lessen the prospects that the parties will be prejudiced by the disclosure of potentially irrelevant and unreliable material that may be inadmissible at trial.

The Court should deny the AP's motion to intervene and enter the Protective Order attached to Defendant's motion.

Dated: May 27, 2005

s/ *Patrick O'Connor*
Patrick J. O'Connor
George M. Gowen III
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA  19103
215.665.2000

Andrew D. Schau
PATTERSON, BELKNAP,
  WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
212.336.2000

Attorneys for Defendant