IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANDREA CONSTAND                :     CIVIL ACTION
                               :     05-1099
        Plaintiff,             :
                               :
        v.                     :
                               :
WILLIAM H. COSBY, JR.          :
                               :
        Defendant.             :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              JUNE 2, 2005


I.    BACKGROUND

        Plaintiff, Andrea Constand, brings this diversity

action against defendant, William H. Cosby, Jr., asserting claims

of battery, sexual assault, intentional and negligent infliction

of emotional distress, defamation/defamation per se and false

light/invasion of privacy.  Plaintiff is the former Director of

Operations for the Women's Basketball program at Temple

University.  Defendant is a well-known entertainer and celebrity

and a supporter of Temple University programs.  Plaintiff met

defendant while she was employed at Temple University.

        The gravamen of plaintiff's complaint is that while

alone with defendant at defendant's home in January 2004,

defendant deceived plaintiff into ingesting a narcotic or other

type of drug which caused plaintiff to become semi-conscious, and

thereafter defendant sexually assaulted plaintiff.  Plaintiff

also contends that after she reported defendant's alleged actions to the Durham, Ontario police, defendant and/or his authorized representatives knowingly made false statements to the media about plaintiff.  In connection with her allegations, plaintiff seeks an award of compensatory damages plus reasonable attorneys' fees, interest, costs, punitive damages, and other unspecified relief.

Presently before the Court are two motions for protective orders.  One, plaintiff seeks to keep confidential the identity of prospective witnesses who are expected to testify at trial pursuant to Federal Rule of Evidence 415 ("Evidence of Similar Acts in Civil Cases Concerning Sexual Assault").  Two, defendant seeks to preclude the parties from disclosing any information learned in discovery to anyone other than the parties themselves, their counsel and representatives working on their behalf and to preclude use of any such information for any purpose other than this litigation.  The Court held a hearing to address issues raised in these motions on May 11, 2005.

In plaintiff's motion for a protective order, which defendant initially opposed, plaintiff argues that the identities of ten or more of the prospective Rule 415 witnesses, whom plaintiff tagged as "Jane Doe witnesses" in disclosures to defendant ("Jane Doe witnesses"), should be protected from public

disclosure.[1]  At the hearing, plaintiff's counsel stated that at least thirteen Rule 415 witnesses may testify, (Hr'g Tr. Troiani (5/11/05) at 21), and that all but two are represented by counsel, with one of the unrepresented witnesses being an attorney herself, (Hr'g Tr. Kivitz (5/11/05) at 29).  In support of her position, plaintiff argues that there are important privacy concerns at issue in disclosing the Jane Doe witnesses' names and addresses to the media.  In particular, the anticipated testimony of the Jane Doe witnesses relates to details of alleged similar incidents of sexual assaults involving the defendant.  Plaintiff argues that disclosure of these witnesses' identities may place the Jane Doe witnesses at risk of physical and psychological harm from media exposure.  Plaintiff also contends that disclosure of their identities may expose the Jane Doe witnesses to the risk of harm from overly zealous fans and supporters of the celebrity defendant.

Defendant initially challenged plaintiff's ability to move for a protective order to conceal the identities of the Jane Doe witnesses arguing that plaintiff may only move for a protective order to protect her own interests and not the

---

[1] Although plaintiff has not disclosed the identities of these Jane Doe witnesses to defendant, prompting defendant to file a motion to compel, plaintiff does not seek to protect the identities of these witnesses from defendant.  Rather, plaintiff seeks only to protect their identities from the press and the public.

interests of third-party witnesses.  Defendant also argued that
if such a protective order is granted, the Jane Doe witnesses
will be free to make anonymous public accusations about
defendant's sexual history without corresponding scrutiny.
However, at the hearing, counsel for defendant clarified that
defendant was not opposed to protecting the names of the Jane Doe
witnesses from public disclosure at this time (i.e., during the
discovery period), so long as defendant is provided with their
names and has the opportunity to depose them.  (Hr'g Tr. O'Connor
(5/11/05) at 14-15.)

        Defendant's motion requests a blanket protective order
preventing the parties (and presumably counsel and witnesses)
from publicly disclosing or discussing any information learned in
discovery.  In support of this motion, defendant argues that a
protective order cloaking information produced in discovery will
protect the parties and witnesses in this case from embarrassment
and invasion of privacy and will help preserve a fair and
unbiased jury pool.  Defendant highlights the publicity this case
has already garnered and predicts that public disclosure of the
discovery proceedings could result in serious and palpable
embarrassment to the defendant.

