IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDREA CONSTAND, | : | |
| Plaintiff, | : : | |
| | : | No. 05-cv-1099 |
| v. | : : | |
| WILLIAM H. COSBY, JR., | : | **FILED UNDER SEAL** |
| Defendant. | : : | |

## DEFENDANT'S REQUESTS TO COMPEL AND
## MEMORANDUM CONCERNING OVERARCHING ISSUES

Pursuant to the Court's November 4, 2005 Order, Defendant submits these separately numbered requests to compel Plaintiff to provide further answers at a deposition. Defendant also submits this memorandum concerning the overarching, attorney-client privilege issues presented by Defendant's Requests 1 through 4.

During Plaintiff's deposition, she revealed certain critical facts about her conversations with attorneys prior to provoking a criminal investigation against Defendant. Plaintiff first reported this incident to the Canadian police on January 13, 2005, a year after the assault allegedly occurred. (Pl.'s Dep., 9/27, at 46–47.) Before she called the Canadian police, however, she called two different Philadelphia lawyers, who specialize in civil litigation, named Joseph Cincotta and Richard Myers. (Id. at 47.) Plaintiff later spoke with these attorneys, before becoming a client of her present counsel. (Id. at 52–53.) At her deposition, her present counsel instructed her not to answer several questions about her interactions with these other lawyers, on the ground that her discussions were covered by the attorney-client privilege.

1

In a diversity case, federal courts apply state law concerning attorney-client privilege. Fed. R. Evid. 501. Federal courts apply the forum state's choice of law rules to determine which state's or country's attorney-client privilege law applies. Klaxon v. Stentor Elec. Mfg. Co., 313 US 487, 496 (1941). According to Plaintiff, at the time of the communications at issue in this motion, she was in Canada and was a Canadian citizen. The attorneys with whom she communicated were in Pennsylvania. Thus, under Pennsylvania choice of law rules, Pennsylvania and Canada are the competing sources of attorney-client privilege law. See Austin v. Dionne, 909 F. Supp. 271, 273–74 (E.D. Pa. 1995). Canada's attorney-client privilege law, however, is, in relevant part, identical to Pennsylvania's. Compare 42 Pa. Cons. Stat. § 5928 with Descoteaxu v. Mierzwinski 1 S.C.R. 860, 872-73; 876-77 (Can. 1982) (defining the Canadian solicitor-client privilege); Dusik v. Newton, 1 D.L.R. (4th) 568 (BCCA 1983) (finding that facts surrounding and underlying a solicitor-client communication are not privileged); Pinder v. Sproule [2003] A.J. No. 32 (ABQB 2003) (noting that voluntary disclosure to a third party of a communication protected by the solicitor-client constitutes waiver, with exceptions not relevant here). Thus, with respect to the attorney-client privilege issues presented by Defendant, there is no conflict of law between Pennsylvania and Canada. Because the Court is familiar with Pennsylvania law and applies it regularly, the Court should apply Pennsylvania's law concerning attorney-client privilege.

Pennsylvania has codified its attorney-client privilege. "In a civil matter counsel shall not be permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client." See 42 Pa. Cons. Stat. § 5928. The United States Court of Appeals for

2

the Third Circuit has articulated the elements necessary for a claim of privilege under Pennsylvania law:

> The traditional elements of the attorney client privilege that identify communications that may be protected from disclosure in discovery are: (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his or her subordinate, and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

Rhone-Poulenc Rorer Inc. v. Home Indemnity Co., 32 F.3d 851, 862 (1994).

Where the privilege is asserted, the opposing party is entitled to discovery concerning the facts surrounding the claim of privilege, such as the nature of the relationship between the communicants and the subject matter of their communications. Frankford Trust Co. v. Advest Inc., No. 93-329, 1996 WL 571793, at *4 (E.D. Pa. Oct. 1, 1996) (citing Upjohn Co. v. United States, 449 U.S. 383, 389 (1981) ("Only the communication between the attorney and client itself is privileged; the underlying facts as well as the factual circumstances surrounding the attorney-client relationship are not privileged.")); Stabilus v. Haysworth, Baldwin, Johnson & Greaves, P.A., 144 F.R.D. 258 (E.D. Pa. 1992) (same).

## Defendant's Issue No. 1

Plaintiff first contacted the police to report the alleged assault by Defendant during the evening of January 13, 2005. (Pl.'s Dep., 9/27, at 46–47.) Earlier that same day, before contacting the police, she contacted two civil lawyers in Philadelphia. (Id. at 47.) She later spoke with these attorneys. (Id. at 52–53.) Plaintiff's counsel instructed her not to answer *any* questions about her discussions with these attorneys.

