

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANDREA CONSTAND                 : CIVIL ACTION
          Plaintiff            :
     v.                        : NUMBER 05-1099
                               :
WILLIAM H. COSBY, JR.          :
          Defendant            :

*FILED*
NOV 22 2005
MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

PLAINTIFF'S MOTION TO COMPEL DISCOVERY

Plaintiff prays this Honorable Court to Compel Defendant to
provide full and complete answers to the questions propounded by
Plaintiff at Defendant's deposition, and further to Order that
said answers shall be provided without interruption by defense
counsel.

                    Respectfully submitted,

                    TROIANI/KIVITZ, LLP
               BY:  DOLORES M. TROIANI
                    Attorney I.D. 21283
                    BEBE H. KIVITZ
                    Attorney I.D. 30253
                    Attorneys for Plaintiff
                    38 North Waterloo Road
                    Devon, PA 19333
                    (610) 688-8400

QUESTION ONE:

Defendant testified that he obtained seven prescriptions for Quaaludes to give the drug to women with whom he wanted to have sexual contact. The following testimony was elicited:

Q.    You gave them to other people?
A.    Yes.
(9/29/05, 66)
Q.    Who are the people that you gave the Quaaludes to?
( 9/29/05, 68)

The parties stipulated that all objections except as to form are reserved for time of trial. This stipulation mirrors Federal Rule of Civil Procedure 32(d)(3)(A), which provides that objections as to materiality and relevancy are not waived if not raised at the deposition. Federal Rule of Civil Procedure 26 (b)(1) permits discovery not only of information relevant to the claim and the defense but also information which although not admissible is reasonably calculated to lead to admissible information.

In this case, Plaintiff intends to introduce evidence of prior sexual assaults committed by defendant pursuant to Federal Rule of Evidence 415. In addition, Defendant's conduct with other women, with whom he had/has a relationship of a sexual nature, and his conduct with other individuals, with whom he has a business relationship, is sought under Federal Rule of Evidence 404(b). This evidence shows a pattern in which Defendant "mentored" naive young women and introduced drugs into the relationship, (with and without the woman's knowledge), in order for him to achieve sexual satisfaction. Further, it is anticipated that discovery will reveal that various business associates were aware of Defendant's actions and not only failed to warn Plaintiff but actively participated in her victimization.

Defendant has defamed Plaintiff in a media blitz, in which he and his agents have sought to portray Plaintiff as attempting to "extort and embarrass him." He has also stated that his actions are misinterpreted due to his celebrity status. Rule 404(b) concerns prior acts/wrongs which show motive, intent, preparation, plan, knowledge, absence of mistake or accident. Rule 406 permits the introduction of evidence of habit or routine. In the instant case, Defendant has evidenced a predilection for sexual contact with women who are unconscious or drugged. His victims are young, "star stuck", and totally trusting of his public persona.

Quaaludes are a drug which was banned in this country in the 1980's. It has a sedative effect and in the 1970's it was linked with sexual activity. Defendant contends that he gave Plaintiff the over the counter medication Benedryl. Plaintiff intends to introduce expert testimony that Benedryl would not produce the sedative, almost immobilization effect that Plaintiff experienced. Testimony about Defendant's access to drugs, and those with whom he shares drugs may lead to evidence as to what it was that he gave Plaintiff.

1

QUESTION TWO

     Q.    When you got the Quaaludes, was it in your mind that you were going to use these Quaaludes for young women that you wanted to have sex with?
     A.    Yes.
     Q.    Did you ever give any of those young women the Quaaludes without their knowledge?

(9/29/05, 71)

The parties stipulated that all objections except as to form are reserved for time of trial. This stipulation mirrors Federal Rule of Civil Procedure 32(d)(3)(A), which provides that objections as to materiality and relevancy are not waived if not raised at the deposition. Federal Rule of Civil Procedure 26 (b)(1) permits discovery not only of information relevant to the claim and the defense but also information which although not admissible is reasonably calculated to lead to admissible information.

 In this case, Plaintiff intends to introduce evidence of prior sexual assaults committed by defendant pursuant to Federal Rule of Evidence 415. In addition, Defendant's conduct with other women, with whom he had/has a relationship of a sexual nature, and his conduct with other individuals, with whom he has a business relationship, is sought under Federal Rule of Evidence 404(b). This evidence shows a pattern in which Defendant "mentored" naive young women and introduced drugs into the relationship, (with and without the woman's knowledge), in order for him to achieve sexual satisfaction. Further, it is anticipated that discovery will reveal that various business associates were aware of Defendant's actions and not only failed to warn Plaintiff but actively participated in her victimization.

Defendant has defamed Plaintiff in a media blitz, in which he and his agents have sought to portray Plaintiff as attempting to "extort and embarrass him." He has also stated that his actions are misinterpreted due to his celebrity status. Rule 404(b) concerns prior acts/wrongs which show motive, intent, preparation, plan, knowledge, absence of mistake or accident. Rule 406 permits the introduction of evidence of habit or routine. In the instant case, Defendant has evidenced a predilection for sexual contact with women who are unconscious or drugged. His victims are young, "star stuck", and totally trusting of his public persona.

Quaaludes are a drug which was banned in this country the 1980's. It has a sedative effect and in the 1970's it was linked with sexual activity. Defendant contends that he gave Plaintiff the over the counter medication Benedryl. Plaintiff intends to introduce expert testimony that Benedryl would not produce the sedative, almost immobilization effect that Plaintiff experienced. Testimony about Defendant's access to drugs and those with whom he shares drugs may lead to evidence as to what it was that he gave Plaintiff.

2

QUESTION THREE

      Q.    Are you saying that  you never gave the Quaaludes to any other female but Theresa?

(9/29/05, 74)

Defendant's counsel improperly interjected himself into the questioning and denied that defendant had said he gave the quaaludes to people other than Theresa.  When defendant appeared to adopt his attorney's "clue", his attorney instructed him not to answer questions aimed at attempting to reconcile the two contradicting answers.  Plaintiff seeks to question Defendant as to which of the two versions he is asserting at this time.

QUESTION FOUR

BY MS. TROIANI:

     Q.    Earlier I believe you testified that you had given the Quaaludes to other women; is that correct?

      ( 9/29/05, 74-75)

Counsel objected that Defendant had not made the statement and directed him not to answer. In fact, Defendant had testified that he gave the Quaaludes to "other people." This was a follow up question aimed at developing evidence and testing Defendant's credibility pursuant to Rules of Evidence, 404 (b), 406 and 415.

4

QUESTION FIVE

Defendant testified that he called Tom Illus of the William Morris Agency and asked him to send money to one of the Rule 415 witnesses.  He testified that Mr. Illus did not ask him why.  He then testified:

> Q.    Have you ever asked him in the past to send money to women?
>
> A.    I'm not sure.
>
> Q.    Had you ever had a discussion with him concerning this process where he would act as a conduit for you to send funds to other people?

( 9/29/05, 83)

Defendant admitted that in his initial conversation with Plaintiff and her mother, he asked them what they wanted and they said they only wanted an apology and to know the name of the drug Defendant had given to Plaintiff.  He testified that some time after that call, he decided to call Plaintiff's mother to offer Plaintiff funds for "education" and to ask them to meet him in Florida. He then had a representative of the William Morris agency call Plaintiff.  The William Morris agency also funneled money to one of the Rule 415 witnesses.   It is believed that this line of questioning will lead to relevant information concerning other Jane Does, and other evidence which not only supports Plaintiff's version of the events, but also tends to prove the malicious actions of Defendant which evidence is relevant to punitive damages.

In this case, Plaintiff intends to introduce evidence of prior sexual assaults committed by defendant pursuant to Federal Rule of Evidence 415.  In addition, Defendant's conduct with other women, with whom he had/has a relationship of a sexual nature, and his conduct with other individuals, with whom he has a business relationship,  is sought under Federal Rule of Evidence 404(b).  This evidence shows a pattern in which Defendant "mentored" naive young women and introduced drugs into the relationship, (with and without the woman's knowledge),  in order for him to achieve sexual satisfaction.  Further, it is anticipated that discovery will reveal that various business associates were aware of Defendant's actions and not only failed to warn Plaintiff but actively participated in her victimization.

