IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREA CONSTAND, | : |
| Plaintiff, | : |
| | : No. 05-cv-1099-ER |
| v. | : |
| WILLIAM H. COSBY, JR., | : |
| Defendant. | : |

### MEMORANDUM OF LAW IN SUPPORT OF
### THE ASSOCIATED PRESS'S MOTION TO INTERVENE AND TO LIFT SEAL

The Associated Press ("the AP") hereby seeks to intervene in this matter to move to lift any and all sealing orders and to unseal all motions and other judicial records that have been filed under seal in this matter.

On November 4, 2005, the Court entered an Order prospectively directing that "all requests for discovery, responses and legal memoranda" be filed under seal ("the Sealing Order"). According to the public docket, the Court entered the Sealing Order on the basis of letters received from the parties, which were not publicly filed, and after holding a telephone conference call from chambers. The public record reveals no request for the Sealing Order, nor any basis for it.

The Sealing Order is squarely at odds with the Court's very recent decisions in this matter rejecting the parties' requests for broad-based protective orders for discovery material. More significantly, however, it is a violation of well-established Third Circuit precedent requiring that any sealing order be entered only on findings of good cause after the public is given notice and an opportunity to be heard. Indeed, just three month ago, in *Shingara v. Skiles*,

420 F.3d 301 (3d Cir. 2005), the Third Circuit made clear that broadly sweeping, unsupported protective orders sealing discovery materials cannot be sustained.

Thus, the Associated Press respectfully requests that the Court lift the Sealing Order and unseal the motions filed under seal.

## STATEMENT OF FACTS

### I. BACKGROUND

The plaintiff, Andrea Constand, claims that the defendant, William H. Cosby, Jr., a well-loved Philadelphia icon, drugged her, sexually assaulted her, and subsequently defamed her. Earlier in this litigation, before discovery began, each party moved for protective orders, the plaintiff seeking to protect the identities of various witnesses and the defendant seeking a blanket protective order sealing all material learned in discovery. The Court denied both motions. *See Constand v. Cosby*, 229 F.R.D. 472, 478-81 (E.D. Pa. 2005).

In its decision denying the motions, the Court explained:

> It is well-established that there exists a common law public right of access to judicial proceedings in civil cases. This public right of access entails not only the ability to attend open court proceedings, but also the ability to inspect and copy judicial records and documents.

*Id.* at 479 (internal citations omitted). The Court noted that, consistent with Third Circuit precedent, parties "seeking a protective order over discovery materials must demonstrate that 'good cause' exists for the protection of that material" and, thus, must show "that disclosure will work a clearly defined and serious injury." *Id.* at 479 (internal quotations omitted). In particular, with respect to the defendant's motion, the Court further held that where, as here, a party's "chief concern is embarrassment," that party "must demonstrate that the embarrassment will be particularly serious." *Id.* at 480. Noting that, among other things, the defendant had "failed to make a connection between the embarrassment he risks from disclosure and the particular items

- 2 -

of discovery he seeks to cloak," the Court denied the defendant's motion for a protective order. The motion for protective order brought by the plaintiff on behalf of the Jane Doe witnesses was also denied, as was the separate motion brought by the Jane Doe witnesses to protect their own identities. *Constand v. Cosby*, No. 05-1099 (E.D. Pa. July 7, 2005) (order denying motion of Jane Doe witnesses to protect disclosure of their names) [Doc. # 37]. In these rulings, the Court echoed its own ringing endorsement of the requirement that litigation be conducted in the open, barring a finding of good cause for sealing based on highly specific evidence submitted by the proponent of sealing. *See id.* at 1-2 n.1.

## II. THE SEALING ORDER

Since then, as discovery has progressed, the parties have evidently found themselves embroiled in a number of disputes. The parties' apparent request or requests for the Court's intervention and assistance that gave rise to the Sealing Order were not initiated by way of filed motions, but were instead the subject of letters to the Court, contrary to the Court's own published procedures and the Federal Rules of Civil Procedure. *See* Sealing Order at 2 n.1 (noting that these "issues" were brought "to the Court's attention by way of letters from counsel to the Court"). These letters were not filed with the Clerk's Office and are not available on the public docket. No additional motions for a protective order have been publicly filed.

