# TROIANI/KIVITZ, L.L.P.

——————————— ATTORNEYS AT LAW ———————————

DOLORES M. TROIANI, ESQUIRE
BEBE H. KIVITZ, ESQUIRE

38 NORTH WATERLOO ROAD
DEVON, PA 19333

(610) 688-8400
FAX (610) 688-8426

December 5, 2005

Office of the Clerk of Court
Eastern District of Pennsylvania
U.S. Courthouse
601 Market Street, Room 2609
Philadelphia, PA 19106

**RE:**  **Andrea Constand vs. William H. Cosby, Civil Action No. 05-CV-1099**
     **Plaintiff's Reply To Defendant's Requests To Compel and**
     **Memorandum Concerning Overarching Issues**

Dear Sir/Dear Madam:

Enclosed for filing in the above-captioned matter, please find an original and a CD disk.

Thank you for your anticipated cooperation.

Respectfully submitted,

Dolores M. Troiani

DMT:m
Enclosure
cc:   Patrick J. O'Connor, Esquire (via hand-delivery)
     Andrew D. Schau, Esquire (first class mail)
     Andrea Constand (first class mail)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREA CONSTAND, | : CIVIL ACTION |
| Plaintiff | : |
| v. | : NUMBER 05-1099 |
| | : |
| WILLIAM H. COSBY, JR., | : |
| Defendant | : |

PLAINTIFF'S REPLY TO DEFENDANT'S
REQUESTS TO COMPEL AND MEMORANDUM
CONCERNING OVERARCHING ISSUES

DEFENDANT'S ISSUE 1

Defendant moves to compel Plaintiff to reveal conversations she had with two private

attorneys in Philadelphia. Defendant characterizes the attorneys as "civil litigators." (Def. Br.,

5). Defendant seeks to have this Court assume that all attorneys who practice privately, as

opposed to those in government or public practice, serve only one function, that being to initiate

lawsuits, i.e. to litigate civilly. In fact, it is not uncommon for individuals, particularly those

unfamiliar with the legal system, to call an attorney seeking advice on how to proceed. Plaintiff

asserted the attorney-client privilege to the questions. Defendant contends that the privilege does

not apply because Plaintiff was not actively seeking to retain the attorney at the time of the

conversations. However, Defendant has taken both the question and answer out of context. In

fact, Plaintiff testified that she was looking for an attorney to counsel and protect her. The entire

exchange is as follows:

BY MR. O'CONNOR

> Q. And you want to hire these lawyers presumably; correct?

1

A. I wasn't thinking about that at the time, I just wanted to talk to
somebody.

Q. Did you want to talk to these Philadelphia lawyers about putting Mr.
Cosby in jail or suing him?

A. I wanted to talk to them about who I needed to contact, whether it was
somebody in Toronto or in Philadelphia. I wasn't sure if I needed to
contact a lawyer in Toronto or contact a lawyer in Philadelphia.

Q. To sue Mr. Cosby or to put him in jail?

A. Not to sue Mr. Cosby. I never intended to sue Mr. Cosby but to–

Q. Your only intention was–I'm sorry.

A. Yes, to prosecute, to move forward in the investigations.

Q. You never intended to sue Mr. Cosby, you intended to put him in jail; is
that correct?

A. If you want to say it like that, that's fine.

Q. Or bring criminal charges?

A. Yes

Q. So, money was not your issue?

A. No, it was not.

Q. And when you were attempting to reach out to these Philadelphia
lawyers, you wanted to get some advice as to how to pursue it criminally?

A. Just somebody who could give me some counsel and protect my–help
me as the process went along.

      (Pl. Dep. 9/27/05, 137-138)

It is clear from the response that Plaintiff was calling the attorneys to obtain legal

advice. Whether or not she would hire them would depend upon the discussions and

advice given. Plaintiff was simply unfamiliar with the process, and was calling to determine if she needed an attorney. Plaintiff testified to the names of the lawyers, the dates she spoke to them and the circumstances of how she found the attorneys. Plaintiff asserted the attorney-client privilege only as to the substance of the conversations with the lawyers. In a diversity case, the issue of attorney-client privilege is decided according to Pennsylvania law. The privilege is codified at *42 Pa. Cons. Stat. Ann. § 5928*. The party resisting discovery must establish: "(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made is a member of the bar of a court, or his or her subordinate, and is acting as a lawyer in connection with the communication; (3) the communication relates to a fact of which the attorney was informed by the client without the presence of strangers for the purpose of securing primarily either an opinion of law, legal services, or assistance in some legal proceeding, and not for the purpose of committing a crime or tort, and the privilege has been claimed and not waived by the client." *Rhone-Poulenc Rorer, Inc. v. Home Indemnity Co.,* 32 F.3d 851, 862 (3d. Cir. 1994) To suggest that the attorney-client privilege does not apply because Plaintiff was calling lawyers to determine if she should hire an attorney as opposed to calling a lawyer to determine if she should hire that particular attorney is simply splitting hairs.

Next, Defendant contends that the conversations are relevant to the defamation claim in that they demonstrate that Plaintiff's motives were financial. Again, Defendant is making the assumption that merely contacting a private attorney, as opposed to a public attorney, implies a financial motivation. On January 13, 2005, Plaintiff called her mother

3

to tell her what had occurred and they decided to contact the Toronto Police, when her mother came home from work, later that day. After her call to her mother, Plaintiff attempted to speak with an attorney in Philadelphia. However, she testified that she did not speak to the attorneys prior to speaking to the police. She spoke to the police in Canada the evening of January 13, 2005. Plaintiff and her mother spoke to Defendant on January 16, 2005. Plaintiff did not speak to the lawyers until some time after the call from Defendant.

Rule 26(b)(1) of the Federal Rules of Civil Procedure requires disclosure if the information sought is both relevant and not privileged. Therefore, it is important to understand the nature of Plaintiff's defamation claim because evidence of Plaintiff's alleged " financial motivation" is not relevant and not reasonably calculated to lead to admissible information.

In Paragraph 29 of the Amended Complaint it is alleged that the defamatory statement published to and by Celebrity Justice (CJ) was:

> Sources connected with Bill Cosby tell "CJ" that before his accuser went to the police, her mother asked the comedian to make things right with money....We're told she asked Cosby to help pay for her daughter's education and to generally help her out financially, and this conversation occurred before the accuser ever contacted the police....As police continue to investigate, a Cosby rep call (sic) this a classic shakedown.