        At the hearing, defense counsel explained that
defendant's request for a protective order went beyond protecting
information obtained by the parties during discovery.  In

4

essence, defendant would like the Court to issue a gag order prohibiting the parties and counsel from making any extrajudicial statements about any aspect of the case.  Id. at 12-13, 25.

Plaintiff opposes defendant's request for a protective order cloaking in a mantle of confidentiality all discovery obtained in this case and for a more expansive gag order. Plaintiff argues that defendant is a person with unfettered access to worldwide media outlets and that, in fact, defendant has already utilized the media in this litigation by portraying himself as the type of individual who would not engage in the behavior alleged herein.  Plaintiff posits that if the Court were to seal discovery, defendant would promote his own innocence by talking to the media, lecturing at public venues and otherwise promoting his public image.  According to plaintiff's counsel, if plaintiff is denied the right to have her counsel speak for her in public, she will have no public voice with which to counteract defendant.  (Hr'g Tr. Troiani (5/11/05) at 6.)  Plaintiff's counsel argues that because the defendant's friends and agents are speaking out on his behalf, it is necessary for the plaintiff's attorneys to speak out to present the public with a balanced picture of the case.  Id. at 6-8.

In essence, the parties have presented the Court with three issues:

1.   Whether the Court should enter a gag
     order limiting the ability of the

parties and counsel to make
extrajudicial statements;

2.    Whether the names of prospective Rule
      415 Jane Doe witnesses should be
      disclosed to counsel only and otherwise
      kept confidential; and

3.    Whether the Court should enter a
      protective order cloaking all discovery
      in the case in a mantle of
      confidentiality.

The Court will address these issues seriatim.


II.  DISCUSSION

     A.    Should the Court Enter a Gag Order Limiting the
           Ability of the Parties and Counsel to Make
           Extrajudicial Statements?

     "It is difficult to strike a balance between protecting

the right to a fair trial and safeguarding the right of free

expression."  Rules of Prof'l Conduct, R. 3.6, 42 Pa.C.S.A., cmt.

1 (Supp. 2005).  Extrajudicial statements by counsel of record in

an ongoing, high-profile civil proceeding, such as here, presents

a case in point.

     On the one hand, it is true that a lawyer's

extrajudicial statements may contribute to the public's

understanding of the judicial process in general or help explain

the intricacies of a particular case.  This is specially so when,

as here, by virtue of the public notoriety of one of the parties

and the subject matter of the action, the case attracts

significant media attention.  Yet, on the other hand,

extrajudicial statements by counsel heighten the risk of turning litigation into a media circus, polluting the jury pool and lowering the esteem and dignity of the court in the eyes of the public.

Faced with this dilemma, some courts have entered some form of "gag order" limiting parties, counsel and even witnesses from publicly discussing the facts or merits of a case.[2]  Given the First Amendment implications of a sweeping gag order, however, limiting speech by parties and witnesses, particularly in a civil case and this early in the proceeding, is not to be likely undertaken.  Neither should the Court undertake to limit counsels' extrajudicial statements without great care.  Rather, the Court must be convinced, not merely suspect, that there is a substantial likelihood that extrajudicial statements by counsel, in light of the circumstances of the case, will materially prejudice the pending proceedings.  Gentile v. State Bar of Nev., 501 U.S. 1030, 1075 (1991); United States v. Scarfo, 263 F.3d 80, 93-94 (3d Cir. 2001).  The Supreme Court has held that this "'substantial likelihood of material prejudice' standard constitutes a constitutionally permissible balance between the

---

[2] See, e.g., Commonwealth v. Lambert, No. 423-1992 (Pa. Com. Pl. Apr. 14, 1998); Commonwealth v. DuPont, No. 29-96 (Pa. Com. Pl. Jan. 13, 1997); State v. Grossberg, No. 9611007811 (Del. Super. Ct. Mar. 21, 1996).

First Amendment rights of attorneys in pending cases and the State's interest in fair trials." <u>Gentile</u>, 501 U.S. at 1075.