> MS. KIVITZ: Now, I'm just going to put on the record she can advise who she called. It's my understanding she didn't speak to counsel that day. But if you get into speaking to any counsel, I'm going to object on the basis of privilege -- . . . for what counsel said and what Andrea said.
>
> . . . .
>
> Q. You had no discussions with any other attorneys, to your knowledge, other than those two and your present counsel?
>
> A. That's correct.
>
> MR. O'CONNOR: And your instruction is you will not allow me to inquire as to those discussions?
>
> MS. KIVITZ: I have no problem with asking her if she recalls the dates she had those discussions or the identities. *I do have a problem with anything that was discussed.*
>
> . . . .
>
> Q. Did you reach out successfully with Bebe and talk to her?
>
> A. In the first call I placed to her, it was actually through Rich Myers, and Rich Myers mentioned that Bebe was in court, it was I believe a Tuesday, and he said that Bebe was in court and that he would --
>
> MS. KIVITZ: Wait, wait, wait. I don't want you to talk about *anything* that the attorneys actually said.

(Pl.'s Dep., 9/27, at 47–48, 53, 220–21 (emphasis added).)

4

Plaintiff testified that she never hired either of the two Philadelphia civil litigators that she called before calling the police. (Pl.'s Dep., 9/27, at 49.) In fact, at the time, she was not even considering whether to hire a lawyer:

> Q. .... You then get on the Internet and you're looking for Philadelphia lawyers; correct?
>
> ....
>
> A. Yes.
>
> Q. And you want to talk to these lawyers; correct?
>
> A. Yes.
>
> Q. And you want to hire these lawyers presumably; correct?
>
> A. I wasn't thinking about that at the time. I just wanted to talk to somebody.

(Id. at 136.)

The very first element of a claim of privilege, however, is that "the asserted holder of the privilege is or sought to become a client." Rhone-Poulenc, 32 F.3d at 862.[1] Plaintiff testified that she has never been a client of the two lawyers at issue. She also testified that she was not seeking to retain either lawyer as counsel. In fact, at that time, she was not even thinking about whether to hire a lawyer. Therefore, Plaintiff's discussions with these attorneys do not fall within the protections of the attorney-client privilege.

Plaintiff's conversations with these attorneys are unquestionably relevant to this case. Plaintiff's defamation claim puts her motivations squarely at issue. Plaintiff contends that Defendant defamed her, by stating and causing others to state that, although Plaintiff had

---

[1] Perhaps counsel's instructions stemmed from a misunderstanding of the law. During the deposition, Plaintiff's counsel took the position that "whether someone was hired or engaged to me is not relevant to the issue of whether there was a discussion between counsel and a client." (Pl.'s Dep., 9/27, at 54.)

5

provoked a criminal investigation, her motivations were actually financial. Defendant did no such thing. That Plaintiff contacted two Philadelphia-based civil litigators before even calling the police, however, tends to prove that Plaintiff's motivations always have been financial. Her discussions with these lawyers will further illuminate her motivations. Thus, Defendant is entitled to examine Plaintiff about those discussions.

## Defendant's Issue No. 2

Plaintiff's counsel would not permit Plaintiff to state the general topic of her conversations with the two Philadelphia civil lawyers, even after Plaintiff testified that she did not discuss this case with them:

> Q. And you talked to them?
>
> A. Yes. I talked to them
>
> Q. About the case?
>
> . . . .
>
> A. No. I didn't talk to them about the case.
>
> Q. What did you talk about?
>
> MS. KIVITZ: Well, that's my objection, what --
>
> MR. O'CONNOR: Well, if she didn't talk about the case, it is not privileged.
>
> Q. What did you talk about?
>
> MS. KIVITZ: *I don't know what the answer is, but it seems to me what she consulted them about and what advice they gave her is privileged.*

(Id. at 140–42 (emphasis added).)

Thus, without even knowing the subject matter of Plaintiff's communications with the two lawyers, Plaintiff's counsel took the position that even the subject matter is privileged, regardless of its nature. The communications at issue are privileged only if they related to facts relayed by Plaintiff to the attorneys, in confidence, for the purpose of procuring legal advice. Plaintiff's counsel's broad instruction to Plaintiff not to explain the subject matter prevented Defendant's counsel from exploring the claim of privilege. Thus, Plaintiff must be compelled to explain the nature of her discussions with the Philadelphia civil litigators.

7

## Defendant's Issue No. 3

Plaintiff's counsel even refused to allow Plaintiff to state whether the two Philadelphia civil litigators gave Plaintiff advice.

> Q. Did any of these lawyers whom you talked to give you any advice?