Defendant has defamed Plaintiff in a media blitz, in which he and his agents have sought to portray Plaintiff as attempting to "extort and embarrass him."  He has also stated that his actions are misinterpreted due to his celebrity status.  Rule 404(b) concerns prior acts/wrongs which show motive, intent, preparation, plan, knowledge, absence of mistake or accident.  Rule 406 permits the introduction of evidence of habit or routine.  In the instant case, Defendant has evidenced a predilection for sexual contact with women who are unconscious or drugged.  His victims are young, "star stuck", and totally trusting of his public persona.

5

QUESTION SIX

Q.     Had you ever sent money to any other female who you believe you had a consenting relationship with?

9/29/05, 85

In this case, Plaintiff intends to introduce evidence of prior sexual assaults committed by defendant pursuant to Federal Rule of Evidence 415.  In addition, Defendant's conduct with other women, with whom he had/has a relationship of a sexual nature, and his conduct with other individuals, with whom he has a business relationship,  is sought under Federal Rule of Evidence 404(b).  This evidence shows a pattern in which Defendant "mentored" naive young women and introduced drugs into the relationship, (with and without the woman's knowledge),  in order for him to achieve sexual satisfaction.  Further, it is anticipated that discovery will reveal that various business associates were aware of Defendant's actions and not only failed to warn Plaintiff but actively participated in her victimization.

Defendant has defamed Plaintiff in a media blitz, in which he and his agents have sought to portray Plaintiff as attempting to "extort and embarrass him."  He has also stated that his actions are misinterpreted due to his celebrity status.  Rule 404(b) concerns prior acts/wrongs which show motive, intent, preparation, plan, knowledge, absence of mistake or accident.  Rule 406 permits the introduction of evidence of habit or routine.  In the instant case, Defendant has evidenced a predilection for sexual contact with women who are unconscious or drugged.  His victims are young, "star stuck", and totally trusting of his public persona.

Defendant seems to be objecting because this question is directed to consensual relationships.  However, Defendant has testified that his relationship with Plaintiff was consensual.  It is submitted that this question is not only directed at the discovery of additional Rule 415 witnesses but also tests Defendant's credibility. Plaintiff is not required to accept defendant's characterization of the relationship as consensual.

6

QUESTION SEVEN

Plaintiffs intended to place certain questions on the record but defendant stipulated as follows:

MS. TROIANI:

      I understand your position.  I need to get my question on the record.

MR. O'CONNOR:

      You don't need to put your question on the record.  The issue before the judge is whether, and we can stipulate to this, any people other than the Jane Does and Ms. Constand, whatever relationship Mr. Cosby had with them as far as I'm concerned, if he had any such relationships, consenting or otherwise, we're not going to delve into. This deposition was restricted hopefully to Ms. Constand, which the case is all about, and witnesses 20 and 30 years ago, one of whom took Quaaludes.  And you can certainly ask him about the others. She's freely admitted that he gave her.  That's it.  You want to build a  record about other people, I'm going to go to the court on that.  Let's save time.

( 9/29/05, 85-86)

In fact, Plaintiffs do seek to question Defendant about other individuals who have claimed that Defendant either drugged them, drugged some one whom they know, acted inappropriately in a sexual manner towards them or someone they know.  Some of these individuals have come forward to the police or counsel but will not agree to be witnesses **at this time.**  Should these individuals change their minds in the future, Plaintiff has a right to ask Defendant to explain their statements, in order to discover evidence which may be used by Defendant for impeachment purposes.  Further this line of questioning is pertinent to Federal Rules of Evidence 404 (b), 406 and 415.

7

QUESTION EIGHT

Q.     Have you ever obtained other drugs from any physician that you did not intend to use but intended to give to other parties such as you did with the Quaaludes?

( 9/9/05, 90)

The parties stipulated that all objections except as to form are reserved for time of trial. This stipulation mirrors Federal Rule of Civil Procedure 32(d)(3)(A), which provides that objections as to materiality and relevancy are not waived if not raised at the deposition. Federal Rule of Civil Procedure 26 (b)(1) permits discovery not only of information relevant to the claim and the defense but also information which although not admissible is reasonably calculated to lead to admissible information.

Defendant absurdly objected that it is somehow improper for Plaintiff to accuse him of lying about giving her Benedryl.  Defendant's credibility is always in issue. Quaaludes are a drug which was banned in this country in the 1980's. It has a sedative effect and in the 1970's it was linked with sexual activity.

A central issue of this case is the identity of the drug used by defendant to deprive plaintiff of her ability to resist his advances. On the night in question, plaintiff told defendant that she was under a lot of stress due to her contemplating changing her job and returning to Canada. Defendant left the room and when he returned he had three blue pills in his hand. He told her to take them. Previous to this incident, the parties had engaged in discussions about herbal medications, (Tr. 9/28/05, 33),  and defendant had his homeopathic practitioner speak with plaintiff . Consequently, plaintiff asked defendant if the pills were herbal. He replied that they were "Your friends, I have three friends for you to make you relax." (Tr. 9/29/05, 234) Defendant contends that he gave Plaintiff the over the counter medication Benedryl. Plaintiff intends to introduce expert testimony that Benedryl would not produce the sedative almost immobilization effect that Plaintiff experienced. Testimony about Defendant's access to drugs and those with whom he shares drugs may lead to evidence as to what it was that he gave Plaintiff.

8

QUESTION NINE

Q.    What are the other drugs which you have been prescribed in the past five years?

( 9/29/05, 90)


The parties stipulated that all objections except as to form are reserved for time of trial.  This stipulation mirrors Federal Rule of Civil Procedure 32(d)(3)(A), which provides that objections as to materiality and relevancy are not waived if not raised at the deposition. Federal Rule of Civil Procedure 26 (b)(1) permits discovery not only of information relevant to the claim and the defense but also information which although not admissible is reasonably calculated to lead to admissible information.

Defendant absurdly objected that it is somehow improper for Plaintiff to accuse him of lying about giving her Benedryl.  Defendant's credibility is always in issue.  Defendant contends that he gave Plaintiff the over the counter medication Benedryl.  Plaintiff intends to introduce expert testimony that Benedryl would not produce the sedative almost immobilization effect that Plaintiff experienced.  Testimony about Defendant's access to drugs and those with whom he shares drugs may lead to evidence as to what it was that he gave Plaintiff.

QUESTION TEN

       Q.     You would agree with me that if you got seven prescriptions for Quaaludes you could still keep those Quaaludes for a number of years?

       A.     Yes.

       Q.     And do you know how long  after you stopped getting the prescriptions you still had the Quaaludes in your possession?

( 9/29/05, 90-91)


The parties stipulated that all objections except as to form are reserved for time of trial.  This stipulation mirrors Federal Rule of Civil Procedure 32(d)(3)(A), which provides that objections as to materiality and relevancy are not waived if not raised at the deposition. Federal Rule of Civil Procedure 26 (b)(1) permits discovery not only of information relevant to the claim and the defense but also information which although not admissible is reasonably calculated to lead to admissible information.

Defendant absurdly objected that it is somehow improper for Plaintiff to accuse him of lying about giving her Benedryl.  Defendant's credibility is always in issue.  Quaaludes are a drug which was banned in this country in the 1980's.  It has a sedative effect and in the 1970's it was linked with sexual activity.  Defendant contends that he gave Plaintiff the over the counter medication Benedryl.  Plaintiff intends to introduce expert testimony that Benedryl would not produce the sedative, almost immobilization effect that Plaintiff experienced.  Testimony about Defendant's access to drugs and those with whom he shares drugs may lead to evidence as to what it was that he gave Plaintiff.

10

QUESTION ELEVEN

Q.    Did you ever obtain Quaaludes again from any other source after the ones that you had been given  in the prescription that were no longer available to you?

(9/29/05, 93)


The parties stipulated that all objections except as to form are reserved for time of trial.  This stipulation mirrors Federal Rule of Civil Procedure 32(d)(3)(A), which provides that objections as to materiality and relevancy are not waived if not raised at the deposition. Federal Rule of Civil Procedure 26 (b)(1) permits discovery not only of information relevant to the claim and the defense but also information which although not admissible is reasonably calculated to lead to admissible information.