On November 3, 2005, according to the public docket, the Court issued an order scheduling a telephone conference with the parties, who were directed to call chambers. *See Constand v. Cosby*, No. 05-1099 (E.D. Pa. Nov. 3, 2005) (order scheduling telephone conference) [Doc. # 46]. That order did not state the reason for the call, did not describe the subject matter to be discussed, and, most importantly, did not mention that the Court would

consider entering a sealing order based on the call. It appears, however, that the call was scheduled to address concerns raised by the parties in their letters to the Court.

The following day, the Court "conferred with the parties" by telephone from chambers. Sealing Order at 2 n.1. The public docket reveals no transcript of the call, which was, obviously, inaccessible to the public. Following this conference call, the Court entered the Sealing Order. In a footnote to the Sealing Order, the Court hinted at the issues discussed, noting that "certain issues" had been brought to its attention, including "inter alia, . . . the permissible scope of inquiry, the role of counsel at deposition and the extent to which a witness may rely upon prior statements in answering questions." *Id.*

The Sealing Order calls for the *blanket, prospective sealing of all discovery-related documents* filed with the Court, providing that "all requests for discovery, responses and legal memoranda filed pursuant to this order shall be filed **UNDER SEAL**." *Id.* at 2. It further establishes a "protocol" for testing whether the seal is appropriate with respect to individually filed documents, by providing for the subsequent filing of briefs supporting or opposing sealing, thus contemplating that, at some future point, the Court may determine that the filed materials should be unsealed in whole or in part.

The Court recognized in its footnote to the Sealing Order, as it had previously, "the common law right of access to judicial proceedings in a civil case," but stated that the right is "not absolute" and "may be limited or conditioned upon a showing of good cause." *Id.* at 3 n.1. The Court noted that it "again [was] called upon to balance the private and public interests implicated in this case." *Id.*

Then, without any further explanation or public notice, the Court fully sealed all as-yet unfiled discovery motions and related papers. It is impossible to understand from the public record why that has happened.

Now, the motions have begun to be filed and all are being filed under seal, under the protocol established by the Court. On November 21, 2005, the plaintiff filed a Motion for Sanctions Concerning Conduct of Defendant at Deposition and a Memorandum of Law in Support thereof.[1] The next day, the defendant filed a Request to Compel and Memorandum Concerning Overarching Issues, and the plaintiff filed a Motion to Compel Discovery.

## ARGUMENT

### I. THE ASSOCIATED PRESS SHOULD BE PERMITTED TO INTERVENE.

The AP has standing to intervene in this action pursuant to Rule 24(b) of the Federal Rules of Civil Procedure. *See Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 778 (3d. Cir. 1994) ("By virtue of the fact that the Newspapers challenge the validity of the Order of Confidentiality entered in the main action, they meet the requirement of Fed.R.Civ.P. 24(b)(2) that their claim must have 'a question of law or fact in common' with the main action"); *see also Shingara,* 420 F.3d at 304 (noting that newspaper intervened to challenge a protective order). Similarly, here, the AP wishes to challenge the Sealing Order entered by the Court and therefore has "a question of law or fact in common with the main action."

---

[1] Both documents were filed under seal, although neither appears from the public docket to be a "request to compel." Presumably, a "request to compel" is simply another name for a motion to compel, as contemplated by Rule 37 of the Federal Rules of Civil Procedure, Rule 26.1 of the Local Rules of Civil Procedure, and this Court's Pretrial and Trial Procedures.

## II. THE SEALING ORDER SHOULD BE LIFTED, AND ALL DOCUMENTS FILED UNDER SEAL SHOULD BE UNSEALED.

As the Court has already recognized in this case, the public has a presumptive right "to inspect and copy judicial records and documents." *Constand*, 229 F.R.D. at 478. Indeed, the Third Circuit has held that this right "is beyond dispute." *Publicker Indus. v. Cohen*, 733 F.2d 1059, 1066 (3d Cir. 1984). The right to access court proceedings and records enhances "'the quality of justice dispensed by the court,'" "'diminishes possibilities for injustice, incompetence, perjury, and fraud,'" and "'provide[s] the public with a more complete understanding of the judicial system and a better perception of its fairness.'" *Constand*, 229 F.R.D. at 478-79 (quoting *Littlejohn v. BIC Corp.*, 851 F.2d 673, 678 (3d Cir. 1988)).