This statement was aired nationwide on February 7, 2005. In his deposition, the statement Defendant gave to the Montgomery County, Pennsylvania authorities concerning his January 16, 2005 telephone call with Plaintiff and her mother was read to him and he admitted as follows:

4

Q. First I apologized twice. Then she said -- I said, what do you want me to --
and I assume the word do is left out. I said, what can I do? And she said,
nothing. She said, your apology is enough. I asked that twice. She said, nothing,
there's nothing you can do. We hung up. I know Andrea so I called her back
thinking, listen, I know that Andrea has talked about graduate school, why don't
we have a conversation and talk about what she wants to be. Whatever graduate
school, we will pick up the tab, but she must maintain a 3.0 GPA."
When you say we, who do you mean?

A. Well, like our family, when we write a check, that's what we do.

Q. What was the response?

A. She did not accept, nor did she reject it.

( Def. Dep. 9/29/05, 196-197)

Defendant's statement to the police was given by him on January 26, 2005. By Cosby's own

admissions, the comments made to Celebrity Justice by his agents on February 7, 2005, were

false. All parties agree that the first person to mention any type of financial compensation for

Plaintiff's injuries was Defendant. Simply put, Defendant's agents knowingly falsified the

substance of Defendant's January 16, 2005, conversation with Plaintiff and her mother. Clearly

on February 7, 2005, Defendant knew that neither Plaintiff nor her mother had asked for any type

of monetary assistance. If, as Defendant now contends, he seeks discovery of the conversations

Plaintiff had with attorneys, which occurred after her statement to Toronto authorities and after

the January 16, 2005 call with Defendant in order to establish Plaintiff's financial motive, his

January 26, 2005 statement and his own deposition testimony best rebut that-- Defendant

unequivocally acknowledged that Plaintiff sought only an apology. Plaintiff's conversations

with the attorneys is simply not relevant to this claim nor likely to lead to admissible information.

The second count of defamation involves Defendant's "exclusive" interview to the

5

National Enquirer, in which defendant stated, "I am not going to give in to people who try to exploit me because of my celebrity status." (Amended Complaint, ¶ 31). Seeking the advice of counsel does not constitute exploitation of Defendant. Further, having begun Defendant's deposition, Plaintiff is now aware of some of the circumstances surrounding the Enquirer article. Plaintiff has moved to compel additional deposition testimony, which will further explore those circumstances, because the questioning was aborted by Defendant. At present, the following is known. Defendant admitted that his motivation in publishing the interview was to make the public believe that Plaintiff was not telling the truth. (Def. Dep. 9/29/05, 221). He reviewed the article before it was printed. (Def. Dep,. 9/29/05, 182 ) At numerous times throughout his deposition, Defendant admitted that he twice asked Plaintiff and Plaintiff's mother what she wanted, and she stated that an apology was enough. [1] (Def. Dep. 9/29/05, 213) Defendant admitted that he called Plaintiff's home after the initial call from Plaintiff's mother and he offered an "educational trust" to Plaintiff's mother. He admitted that he had used this device in the past to funnel money to a woman to prevent her from revealing his sexual contact with her. (Def. Dep. 9/29/05, 203)

A fair reading of the article evidences that Defendant's intention was to cause the public to believe he was the victim of an extortion plot perpetrated by plaintiff— an accusation he also made to the police. (Def. Dep. 9/29/05, 198). Seeking just compensation for damages is at the heart of the judicial system; it is not extortion. Although Defendant has not provided Plaintiff

---

[1]Defendant claimed to have told the National Enquirer that the only thing Plaintiff's mother asked for was an apology; however, in one of his lawyers, Mr. Schmitt, was present at the meeting, his counsel remonstrated at the deposition and a stipulation was entered into the record. (Def. Dep. 9/29/05, 232)

6

with his written agreement with the National Enquirer, and although he refused to answer

numerous questions concerning this line of inquiry, it is evident that Defendant exercised almost

complete control over the story, which is one of the basis for Plaintiff's defamation claim.   A

pertinent portion of the article reads:

> Cosby, who has been the victim of an extortion plot in the past, did not want to speculate as to whether money was the woman's prime motive. "Let's not go there, " he told The ENQUIRER.

> But he did say: "I am not going to give in to people who try to exploit me because of my celebrity status."

> A published report states that the woman's mother called Cosby before her daughter went to the police and the comedian "was under the impression" she was after hush money.

Contrary to Defendant's assertion, the critical issue here is not Plaintiff's financial motivation.

Rather, it is Cosby's calculated and deliberate public statements in which he knowingly defamed

Plaintiff by intentionally distorting the conversation he had with Plaintiff and her mother, raising,

instead, extortion and "shakedown", as Plaintiff's motivation,  when in fact he knew that

Plaintiff only asked for an apology.   Conversations Plaintiff had with attorneys do not bear upon

the issue at hand, namely, that at the time Defendant led the public to believe that Plaintiff was

attempting to commit the crime of extortion, he knew that she had not asked him for any type of

financial compensation.

7

DEFENDANT'S ISSUE 2

Plaintiff asserted the attorney client privilege to the general topic of her conversation with the attorneys. Defendant claims that the subject matter of Plaintiff's communication is not privileged. Defendant does not cite any authority for this assertion. Although, Plaintiff has been unable to find any Third Circuit opinions which address this issue, the Fourth Circuit and at least two members of the District Court for the Eastern District of Pennsylvania have found that the subject matter of discussions with counsel are privileged. *Hawkins v. Stables*, 148 F.3d 379 (4th Cir. 1998); *USA v. Pinho*, 2003 U.S. Dist. Lexis 12244, (E.D. Pa. 2003); *In re Arthur Treacher's Franchisee Litigation*, 92 F.R.D. 429 (E.D. Pa. 1981).

Further, even if this Honorable Court were to find that the answer is not privileged as indicated above, the discovery sought is not relevant or reasonably calculated to lead to admissible evidence.

8

DEFENDANT'S ISSUE 3

Defendants seek to compel Plaintiff to answer the question as to whether or not any attorney gave her advice. As in the case of the subject matter of the conversation, by revealing if she was given advice, Plaintiff would then be waiving the privilege by revealing part of the conversation to third parties. *USA v. Pinho*, 2003 U.S. Dist. Lexis 12244, (E.D. Pa. 2003) Further, even if this Honorable Court were to find that the answer is not privileged as indicated above, the discovery sought is not relevant or reasonably calculated to lead to admissible evidence.