In light of these concerns, there are at least three reasons why the Court need not enter a gag order in this case, at least not now, and not of the breadth of the one proposed by defendant in this case. One, limiting parties and witnesses from making extrajudicial statements during a pending civil proceeding raises constitutional questions where similar limitations upon lawyers do not. <u>See</u> <u>id.</u> at 1071 (noting that in <u>In re Sawyer</u>, 360 U.S. 622 (1959), the Court "observed that lawyers in pending cases were subject to ethical restrictions on speech to which an ordinary citizen would not be.").

Two, although at least one counsel has made extrajudicial statements to the media concerning certain aspects of the case, the bulk of the media coverage has centered on the averments made by the parties in the pleadings.[3]  Thus, silencing the lawyers outside the courtroom alone would not necessarily lessen the sensationalist tone of the public coverage witnessed here.[4]

---

[3] Statements made in pleadings may be stricken by the Court under Federal Rule of Civil Procedure 12(f).  Rule 12(f), in pertinent part, provides that "upon the court's own initiative at any time, the court may order stricken from any pleading any . . . redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

[4] The District Attorney for Montgomery County, Pennsylvania investigated this matter for several weeks, ultimately declining

Three, attorneys' extrajudicial statements are already subject to sanction, albeit seldom enforced, under the Pennsylvania Rules of Professional Conduct.  Specifically, Rule 3.6, applicable in this Court through operation of Eastern District of Pennsylvania Rule of Civil Procedure 83.6 (Rule IV(B)),[5] was adopted in 1987 and recently amended.  Its pedigree traces to the American Bar Association ("ABA") Model Code of Professional Responsibility and the ABA Standards Relating to Fair Trial and Free Press, as amended in 1978.  The Rule puts flesh on the bones of the "substantial likelihood of material prejudice" standard endorsed by the United States Supreme Court. It is applicable to all members of this Bar and to those attorneys who are admitted <u>pro hac vice</u> in this case.

In pertinent part, the Rule provides:

> (a) A lawyer who is participating or has participated in the investigation or litigation of a matter <u>shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of</u>

---

to prosecute it.  As a consequence of that investigation, substantial publicity was generated before the instant case was even filed.

[5] Local Rule of Civil Procedure 83.6 (Rule IV(B)) provides in pertinent part that "[t]he Rules of Professional Conduct adopted by this Court are the Rules of Professional Conduct adopted by the Supreme Court of Pennsylvania, as amended from time to time by that Court, except as otherwise provided by specific Rule of this Court. . . ."  E.D. Pa. R. Civ. P. 83.6 (Rule IV(B)).

> materially prejudicing an adjudicative
> proceeding in the matter.
>
> (b) Notwithstanding paragraph (a), a
> lawyer may state:
> (1) the claim, offense or defense
> involved and, except when prohibited by law,
> the identity of the persons involved;
> (2) information contained in a public
> record;
> (3) that an investigation of the matter
> is in progress;
> (4) the scheduling or result of any step
> in litigation;
> (5) a request for assistance in
> obtaining evidence and information necessary
> thereto;
> (6) a warning of danger concerning the
> behavior of a person involved, when there is
> reason to believe that there exists the
> likelihood of substantial harm to an
> individual or to the public interest . . . .
>
> (c) Notwithstanding paragraph (a), a
> lawyer may make a statement that a reasonable
> lawyer would believe is required to protect a
> client from the substantial undue prejudicial
> effect of recent publicity not initiated by
> the lawyer or the lawyer's client. A
> statement made pursuant to this paragraph
> shall be limited to such information as is
> necessary to mitigate the recent adverse
> publicity.
>
> (d) No lawyer associated in a firm or
> government agency with a lawyer subject to
> paragraph (a) shall make a statement
> prohibited by paragraph (a).

Rules of Prof'l Conduct, R. 3.6, 42 Pa.C.S.A. (Supp. 2005)

(emphasis added).

Comment 5 sheds light on the type of extrajudicial

statements which are proscribed by the Rule:

10

[5] There are, on the other hand, certain subjects that are more likely than not to have a material prejudicial effect on a proceeding, <u>particularly when they refer to a civil matter triable to a jury</u>, a criminal matter, or any other proceeding that could result in incarceration. These subjects relate to:

(1) <u>the character, credibility, reputation or criminal record of a party</u>, suspect in a criminal investigation or witness, or <u>the identity of a witness</u>, or <u>the expected testimony of a party or witness</u>;

. . . .