Plaintiff's counsel refused to allow her to answer this question. (Pl.'s Dep., 9/27, at 51–52.) Certainly, whether either of these attorneys gave Plaintiff advice is not privileged. The advice itself may be privileged, if it would reveal a confidential fact related by Plaintiff to the lawyers. Whether the lawyers gave her any advice, however, is not a communication at all. Plaintiff must be compelled to reappear and answer this question.

## Defendant's Issue No. 4

Plaintiff testified that she had a romantic relationship with a female basketball colleague, Sheri Williams, who introduced Plaintiff to Temple University Coach Dawn Staley. (Pl.'s Dep., 9/27, at 113–15, 125–26, 278–79.) Plaintiff's counsel refused to allow Plaintiff to testify about what she told her lover about her conversations with these attorneys.

> A. Sheri, she wanted to -- well, I told her that, firstly, the call had come in April, and it was, I believe, around my birthday time, and she said that she had heard that no criminal charges were going to be filed. And she said, so, what are you going -- you know, what do you do now? What have you discussed with your attorneys? And --
>
> Q. What did you tell her?
>
> A. I told her that --

Plaintiff's counsel then interrupted and prevented Plaintiff from completing her answer, on the ground of attorney-client privilege. (Pl.'s Dep., 9/27, at 128–29; see also id. at 113–14.) Communications are not privileged if the person purporting to hold the privilege waives it. Rhone-Poulenc, 32 F.3d at 862. It is well-settled that divulging the content of a lawyer-client communication to a third-party constitutes a waiver. United States v. Fisher, 692 F. Supp. 488 (E.D. Pa. 1988) ("Any voluntary disclosure by the holder of the [attorney-client] privilege is inconsistent with the confidential nature of the relationship and thereby waives the privilege."). Thus, by definition, nothing that Plaintiff said to Ms. Williams can be considered privileged. Plaintiff must be compelled to reappear and answer questions about her discussions with her friend.

## Defendant's Issue No. 5

Defendant seeks the Court's leave to serve additional interrogatories upon Plaintiff. Defendant does so because Plaintiff has taken the position that Defendant has reached the 50-interrogatory limit agreed upon by the parties at the outset of the case.

Plaintiff's arithmetic is faulty. Defendant's First Set of Interrogatories contains 14 interrogatories. His Second Set of Interrogatories contains four. Plaintiff took the position that, because each of the four interrogatories sought information about 13 witnesses identified by Plaintiff, the Second Set of Interrogatories actually consisted of 52 interrogatories. When Plaintiff answered the Second Set of Interrogatories, however, she provided only one answer per witness, providing only twelve actual answers, thus proving that, at most, there were only twelve questions (Defendant withdrew all four interrogatories as to one of the 13 witnesses). To date, Plaintiff has provided only 26 interrogatory answers. Defendant requests the Court's clarification that Defendant may propound up to 24 additional interrogatories under the 50-interrogatory limit.

In the alternative, Defendant seeks leave to amend the 50-interrogatory limit. The parties reached that agreement before Plaintiff disclosed the names and number of her proposed Rule 415 witnesses. Moreover, during the course of Defendant's deposition, Plaintiff's counsel referenced several people who may have discoverable information, but whom Plaintiff has not yet identified by way of Rule 26 disclosure. Therefore, Defendant wishes to propound additional interrogatories to eliminate any confusion over what disclosures he seeks from Plaintiff.

## Defendant's Issue No. 6

Finally, Defendant respectfully requests the Court to grant Defendant additional time to depose Plaintiff. Federal Rule of Civil Procedure 30(d)(2) provides that depositions generally are limited to a one, seven-hour day. Here, recognizing that the seven-hour limit may be exceeded, but also that some time limit must apply, counsel agreed to produce their respective witnesses for one day and a half, each. Defendant abided by this limitation and limited his examination of Plaintiff to one and a half days, even though this limitation prevented several areas of questioning. Plaintiff already has deposed Defendant for longer than Defendant deposed Plaintiff. If Defendant is ordered to reappear for additional questioning, beyond the 1.5 day-limit agreed to by the parties, Plaintiff should be ordered to do the same.

Dated: November 21, 2005

*[Signature: Patrick J. O'Connor]*

Patrick J. O'Connor
George M. Gowen III
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103
215.665.2000

Andrew D. Schau
PATTERSON, BELKNAP,
　WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
212.336.2000

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that, on the date and in the manner indicated below, I caused a copy of the foregoing to be served upon the following counsel for Plaintiff:

### VIA FEDERAL EXPRESS

Bebe H. Kivitz
Dolores M. Troiani
Troiani/Kivitz, L.L.P.
38 North Waterloo Road
Devon, Pennsylvania 19333
610.688.8426 (fax)

Dated: November 21, 2005

Patrick J. O'Connor