Defendant absurdly objected that it is somehow improper for Plaintiff to accuse him of lying about giving her Benedryl.  Defendant's credibility is always in issue.  Quaaludes are a drug which was banned in this country in the 1980's.  It has a sedative effect and in the 1970's it was linked with sexual activity.  Defendant contends that he gave Plaintiff the over the counter medication Benedryl.  Plaintiff intends to introduce expert testimony that Benedryl would not produce the sedative, almost immobilization effect that Plaintiff experienced.  Testimony about Defendant's access to drugs and those with whom he shares drugs may lead to evidence as to what it was that he gave Plaintiff.

QUESTION TWELVE

     Q.     Have you ever gotten any prescriptions from any other doctor which drugs would have a similar effect to Quaaludes?

(9/29/05, 94)


The parties stipulated that all objections except as to form are reserved for time of trial. This stipulation mirrors Federal Rule of Civil Procedure 32(d)(3)(A), which provides that objections as to materiality and relevancy are not waived if not raised at the deposition. Federal Rule of Civil Procedure 26 (b)(1) permits discovery not only of information relevant to the claim and the defense but also information which although not admissible is reasonably calculated to lead to admissible information.

Defendant absurdly objected that it is somehow improper for Plaintiff to accuse him of lying about giving her Benedryl. Defendant's credibility is always in issue. Quaaludes are a drug which was banned in this country in the 1980's. It has a sedative effect and in the 1970's it was linked with sexual activity. Defendant contends that he gave Plaintiff the over the counter medication Benedryl. Plaintiff intends to introduce expert testimony that Benedryl would not produce the sedative, almost immobilization effect that Plaintiff experienced. Testimony about Defendant's access to drugs and those with whom he shares drugs may lead to evidence as to what it was that he gave Plaintiff.

The objection to this question concerned the time frame. Plaintiff intends to present expert testimony pursuant to the Federal Rules of Evidence 404 (b) and 415. Evidence of Defendant's continuing behavior spans at least four decades.

12

QUESTION THIRTEEN

> Q.     Have you obtained drugs, any type of drug that would have the same type of effect as Quaaludes from any source since the time you got the Quaaludes to the time that you no longer had an association with our client?

( 9/29/05, 92-98)

The parties stipulated that all objections except as to form are reserved for time of trial. This stipulation mirrors Federal Rule of Civil Procedure 32(d)(3)(A), which provides that objections as to materiality and relevancy are not waived if not raised at the deposition. Federal Rule of Civil Procedure 26 (b)(1) permits discovery not only of information relevant to the claim and the defense but also information which although not admissible is reasonably calculated to lead to admissible information.

Defendant absurdly objected that it is somehow improper for Plaintiff to accuse him of lying about giving her Benedryl. Defendant's credibility is always in issue. Quaaludes are a drug which was banned in this country in the 1980's. It has a sedative effect and in the 1970's it was linked with sexual activity. Defendant contends that he gave Plaintiff the over the counter medication Benedryl. Plaintiff intends to introduce expert testimony that Benedryl would not produce the sedative, almost immobilization effect that Plaintiff experienced. Testimony about Defendant's access to drugs and those with whom he shares drugs may lead to evidence as to what it was that he gave Plaintiff.

QUESTION FOURTEEN

Defendant was read a statement given by one of the Rule 415 witnesses and the following questions ensued about the incidents alleged in the statement:

Q.    Are you telling us that this woman has made up this story about you having sex with her?

( 9/29/05, 104)

The question is calculated to lead to evidence which may be put forth by defendant to impeach the witness at trial.  The parties stipulated that all objections except as to form are reserved for time of trial.   Federal Rule of Civil Procedure 32(d)(3)(A), provides that objections as to materiality and relevancy are not waived if not raised at the deposition. Federal Rule of Civil Procedure 26 (b)(1) permits discovery not only of information relevant to the claim and the defense but also information which although not admissible is reasonably calculated to lead to admissible information.

14

QUESTION FIFTEEN

     Q.     No. I'll start over again. I'm sorry. You're having a little difficulty. It really was an inartful question. Let me start over again. In the early 1970s, did you ever give a woman a drug and then take her back to her home, have sexual contact with her while she was unconscious in Sausalito, California?

( 9/29/05, 112-113)

Defendant was read a statement by one of the Rule 415 witnesses. He was then given an opportunity to dispute the statement or any part of it. The question is calculated to lead to evidence which may be put forth by defendant to impeach the witness at trial. The parties stipulated that all objections except as to form are reserved for time of trial. This stipulation mirrors Federal Rule of Civil Procedure 32(d)(3)(A), which provides that objections as to materiality and relevancy are not waived if not raised at the deposition. Federal Rule of Civil Procedure 26 (b)(1) permits discovery not only of information relevant to the claim and the defense but also information which although not admissible is reasonably calculated to lead to admissible information.

QUESTION SIXTEEN

      A.    People come to my house what?

      Q.    People come to your house whose names you don't know.  You told us yesterday that you didn't know the names of the people who were at the dinner.  So, people do come to your house that you don't know or remember at this point?

      A.    Yes.  I said that yesterday, but you know what I was doing yesterday.

      Q.    No, I don't.  What were you doing yesterday?

      A.    Never mind if you don't know.  I don't know this man.  This man came to my house.  I don't know him.

      Q.    Are you suggesting that yesterday you were deliberately not telling us the names of the people at Swarthmore?

      A.    I'm not suggesting anything.

BY MS. TROIANI:

      Q.    What did you mean by I knew what you were doing yesterday?

(9/29/05, 116-118)

It appeared that Defendant knew the names of his dinner guests and deliberately declined to answer the questions posed the previous day.  At the continuation of the deposition, he made the ambiguous statement that the questioner knew what he was doing the day before.  Plaintiff believes he was admitting that he had not fully answered the questions and was presenting Defendant with the opportunity to explain himself.

16

QUESTION SEVENTEEN

      Q.     When you had the relationship with Beth Ferrier, were you also having relationships with other women?

( 9/29/05, 131)

The parties stipulated that all objections except as to form are reserved for time of trial. This stipulation mirrors Federal Rule of Civil Procedure 32(d)(3)(A), which provides that objections as to materiality and relevancy are not waived if not raised at the deposition. Federal Rule of Civil Procedure 26 (b)(1) permits discovery not only of information relevant to the claim and the defense but also information which although not admissible is reasonably calculated to lead to admissible information.

In this case, Plaintiff intends to introduce evidence of prior sexual assaults committed by defendant pursuant to Federal Rule of Evidence 415. In addition, Defendant's conduct with other women, with whom he had/has a relationship of a sexual nature, and his conduct with other individuals, with whom he has a business relationship, is sought under Federal Rule of Evidence 404(b). This evidence shows a pattern in which Defendant "mentored" naive young women and introduced drugs into the relationship, (with and without the woman's knowledge), in order for him to achieve sexual satisfaction. Further, it is anticipated that discovery will reveal that various business associates were aware of Defendant's actions and not only failed to warn Plaintiff but actively participated in her victimization.

Defendant has defamed Plaintiff in a media blitz, in which he and his agents have sought to portray Plaintiff as attempting to "extort and embarrass him." He has also stated that his actions are misinterpreted due to his celebrity status. Rule 404(b) concerns prior acts/wrongs which show motive, intent, preparation, plan, knowledge, absence of mistake or accident. Rule 406 permits the introduction of evidence of habit or routine. In the instant case, Defendant has evidenced a predilection for sexual contact with women who are unconscious or drugged. His victims are young, "star stuck", and totally trusting of the public persona.

This question is aimed at discovery of other Rule 415 witnesses.

17

QUESTION EIGHTEEN

     Q.     You don't recall what happened?

     A.     I don't.

     Q.     She says what happened is that you gave her coffee, which she believed was drugged and that somehow she ended up in a car in a parking lot and that she believes that you had had sexual contact with her while she was unconscious?