To ensure that this right is fully protected, the Supreme Court and the Court of Appeals have set forth procedural requirements governing sealing and closure issues. Those requirements include three components: notice, hearing, and specific findings on the record. *See, e.g., Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 609 n.25 (1982); *Press-Enter. Co. v Superior Court*, 464 U.S. 501, 510 (1984) (*Press-Enterprise I*); *Shingara v. Skiles*, 420 F.3d 301, 306 (3d Cir. 2005); *United States v. Antar*, 38 F.3d 1348, 1359 (3d Cir. 1994); *United States v. Raffoul*, 826 F.2d 218, 223-24 (3d Cir. 1987); *Publicker Indus.*, 733 F.2d at 1072. Moreover, a party seeking a protective order limiting public access must, at a minimum, establish good cause for such an order. *See Shingara*, 420 F.3d at 306. These requirements prevent the "routine and perfunctory closing" of judicial proceedings and records and ensure effective appellate review.

*In re Cendant Corp.*, 260 F.3d 183, 193-94 (3d Cir. 2001); *Publicker Indus.*, 733 F.2d at 1071 (citing *Press-Enterprise I*, 464 U.S. at 510).[2]

Just three month ago, in *Shingara*, the Third Circuit reaffirmed these principles in the context of issuing protective orders over discovery material. There, the Court vacated a protective order sealing discovery materials, unambiguously holding that courts may enter protective orders in the context of discovery only on a showing of good cause. *See Shingara*, 420 F.3d at 306. It further concluded, as it had in *Pansy v. Borough of Stroudsburg*, that

- "the party seeking protection has the burden of showing that there is good cause for it,"

- the district court should "determine whether there is good cause by balancing the interests of the public and the parties," and

- "the court should explain the reasoning behind its balancing conclusion."

*Id.* (citing *Pansy*, 23 F.3d at 786-87, 789).

In *Shingara*, the Third Circuit also strongly advised against "broad, umbrella protection," noting, as it had in *Pansy*, that a "'document-by-document approach ... will be preferable'" in

---

[2] Whether based on an analysis of constitutional or common law access to judicial records, or on the law applicable to motions for protective orders pursuant to Rule 26(c), the outcome here is the same – the Sealing Order violates established precedent. The AP contends that its right to access is based on all three sources of law. Although in *Leucadia, Inc. v. Applied Extrusion Techs.*, 998 F.2d 157, 164, 165 (3d Cir. 1993), the Third Circuit ruled that "at th[at] time" the presumption of access did not extend to discovery motions, that ruling is of limited precedential value. *See, e.g., PA Childcare v Flood*, 2005 PA Super 387, at ¶¶ 9-13, 2005 WL 3061373, at *2-*3 (Nov. 16, 2005) (constitutional and common law presumed right of access applies to court records, including discovery materials alleged to be trade secrets). In any event, *Leucadia* itself and subsequent Third Circuit decisions make clear that a protective order covering discovery motions and supporting materials can be entered only after a finding of good cause on the record. 998 F.2d at 165 (stating that Rules 26(c) of the Federal Rules of Civil Procedure "govern[s] public access to discovery materials"); *see also, e.g., Pansy*, 23 F.3d at 786-91 (setting forth factors to establish good cause); *Shingara*, 420 F.3d at 305-08 (applying *Pansy* factors in reversing district court's protective order over discovery). Thus, the Court need not reach the common law and constitutional issues because the Sealing Order on its face violates Rule 26(c).

cases that are neither complex nor involve large-scale discovery. *Id.* at 308 (quoting *Cipollone v Liggett Group, Inc.*, 785 F.2d 1108, 1123 (3d Cir. 1986)) (omission in original). Finally, the *Shingara* Court not only ruled that "good cause must exist to obtain a protective order over discovery materials," it also emphasized that, after a court enters a protective order, "there must be good cause *to maintain* the order in the face of a motion to vacate it, particularly, when, as here, the moving party did not have an opportunity to oppose the entry of the protective order in the first instance." *Id.* at 306 (emphasis added).