9

DEFENDANT'S ISSUE 4

Defendant seeks to discover if Plaintiff told a third party what she discussed with her attorneys.  Plaintiff testified that her friend, Sheri Williams, called her in April around her birthday.  The present lawsuit was filed in March.   The testimony was:

> A.  Sheri, she wanted to– well, I told her that, firstly the call had come in April, and it was, I believe around my birthday time, and she said that she had heard that no criminal charges were going to be filed.  And she said, so what are you going–you know, what do you do now? What have you discussed with your attorneys? And–
>
> Q.   What did you tell her?
>
> A.    I told her that—
>
> MS. KIVITZ:   I'm just advising her, I don't want you to discuss in this answer anything that your attorneys said to you.  Do you understand that?

(Pl. Dep. 9/27/05, 128)

Following discussion between counsel, the deponent testified in detail to the conversation.  (Pl. Dep. 9/27/05, 129-133).   Defendant does not explain how a conversation which occurred **after** the suit was filed, and after the defamation occurred, would be relevant or reasonably calculated to lead to relevant information.  Again, the issue is not that Plaintiff has sought access to the judicial system as her only means of compensation for the injuries which were inflicted upon her by Defendant.  The issue is Defendant's knowledge of the falsity of his statements at the time he and his agents made them.

In reality, what Defendant is seeking is conversations between counsel and Plaintiff relating to the filing of the present law suit.  These conversations are also protected by the work product doctrine. Federal Rule of Civil Procedure  26(b)(3).  Plaintiff has not placed the

conversations she had with her attorney in issue and Defendant has not shown a substantial need

to have those conversations revealed to him. *Cooney v. Booth*, 198 F.R.D. 62, (E.D.Pa. 2000).

Further, Rule 26(b)(3) unequivocally states, "In ordering disclosure of such materials when the

required showing has been made, the court shall protect against the disclosure of the mental

impressions, conclusions, opinions, or legal theories of an attorney or other representative of a

party concerning the litigation." The question posed to Plaintiff is overly broad and is not

qualified so as to exclude mental impressions and legal theories of attorneys in preparation for

litigation. Further, Defendant has not shown a substantial need for access to this information.

11

DEFENDANT'S ISSUE 5

Defendant seeks to increase the agreed upon number of interrogatories. First, Defendant argues that asking Plaintiff to recount statements from twelve (12) different people is only one interrogatory and not twelve (12) because he only asked one question. Ten pennies may be a dime, but there are still ten coins.

"In the alternative," Defendant requests an amendment to the 50-interrogatory limit. The allowable number of interrogatories was discussed at the parties' Rule 26 meeting, and explicitly agreed to therein. The agreement, that each side could serve up to a maximum of fifty (50) interrogatories, was memorialized in the joint report filed with the Court, which is attached as Exhibit "A".

Defendant's First Set of Interrogatories, contained fourteen (14) interrogatories; however, the subparts increased the actual number to twenty-four (24). (Interrogatories attached as Exhibit "B") Plaintiff provided objections and responses to those interrogatories.

On July 19, 2005, Defendant served Plaintiff with his Second Set of Interrogatories. This set contained four (4) interrogatories with thirteen (13) discrete subparts each, constituting a total of 52 interrogatories (Second set of interrogatories attached as Exhibit "C"). Plaintiff immediately objected on the basis that the Defendant's interrogatories, with subparts, exceeded the fifty interrogatory limited agreed to by the parties and filed with the Court's (August 5, 2005 Objections of Plaintiff, attached as Exhibit "D").

In correspondence dated August 11, 2005, Defendant "accepted" Plaintiff's objection, and withdrew Interrogatory four, writing that:

12

"...First, Plaintiff objects to the Second Set of Interrogatories on the basis that they, counting their "subparts" as separate interrogatories, exceed the 50 interrogatory limit agreed to by the parties. We disagree with Plaintiff's interpretation that these interrogatories contain discrete subparts. Even if this objection were valid, however, Plaintiff has an obligation to answer up to 50 interrogatories. Plaintiff answered none.

<u>To eliminate this dispute, and for the purpose of accepting Plaintiff's objection, we withdraw the four "subparts" relating to Jane Doe No. 8. We also withdraw Interrogatory 4 in its entirety.</u> (emphasis added).

(August 11, 2002, O'Connor letter attached as Exhibit "E")

Plaintiff then responded to the remaining interrogatories, which concerned Federal Rule of Evidence 415 witnesses, (hereafter, the "Rule 415 witnesses"). Despite the aforementioned agreement, Plaintiff responded to twenty-four (24) interrogatories in the first set, and the remaining thirty-six (36) in the second set, totaling sixty (60) interrogatories..

It is entirely disingenuous for Defendant to now suggest that the agreement to limit the interrogatories occurred before he knew the identities of the Rule 415 witnesses; indeed, the entire second set was directed to the previously identified Rule 415 witnesses. Plaintiff's responses were served on Defendant <u>after</u> Defendant has received the names and addresses for all Rule 415 witnesses, as well as the name of Tamara Lucier Green, Esquire. Defendant simply seeks to retract the agreement he reached at the onset of discovery, and confirmed <u>after</u> Plaintiff objected to the numerosity of interrogatories contained in Defendant's second set.

Defendant has not provided any good or just cause why the Court's discovery order should be amended; why his initial agreement as to fifty (50) interrogatories should be ignored; or, why his agreement of August 11, 2005, should be stricken.

Federal Rule of Civil Procedure 33(a) provides, in pertinent part:

13

"(a) Availability.  Without leave of court or written stipulation, any party may serve upon any other party written interrogatories, not exceeding 25 in number including all discrete subparts, to be answered by the party served or, if the party served is a public or private corporation or a partnership or association or governmental agency, by any officer or agent, who shall furnish such information as is available to the party.  Leave to serve additional interrogatories shall be granted to the extent consistent with the principles of Rule 269b)(2).  Without leave of court or written stipulation, interrogatories may not be served before the time specified in Rule 26(d)."

Prior to Rule 33 becoming mandatory the Court in *McMenamin v. M&P Trucking Co., Inc.* 1994 U.S. Dist. Lexis 4595 (E.D. Pa. 1994), considered the wisdom of Rule 33 and noted:

The drafters of the Federal Rules of Civil Procedure, I assume after careful consideration, concluded that in the usual civil lawsuit, after self-executing discovery, a limit of twenty five interrogatories, subject to discretionary expansion of the quantity in appropriate cases, is reasonable.  In any complex litigation I would be most reluctant  to limit the number of interrogatories, including discrete subparts, to twenty-five.  This is not, however, complex litigation.  All counsel practicing in this district should attempt to exercise discipline by limiting interrogatories to only those that will provide useful information.

<u>1994 U.S. Dist. Lexis 4995, *8</u>

Rule 33 is a recognition of the potential for discovery abuses if limitations are not imposed.