(3) the performance or results of any examination or test or the refusal or failure of a person to submit to an examination or test, or the identity or nature of physical evidence expected to be presented;

. . . .

(5) <u>information that the lawyer knows or reasonably should know is likely to be inadmissible as evidence in a trial and that would, if disclosed, create a substantial risk of prejudicing an impartial trial</u> . . . .

<u>Id.</u> cmt. 5 (emphasis added).  Comment 7 explains that under the Rule counsel may be justified in making extrajudicial statements in response to extrajudicial statements made by other counsel in violation of the Rule:

[7] Finally, extrajudicial statements that might otherwise raise a question under this Rule may be permissible when they are made in response to statements made publicly by another party, another party's lawyer, or third persons, where a reasonable lawyer

11

> would believe a public response is required
> in order to avoid prejudice to the lawyer's
> client. When prejudicial statements have been
> publicly made by others, responsive
> statements may have the salutary effect of
> lessening any resulting adverse impact on the
> adjudicative proceeding. Such responsive
> statements should be limited to contain only
> such information as is necessary to mitigate
> undue prejudice created by the statements
> made by others.

Id. cmt. 7; see also Heffernan v. Hunter, 189 F.3d 405, 414 (3d

Cir. 1999) ("We are not so naive as to believe that there is no

exception to the admonition that lawyers are to try their cases

only in the courtroom.  There may be circumstances where

conscientious lawyers must act to defend against adverse

publicity where their clients have been tried and convicted by

the media long before trial, or where the opposing litigants--

government or private--have blanketed the community with damaging

publicity.").

The Rule, in its original incarnation, including what

is now Comment 5, which at the time was section (b) of the Rule,

largely tracks the language of Nevada's rule of professional

conduct that the Supreme Court found to be constitutionally

permissible in Gentile.  Moreover, Rule 3.6 has expressly been

found constitutionally sound by at least one Pennsylvania

appellate court.  Commonwealth v. Lambert, 723 A.2d 684, 692, 695

(Pa. Super. 1998).  Under these circumstances, Rule 3.6 provides

a constitutionally tested method of defining the contours of permissible extrajudicial statements by counsel.

It is true that breaches of the Pennsylvania Rules of Professional Conduct are generally enforceable by reference of the offending counsel to the Pennsylvania Disciplinary Board. See, e.g., Eagan by Keith v. Jackson, 855 F. Supp. 765, 791 (E.D. Pa. 1994) (holding that the Disciplinary Board and not the court adjudges whether a breach of the Rules of Professional Conduct should result in professional discipline); Greenfield v. U.S. Healthcare, Inc., No. Civ.A.92-6345, 1993 WL 106453, at *2 (E.D. Pa. Apr. 6, 1993) ("[T]he inquiry, adjudication, and determination of allegations of ethical misconduct are matters for the Disciplinary Board of the Supreme Court of Pennsylvania."). It is also true that this method of post hoc enforcement has been criticized as effectively toothless. See, e.g., Robert S. Bennett, Press Advocacy and the High-Profile Client, 30 Loy. L.A. L. Rev. 13, 18 (1996) (stating that the rules of ethics and their after-the-fact enforcement actions have little teeth when it comes to curing damage caused by media abuse during trial). This criticism is particularly apt here, where an after-the-fact rebuke by the Disciplinary Board would not address the need for prompt action by the trial court to sanction attorney conduct or to enter orders protecting the integrity of the proceedings while the case is ongoing.

13

Nevertheless, the Court is not inevitably relegated to the role of the veritable "potted plant" with respect to enforcement of the Rules of Professional Conduct.  This is particularly true here, where the likelihood that extrajudicial statements may have the substantial likelihood of materially prejudicing the proceedings is high.  Rather, given the need for close judicial superintendency of the proceedings, there is good reason to adopt Rule 3.6 as a rule of procedure applicable to counsel and enforced by the Court in this case.

Under Federal Rule of Civil Procedure 16, the Court is authorized to enter case management orders and to establish procedures that "may facilitate the just, speedy, and inexpensive disposition of the action."  Fed. R. Civ. P. 16(c)(16).  Moreover, the Court has inherent power to enter prophylactic orders that will protect the parties' right to a fair trial.  Thus, given this authority, and under the circumstances of this case, the Court will adopt Rule 3.6 as Case Management Order 1 in this case applicable to all counsel of record.  Henceforth, breaches of Rule 3.6 (Case Management Order 1) may be punished under Federal Rule of Civil Procedure 16(f) or under the Court's inherent power.  Under this authority, the Court may impose monetary sanctions, order referral to the Pennsylvania Disciplinary Board, revoke a lawyer's pro hac vice admission, or enter such other orders which are just under the circumstances.