Following interruptions by defense counsel, then

     Q.     You don't remember that occurring?

( 9/29/05, 144-146)


This line of questioning involved the statement of a Rule 415 witness.  Defendant's testimony was so disjointed because counsel interrupted, told defendant answers and acted with the utmost incivility towards opposing counsel, that plaintiff requests her right to repeat these questions without interruption. Federal Rule of Civil Procedure 30(c) ; *Hall v. Clifton Precision*, 150 F.R.D. 525 (U.S.E.D. 1993) and *Applied Telematics, Inc. v. Sprint Corporation*, 1995 U.S. Dist. LEXIS 2191

QUESTION NINETEEN

Q.     When was the first time that you knew that Beth Ferrier would give a statement to the press?

A.     Maybe about eight, nine months ago.

Q.     How did you know that?

A.     I got a call about it.

Q.     From whom?

A.     I hope I'm accurate, counsel.

Q.     You have four counsel sitting here.  Which counsel was it?

A.     It was Marty Singer.

Q.     What did he say to you in that call?

( 9/29/05, 147-148)


The attorney client privilege applies to statements made by the client not those by the attorney to the client unless the disclosure would reveal communications made from the client to the lawyer. *Coregis Ins. Co. v. Law Offices of Carole f. Kafrissen*, 186 F. Supp. 2d 567, ( E.D. Pa. 2002), (rev. on other grounds, 2003 U.S. App.Lexis 1806).  This question involves the attorney informing the client what was told to the attorney by a third party.  The privilege is simply inapplicable. *Robertson v. Allstate,* 1999 U.S. Lexis 1999.

19

QUESTION TWENTY

Apparently a California attorney named Marty Singer and Mr. Schmidt negotiated with the National Enquirer on behalf of Mr. Cosby.   Defendant testified that he learned that the paper was going to print Beth Ferrier's story from his lawyer Marty Singer and that he decided to give the paper an "exclusive interview" in exchange for their not printing the Beth Ferrier story, which he had been given the opportunity to review.   He asserted the attorney client privilege in response to questions about what Mr. Singer told him about the article.  Mr. Singer also called plaintiff on defendant's behalf.  Plaintiff seeks to delve into the relationship between defendant and Mr. Singer to determine if he is a practicing attorney or a celebrity agent and whether or not he was acting in his capacity as attorney at the relevant time.


 BY MS. TROIANI:

 Q.     How long has Mr. Singer represented you?

 A.     Certain cases.

 Q.     What was the case that was occurring at the time that he called  and told you about the Beth Ferrier account?

(9/29/05, 149)

In a diversity case, the issue of attorney-client privilege is decided according to Pennsylvania law. ·The privilege is codified at *42 Pa. Cons. Stat. Ann. § 5928*.  The party resisting discovery  must establish: "(1) the asserted holder of the privilege is or sought to become a client; (2) the  person to whom the communication was made is a member of the bar of a court, or his or her subordinate, and is acting as a lawyer in connection with the communication; (3) the communication relates to a fact of which the attorney was informed by the client without the presence of strangers for the purpose of securing primarily either an opinion of law, legal services, or assistance in some legal proceeding, and not for the purpose of committing a crime or tort, and the privilege has been claimed and not waived by the client." *Rhone-Poulenc Rorer, Inc. v. Home Indemnity Co.,* 32 F.3d 851, 862 (3d. Cir. 1994)

Plaintiff seeks to explore whether or not Mr. Singer was acting as an attorney in order to determine whether or not the privilege applies.  In addition, Plaintiff has the right to test Defendant's credibility by following up with a question asking for details which support Defendant's previous response.

QUESTION TWENTY-ONE

BY MS. TROIANI:

Q.   I asked you how did you find out about Beth Ferrier going public with her statement and you told me you got a call from Marty Singer?

A.   Right.

Q.   I asked you what you did after that phone call?

MS. TROIANI:   Counsel is saying if you acted pursuant to his advice, then what you did he believes you cannot tell us.

THE WITNESS:   That is correct.

(9/29/05, 150-151)

In a diversity case, the issue of attorney-client privilege is decided according to Pennsylvania law.   The privilege is codified at *42 Pa. Cons. Stat. Ann. § 5928*.   The party resisting discovery must establish: "(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made is a member of the bar of a court, or his or her subordinate, and is acting as a lawyer in connection with the communication; (3) the communication relates to a fact of which the attorney was informed by the client without the presence of strangers for the purpose of securing primarily either an opinion of law, legal services, or assistance in some legal proceeding, and not for the purpose of committing a crime or tort, and the privilege has been claimed and not waived by the client." *Rhone-Poulenc Rorer, Inc. v. Home Indemnity Co.,* 32 F.3d 851, 862 (3d. Cir. 1994)

The attorney client privilege applies to statements made by the client not those by the attorney to the client unless the disclosure would reveal communications made from the client to the lawyer. *Coregis Ins. Co. v. Law Offices of Carole f. Kafrissen*, 186 F. Supp. 2d 567, ( E.D. Pa. 2002), (rev. on other grounds, 2003 U.S. App.Lexis 1806).   This question involves the attorney informing the client what was told to the attorney by a third party.   The privilege is simply inapplicable. *Robertson v. Allstate,* 1999 U.S. Lexis 1999.   Further, if the client and the attorney decided to commit the tort of defamation in response to the Ferrier article, the privilege is not applicable.

21

QUESTION TWENTY-TWO

      Q.    After you received the phone call from Marty Singer, did you make any arrangements with the National Enquirer to give them an interview?

(9/29/05, 152)


In a diversity case, the issue of attorney-client privilege is decided according to Pennsylvania law.  The privilege is codified at *42 Pa. Cons. Stat. Ann. § 5928*.  The party resisting discovery must establish: "(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made is a member of the bar of a court, or his or her subordinate, and is acting as a lawyer in connection with the communication; (3) the communication relates to a fact of which the attorney was informed by the client without the presence of strangers for the purpose of securing primarily either an opinion of law, legal services, or assistance in some legal proceeding, and not for the purpose of committing a crime or tort, and the privilege has been claimed and not waived by the client." *Rhone-Poulenc Rorer, Inc. v. Home Indemnity Co.,* 32 F.3d 851, 862 (3d. Cir. 1994)

The attorney client privilege applies to statements made by the client not those by the attorney to the client unless the disclosure would reveal communications made from the client to the lawyer. *Coregis Ins. Co. v. Law Offices of Carole f. Kafrissen,* 186 F. Supp. 2d 567, ( E.D. Pa. 2002), (rev. on other grounds, 2003 U.S. App.Lexis 1806).  This question involves the attorney informing the client what was told to the attorney by a third party.  The privilege is simply inapplicable. *Robertson v. Allstate,* 1999 U.S. Lexis 1999.  Further, if the client and the attorney decided to commit the tort of defamation in response to the Ferrier article, the privilege is not applicable.

QUESTION TWENTY-THREE

      Q.     Did someone negotiate your interview with the Enquirer?

MR. O'CONNOR:  Don't answer that question if it was an attorney.  If it was not an attorney, you can answer the question.

THE WITNESS:  I cannot answer the question.

(9/29/05, 155)

It was clearly implied that the person who negotiated the story with the Enquirer which lead to the defamation action was an attorney.  In a diversity case, the issue of attorney-client privilege is decided according to Pennsylvania law.  The privilege is codified at *42 Pa. Cons. Stat. Ann. § 5928*.  The party resisting discovery must establish: "(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made is a member of the bar of a court, or his or her subordinate, and is acting as a lawyer in connection with the communication; (3) the communication relates to a fact of which the attorney was informed by the client without the presence of strangers for the purpose of securing primarily either an opinion of law, legal services, or assistance in some legal proceeding, and not for the purpose of committing a crime or tort, and the privilege has been claimed and not waived by the client." *Rhone-Poulenc Rorer, Inc. v. Home Indemnity Co.,* 32 F.3d 851, 862 (3d. Cir. 1994)

The attorney client privilege applies to statements made by the client not those by the attorney to the client unless the disclosure would reveal communications made from the client to the lawyer. *Coregis Ins. Co. v. Law Offices of Carole f. Kafrissen*, 186 F. Supp. 2d 567, ( E.D. Pa. 2002), (rev. on other grounds, 2003 U.S. App.Lexis 1806).  This question involves the attorney informing the client what was told to the attorney by a third party.  The privilege is simply inapplicable. *Robertson v. Allstate,* 1999 U.S. Lexis 1999.  Further, if the client and the attorney decided to commit the tort of defamation in response to the Ferrier article, the privilege is not applicable.