As for what may be deemed good cause, rules have been carefully drawn by the Third Circuit. For example, a "broad, unsubstantiated allegation of harm . . . does not support a showing of good cause." *Shingara*, 420 F.3d at 307 (citing *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995)). Thus, "[g]eneral allegations of injury to reputation and . . . relationships or embarrassment . . . is insufficient to justify judicial endorsement of an umbrella confidentiality agreement." *Glenmede Trust*, 56 F.3d at 484. As this Court has previously observed, when embarrassment is the stated grounds for seeking a protective order, the applicant for the order "must demonstrate that the embarrassment is particularly serious." *Constand*, 229 F.R.D. at 480. Privileged information and trade secrets can also form the basis of good cause. *See, e.g., Glenmede Trust*, 56 F.3d at 486.

Indeed, the AP does not here argue that good cause never exists for sealing. However, in this matter, the cart has been placed before the horse, as the Court has apparently decided to seal first and determine the validity of sealing later. While the AP is sympathetic to the notion that a party may in good faith believe that some document – or a particular aspect of a certain document – requires filing under seal, that belief does not provide a legitimate basis for the Court to issue a blanket order sealing as-yet unfiled documents, sight unseen, subject to subsequent

verification. To do so clearly crosses the line drawn by the Court in *Glenmede Trust*, which observed that it is inappropriate to permit "the parties to control the use of protective orders." 56 F.3d at 485. While the parties certainly have the right to ask the Court to review sensitive or privileged information *in camera*, they do not have the right to conduct this litigation behind the scenes, away from public scrutiny. To do so is a flagrant violation of the precedent established in *Pansy*, *Glenmede Trust* and *Shingara*. *See, e.g.*, *Glenmede Trust*, 56 F.3d at 484-85 ("In *Pansy*, we emphasized the strong public interest in open proceedings. . . . *Absent a showing that a defined and serious injury will result from open proceedings, a protective order should not issue.*" (citations omitted; emphasis added)).

Thus, the seal should be lifted, and the public's right to access motions, requests, and other records filed with the Court should be fully restored.

### A. The Sealing Order Should Have Been Preceded by a Motion and Was Entered Without Providing Notice or An Opportunity To Be Heard.

There must be notice to the public and a hearing in advance of the Court's sealing of any aspect of the public record, and, if prior notice is not given, a hearing must be immediately afforded when sought.[3] *See, e.g.*, *Shingara*, 420 F.3d at 306. Normally, in this context, notice is

---

[3] The Third Circuit has established a specific protocol for providing the public with notice that judicial proceedings might be closed. *See Antar*, 38 F.3d at 1359-62; *Raffoul*, 826 F.2d at 225; *United States v. Criden*, 675 F.2d 550, 559 (3d Cir. 1982) (*Criden II*). This procedure has been summarized as follows:

> All motions for closure should be docketed immediately. Motions for closure that are made outside the public's hearing shall also be renewed in open court before being acted upon and the courtroom shall not be closed except upon the court's order. The trial proceedings shall be interrupted to allow those actually present and objecting to removal to be heard before a closure order is entered. Interested persons must be granted a hearing within a reasonable time upon motion for access to sealed transcripts of the closed proceeding. Before closing the courtroom, the court must consider

given by the filing of public motions, which are duly recorded on the public docket. *See, e.g.*, FED. R. CIV. P. 26(c). Thus, motions to seal made in non-public settings must be renewed in public and on the record. *Raffoul*, 826 F.2d at 225; *see also Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 96 (2d Cir. 2004) (holding that the public has a qualified First Amendment right to access court dockets, which shed light on court activity).