There is no doubt that this case involves substantial amounts of information; however, it is not

complex.  The parties have recognized the quantity of evidence and have agreed to extend the

time-limitations on depositions and further agreed to permit twice the number of interrogatories

permitted by Rule 33.  In fact, Plaintiff has responded to sixty (60) interrogatories.  Defendant

contends that he needs the additional interrogatories in order to prepare for trial.  The Court

rejected the same argument in *Criscuolo v. Homeside Lending, Inc.*, 2004 U.S. Dist. Lexis 4334

(E.D. Pa. 2004) , stating: "Plaintiff's counsel claims that the information sought is necessary for

trial in order to provide definitive support for the Plaintiff's claims. The same can be said for any discovery  pertaining to a case". 2004 U.S. Dist. Lexis 4334, *3.

It is clear that the Court may deny Defendant's request for additional discovery where, as here, Plaintiff has already responded to more than fifty (50) interrogatories, Defendant has not shown any good cause to serve additional ones, and  responding to more than fifty (50) interrogatories would be burdensome to Plaintiff.  Further, discovery can be obtained by Defendant by other means; and to grant the request for additional interrogatories would cause further injustice by allowing Defendant to simply renege upon two prior agreements, one of which was filed with the Court on August 8, 2005, and the other, confirmed by Defendant's letter agreement of August 11, 2005.

15

DEFENDANT'S ISSUE 6

Defendant requests additional time to depose Plaintiff. In his request, Defendant seeks to rewrite history. The Court originally suggested to the parties that they set aside four (4) consecutive days in which to depose, or at least depose in substantial part, Plaintiff and Defendant. Plaintiff immediately wrote to Defendant's counsel, offering three separate four-day blocks of time. (August 17, 2005, letter attached as Exhibit "F").

After Plaintiff's second request for deposition dates, Defendant responded with only three-day consecutive blocks of time. Accordingly, Plaintiff wrote on August 26, 2005, suggesting that Plaintiff's deposition would last 1-1/2 days, Defendant's deposition would immediately follow for 1-1/2 days, and "…. If either deposition is not completed, we will arrange a mutually convenient time to resume the depositions." (August 26, 2005, letter attached as Exhibit "G"). Following additional back-and-forth concerning among other things, the location of the deposition, Plaintiff again addressed this issue in her September 8, 2005 letter:

> "… Your client's deposition has been noticed for that location and we expect him to be there in accordance with the Deposition Notice. We also hope to conclude with the depositions in the day and one half allotted. **However, should either side not conclude within that time, we can determine a future date for rescheduling at the conclusion of both depositions".**

In fact, Defendant did conclude Plaintiff's deposition prior to the allotted one and one half days. Plaintiff offered to accommodate Defendant by extending the time to complete her deposition on the first day it was taken. Defendant declined. ( Pl. Dep. 9/27/05, 461,462,463, attached as Exhibit "H ")

16

On the second day of the deposition, Defendant's counsel concluded his questioning of Plaintiff at 11:52 a.m. stating, "That's all I have. Thank you." (Pl. Dep. 9/ 28/05, 601, see Exhibit "H"). Earlier, counsel claimed that there was an agreement to limit the depositions to one day and one half days (Pl. Dep. 9/28/05, 471, see Exhibit "H"); however in his letter dated September 2, 2005, counsel wrote: **"My view of the depositions is that both parties should have the ability to explore with the deponent all issues in connection with the case. I don't think we should put any time limits on it. I expect to conclude with your client within the time allotted assuming she appears for depositions as agreed on September 27 at 10:00 AM."** (O'Connor letter dated September 2, 2005, attached as Exhibit "I").

Most remarkable, however, is that Defendant's counsel obstructed Defendant's deposition so that Plaintiff could not complete her questioning . See, e.g. Plaintiff's Motion Concerning Conduct Of Defendant's Deposition And Motion For Sanctions filed November 21, 2005. Defendant should not be permitted to bring Plaintiff back from Toronto and retake Plaintiff's deposition for no apparent reason other than to harass her and to be vindictive, because he fears that he will have to reappear to complete his own.

WHEREFORE, Plaintiff prays this Honorable Court to deny Defendant's Motion.

TROIANI/KIVITZ, L.L.P.

By:

Dolores M. Troiani, Esquire
I.D. No. 21283
Bebe H. Kivitz, Esquire
I.D. No. 30253
38 North Waterloo Road
Devon, Pennsylvania 19333
(610) 688.8400

17

## CERTIFICATE OF SERVICE

I hereby certify that on,  December 5, 2005, the undersigned were served in the following

manner,  a true and correct copy of :  **Plaintiff's Reply To Defendant's Requests To Compel**

**and Memorandum Concerning Overarching Issues.**

### NAME

### MANNER

The Honorable Eduardo C. Robreno
Eastern District of Pennsylvania
U.S. Courthouse
601 Market Street, Room 2609
Philadelphia, PA  19106

Hand-Delivered

Office of the Clerk of Court
Eastern District of Pennsylvania
U.S. Courthouse
601 Market Street, Room 2609
Philadelphia, PA 19106

Hand-Delivered

Patrick J. O'Connor, Esquire
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103

Hand-Delivered

Andrew D. Schau, Esquire
Patterson Belknap Webb & Tyler, LLP
1133 Avenue of the Americas
New York, NY  10036

United States First Class Mail

TROIANI/KIVITZ, L.L.P.

By: _____

Dolores M. Troiani
Attorney I.D. No. 21283
Attorney for Plaintiff

Date: 12/5/05

**EXHIBIT "A"**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREA CONSTAND, | : |
| | : |
| Plaintiff, | : |
| | : No. 05-cv-1099 |
| v. | : |
| | : |
| WILLIAM H. COSBY, JR., | : |
| | : |
| Defendant. | : |

## JOINT REPORT OF PARTIES' PLANNING MEETING

Pursuant to Rule 26(f) and Form 35 of the Federal Rules of Civil Procedure, and in accordance with the Court's July 8, 2005 Order, the parties respectfully submit this joint report of the parties' planning meeting, on behalf of both parties.

1.     Pursuant to Federal Rule of Civil Procedure 26(f), a meeting was held on March 23, 2005 at COZEN O'CONNOR and was attended by Bebe H. Kivitz, Esquire and Dolores M. Troiani, Esquire for Plaintiff; and Patrick J. O'Connor, Esquire and John P. Schmitt, Esquire for Defendant. Since that time, the parties have communicated about the topics set forth in Rule 26(f) by letter.

2.     Pre-Discovery Disclosures.  The parties already have complied with the requirements of Federal Rule of Civil Procedure 26(a)(1).