The Court recognizes that this is a volatile case.  One party is a prominent entertainer well known nationally and internationally with a high profile in the local community.  The subject matter of the action involves allegations of sexual assault and battery.  Moreover, under Federal Rule of Evidence 415, alleged similar episodes involving the defendant and third parties may be admissible under certain circumstances.[6]  Understandably, putting together the parties, the subject matter of the action and the scope of the charges, this case has generated intense media scrutiny.

Yet, a gag order stilling counsel's voice outside the courtroom is not the answer.  Attorney public speech is not always undesirable nor is media attention always deleterious to the interest of justice.  The lamp of public scrutiny shining brightly over the proceedings can assist the Court in reaching a just result under the watchful eye of an informed public.  When, however, counsel seeks to use this light not to enlighten but to distort, not to inform but to proselytize, the fragile accommodation between the right to a fair trial and the exercise of free expression is put at risk.  Battling news conferences, appearances on television and radio shows, and media interviews on the part of counsel exacerbates this risk.  Timely and fair

---

[6]  Under Rule 415, a party may offer evidence in a civil case that the defendant previously committed another offense or offenses of sexual assault.  Fed. R. Evid. 415(a).

enforcement of Rule 3.6, on the other hand, will help the Court guard against it.  Therefore, Rule 3.6 will be adopted as Case Management Order 1 and thereafter all extrajudicial statements of counsel of record in this case shall be measured against the teachings of Rule 3.6.[7]


    B.    Should the Names of Prospective Rule 415 Jane Doe Witnesses Be Disclosed to Counsel Only and Otherwise Kept Confidential?

It is well established that there exists a common law public right of access to judicial proceedings in civil cases. Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1066 (3d Cir. 1984).  This public right of access entails not only the ability to attend open court proceedings, but also the ability to inspect and copy judicial records and documents.  In re Cendant Corp.,

---

[7] The District Court for the Eastern District of Pennsylvania has adopted a detailed local rule, applicable to criminal cases, defining the duty of attorneys concerning the release of information by means of public communication. Specifically, Local Rule of Criminal Procedure 53.1(a) provides:

> It is the duty of the lawyer not to release or authorize the release of information or opinion for dissemination by any means of pubic communication, in connection with pending or imminent criminal litigation with which the lawyer is associated, if there is a reasonable likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice.

E.D. Pa. R. Crim. P. 53.1(a).  Though the scope of this Rule is broader than Rule 3.6 of the Pennsylvania Rules of Professional Conduct, it does not apply to civil proceedings in this Court.

260 F.3d 183, 192 (3d Cir. 2001); <u>Littlejohn v. BIC Corp.</u>, 851

F.2d 673, 678 (3d Cir. 1988).  The public interests which

underscore the public right of access have been summarized by the

Third Circuit:

> The public's exercise of its common law
> access right in civil cases promotes public
> confidence in the judicial system by
> enhancing testimonial trustworthiness and the
> quality of justice dispensed by the court.
> As with other branches of government, the
> bright light cast upon the judicial process
> by public observation diminishes
> possibilities for injustice, incompetence,
> perjury, and fraud.  Furthermore, the very
> openness of the process should provide the
> public with a more complete understanding of
> the judicial system and a better perception
> of its fairness.

<u>Littlejohn</u>, 851 F.2d at 678 (citations omitted).

The public right of access, however, is not absolute.

<u>In re Cendant Corp.</u>, 260 F.3d at 194.  "The presumption of public

access may be rebutted."  <u>Id.</u>  For instance, "[a] party may limit

or condition the public's access to the information produced

during the course of discovery, by obtaining a protective order

from the court."  <u>Aetna Cas. & Sur. Co. v. George Hyman Constr.

Co.</u>, 155 F.R.D. 113, 115 (E.D. Pa. 1994) (footnote omitted)

(citing Fed. R. Civ. P. 26(c)).  Protective orders "are intended

to offer litigants a measure of privacy, while balancing against

this privacy interest the public's right to obtain information

concerning judicial proceedings."  <u>Pansy v. Borough of

Stroudsburg</u>, 23 F.3d 772, 786 (3d Cir. 1994).