23

QUESTION TWENTY-FOUR

BY MS. TROIANI:

      Q.    Did you have a written contract with the Enquirer to give this interview?

 MR. O'CONNOR: I'm not going to allow anything like that to get in.   I allowed him to answer the question it was a contract. I'm not going to allow him to divulge the discussions  he and his attorney had with the Enquirer in connection with the article.

(9/29/05, 156)

In fact, Plaintiff seeks to question Defendant about the negotiations with the National Enquirer. Initially, counsel took the position that the contract was privileged.  It is believed that he has now reversed himself; however, he continued to object to the circumstances surrounding the negotiation of the contract and has failed to provide the contract to Plaintiff.  Plaintiff seeks the Court's order that the document be provided and that plaintiff be permitted to question defendant about it and the circumstances surrounding its formation.  The contract is relevant to the defamation claim as it is direct proof of defendant's intention to divert the public from the truth of plaintiff's allegations by defaming her.  Further if the attorney participated in defamation scheme, the attorney is also liable to the Plaintiff.

In a diversity case, the issue of attorney-client privilege is decided according to Pennsylvania law.  The privilege is codified at *42 Pa. Cons. Stat. Ann. § 5928*.  The party resisting discovery must establish: "(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made is a member of the bar of a court, or his or her subordinate, and is acting as a lawyer in connection with the communication; (3) the communication relates to a fact of which the attorney was informed by the client without the presence of strangers for the purpose of securing primarily either an opinion of law, legal services, or assistance in some legal proceeding, and not for the purpose of committing a crime or tort, and the privilege has been claimed and not waived by the client." *Rhone-Poulenc Rorer, Inc. v. Home Indemnity Co.,* 32 F.3d 851, 862 (3d. Cir. 1994)

The attorney client privilege applies to statements made by the client not those by the attorney to the client unless the disclosure would reveal communications made from the client to the lawyer. *Coregis Ins. Co. v. Law Offices of Carole f. Kafrissen*, 186 F. Supp. 2d 567, ( E.D. Pa. 2002), (rev. on other grounds, 2003 U.S. App.Lexis 1806).  This question involves discussions with third parties. The privilege is simply inapplicable. *Robertson v. Allstate,* 1999 U.S. Lexis 1999. Further, if the client and the attorney decided to commit the tort of defamation in response to the Ferrier article, the privilege is not applicable.

24

QUESTION TWENTY-FIVE

BY MS. TROIANI:

Q.    Did you make any agreement with the Enquirer that if they didn't print Beth Ferrier's story you would give them an interview?

Although defendant eventually answered this question in the affirmative, counsel's interruptions were so disruptive that plaintiff requests that the questions be re-asked after counsel is instructed to refrain from interfering with the cross-examination.

(9/29/05, 154-161)


Federal Rule of Civil Procedure 30(c) ; *Hall v. Clifton Precision*, 150 F.R.D. 525 (U.S.E.D. 1993) and *Applied Telematics, Inc. v. Sprint Corporation*, 1995 U.S. Dist. LEXIS 2191

25

QUESTION TWENTY-SIX

Defendant admitted that he agreed to give an exclusive interview to the National Enquirer in exchange for their agreement to not print the Beth Ferrier story.  He was then questioned as to his knowledge of the Beth Ferrier story, as follows:

Q.    I'll clarify that.  That's fair.  Did someone read to you Beth's story that she had given to the National Enquirer?
A.    Yes.
Q.    When was that?
A.    That was before it was supposed to come out.
Q.    Did she say anything in that story different than the one that we reviewed this morning?
A.    I think that I will not say anything because it was read to me by my counsel.

(9/29/05, 169-170)

Defendant objected because apparently Mr. Schmidt was the attorney who read the Beth Ferrier article to Defendant and apparently Mr. Schmidt was present during the negotiations with the Enquire.  Defendant admitted that he prevented the article being published because he believed it bolstered Plaintiff's allegations against him. If the Defendant and his attorney in response decided to defame Plaintiff in order to discredit her, then the privilege is inapplicable.  Attorneys cannot assist clients in committing intentional torts.

In a diversity case, the issue of attorney-client privilege is decided according to Pennsylvania law.  The privilege is codified at *42 Pa. Cons. Stat. Ann. § 5928*.  The party resisting discovery must establish: "(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made is a member of the bar of a court, or his or her subordinate, and is acting as a lawyer in connection with the communication; (3) the communication relates to a fact of which the attorney was informed by the client without the presence of strangers for the purpose of securing primarily either an opinion of law, legal services, or assistance in some legal proceeding, **and not for the purpose of committing a crime or tort,** and the privilege has been claimed and not waived by the client." *Rhone-Poulenc Rorer, Inc. v. Home Indemnity Co.,* 32 F.3d 851, 862 (3d. Cir. 1994)

The attorney client privilege applies to statements made by the client not those by the attorney to the client unless the disclosure would reveal communications made from the client to the lawyer. *Coregis Ins. Co. v. Law Offices of Carole f. Kafrissen,* 186 F. Supp. 2d 567, ( E.D. Pa. 2002), (rev. on other grounds, 2003 U.S. App.Lexis 1806).  This question involves discussions with third parties. The privilege is simply inapplicable. *Robertson v. Allstate,* 1999 U.S. Lexis 1999. Further, if the client and the attorney decided to commit the tort of defamation in response to the Ferrier article, the privilege is not applicable.

26

QUESTION TWENTY-SEVEN

      Q.     Were you saying in this statement that Andrea was trying to exploit you because of your celebrity status?

(9/29/05, 181)

The National Enquirer article which is the subject of Plaintiff's defamation claim was read to Defendant.  He was then questioned about his statements in the article.  The question directly relates to Defendant's intention.  It is believed that discovery will reveal that the Enquirer permitted Defendant to write his own "story" and they agreed to print it, knowing that it was defamatory.  It is further believed that the Defendant had the ability to edit the story before it was printed.   Not only is intention relevant to a defamation claim, it is also relevant to establish the malice under Plaintiff's punitive damages claim.  Defendant's objection was that the "article is a document which speaks for itself."  To the contrary, defamation may be direct or implied. *Sprague v. ABA,* 276 Supp. 2d 365 (E.D. Pa. 2003)   The evidence sought by this question tends to prove Defendant's knowledge when he gave his story and apparently edited it before it was published.  Federal Rule of Evidence 401.

QUESTION TWENTY-EIGHT

    Q.    Following what I just read to you, it says, a published report states that the woman's mother called Cosby before her daughter went to the police and the comedian was under the impression she was after hush money. And that is also in quotes.

    A.    But that's not me, I didn't say that.

    Q.    It says the comedian, quote, was under the impression she was after hush money, end quote.

MR. O'CONNOR: That's not a correct statement.

MS. TROIANI: A published report states that the woman's mother called Cosby before her daughter went to the police and the comedian, quote, was under the impression, end quote, she was after hush money.

MR. O'CONNOR: But the she was after hush money is not in quotes, it's referring not to this article, but another report. If you have that report, let's look at it.

BY MS. TROIANI:

    Q.    Did you say that?

( 9/29/05, 183)

Once again, defense counsel improperly interjected himself into the testimony so that the question is now related to what defense counsel said. The defamatory article apparently refers to another statement which Defendant made at another time. Plaintiff was seeking information as to whether or not Defendant made that statement, and if so, when and to whom he made it. Further, if as believed, Defendant " ghosted " the article or was permitted to edit it before it was published, the questioned statement is direct evidence of defamation. Federal Rule of Evidence 401; Federal Rule of Civil Procedure 30(c) ; *Hall v. Clifton Precision*, 150 F.R.D. 525 (U.S.E.D. 1993) and *Applied Telematics, Inc. v. Sprint Corporation*, 1995 U.S. Dist. LEXIS 2191

28

QUESTION TWENTY-NINE

Q.     Have you offered any other woman money for their education to prevent them from embarrassing you?

(9/29/05, 200)

In the defamatory article, Defendant claimed that he tries to help people and they take advantage of him.  The clear implication of the article was that he had been the victim of an extortion plot in the past and now he was the victim again.  In fact, he initiated the idea of giving Plaintiff funds for "education", which neither she nor her parents accepted.  He admitted that he had given one of the Rule 415 witnesses money for "education."  This question tends to establish that his offer of educational funds to Plaintiff was not altruistic, as he stated in the defamatory article, but rather was in fact an offer of "hush money" initiated by Defendant. It tends to prove not only the defamatory nature of the article but also a "consciousness of guilt" and is relevant to his credibility. Federal Rule of Evidence 401.