These requirements are also embodied in the Federal Rules of Civil Procedure, the Local Rules of this District, and this Court's Pretrial and Trial Procedures, all of which call for the filing of motions that publicly seek the Court's intervention before the Court acts. For instance, Federal Rule 26(c) provides that a district court may enter a protective order "[u]pon motion by a party." *Accord* ED. PA. L. R. CIV. P. 26.1 (providing for discovery motions); OUTLINE OF PRETRIAL AND TRIAL PROCEDURES BEFORE JUDGE EDUARDO C. ROBRENO II.D.3 & 4 (providing for discovery motions and stating that the Court "will not approve confidentiality or sealing orders unless good cause is shown"). When a party files a motion seeking a sealing order, the public receives notice that the Court might seal some aspect of the case and then has an opportunity to intervene if it seeks to protect its interest in keeping the proceedings and records accessible. *See, e.g., Pansy*, 23 F.3d at 778.

Here, neither the public nor the press received notice that the Court might seal the record, or any part of it, in this case. Thus, they lost the opportunity they had the first time the Court publicly considered the parties' motions for protective orders. This time, the entire process was hidden from public view. The Court entered the Sealing Order on the basis of unfiled letters that were not docketed, and telephonic "argument."

---

       alternatives to closure and state on the record its reasons for
       rejecting them.

*Raffoul*, 826 F.2d at 226.

Thus, the Court has now given the litigants here – behind closed doors – what it refused to give them publicly. This result stymies both logic and justice.

### B. The Sealing Order Must Be Promptly Justified by On-the-record Findings Which Do Not Exist Here.

The Third Circuit has unambiguously held that when entering a sealing order, "a district court should articulate on the record findings supporting its judgment." *Pansy*, 23 F.3d at 789; *accord Shingara*, 420 F.3d at 306 (stating that "the court should explain the reasoning behind its balancing conclusion"). The findings must be "specific enough that a reviewing court can determine whether the closure order was properly entered." *Press-Enterprise I*, 464 U.S. at 510; *see also Antar*, 38 F.3d at 1359 ("these determinations must be covered by specific, individualized findings articulated on the record before closure is effected"). In addition to providing a clear record for an appellate court, this requirement "exists, most fundamentally, to assure careful analysis by the district court before any limitation is imposed." *Antar*, 38 F.3d at 1362.

There are no such findings on the record supporting the Sealing Order. Indeed, it appears from the protocol established by the Court that it is seeking post hoc support for the sealing, thus suggesting that, at present, the record does not support it.

If anything, the few details that are publicly known counsel against sealing.

*First*, the parties' previous submissions have already been found to be insufficient by the Court to support blanket sealing. As discussed above, the parties' generalized privacy concerns and potential embarrassment is insufficient to bar the public from accessing records filed on the public docket of a public court. The Third Circuit has concluded that "privacy interests are diminished when the party seeking protection is a public person subject to legitimate public scrutiny." *Pansy*, 23 F.3d at 787. As plaintiff persuasively argued in opposing the defendant's

proposed blanket protective order, Mr. Cosby is unquestionably a public figure, and his conduct – both as alleged in the complaint and in the litigation itself – is a legitimate matter for public scrutiny. *See Pl.'s Memo of Law in Opp. to Def.'s Motion for Protective Order* at 7, 10-13 [Doc. # 20]. In addition, in *Shingara*, the Court reiterated its previous holding that fear of tainting the jury pool, one of the grounds for sealing advanced by the defendant here, "is exactly the type of broad, unsubstantiated harm that does *not* support a showing of good cause." 420 F.3d at 307 (emphasis added).

*Second*, nothing in the public record suggests – nor could it – that every bit of information in "all requests for discovery, responses and legal memoranda" would cause "particularly serious" embarrassment. Indeed, this Court previously rejected a blanket confidentiality order on these same grounds, stressing that "embarrassment alone, however, even if serious, does not justify the cloak of confidentiality over all discovery in this case." *Constand*, 229 F.R.D. at 480. This is just as true now as it was then, and it applies with even more force to filed discovery-related motions.