3.     Discovery Plan.

Plaintiff seeks discovery concerning the incidents described in the Complaint and evidence that may be admissible under Federal Rule of Evidence 415 or any other applicable rule concerning allegations involving Defendant's conduct. Defendant requires discovery on all

aspects of Plaintiff's allegations, including Plaintiff's relationship with Defendant, Plaintiff's

citizenship, Plaintiff's whereabouts and activities between January 2004 and the present, and

Plaintiff's alleged injuries.

All fact discovery should be commenced in time to be completed by January 31, 2006.

Discovery may continue thereafter by agreement of the parties without Court approval, provided

that the trial will not be delayed and trial preparation not unreasonably disrupted. All expert

discovery should be commenced in time to be completed by April 30, 2006.

The parties agreed to a maximum of 50 interrogatories by each party to the other party.

The parties did not discuss limits on requests for admission or depositions.

The parties agreed that reports from retained experts under Rule 26(a)(2) would be due

from Plaintiff on February 15, 2006, and from Defendant on March 31, 2006.

4.    Other items.

The parties request a conference with the Court before entry of the scheduling order.

The parties agreed that Plaintiff shall be allowed until October 30, 2005 to amend the

Complaint or add additional defendants. Plaintiff requests that this deadline be contingent upon

Plaintiff's ability to conduct the necessary discovery, including Defendant's deposition, to make

any necessary determination regarding joinder. Defendant opposes such a contingency.

The parties agreed that all motions for summary judgment shall be filed by April 30,

2006. Responses shall be filed by May 14, 2006.

The parties agreed that pretrial memoranda, under Local Rule of Civil Procedure 16.1(c),

should be due on May 31, 2006. Proposed voir dire questions, special interrogatories, verdict

2

forms, jury instructions, and motions in limine should be due on July 15, 2006. The parties may file motions in limine in advance of that date.

Settlement is unlikely. Plaintiff remains agreeable to holding a settlement conference before the Court's magistrate judge.

The case should be ready for trial by August 1, 2006.

The parties find themselves at an impasse with respect to several discovery disputes, including the priority of depositions, the parties' objections and responses to certain interrogatories and document requests, and the number of Defendant's interrogatories. The parties ask for the Court's involvement to resolve these disputes.

Dated: August 8, 2005

Patrick J. O'Connor
George M. Gowen, III
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103
215.665.2000

Andrew D. Schau
PATERSON, BELKNAP, WEBB &TYLER, LLP
1133 Avenue of the Americas
New York, NY 10036-6710
212.336.2000

*Attorneys for Defendant*

Dolores M. Troiani
Bebe H. Kivitz
Troiani/Kivitz, L.L.P.
38 North Waterloo Road
Devon, PA 19333
610.688.8400

*Attorneys for Plaintiff*

3

# EXHIBIT "B"



# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANDREA CONSTAND,                          :
                                          :
            Plaintiff,                    :
                                          :        No. 05-cv-1099
      v.                                  :
                                          :
WILLIAM H. COSBY, JR.,                    :
                                          :
            Defendant.                    :


## DEFENDANT'S FIRST SET OF INTERROGATORIES

Pursuant to Federal Rule of Civil Procedure 33, Defendant hereby requests that Plaintiff,

Andrea Constand, answer the following interrogatories.

## DEFINITIONS AND INSTRUCTIONS

1.     The terms "you" and "your" refer to Plaintiff, Andrea Constand.

2.     The term "person" or "persons" shall mean any individual, corporation,

partnership, trust, association, company, organization, or any form of business or commercial

entity.

3.     The conjunctions "and" and "or" shall not be interpreted conjunctively to exclude

any information otherwise within the scope of any request.

## SPECIFIC INTERROGATORIES

1.     State the address of every residence you have occupied from January 1, 1990 until

the present.

2.       Identify every position of employment you have held from January 1990 until the present, including self-employment, by stating the name and address of each employer, your title(s), your salary or wage, and your dates of employment.

3.       Explain your educational and occupational training background to date, by stating the names of schools and institutions you have attended, your dates of attendance, the subjects you studied, and degrees and certifications you attempted to attain and did attain.

4.       State whether, to your knowledge, any person intercepted and recorded a conversation or conversations between Defendant and any other person, and, if so, (a) identify the person or persons who intercepted and recorded the conversation(s); (b) explain the relationship, if any, between that person or those persons and you; (c) identify the location(s) where the interception(s) and recording(s) occurred; (d) identify the person(s) with current custody of the recording(s); (e) identify the dates of the conversation(s) intercepted and recorded; (f) state the date on which you became aware of the anticipated or accomplished interception(s) and recording(s); (g) identify all other participants to the conversations other than Defendant; and (h) state who, if anyone, advised you to intercept or record the conversations.

5.       Identify all physicians, psychiatrists, therapists, healers, psychologists, counselors, and social workers from whom you have received treatment, therapy, or counseling from January 1990 through the present.  For each such person, (a) state his or her address and telephone number, (b) state the dates of all your meetings with the person, (c) state the reason for which you consulted the person, and (d) state any diagnosis or treatment you received from the person.

2

6.     State the amount of money you have expended on psychological, psychiatric, or other mental, intellectual, or emotional therapy and/or treatment, for each year from 1990 until the present.

7.     Identify, by name and rate of ingestion, all drugs you have taken, from 1990 until the present.

8.     If you have ever been accused of or charged with a violation of the law of any state or country, state the violation, the date of accusation, and the accuser.

9.     Identify the persons you referred to as Defendant's "authorized representatives and/or agents" in paragraphs 27, 30, 56, 57, 62, 63, 66, 67, 68, and 69 of your Complaint in this matter, and state with particularity every fact of which you are aware that supports your allegation that those persons were Defendant's "authorized representatives and/or agents."

10.     Identify, by name, address, and telephone number, every person to whom, between January 1, 2004 and January 13, 2005, you mentioned the facts alleged in paragraphs 9 through 25 of your Complaint in this matter.

11.     State with particularity every fact of which you aware that supports your allegation, in paragraph 50 of your Complaint in this matter, that Defendant intentionally inflicted emotional distress on you.

12.     State your date of birth.

13.     State the country or countries of which you are a citizen.

14.     State the date on which you first consulted an attorney about the facts alleged in

paragraphs 9 through 25 of your Complaint in this matter and identify the attorney consulted.