17

"A party seeking a protective order over discovery materials must demonstrate that 'good cause' exists for the protection of that material." Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995).  A party can establish good cause by "showing that disclosure will work a clearly defined and serious injury to the party seeking closure." Pansy, 23 F.3d at 786.  It is essential that the injury to be prevented be shown with specificity.  Id.  "'Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning,' do not support a good cause showing." Id. (citing Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986)). Ultimately, in deciding whether good cause exists for a protective order, i.e., whether a party has shown a clearly defined and serious injury, the court must employ a balancing process.  Id. at 787.  What is critical is that a district court's "analysis . . . always reflect a balancing of private versus public interests." Glenmede Trust Co., 56 F.3d at 483.

Here, plaintiff seeks a protective order cloaking the identity of Jane Doe witnesses who are expected to offer testimony at trial pursuant to Federal Rule of Evidence 415[8] in a mantle of confidentiality.  On this record, plaintiff has not

---

[8] This evidence apparently will consist of testimony concerning alleged offenses similar to the offense allegedly committed by defendant in this case.

18

shown good cause why this information should be protected as to
all witnesses for all purposes.

First, plaintiff's only argument for protecting the
identities of the Jane Doe witnesses is that the Jane Doe
witnesses themselves may be placed at risk of physical and
psychological harm from media exposure or from overly zealous
fans and supporters of the celebrity defendant.  While this
argument surmises that some type of serious harm may befall
plaintiff's witnesses, it fails to show how "disclosure will work
a clearly defined and serious injury to [plaintiff herself, as]
the party seeking closure."

Second, plaintiff's underlying assertion that all Jane
Doe witnesses may suffer physical and psychological harm from
media exposure or from overly zealous fans and supporters of the
defendant is precisely the type of unsubstantiated broad
allegation of harm said to be insufficient to establish good
cause.  Plaintiff has simply grouped all Jane Doe witnesses in
one category or class claiming that the harm resulting from
disclosure of any information concerning any one witness will
fall with equal impact upon all Jane Doe witnesses.  This type of
stereotypical and non-specific conclusory statement cannot
satisfy the good cause requirement under Federal Rule of Civil
Procedure 26(c).

Finally, significant is the fact that the Jane Doe witnesses, all but two of whom are represented by counsel,[9] have not requested a protective order in their own right.

For all of these reasons, the plaintiff's motion for a protective order keeping confidential the identities of the Jane Doe witnesses will be denied.  Yet, it may well be that any one of the Jane Doe witnesses may be able to show, based on their own individual circumstances, that there is a particularized reason why a protective order may be appropriate in an individual case. In order to permit such a showing, the Court will suspend the operation of the Order denying the request to keep the names of Jane Doe witnesses confidential for ten days in order to afford the Jane Doe witnesses an opportunity to seek individual relief, if they so wish.

> C.   Should the Court Enter a Protective Order Cloaking
>      All Discovery in the Case in a Mantle of
>      Confidentiality?

Defendant seeks a blanket protective order preventing the parties and their counsel and agents from publicly disclosing or discussing all information learned in discovery.  He argues that a blanket protective order will protect the parties and the

---

[9] One of the unrepresented Jane Does, whose name has already been disclosed publicly, is a lawyer.

other participants in this case from embarrassment and invasion of privacy and will help preserve a fair and unbiased jury pool.

With respect to embarrassment, the Third Circuit has held that "an applicant for a protective order whose chief concern is embarrassment must demonstrate that the embarrassment will be particularly serious." <u>Cipollone</u>, 785 F.2d at 1121. It is true that allegations of, <u>inter alia</u>, sexual assault and battery, not only by plaintiff, but also by the Jane Doe witnesses, may cause defendant serious embarrassment. Embarrassment alone, however, even if serious, does not justify the cloak of confidentiality over <u>all</u> discovery in this case. Defendant, as the party seeking protection, must show a nexus between the potential for serious embarrassment and the particular information sought to be kept confidential. In other words, it does not necessarily follow that because <u>some</u> of the information disclosed during discovery will cause embarrassment to defendant, <u>all</u> the discovery should be subject to a protective order.