It is also anticipated that Defendant will attempt to introduce evidence of good character through the testimony of individuals who have been the recipient of educational funds from Defendant. The corruption of the funds by Defendant's use of the money to compensate women he has similarly victimized is admissible to rebut evidence of good character.  Federal Rules of Evidence 404, 405.

QUESTION THIRTY

    Q.    Let's go back to my question, which is, have you ever offered an educational trust to any woman with whom you have had sexual relations?

(9/29/05, 202)

In the defamatory article, Defendant claimed that he tries to help people and they take advantage of him. The clear implication of the article was that he had been the victim of an extortion plot in the past and now he was the victim again. In fact, he initiated the idea of giving Plaintiff funds for "education" which neither she nor her parents accepted. He admitted that he had given one of the Rule 415 witnesses money for "education." This question tends to establish that his offer of educational funds to Plaintiff was not altruistic, as he stated in the defamatory article, but rather was in fact an offer of "hush money" initiated by Defendant. It tends to prove not only the defamatory nature of the article but also a "consciousness of guilt." Federal Rule of Evidence 401.

It is also anticipated that Defendant will attempt to introduce evidence of good character through the testimony of individuals who have been the recipient of educational funds from Defendant. The corruption of the funds by Defendant's use of the money to compensate women he has similarly victimized negates evidence of good character. Federal Rules of Evidence 404, 405.

QUESTION THIRTY-ONE

 Q. Have you ever offered an educational trust to any woman with whom you've had a consensual sexual relationship with?

( 9/29/05, 202)

Defendant admitted to the police and in his deposition that the plaintiff and her mother did not ask for money or the "educational trust" which he called to offer to her after the initial phone conversation with plaintiff and her mother. He further admitted that he had previously used the "educational trust" device to pay one of the Rule 415 witnesses, when he believed that she was going to reveal their liaison. The thrust of plaintiff's defamation claim is that defendant knew that she had not asked for money or attempted to extort or embarrass him when he gave that statement to the police and the National Enquirer.

In the defamatory article, Defendant claimed that he tries to help people and they take advantage of him. The clear implication of the article was that he had been the victim of an extortion plot in the past and now he was the victim again. In fact, he initiated the idea of giving Plaintiff funds for "education" which neither she nor her parents accepted. He admitted that he had given one of the Rule 415 witnesses money for "education." This question tends to establish that his offer of educational funds to Plaintiff was not altruistic, as he stated in the defamatory article, but rather was in fact an offer of "hush money" initiated by Defendant. It tends to prove not only the defamatory nature of the article but also a "consciousness of guilt." Federal Rule of Evidence 401.

It is also anticipated that Defendant will attempt to introduce evidence of good character through the testimony of individuals who have been the recipient of educational funds from Defendant. The corruption of the funds by Defendant's use of the money to compensate women he has similarly victimized negates evidence of good character. Federal Rules of Evidence 404, 405.

Although, the question relates to consensual relationships, it is relevant to this matter because Defendant is claiming that his sexual assault upon Plaintiff was consensual. He cannot avoid answering questions because he has determined that the relationship was consensual, when in fact the other party asserts that it was not.

31

QUESTION THIRTY-TWO

      Q.     How does one get an educational trust from you or your family?

(9/29/05, 206)

Defendant admitted to the police and in his deposition that the plaintiff and her mother did not ask for money or the "educational trust" which he called to offer to her after the initial phone conversation with plaintiff and her mother. He further admitted that he had previously used the "educational trust" device to pay one of the Rule 415 witnesses, when he believed that she was going to reveal their liaison. The thrust of plaintiff's defamation claim is that defendant knew that she had not asked for money or attempted to extort or embarrass him when he gave that statement to the police and the National Enquirer.

In the defamatory article, Defendant claimed that he tries to help people and they take advantage of him. The clear implication of the article was that he had been the victim of an extortion plot in the past and now he was the victim again. In fact, he initiated the idea of giving Plaintiff funds for "education" which neither she nor her parents accepted. He admitted that he had given one of the Rule 415 witnesses money for "education." This question tends to establish that his offer of educational funds to Plaintiff was not altruistic, as he stated in the defamatory article, but rather was in fact an offer of "hush money" initiated by Defendant. It tends to prove not only the defamatory nature of the article but also a "consciousness of guilt." Federal Rule of Evidence 401.

It is also anticipated that Defendant will attempt to introduce evidence of good character through the testimony of individuals who have been the recipient of educational funds from Defendant. The corruption of the funds by Defendant's use of the money to compensate women he has similarly victimized negates evidence of good character.

Although, the question relates to consensual relationships, it is relevant to this matter because Defendant is claiming that his sexual assault upon Plaintiff was consensual. He cannot avoid answering questions because he has determined that the relationship was consensual, when in fact the other party asserts that it was not.

QUESTION THIRTY-THREE

Q.     Are there any criteria for these educational trusts?


( 9/29/05, 206)

Defendant admitted to the police and in his deposition that the plaintiff and her mother did not ask for money or the "educational trust" which he called to offer to her after the initial phone conversation with plaintiff and her mother. He further admitted that he had previously used the "educational trust" device to pay one of the Rule 415 witnesses, when he believed that she was going to reveal their liaison. The thrust of plaintiff's defamation claim is that defendant knew that she had not asked for money or attempted to extort or embarrass him when he gave that statement to the police and the National Enquirer.

In the defamatory article, Defendant claimed that he tries to help people and they take advantage of him. The clear implication of the article was that he had been the victim of an extortion plot in the past and now he was the victim again. In fact, he initiated the idea of giving Plaintiff funds for "education" which neither she nor her parents accepted. He admitted that he had given one of the Rule 415 witnesses money for "education." This question tends to establish that his offer of educational funds to Plaintiff was not altruistic, as he stated in the defamatory article, but rather was in fact an offer of "hush money" initiated by Defendant. It tends to prove not only the defamatory nature of the article but also a "consciousness of guilt." Federal Rule of Evidence 401.

It is also anticipated that Defendant will attempt to introduce evidence of good character through the testimony of individuals who have been the recipient of educational funds from Defendant. The corruption of the funds by Defendant's use of the money to compensate women he has similarly victimized negates evidence of good character. Federal Rules of Evidence 404, 405.

Although, the question relates to consensual relationships, it is relevant to this matter because Defendant is claiming that his sexual assault upon Plaintiff was consensual. He cannot avoid answering questions because he has determined that the relationship was consensual, when in fact the other party asserts that it was not.

33

QUESTION THIRTY-FOUR

Plaintiff asked defendant to explain in his own words, what happened on the night of the alleged assault.  As his testimony grew more and more inconsistent with his statement to the police, counsel interrupted and insisted that he be permitted to read the statement.  Thereafter, defense counsel improperly terminated the deposition.  Plaintiff requests that the Court permit this line of questioning without reference to the statement and further order defense counsel to refrain from making statements or providing defendant with clues during the course of the questioning.