*Third*, none of the issues identified by the Court in the Sealing Order – "the permissible scope of inquiry, the role of counsel at deposition and the extent to which a witness may rely upon prior statements in answering questions" – suggest an immediate need for sealing. It is inconceivable that a party could suffer any serious injury based on a question asked in a deposition or a request that is posed in discovery. Likewise, legal arguments cannot cause a specific, serious injury to either side.

*Fourth*, one of the filed motions – a motion for sanctions which addresses defendant's "conduct at deposition" – appears to have no relation to any private matter.[4]

If the parties have some new grounds to offer to support a finding that they will suffer a "clearly defined, specific, and serious injury" if any of their motions and related papers are filed publicly, they should be compelled to make an immediate and particularized showing of such injury with respect to each document whose seal they wish to maintain.[5] Pursuant to the procedure established by the Third Circuit, the press and public should then be given a chance to respond and to articulate their countervailing interests. *See, e.g.*, *Shingara*, 420 F.3d at 306 (where protective order has already been entered, press intervenor, which "did not have an opportunity to oppose the entry of the protective order in the first instance," must have opportunity to challenge finding of good cause). The Court should then articulate its findings, to the greatest extent possible, on the public record. This should be done as soon as possible, and not, as the protocol in the Sealing Order provides, at some unspecified date in the future. See, e.g., *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"); *Raffoul*, 826 F.2d at 226 ("Interested parties must be granted a hearing within a reasonable time"); *Matter of Providence Journal*, 820 F.2d 1342, 1351 (1st Cir. 1986) ("News is a constantly changing and dynamic quantity. Today's news will often be tomorrow's history.").

---

[4] In addition, the plaintiff's Motion for Sanctions is not a "request to compel" and thus does not fall within the terms of the Sealing Order. Accordingly, it should not have been filed under seal in the first instance.

[5] To the extent they cannot make their showing on the public record without releasing the very information they wish to protect, that information – and only that information – should either be redacted, withheld by the parties and/or submitted *in camera*.

### C.     The Blanket Sealing Order Is Overbroad.

The parties have now succeeded in obtaining the blanket confidentiality order this Court earlier refused to enter. Even if the parties can now justify some level of sealing – which is unknown to the AP because of the absence of any public record – the Sealing Order is nevertheless far too broad.

Although the parties may choose to conduct discovery outside of public view (as they apparently have done), the Court cannot legitimately prospectively seal all requests, responses, and legal memoranda from public view. Rather, the parties must justify sealing each piece of information in each request, response, and memorandum, and the Court must engage in the analysis discussed above for each alleged bit of protectable information. *See Pansy*, 23 F.3d at 786-87 ("The burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the order."); *see also Shingara*, 420 F.3d at 308 (restating that a "document-by-document approach" is preferred).

In addition, any sealing order must be no broader than necessary to protect a truly threatened interest. *See Richmond Newspapers v. Virginia*, 448 U.S. 555, 581 (1980); *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 14 (1986) (*Press-Enterprise II*); *see also Publicker Indus.*, 733 F.2d at 1073-74 (closure must be "narrowly tailored to serve [the] interest" at issue) (citing *Press-Enterprise I*, 464 U.S. at 510; *United States v. Criden*, 648 F.2d 814, 824 (3d Cir. 1981) (*Criden I*)). That is, any order must be narrowly tailored to seal only the truly confidential material in the documents to be filed. This can be accomplished quite easily by, for example, ordering that only specific, actually confidential material may be redacted in the papers filed on the public docket.

There can be, however, no legitimate basis for ordering that all information in "all requests for discovery, responses and legal memoranda" be filed under seal and therefore the AP respectfully requests that the Sealing Order be lifted and that all documents filed pursuant to it be unsealed.

## CONCLUSION

For the foregoing reasons, the AP respectfully requests that the Court grant its motion to intervene and to lift any and all sealing orders and to unseal all documents sealed pursuant to the Sealing Order.

Dated: November 23, 2005

        Respectfully submitted,

        LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.


        By: ___/s/ Gayle C. Sproul_____
            Gayle C. Sproul
            Michael Berry

        2112 Walnut Street, Third Floor
        Philadelphia, Pennsylvania 19103
        (215) 988-9778