Dated: April 1, 2005

_____

Patrick J. O'Connor
George M. Gowen III
Paul K. Leary, Jr.
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA  19103
215.665.2000

*Attorneys for Defendant*

4

## CERTIFICATE OF SERVICE

I hereby certify that, on the date and in the manner indicated below, I caused a copy of

the Defendant's First Set of Interrogatories to be served upon the following counsel for Plaintiff:

VIA FACSIMILE AND FIRST CLASS MAIL

        Dolores M. Troiani
        Troiani/Kivitz, L.L.P.
        38 North Waterloo Road
        Devon, Pennsylvania  19333
        610.688.8426 (fax)

Dated: April 1, 2005

                George M. Gowen

**EXHIBIT "C"**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANDREA CONSTAND,             :
                                      :
            Plaintiff,            :
                                        :       No. 05-cv-1099
    v.                            :
                                        :
WILLIAM H. COSBY, JR.,       :
                                        :
            Defendant.       :

## DEFENDANT'S SECOND SET OF INTERROGATORIES

Pursuant to Federal Rule of Civil Procedure 33, Defendant hereby requests that Plaintiff, Andrea Constand, answer the following interrogatories.

## DEFINITIONS AND INSTRUCTIONS

1.      The terms "you" and "your" refer to Plaintiff, Andrea Constand, and her agents, employees, and representatives, including, but not limited, to attorneys and investigators.

2.      The term "person" or "persons" shall mean any individual, corporation, partnership, trust, association, company, organization, or any form of business or commercial entity.

3.      The terms "Jane Doe 1," "Jane Doe 2," etc. refer to those persons identified by Plaintiff as "Jane Doe 1," "Jane Doe 2," etc. in a June 8, 2005 letter from her counsel to Defendant's counsel, and those terms include each of the "Jane Does'" agents, employees, and representatives, including, but not limited, their attorneys and investigators.

4.      The term "Tamara Lucier Green" refers to the Tamara Lucier Green identified by Plaintiff in a June 8, 2005 letter from her counsel to Defendant's counsel and includes Ms. Green's agents, employees, and representatives, including, but not limited, to her attorneys and investigators.

5.      The phrase "facts and/or allegations known to you" includes facts and/or allegations that you are aware of, even if you do not necessarily "know" them to be true.

6.      The conjunctions "and" and "or" shall not be interpreted conjunctively to exclude any information otherwise within the scope of any request.

## SPECIFIC INTERROGATORIES

1.      Describe in detail all facts and/or allegations known to you that relate to Defendant's alleged sexual contacts with Jane Doe Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12 or Tamara Lucier Green.

2.      Describe in detail all facts and/or allegations known to you that relate to Defendant's alleged provision of drugs or alcohol to Jane Doe Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12 or Tamara Lucier Green.

3.      Describe in detail all facts and/or allegations known to you that relate to Defendant's alleged relationship with Jane Doe Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12 or Tamara Lucier Green.

4.      For each of Jane Doe Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12 and Tamara Lucier Green, state:  (a) when you first had contact with the Jane Doe or Ms. Green, (b) who initiated the contact; (c) how the contact was made; (d) the identification of any documents that evidence

2

or reflect the contact, and (e) the content or substance of any agreement or understanding you

reached with the Jane Doe or Ms. Green concerning her testimony.

Dated: July 19, 2005

Patrick J. O'Connor
George M. Gowen III
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103
215.665.2000

Andrew D. Schau
PATTERSON, BELKNAP,
  WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
212.336.2000

3

## CERTIFICATE OF SERVICE

I hereby certify that, on the date and in the manner indicated below, I caused a copy of

the Defendant's Second Set of Interrogatories to be served upon the following counsel for

Plaintiff:

### VIA FIRST CLASS MAIL

Dolores Troiani
Troiani/Kivitz, L.L.P.
38 North Waterloo Road
Devon, Pennsylvania  19333
610.688.8426 (fax)

Dated: July 19, 2005

Patrick J. O'Connor

**EXHIBIT "D"**

TROIANI/KIVITZ, L.L.P.                              Attorneys for Plaintiff
Bebe H. Kivitz, Esquire
I.D. No.: 30253
Dolores M. Troiani, Esquire
I.D. No.: 21283
38 North Waterloo Road
Devon, PA 19333
(610) 688-8400

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREA CONSTAND, | : |
|      Plaintiff | : CIVIL ACTION |
| | : |
|      v. | : NO. 05-CV-1099 |
| | : |
| WILLIAM H. COSBY, JR., | : |
|      Defendant | : |

**PLAINTIFF'S OBJECTIONS TO DEFENDANT'S SECOND SET
OF INTERROGATORIES**

General Objection

Plaintiff objects to Defendant's Second Set of Interrogatories to the extent that each

interrogatory contains thirteen subparts, therefore totaling 52 interrogatories, which, added to

Defendant's First Set of Interrogatories (to which Plaintiff has previously responded) exceed the

fifty (50) interrogatory limit which has been agreed to by the parties. Plaintiff objects further to

the extent that this information, as to the majority of the Jane Doe witnesses, is equally available

to Defendant insofar as the information is contained within the Montgomery County District

Attorney's Office file or has been published by the media. Plaintiff objects further on grounds of

relevance; that the requests are overly broad; to the extent that the information sought is not

reasonably calculated to lead to the discovery of admissible evidence, the requests are invasive

of the witnesses' privacy or violative of other legal privileges; call for attorney work product, or

are intended to be vexatious or harassing. Without waiving objection, Jane Doe #8 has

withdrawn as a witness, and therefore, Plaintiff will provide information, to the extent not already known or equally available to Defendant, as to the other witnesses, at such time as the responses are served.

Specific Objections

1.     Plaintiff objects to this interrogatory to the extent that it is overly broad, and to the extent that it seeks information which is not relevant and not likely to lead to the discovery of admissible information. Plaintiff objects further to the extent that the information sought is equally available to Defendant.

2.     Plaintiff objects to this interrogatory to the extent that it is overly broad, and to the extent that it seeks information which is not relevant and not likely to lead to the discovery of admissible information. Plaintiff objects further to the extent that the information sought is equally available to Defendant.

3.     Plaintiff objects to this interrogatory on the ground that it is vague and incomprehensible, on the ground of relevance, privilege, and to the extent that it is overly broad, invasive of privacy, and seeks information not likely to lead to the discovery of admissible evidence. Plaintiff objects further to the extent that the information sought is equally available to Defendant.

4.     Plaintiff objects to this interrogatory on the grounds of relevance, that is vague and incomprehensible, to the extent that it is overly broad, invasive of privacy, and seeks information not likely to lead to the discovery of admissible evidence. Plaintiff objects further on

grounds of attorney work product, privilege, and to the extent that the information sought is equally available to Defendant.