In this case, defendant has failed to make a connection between the embarrassment he risks from disclosure and the particular items of discovery he seeks to cloak. In a similar vein, with respect to defendant's concerns about invasion of privacy and the need to preserve a fair and unbiased jury pool, the basis for these concerns has not been connected to any

particular type of discovery.  Nor has defendant identified, even by umbrella category, the specific type of discovery which might lead to embarrassment, invasion of privacy or jury taint.

Given that the defendant failed to connect the private interests which may be implicated (e.g., embarrassment, invasion of privacy or jury taint) to any specific discovery item, defendant has not shown that the private interests in this case outweigh the public interest in access to these proceedings. Therefore, on the basis of this record, the Court cannot conclude that good cause has been shown to warrant a blanket protective order.[10]

Finally, two points need to be underscored.  One, typically, discovery under the Federal Rules of Civil Procedure is conducted by the parties in private.  Ordinarily a right of access does not attach to documents exchanged by parties or any of the pretrial discovery that is not filed with the court.  See Seattle Times Co. v. Rhinehart, 467 U.S. 20, 33 (1984) ("[P]retrial depositions and interrogatories are not public components of a civil trial . . . and, in general, they are conducted in private as a matter of modern practice. . . . Therefore, restraints placed on discovered, but not yet admitted,

---

[10] Two days after a hearing on the defendant's motion for a blanket protective order, The Associated Press moved to intervene to oppose the defendant's motion.  The Court will deny this motion as moot since the defendant's motion for a protective order is being denied.

22

information are not a restriction on a traditionally public source of information."). Nothing in the Court's ruling today is intended to prevent the parties from conducting discovery in accordance with this established procedure.[11] Two, the Order issued by the Court today governing the disclosure of discovery information and extrajudicial statements by counsel is a work in progress. The Court trusts that these measured steps will be adequate to that task. Should changed circumstances compel it, the Court will revisit the issues and will recalibrate the scales upon which it bases today's judgment.

III. CONCLUSION

For the foregoing reasons, the Court will deny the request for a gag order as to the parties, counsel and witnesses. Instead, the Court adopts Rule 3.6 of the Pennsylvania Rules of Professional Conduct as Case Management Order 1 applicable to counsel for purposes of this case. In so adopting Rule 3.6, the Court has placed counsel on notice that the provisions of Rule 3.6 may be enforced under the Court's authority and that violations of the Rule may lead to the imposition of sanctions.

---

[11] Of course, the parties could on their own, without the club of a judicial sanction, agree to keep some items of discovery confidential, see Aetna Cas. & Sur. Co., 155 F.R.D. at 116, so long as the items specifically designated do not involve information that must necessarily be included in court filings or disclosed during open court proceedings.

As to plaintiff's motion to keep confidential the names of the Jane Doe witnesses, that motion will be denied.  However, the Court will suspend operation of the Order denying the request to keep the identities of the Jane Doe witnesses confidential for ten days in order to afford the Jane Doe witnesses an opportunity to seek individual relief.  Defendant's motion for a blanket protective order will also be denied.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDREA CONSTAND | : | CIVIL ACTION |
| | : | 05-1099 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| WILLIAM H. COSBY, JR. | : | |
| | : | |
| Defendant. | : | |

ORDER

**AND NOW**, this **2nd day** of **June, 2005,** it is hereby **ORDERED** that:

1.    The Court adopts Rule 3.6 of the Pennsylvania Rules of Professional Conduct as Case Management Order 1 for purposes of this case;

2.    Defendant's motion to compel initial disclosures (doc. no. 10) is **GRANTED.**  Plaintiff shall provide the names and addresses of its Rule 415 Jane Doe witnesses to defendant within five days;

3.    Plaintiff's motion for a protective order to protect the identity of her Rule 415 Jane Doe witnesses (doc. no. 13) is **DENIED.**  The Court will suspend operation of the Order denying the request to keep the identities of the Jane Doe witnesses confidential for ten days;

4.    Defendant's motion for a protective order (doc. no. 17) is **DENIED;**

5.    Defendant's motion for leave to file a reply memorandum in support of his motion to compel plaintiff's initial disclosures (doc. no. 14) is **GRANTED;**

6.    Defendant's motion for leave to file a reply memorandum in support of his motion for a protective order (doc. no. 22) is **GRANTED;** and

7.    The Associated Press's motion to intervene (doc. no. 26) is **DENIED AS MOOT.**

**AND IT IS SO ORDERED.**

_____
**EDUARDO C. ROBRENO, J.**