( 9/29/05, 233-245)

Once again, defense counsel improperly interjected himself into the testimony.  Defendant was being questioned about his recollection of the events of the night of the sexual assault.  His version differed from the one he gave to the police.  Defendant was NOT being question about the statement.  Yet, defense counsel choose to terminate the deposition because he was not permitted to read the statement to the Defendant.  Even if the questioning concerned the statement, Rule 613 of the Federal Rules of Evidence is unequivocal that the statement does not need to be shown to the deponent during the questioning.  Counsel's conduct at this time was so clearly in contravention of the Rules that sanctions are warranted.  Federal Rules of Evidence 401; 613; Federal Rules of Civil Procedure 30(c); 37 (a)(4) ; *Hall v. Clifton Precision*, 150 F.R.D. 525 (U.S.E.D. 1993) and *Applied Telematics, Inc. v. Sprint Corporation*, 1995 U.S. Dist. LEXIS 2191

34

QUESTION THIRTY-FIVE

Plaintiff attempted to question defendant about Gladys Rodgers, a woman who lived at his house in Pennsylvania for almost twenty years and who was evicted from the premises. Counsel was prohibited from asking questions about Ms. Rodgers' role at the house; her relationship with defendant and her knowledge of his relationships with women with whom he was sexually active. It is believed that Ms. Rodgers has information concerning these matters and Plaintiff wishes to delve into not only those aspects but what if any impeachment may be introduced at trial against Ms. Rodgers by Defendant if she is called as a witness for Plaintiff.

(9/28/05, 20)


The question is calculated to lead to evidence which may be put forth by defendant to impeach the witness at trial. The parties stipulated that all objections except as to form are reserved for time of trial. Federal Rule of Civil Procedure 32(d)(3)(A), provides that objections as to materiality and relevancy are not waived if not raised at the deposition. Federal Rule of Civil Procedure 26 (b)(1) permits discovery not only of information relevant to the claim and the defense but also information which although not admissible is reasonably calculated to lead to admissible information.

35

QUESTION THIRTY-SIX


      Q.     Did you have Gladys Rodgers sign a confidentiality agreement?

(9/28/05, 21)


The question is calculated to lead to evidence which may be put forth by defendant to impeach the witness at trial.  The parties stipulated that all objections except as to form are reserved for time of trial.   Federal Rule of Civil Procedure 32(d)(3)(A), provides that objections as to materiality and relevancy are not waived if not raised at the deposition. Federal Rule of Civil Procedure 26 (b)(1) permits discovery not only of information relevant to the claim and the defense but also information which although not admissible is reasonably calculated to lead to admissible information.

QUESTION THIRTY-SEVEN

Q.    Did you ever tell Gladys Rodgers about any relationship you had with a woman other than your wife?

(9/28/05, 22)

The question is calculated to lead to evidence which may be put forth by defendant to impeach the witness at trial. The parties stipulated that all objections except as to form are reserved for time of trial. Federal Rule of Civil Procedure 32(d)(3)(A), provides that objections as to materiality and relevancy are not waived if not raised at the deposition. Federal Rule of Civil Procedure 26 (b)(1) permits discovery not only of information relevant to the claim and the defense but also information which although not admissible is reasonably calculated to lead to admissible information.

QUESTION THIRTY-EIGHT

    Q.    Getting back to Gladys Rodgers, did you ever confide in Gladys Rodgers concerning any woman with whom you were having a sexual relationship?

(9/28/05, 29)


The question is calculated to lead to evidence which may be put forth by defendant to impeach the witness at trial. If Ms. Rodgers states that Defendant in fact confided in him, Plaintiff has the right to inquire if Defendant agrees with that statement. Defendant testified that there were certain people with him he could speak about his infidelities.( 9/28/05, 190) This question is directed to determining who they are.   The parties stipulated that all objections except as to form are reserved for time of trial.   Federal Rule of Civil Procedure 32(d)(3)(A), provides that objections as to materiality and relevancy are not waived if not raised at the deposition. Federal Rule of Civil Procedure 26 (b)(1) permits discovery not only of information relevant to the claim and the defense but also information which although not admissible is reasonably calculated to lead to admissible information.

38

QUESTION THIRTY-NINE

     Q.    Why do you see Dr. Holden?

(9/28/05,  40)

Plaintiff seeks to question Defendant about his medical history.  This area is relevant to Defendant's access to drugs which may have the qualities similar to the one given to Plaintiff.  It is also relevant to Defendant's physical condition which would account for the sexual propensities recounted by the Federal  Rule of Evidence 415 witnesses and also may reveal physical conditions which would be contra-indicated for the drug Defendant claims to have administered to Plaintiff.

The question is calculated to lead to evidence which may be put forth by defendant to impeach the witness at trial.  The parties stipulated that all objections except as to form are reserved for time of trial.   Federal Rule of Civil Procedure 32(d)(3)(A), provides that objections as to materiality and relevancy are not waived if not raised at the deposition. Federal Rule of Civil Procedure 26 (b)(1) permits discovery not only of information relevant to the claim and the defense but also information which although not admissible is reasonably calculated to lead to admissible information.

39

QUESTION FORTY

Q.      Have you ever seen any physician for any vascular issues?

(9/28/05, 43)

Plaintiff seeks to question Defendant about his medical history.  This area is relevant to
Defendant's access to drugs which may have the qualities similar to the one given to Plaintiff.  It
is also relevant to Defendant's physical condition which would account for the sexual propensities
recounted by the Federal  Rule of Evidence 415 witnesses and also may reveal physical conditions
which would be contra-indicated for the drug Defendant claims to have administered to Plaintiff.

The question is calculated to lead to evidence which may be put forth by defendant to impeach the
witness at trial.  The parties stipulated that all objections except as to form are reserved for time of
trial.   Federal Rule of Civil Procedure 32(d)(3)(A), provides that objections as to materiality and
relevancy are not waived if not raised at the deposition. Federal Rule of Civil Procedure 26 (b)(1)
permits discovery not only of information relevant to the claim and the defense but also
information which although not admissible is reasonably calculated to lead to admissible
information.

40

QUESTION FORTY-ONE

      Q.    Have you ever used the William Morris Agency for personal matters?

      A.    Yes.

      Q.    What type of personal matters?

(9/28/05, 91)

      Several people have given statements to the police and others that Defendant used a modeling agency in Denver to supply him with young women, many of whom claim to have been victimized by Defendant.   In the instant case, Defendant in his role as "mentor" sent Plaintiff to New York to meet with a representative of the William Morris Agency.  A representative of the agency called Plaintiff's home in an attempt to set up a meeting with Defendant in Florida after Plaintiff's mother confronted Defendant.  Defendant used the agency to funnel money to one of the Rule 415 witnesses.

Defendant testified that from the first time he saw Plaintiff he decided to have a sexual relationship with her, a fact of which she was unaware.  A fair reading of his testimony indicates that to achieve his goal, he led her to believe that he was her mentor.  The William Morris Agency's knowledge and role in this charade, which apparently has been repeated many times over the years, is relevant to the instant claim and may lead to the discovery of evidence which would result in the amendment of the complaint to add other defendants. It is inconceivable that the Agency did not know of defendant's longstanding difficulties with women and plaintiff has the right to explore this area.  Despite that knowledge, the Agency not only permitted defendant to libel plaintiff, it is anticipated that discovery will establish , it also used other celebrities under contract to them to publicize that slander, in order to preserve their economic interest in defendant.   Such testimony is relevant to Plaintiff's claim. Federal Rule of Evidence 401.

QUESTION FORTY-TWO

Q.     Well, you asked the William Morris Agency or someone at the William Morris Agency to call Andrea after you had gotten a phone call from her mother; is that correct?

A.     Yes.

Q.     Is that the first time you ever asked the William Morris Agency to get involved in a personal matter?

A.     No.

Q.     What other personal matters  have they handled for you?

(9/28/05, 95)

Several people have given statements to the police and others that Defendant used a modeling agency in Denver to supply him with young women, many of whom claim to have been victimized by Defendant.   In the instant case, Defendant in his role as "mentor" sent Plaintiff to New York to meet with a representative of the William Morris Agency.  A representative of the agency called Plaintiff's home in an attempt to set up a meeting with Defendant in Florida after Plaintiff's mother confronted Defendant.  Defendant used the agency to funnel money to one of the Rule 415 witnesses.

Defendant testified that from the first time he saw Plaintiff he decided to have a sexual relationship with her, a fact of which she was unaware.  A fair reading of his testimony indicates that to achieve his goal, he led her to believe that he was her mentor.  The William Morris Agency's knowledge and role in this charade, which apparently has been repeated many times over the years, is relevant to the instant claim and may lead to the discovery of evidence which would result in the amendment of the complaint to add other defendants.  It is inconceivable that the Agency did not know of defendant's longstanding difficulties with women, and plaintiff has the right to explore this area.  Despite that knowledge, the Agency not only permitted defendant to libel plaintiff, it is anticipated that discovery will establish , it also used other celebrities under contract to them to publicize that slander, in order to preserve their economic interest in defendant.   Such testimony is relevant to Plaintiff's claim. Federal Rule of Evidence 401.