Troiani/Kivitz, L.L.P.


Bebe H. Kivitz, Esquire
Dolores M. Troiani, Esquire
**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

I hereby certify that on the date indicated below the undersigned served via U.S. First-

Class mail, postage prepaid, a true and correct copy of Plaintiff's Objections to Defendant's

Second Set of Interrogatories, on the following:

Patrick J. O'Connor, Esquire
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103

Andrew D. Schau, Esquire
Patterson Belknap Webb & Tyler, LLP
1133 Avenue of the Americas
New York, NY 10036

TROIANI/KIVITZ, L.L.P.


Bebe H. Kivitz, Esquire
Dolores M. Troiani, Esquire
Attorneys for Plaintiff

Date: August 5, 2005

**EXHIBIT "E"**



PHILADELPHIA
ATLANTA
CHARLOTTE
CHERRY HILL
CHICAGO
DALLAS
DENVER
HOUSTON
LAS VEGAS
LONDON
LOS ANGELES

**COZEN**
**O'CONNOR**
ATTORNEYS

NEW YORK
NEWARK
SAN DIEGO
SAN FRANCISCO
SEATTLE
TRENTON
WASHINGTON, DC
WEST CONSHOHOCKEN
WICHITA
WILMINGTON

A PROFESSIONAL CORPORATION

1900 MARKET STREET    PHILADELPHIA, PA 19103-3508    215.665.2000    800.523.2900    215.665.2013 FAX    www.cozen.com

August 11, 2005

**VIA FACSIMILE**

**Patrick J. O'Connor**
Direct Phone 215.665.2024
Direct Fax    215.665.3701
poconnor@cozen.com

Dolores M. Troiani, Esquire
Troiani/Kivitz, L.L.P.
38 North Waterloo Road
Devon, PA 19333

Re:    Constand v. Cosby

Dear Dolores:

We received Plaintiff's Objections to Defendant's Second Set of Interrogatories. The objections are meritless.

First, Plaintiff objects to the Second Set of Interrogatories on the basis that they, counting their "subparts" as separate interrogatories, exceed the 50 interrogatory limit agreed to by the parties. We disagree with Plaintiff's interpretation that these interrogatories contain discrete subparts. Even if this objection were valid, however, Plaintiff has an obligation to answer up to 50 interrogatories. Plaintiff answered none.

To eliminate this dispute, and for that purpose accepting Plaintiff's objection, we withdraw the four "subparts" relating to Jane Doe No. 8. We also withdraw Interrogatory 4 in its entirety.

Plaintiff's other objections are groundless. Unless Plaintiff is willing to stipulate that any alleged relationship, including the alleged provision of drugs or alcohol, between Defendant and the Rule 415 witnesses is irrelevant, there is no basis to object to these interrogatories on the grounds of irrelevance. Nor can we accept, without explanation, Plaintiff's blunt objections that the interrogatories are overly broad and seek information Defendant already knows.

Please answer Interrogatories Nos. 1, 2, and 3, except with respect to Jane Doe. No. 8,

Dolores Troiani, Esquire
August 11, 2005
Page 2

---

promptly.  If you do not, we will move to compel you to do so.


Very truly yours,

COZEN O'CONNOR

PATRICK J. O'CONNOR

PJOC:jk

cc:     Andrew D. Schau, Esq.

**EXHIBIT "F"**

# TROIANI/KIVITZ, L.L.P.

———————————— ATTORNEYS AT LAW ————————————

DOLORES M. TROIANI, ESQUIRE
BEBE H. KIVITZ, ESQUIRE

38 NORTH WATERLOO ROAD
DEVON, PA 19333

(610) 688-8400
FAX (610) 688-8426

VIA FACSIMILE AND REGULAR MAIL
August 17, 2005

Patrick J. O'Connor, Esquire
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103

      RE:    Constand v. Cosby, No. 05-CV-1099

Dear Pat:

We can block out the following periods in which to hold Plaintiff's deposition, followed immediately by Defendant's:

September 20, 21, 22, 23;

September 27, 28, 29, 30;
          or
October 10, 11, 13, 14.

Additionally, I am enclosing another copy of our June 29, 2005 correspondence concerning Defendant's discovery responses. Consistent with our telephone conference today, please advise.

Very truly yours,

Bebe H. Kivitz

Encl.
cc:   Andrew D. Schau, Esquire (w/ encl.)
      Andrea Constand (w/ encl.)

# EXHIBIT "G"

August 26, 2005

Patrick J. O'Connor, Esquire
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103

      RE:   Constand v. Cosby, No. 05-CV-1099

Dear Patrick:

      Ms. Constand is available on September 27 through 29. In that the Court suggested that we block out two (2) days each for both Plaintiff's and Defendant's deposition and it appears that your availability is for three (3) days, we propose that Plaintiff's deposition occur from September 27 at 9:30 a.m. until no later than noon on September 28. We will then begin Defendant's deposition at 1:30 p.m. and proceed until close of business on September 29. If either deposition is not completed, we will arrange a mutually convenient time to resume the depositions.

      Bearing in mind the Court's admonition about turning trivial matters into federal cases, if this arrangement is not acceptable, we will need to address the logistics with Judge Robreno. Your prompt response would be appreciated.

                         Very truly yours,

                         Dolores M. Troiani

VIA FACSIMILE-ORIGINAL TO FOLLOW
cc:   Andrew D. Schau, Esquire
       Andrea Constand

**EXHIBIT "H"**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

- - -

ANDREA E. CONSTAND,          :
              Plaintiff      : CIVIL ACTION
                             :
         v.                  : NO. 05-CV-1099
                             :
WILLIAM H. COSBY,            : JURY TRIAL DEMANDED
JR.,                         :
              Defendant



- - -

September 27, 2005

- - -

Deposition of ANDREA E. CONSTAND,
held at the Rittenhouse Hotel, 210 West
Rittenhouse Square, Philadelphia,
Pennsylvania 19103, commencing at 9:29
a.m., on the above date, before Linda L.
Golkow, a Federally-Approved Registered
Diplomate Reporter and Certified
Shorthand Reporter.

- - -

LINDA L. GOLKOW, RDR, CRR
1880 John F. Kennedy Boulevard
15th Floor
Philadelphia, Pennsylvania   19103
(215) 988-9191

Andrea E. Constand

Page 461

you or touched you that he touched any

part of your genitalia or pubic area,

physically touched it?

      A.    No.  No, he did not.

      Q.    Were you wearing underwear?

      A.    Yes, I was wearing

underwear.

      MR. O'CONNOR:  Okay.  I

      think this is a good place to

      stop.