42

QUESTION FORTY-THREE

The questions concern the call from Peter Weiderlight of the William Morris Agency to Plaintiff's home after she and her mother told Defendant that they only wanted an apology.

Q.    What did you tell Peter that caused him to make this phone call?

A.    If he would call and find out if they were willing to come to Miami, I would pay for air travel and the hotel expense.

Q.    Did he ask you why you wanted that to occur?

A.    No.

Q.    Had you asked him to make similar arrangements in the past?

(9/28/05, 98)


Several people have given statements to the police and others that Defendant used a modeling agency in Denver to supply him with young women, many of whom claim to have been victimized by Defendant.   In the instant case, Defendant in his role as "mentor" sent Plaintiff to New York to meet with a representative of the William Morris Agency.  A representative of the agency called Plaintiff's home in an attempt to set up a meeting with Defendant in Florida after Plaintiff's mother confronted Defendant.  Defendant used the agency to funnel money to one of the Rule 415 witnesses.  Defendant testified that from the first time he saw Plaintiff he decided to have a sexual relationship with her, a fact of which she was unaware.  A fair reading of his testimony indicates that to achieve his goal, he led her to believe that he was her mentor.  The William Morris Agency's knowledge and role in this charade, which apparently has been repeated many times over the years, is relevant to the instant claim and may lead to the discovery of evidence which would result in the amendment of the complaint to add other defendants. It is inconceivable that the Agency did not know of defendant's longstanding difficulties with women, and plaintiff has the right to explore this area.  Despite that knowledge, the Agency not only permitted defendant to libel plaintiff, it is anticipated that discovery will establish , it also used other celebrities under contract to them to publicize that slander, in order to preserve their economic interest in defendant.   Such testimony is relevant to Plaintiff's claim. Federal Rule of Evidence 401.

43

QUESTION FORTY-FOUR

Defendant was questioned concerning an interview with the police in which Peter Wiederlight said that in the past eighteen months, he booked three flights for you and all of them were women. Defendant stated that he didn't know if the statement were correct.

Q.    Do you recall flying any other women to your concerts who were not related to the concerts?

(9/28/05, 100)

Several people have given statements to the police and others that Defendant used a modeling agency in Denver to supply him with young women, many of whom claim to have been victimized by Defendant.   In the instant case, Defendant in his role as "mentor" sent Plaintiff to New York to meet with a representative of the William Morris Agency.  A representative of the agency called Plaintiff's home in an attempt to set up a meeting with Defendant in Florida after Plaintiff's mother confronted Defendant.  Defendant used the agency to funnel money to one of the Rule 415 witnesses.  Defendant testified that from the first time he saw Plaintiff he decided to have a sexual relationship with her, a fact of which she was unaware.  A fair reading of his testimony indicates that to achieve his goal, he led her to believe that he was her mentor.  The William Morris Agency's knowledge and role in this charade, which apparently has been repeated many times over the years, is relevant to the instant claim and may lead to the discovery of evidence which would result in the amendment of the complaint to add other defendants. It is inconceivable that the Agency did not know of defendant's long standing difficulties with woman and plaintiff has the right to explore this area.  Despite that knowledge, the Agency not only permitted defendant to libel plaintiff, it is anticipated that discovery will establish , it also used other celebrities under contract to them to publicize that slander, in order to preserve their economic interest in defendant.   Such testimony is relevant to Plaintiff's claim. Federal Rule of Evidence 401.

QUESTION FORTY-FIVE

It appears that the defense in this case is to blame the victim.  Along those lines, Defendant questioned Plaintiff as to whether it is "normal" for a single woman to visit a married man at his home at a time that his wife is not there.  Defendant was questioned as follows:

Q.     As I recall your counsel asked Andrea if she thought it was appropriate for an unmarried woman to come to your house when she would be alone with you.  Do you believe it's appropriate for an unmarried woman to come to your house when she would be alone with you?

A.     No

Q.     And have you in the past asked unmarried women to come to your house?

(9/28/05, 102)

This question is directly related to the questions asked of Plaintiff and is relevant to Defendant's credibility.    Federal Rule of Evidence 401.

QUESTION FORTY-SIX

Q.     Have you told her about other women who have not come forward  in the newspapers?

A.     No.  Ha, Ha, I got you.  I  want you to just -- you have to understand, where you make the statement that and this is for my own  benefit, that's -- it's a part of my personality, but I want to also say that there are people, married men and married women who can sit around in their own comfortable company and say what they're doing.  I mean, there are women who perhaps after being with me would call a friend of theirs.

Q.     And who are they?

A.     I don't know who these women  are.  I'm saying there are women -- I'm talking broad spectrum people who after they've been with me, somewhere,  somehow, not even sexually, who will make a call to a friend and say, I had so and so, I was with him.  I don't even know the woman.  I don't even know the person.

Q.     Have you had women who you do know and who you have been with tell other people about having a sexual encounter with you?

(9/27/05, 179-180)


Although defense counsel, admitted that Defendant opened the door to the question, he instructed his client not to answer it.  This was simply a follow up question to Defendant's previous response.

46

QUESTION FORTY-SEVEN

     Q.    Do you also believe that there would be a financial consequence to you if the public believed that the drug you gave her was something other than Benadryl?

     A.    Yes.

     Q.    Have you ever used illegal drugs?

(9/28/05, 185)

The parties stipulated that all objections except as to form are reserved for time of trial.  This stipulation mirrors Federal Rule of Civil Procedure 32(d)(3)(A), which provides that objections as to materiality and relevancy are not waived if not raised at the deposition. Federal Rule of Civil Procedure 26 (b)(1) permits discovery not only of information relevant to the claim and the defense but also information which although not admissible is reasonably calculated to lead to admissible information.

Defendant absurdly objected that it is somehow improper for Plaintiff to accuse him of lying about giving her Benadryl.  Defendant's credibility is always in issue. A central issue of this case is the identity of the drug used by defendant to deprive plaintiff of her ability to resist his advances. On the night in question, plaintiff told defendant that she was under a lot of stress due to her contemplating changing her job and returning to Canada.  Defendant left the room and when he returned he had three blue pills in his hand.  He told her to take them.  Previous to this incident, the parties had engaged in discussions about herbal medications, (Tr. 9/28/05, 33),  and defendant had his homeopathic practitioner speak with plaintiff .  Consequently, plaintiff asked defendant if the pills were herbal.  He replied that they were "Your friends, I have three friends for you to make you relax." (Tr. 9/29/05, 234) Defendant contends that he gave Plaintiff the over the counter medication Benedryl.  Plaintiff intends to introduce expert testimony that Benedryl would not produce the sedative almost immobilization effect that Plaintiff experienced.  Testimony about Defendant's access to drugs and those with whom he shares drugs may lead to evidence as to what it was that he gave Plaintiff.

47

## CERTIFICATE OF SERVICE

I hereby certify that on <u>November 21, 2005</u>, the undersigned were served in the following

manner, a true and correct copy of : **Plaintiff's Motion to Compel Discovery**

### NAME

### MANNER

The Honorable Eduardo C. Robreno          Via Hand Delivered by Courier
Eastern District of Pennsylvania
U.S. Courthouse
601 Market Street, Room 2609
Philadelphia, PA 19106

Office of the Clerk of Court              Via Hand Delivered by Courier
Eastern District of Pennsylvania
U.S. Courthouse
601 Market Street, Room 2609
Philadelphia, PA 19106

Patrick J. O'Connor, Esquire             Via Hand Delivered by Courier
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103

Andrew D. Schau, Esquire                 Via First Class Mail
Patterson Belknap Webb & Tyler, LLP
1133 Avenue of the Americas
New York, NY 10036

TROIANI/KIVITZ, L.L.P.

By: _____

Dolores M. Troiani
Attorney I.D. No. 21283
Attorney for Plaintiff

Date: 11/21/05