      MS. KIVITZ:  You can go

      further if you want.

      MR. O'CONNOR:  I know.

      MS. KIVITZ:  Indicating that

      it is quarter of six, and

      plaintiffs agree that Mr. O'Connor

      could continue to question later,

      if he chose to, in order to

      complete plaintiff's deposition

      as --

      MR. O'CONNOR:  You could

      have gone further, Mrs. Constand?

      You're okay?  You're fine here;

      right?

Andrea E. Constand

Page 462

        THE WITNESS:   Yes.

        MR. O'CONNOR:   I want that

on the record.

BY MR. O'CONNOR:

        Q.      You're feeling okay; right?

        A.      I'm feeling okay.

        MS. KIVITZ:   I've indicated

we'll continue.

        MR. O'CONNOR:   No.  I want

at the end of the day not to hear

she's not.

BY MR. O'CONNOR:

        Q.      You felt okay during this

entire line of questioning, did you not?

        A.      Yes.

        Q.      Okay.

        You think I've been fair,

have you not?

        MS. KIVITZ:   Objection.

    Don't answer.   Objection.

        MR. O'CONNOR:   All right.

        MS. KIVITZ:   In addition to

offering Mr. O'Connor additional

time tonight, we've agreed to

Andrea E. Constand

Page 463

start earlier tomorrow morning in
order to complete plaintiff's
deposition by 12:30 -- 12:00,
actually, as originally agreed,
and if you change your mind and
you want us to come at 8:00 or
8:30 or 9:00, let me know.

　　　　MR. O'CONNOR:   Let me have
your cell number.

　　　　　　　-   -   -

　　　　(Whereupon, the deposition
adjourned at 5:48 p.m.)

　　　　　　　-   -   -

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

- - -

| | | |
|---|---|---|
| ANDREA E. CONSTAND, | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 05-CV-1099 |
| | : | |
| WILLIAM H. COSBY, | : | JURY TRIAL DEMANDED |
| JR., | : | |
| Defendant | | |

- - -

September 28, 2005

- - -

Deposition of ANDREA E. CONSTAND, held at
the Rittenhouse, 210 West Rittenhouse
Square, Philadelphia, Pennsylvania 19103,
commencing at 9:30 a.m., on the above
date, before Linda L. Golkow, a
Federally-Approved Registered Diplomate
Reporter and Certified Shorthand
Reporter.

COPY

- - -

LINDA L. GOLKOW, RDR, CRR
1880 John F. Kennedy Boulevard
15th Floor
Philadelphia, Pennsylvania  19103
(215) 988-9191

Andrea E. Constand

Page 472

the afternoon.

    MS. KIVITZ:  For a day-and-a-half?

    MR. O'CONNOR:  I'm going to finish with her this morning.

    MS. KIVITZ:  You are not going to assert the limitation, the seven-hour durational limitation for Mr. Cosby?

    MR. O'CONNOR:  I'm going to assert the day-and-a-half limitation that we put on it.

    MS. KIVITZ:  We didn't put a day-and-a-half limitation on it.

    MR. O'CONNOR:  We'll get to it.  If I think you're dragging, I'm going to stop the deposition, I'm going to send Mr. Cosby home, and we'll go to The Court.  But I'm hoping we do this in good faith.  We certainly intend to do it in good faith.  I will finish this morning.

    MS. KIVITZ:  Right.

Andrea E. Constand

Page 601

1   schedule, if I was traveling, if I was

2   with the team, how demanding my hours

3   were with couch Staley and the team.  So,

4   it really was very sporadic.  So, I may

5   have gone a week or two weeks without

6   talking to a friend and then pick up and

7   talk to them two or three times a day.

8           MR. O'CONNOR:  That's all I

9       have.  Thank you.

10          MR. GOWEN:  No questions

11      from you?

12          MS. KIVITZ:  No questions.

13          MR. GOWEN:  Ms. Constand and

14      counsel, I'm George Gowen for the

15      defendant.  Upon agreement between

16      counsel, we'll be adding a page to

17      Exhibit 8 that was missing as a

18      result of a photocopying error.

19      Everyone is aware of it.  The

20      original exhibit will include the

21      missing page from yesterday.

22          MR. O'CONNOR:  What is that

23      missing page?  Just identify it

24      for the record.

Page 602

1          MR. GOWEN:  The missing page

2    is Bates labeled CPD0519.

3          MS. KIVITZ:  No objection.

4          MR. O'CONNOR:  I did go over

5    that.

6          MS. KIVITZ:  You were the

7    only one who had the map.

8    Everyone else had a diagram of the

9    house.

10          MR. O'CONNOR:  Thank you.

11              -   -   -

12          (Whereupon, the deposition

13    concluded at 11:52 a.m.)

14              -   -   -

15

16

17

18

19

20

21

22

23

24

**EXHIBIT "I"**

PHILADELPHIA
ATLANTA
CHARLOTTE
CHERRY HILL
CHICAGO
DALLAS
DENVER
HOUSTON
LAS VEGAS
LONDON
LOS ANGELES



**COZEN**
**O'CONNOR**
ATTORNEYS

NEW YORK
NEWARK
SAN DIEGO
SAN FRANCISCO
SEATTLE
TRENTON
WASHINGTON, DC
WEST CONSHOHOCKEN
WICHITA
WILMINGTON

A PROFESSIONAL CORPORATION

1900 MARKET STREET   PHILADELPHIA, PA 19103-3508   215.665.2000   800.523.2900   215.665.2013 FAX   www.cozen.com

**Patrick J. O'Connor**
Direct Phone   215.665.2024
Direct Fax       215.665.3701
poconnor@cozen.com

September 2, 2005

Dolores M. Troiani, Esquire
Troiani/Kivitz, LLP
38 North Waterloo Road
Devon, PA 19333

      Re:    Constand v. Cosby

Dear Dolores:

      I have your notice of oral deposition for Mr. Cosby. I have no problem with the date and time assuming that we commence the deposition of your client on Tuesday, the 27th. That deposition will be in our office. It would make sense if we also depose Mr. Cosby in this office. I am concerned about the publicity that may be generated by these depositions although we have no intention of letting the press know of the deposition dates. I assume you have a similar view. Let me know if you would be willing to have the depositions taken here.

      My view of the depositions is that both parties should have the ability to explore with the deponent all issues in connection with the case. I don't think we should put any time limits on it. I expect to conclude with your client within the time allotted assuming she appears for depositions as agreed on September 27 at 10:00 AM.

                Very truly yours,

                COZEN O'CONNOR

                By:    Patrick J. O'Connor

PJOC