

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDREA CONSTAND, | : | |
| | : | |
| Plaintiff, | : | |
| | : | No. 05-cv-1099 |
| v. | : | |
| | : | |
| WILLIAM H. COSBY, JR., | : | **FILED UNDER SEAL** |
| | : | |
| Defendant. | : | |

## DEFENDANT'S RESPONSES TO PLAINTIFF'S MOTION TO COMPEL
## AND MEMORANDUM CONCERNING OVERARCHING ISSUES

Pursuant to the Court's November 4, 2005 Order, Defendant submits these separately numbered responses to Plaintiff's motion to compel. Defendant also submits this memorandum concerning the overarching issue presented by Plaintiff's motion: Plaintiff's desire to conduct a broad-based fishing expedition into the most private areas of Defendant's life.

As in any case, the scope of discovery in this case is framed by the Complaint and the Answer. This case concerns whether or not Defendant tricked Plaintiff into ingesting a drug, which made her semi-conscious and unable to move her body or speak, and then sexually assaulted her. The case also concerns whether Defendant defamed Plaintiff after Plaintiff filed criminal charges against Defendant. Plaintiff has identified several women who may seek to testify about sexual encounters with Defendant (the "Rule 415 witnesses"). Thus, to an uncertain extent, the case also may concern the truth or falsity of the Rule 415 witnesses' proposed testimony.

Plaintiff is not satisfied to limit discovery to these issues. Rather, Plaintiff has embarked on, and now asks to continue, a limitless, speculative inquiry into Defendant's personal life,

including his consensual sex life, his personal financial affairs, and his medical history. For

example, unsatisfied with asking Defendant whether he offered money to Plaintiff or any of the

Rule 415 witnesses, Plaintiff seeks to ask, "Had you ever sent money to any other female who

you believe you had a consenting relationship with?" and "[H]ave you ever offered an

educational trust to any woman with whom you've had a consensual sexual relationship with?"

(Pl.'s Mot. at Question 6, 31.) Not content to ask Defendant about his relationships with Plaintiff

and any of the Rule 415 witnesses, Plaintiff wants to know, generally, "were you also having

relationships with other women?" (Id. at Question 17.) Even though Defendant testified at

length about the drugs to which he had access at the time of Plaintiff's alleged assault, Plaintiff

also seeks to conduct a broad examination of Defendant's medical history and physical

condition. (Id. at Question 39, 40.) Defendant explained whether he gave drugs or alcohol to

Plaintiff or the Rule 415 witnesses, but Plaintiff also wants to know whether he gave drugs to

anyone else. (Id. at Question 2–4, 8.) Plaintiff openly admits that she asks these questions in the

vague hope of finding "additional Rule 415 witnesses" and "other defendants."

     The Federal Rules of Civil Procedure do not permit such an abuse of discovery. Rule

26(b)(1) was amended in 2000 and now provides in pertinent part:

> Parties may obtain discovery regarding any matter, not privileged,
> that is relevant to the claim or defense of any party . . . . For good
> cause, the court may order discovery of any matter relevant to the
> subject matter involved in the action. Relevant information need
> not be admissible at the trial if the discovery appears reasonably
> calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). The 2000 Amendments, while not intended to alter dramatically the

scope of discovery, were intended to make it "narrower than it was, in some meaningful way."

Surles v. Air France, No. 00 Civ. 5004, 2001 WL 1142231, at *1 n.3 (S.D.N.Y. Sept. 27, 2001)

(internal quotations omitted). The Advisory Committee explained that the amendments were

designed to "focus [discovery] on the actual claims and defenses involved in the action," and "[w]hen judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action." Fed. R. Civ. P. 26(b)(1) Advisory Committee Notes to 2000 Amendments. "The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." Id.

Even before the 2000 Amendments, courts did not allow discovery "based on pure speculation that amount[s] to nothing more than a "fishing expedition" into actions or past wrongdoing not related to the alleged claims or defenses. See Tottenham v. Trans World Gaming Corp., No. 00 Civ. 7697, 2002 WL 1967023, at *2 (S.D.N.Y. June 21, 2002); Surles, 2001 WL 815522, at *4 (stating that, even under unamended version of Rule 26(b)(1), courts "would routinely decline to authorize fishing expeditions"). Discovery is "not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support." Cleveland-Goins v. City of New York, No. 99 Civ. 1109, 1999 WL 673343, at * 2 (S.D.N.Y. Aug. 30, 1999); see also Shellenberger v. Chubb Life America, Civil Action No. 95-4514, 1996 WL 92092, at *3 (E.D. Pa. Feb. 29, 1996) (disallowing discovery "based on pure speculation" and noting that "discovery is not a fishing expedition").

Speculative, baseless discovery is all the more improper where "the requested discovery is of a highly personal nature." Fitzpatrick v. QVC, Inc., Civil Action No. 98-3815, 1999 WL 1215577, at *3 (E.D. Pa. Dec. 7, 1999). Sexual conduct is "the most private of human conduct." Lawrence v. Texas, 539 U.S. 558, 567 (2003). Individuals have a constitutional right of privacy

3

in their medical records. Whalen v. Roe, 429 U.S. 589, 602 (1977). Financial information is also particularly private. Fraternal Order of Police, Lodge No. 5. v. City of Philadelphia, 812 F.2d 105, 115 (3d Cir. 1987). Indeed, the rules do not permit depositions that unreasonably "annoy, embarrass, or oppress" the deponent. Fed. R. Civ. P. 30(d)(4).

Plaintiff wants to embark on just such a speculative "fishing expedition" into the protected areas of Defendant's private life (and, necessarily, the protected areas of *other* person's lives). She makes no secret that she seeks not only evidence about the Rule 415 witnesses who have come forward, but she also seeks to "fish" for any other potential Rule 415 witnesses, as to whom there is no reason to think they even exist. For this reason, Plaintiff admits that she seeks to take broad discovery of "Defendant's conduct with other women, with whom he had/has a relationship of a sexual nature" and of "his conduct with other individuals, with whom he has had a business relationship." Plaintiff offers nothing more than speculation, however, that such discovery will lead to relevant evidence.

Apparently, Plaintiff believes that, because Rule 415 provides for the admission of "prior bad act" evidence, it changes the rules of discovery and allows her to learn everything about Defendant's prior actions and relationships. If so, Plaintiff is mistaken. Rule 415 did not change the scope of discovery. "Prior bad acts" are admissible in all cases, under Rule 404. Thus, even in non-sexual assault cases, parties may take discovery concerning "prior bad acts." Such discovery, however, like all discovery, must stem from a good faith, concrete basis, and not a speculative hope. See Tottenham v. Trans World Gaming Corp., No. 00 Civ. 7697, 2002 WL 1967023, at *2 (S.D.N.Y. June 21, 2002) (holding that discovery may not be used as a "fishing expedition to discover additional instances of wrongdoing beyond those already alleged"); see also PMC, Inc. v. Ferro Corp., 131 F.R.D. 184, 185 n.1 (C.D. Cal. 1990) ("The Court is not

persuaded that the mere existence of Rule 404(b) warrants a fishing expedition for uncharged fraud."). Thus, Plaintiff may not use Defendant's deposition as a "treasure hunt" for "prior bad acts," sexual or otherwise.

In any case, parties are entitled to shield their personal lives from unnecessary examination. The invasion threatened by Plaintiff's proposed discovery, however, is even greater in this case. Media attention to this case is acute. Moreover, Plaintiff openly has admitted her desire to use discovery to "clear her name" in the court of public opinion, prior to trial. Plaintiff has steadfastly refused to enter into any form of confidentiality agreement with Defendant. Indeed, since Plaintiff took Defendant's deposition, she has strained to put the transcript in the public record. Ms. Troiani even threatened Defendant with publicity at his deposition. (See Def.'s Dep., 9/28/05, at 102 ("What's going to happen is we're going to file a motion with the court and attach this deposition.").) Plaintiff then filed a 62-page memorandum in support of a motion for sanctions, quoting verbatim over 50 pages of the transcript. Thus, whatever questions Defendant were to answer at his deposition, no matter how irrelevant or prejudicial, he can be certain that Plaintiff would do everything in her power to reveal that testimony to the public. While any litigant should be protected from unnecessary examination, this particular case presents little margin for error.

Accordingly, Defendant's deposition should strictly be limited to questions reasonably calculated to lead to relevant, admissible evidence. He has testified at length about his relationship with Plaintiff. He answered all questions posed about the Rule 415 witnesses. He explained his agreement and interview with the *National Enquirer*. He explained the extent to which his agents and affiliates were involved in his interactions with Plaintiff, her mother, and any of the Rule 415 witnesses. He identified the drugs that he possessed and had access to

5

during his relationship with Plaintiff.  In short, Defendant answered every question reasonably related to the claims and defenses framed by the Amended Complaint and Answer.  Plaintiff is not entitled to more.

## PLAINTIFF'S QUESTION 1

Plaintiff's Question 1—"Who are the people that you gave the Quaaludes to?—is a perfect example of the open-ended, irrelevant, yet invasive discovery Plaintiff seeks to conduct into Defendant's personal life. Indeed, in one, single-spaced page, Plaintiff's only statement concerning the relevance of Question One is that testimony "about those with whom [Defendant] shares drugs may lead to evidence as to what it was that he gave Plaintiff." Plaintiff does not explain further, and for good reason. The only connection between Quaaludes and this case is that two of the Rule 415 witnesses, Theresa Serignese and Pat Steuer Leary, allegedly say that they knowingly took Quaaludes offered to them by Defendant in the late 1970's. Defendant answered every question Ms. Troiani posed about those women. In addition, he explained whether he ever gave Plaintiff or any of the Rule 415 witnesses any drug, with or without her knowledge. He also testified that he did not have Quaaludes in his possession during the time he knew Plaintiff. (See Def.'s Dep., 9/29/05, at 62.) Going farther would be unnecessary, yet quite invasive of both Defendant's and third-parties' privacy. See Shellenberger v. Chubb Life America, Civil Action No. 95-4514, 1996 WL 92092, at *3 (E.D. Pa. Feb. 29, 1996) (disallowing discovery "based on pure speculation" and noting that "discovery is not a fishing expedition").

## **PLAINTIFF'S QUESTION 2**

This question mischaracterizes the testimony.  Plaintiff leaves out the testimony that preceded and followed the passage she quotes, which shows that Defendant misunderstood the question and thought Ms. Troiani was asking only about Theresa Serignese.  (See Def.'s Dep., 9/29/05, at 71–72.)  In any event, again, Defendant should not be required to answer speculative questions about his and other people's general experiences with Quaaludes.  See Shellenberger v. Chubb Life America, Civil Action No. 95-4514, 1996 WL 92092, at *3 (E.D. Pa. Feb. 29, 1996) (disallowing discovery "based on pure speculation" and noting that "discovery is not a fishing expedition").

## **PLAINTIFF'S QUESTION 3**

Defendant incorporates his response to Question 1.

## **PLAINTIFF'S QUESTION 4**

Defendant incorporates his response to Question 1.  Plaintiff argues only that Question 4 is "aimed at developing evidence," which proves its speculative nature.  Plaintiff must offer some good faith basis before inquiring into Defendant's social life in the vague hope of finding more "prior bad act" evidence under Rule 404(b) and Rule 415.  See Shellenberger v. Chubb Life America, Civil Action No. 95-4514, 1996 WL 92092, at *3 (E.D. Pa. Feb. 29, 1996) (disallowing discovery "based on pure speculation" and noting that "discovery is not a fishing expedition").

10

## PLAINTIFF'S QUESTION 5

Question 5 introduces a second area of Defendant's private life in which Plaintiff seeks to "fish"—his relationship with the William Morris talent agency. Defendant testified that an employee of the William Morris agency helped him in his interactions with Rule 415 witness Theresa Serignese. He also testified that he asked a different employee of the agency to set up a meeting with Plaintiff and her mother. Plaintiff, however, wants to know, generally, whether Defendant has used the William Morris agency to "send funds" to any other person. Moreover, she admits in her motion that the inquiry is purely speculative: "It is believed that this line of questioning will leads to relevant information concerning other Jane Does . . . ." Defendant answered every question posed about Plaintiff and the Rule 415 witnesses, including whether he offered them money, and whether the William Morris agency was involved. Without more than speculation, Plaintiff is not entitled to more, especially about Defendant's personal finances and business practices. See Shellenberger v. Chubb Life America, Civil Action No. 95-4514, 1996 WL 92092, at *3 (E.D. Pa. Feb. 29, 1996) (disallowing discovery "based on pure speculation" and noting that "discovery is not a fishing expedition"); Fraternal Order of Police, Lodge No. 5. v. City of Philadelphia, 812 F.2d 105, 115 (3d Cir. 1987) (recognizing a privacy interest in personal financial information).

## **PLAINTIFF'S QUESTION 6**

Question 6—"Had you ever sent money to any other female who you believe you had a consenting relationship with?"—is irrelevant and speculative on its face. Defendant's consensual relationships are obviously irrelevant. Plaintiff's only argument is that she "is not required to accept defendant's characterization of the relationship as consensual." In other words, Plaintiff hopes to learn the names of any woman with whom Defendant may have had a consensual sexual relationship with, *and then approach these woman to find out for herself whether that woman agrees that the relationship was truly consensual.* She admits as much: "It is submitted that this question is . . . directed at the discovery of additional Rule 415 witnesses." The inquiry, however, would invade Defendant's privacy and potentially invade the privacy of third parties. Without some basis, and without more than the mere hope that additional relevant evidence exists, Plaintiff is not entitled to pry into the personal lives of others. Rule 415 does not give Plaintiff license to know everything about Defendant and those he knows. See Shellenberger v. Chubb Life America, Civil Action No. 95-4514, 1996 WL 92092, at \*3 (E.D. Pa. Feb. 29, 1996) (disallowing discovery "based on pure speculation" and noting that "discovery is not a fishing expedition"); Fitzpatrick v. QVC, Inc., Civil Action No. 98-3815, 1999 WL 1215577, at \*3 (E.D. Pa. Dec. 7, 1999) (holding that speculative discovery is all the more improper where "the requested discovery is of a highly personal nature"); Lawrence v. Texas, 539 U.S. 558, 567 (2003) (recognizing that sexual conduct is "the most private of human conduct").

## **PLAINTIFF'S QUESTION 7**

Question 7 makes little sense.  Defendant was willing to answer questions about the persons whom Plaintiff named in her initial disclosures as having relevant information.  If Plaintiff knows other people who have made allegations that she considers relevant, then further questioning would constitute unfair surprise (and a violation of Plaintiff's Rule 26 disclosure obligations).

## **PLAINTIFF'S QUESTION 8**

Defendant agrees that the identity of the drug he offered to Plaintiff is relevant.  He also recognizes that Plaintiff suspects that the drug was not Benadryl®.  Accordingly, Defendant answered every question posed by Ms. Troiani about all of the prescription, over-the-counter, and homeopathic drugs that he had in his possession and had access to around the time of the night in question.  Whether Defendant has *ever* obtained any other drugs, at any other time, does not tend to prove or disprove that the drug he gave Plaintiff was Benadryl®.  Nor is the question likely to lead to evidence that would bear on that issue.

## **PLAINTIFF'S QUESTION 9**

Question 9 misstates the testimony. During the *first* day of Defendant's deposition, he testified at length about the doctors he has seen in the last five years and what, if any, drugs and supplements he has received from them. (See Def.'s Dep., 9/28/05, at 31–46, 75–89.) Indeed, Defendant's counsel stated, "You have a right to know what medicines he was obtaining from his physicians that may be related to this case during this time frame." (Id. at 39.) On the second day, Plaintiff asked Question 9. Defendant's counsel instructed him not to answer, based on the lengthy testimony from the previous day. In short, Plaintiff fails to mention that Question 9 already has been answered.

## PLAINTIFF'S QUESTION 10

Question 10 also misstates the deposition transcript.  Defendant did not refuse to answer

Question 10.  Rather, after his counsel interjected to seek a clarification of the question, Ms.

Troiani asked a different question.  In any event, Question 10 is irrelevant, because Defendant

testified that he no longer possessed Quaaludes as of November 2002.  (See Def.'s Dep., 9/29/05,

at 61–62.)  Plaintiff does not argue that the question is relevant to any issue other than the

identity of the drug Defendant gave her.

## **PLAINTIFF'S QUESTION 11**

Question 11 is irrelevant, especially given the testimony Defendant already has provided. Defendant testified that he offered Quaaludes to Theresa Serignese, and that she knowingly took them. (See Def.'s Dep., 9/29/05, at 53, 58–59.) He explained where he got the Quaaludes and why. (Id. at 63–66.) He testified that he did not give Quaaludes to Plaintiff and that he has not possessed Quaaludes since at least the time he met her. (Id. at 61–62; Def.'s Dep., 9/28/05, at 58–59, 69–70.) Plaintiff does not to need to know more.

## **PLAINTIFF'S QUESTION 12**

Defendant is willing to answer this question, if it is connected to any allegations made by Plaintiff or the Rule 415 witnesses.

## PLAINTIFF'S QUESTION 13

Defendant incorporates his response to Question 12.

## **PLAINTIFF'S QUESTION 14**

Question 14 omits critical context which demonstrates that an answer is unnecessary and impossible.  Defendant testified that he does not remember Rebecca Cooper Neal and does not remember the incident that she apparently described to the police, or any similar incident.  (<u>See</u> Def.'s Dep., 9/29/05, at 101–108.)  He testified that he knows of no reason why Ms. Neal would fabricate such a story.  (<u>Id.</u> at 108.)  Plaintiff does not need an answer to Question 14, and Defendant cannot provide one.

## **PLAINTIFF'S QUESTION 15**

Defendant already answered Question 15.  (See Def.'s Dep., 9/29/05, at 113.)

## PLAINTIFF'S QUESTION 16

Defendant's counsel did not instruct him not to answer Question 16.  Indeed, Defendant

answered Question 16.  (See Def.'s Dep., 9/29/05, at 118.)  Plaintiff omitted the answer from her

quotation of the deposition.

## PLAINTIFF'S QUESTION 17

Question 17 epitomizes Plaintiff's "fishing expedition." She seeks to know, generally, whether Defendant had any "relationships with other women." The only argument she offers in support of the question is that "[t]his question is aimed at discovery of other Rule 415 witnesses." In other words, the question is an exercise in speculation. The existence of Rule 415 does not provide Plaintiff with license to explore all of Defendant's relationships. See Shellenberger v. Chubb Life America, Civil Action No. 95-4514, 1996 WL 92092, at *3 (E.D. Pa. Feb. 29, 1996) (disallowing discovery "based on pure speculation" and noting that "discovery is not a fishing expedition"); Fitzpatrick v. QVC, Inc., Civil Action No. 98-3815, 1999 WL 1215577, at *3 (E.D. Pa. Dec. 7, 1999) (holding that speculative discovery is all the more improper where "the requested discovery is of a highly personal nature"); Lawrence v. Texas, 539 U.S. 558, 567 (2003) (recognizing that sexual conduct is "the most private of human conduct").

## **PLAINTIFF'S QUESTION 18**

Again, Plaintiff misstates the record and omits that Defendant already answered Question

18.  (See Def.'s Dep., 9/29/05, at 128–29.)  That was the basis of his counsel's objection when

Ms. Troiani asked him the same question, as reflected on the pages cited by Plaintiff.  (See id. at

144–46.)  Nevertheless, as Plaintiff concedes, Defendant answered the question again.  (See id.

at 146.)  Plaintiff's argument that she should be able to ask the question a third time, without any

objections from counsel, is meritless.

## PLAINTIFF'S QUESTION 19

Question 19 concerns a conversation between Defendant and one of his attorneys, for the purpose of securing legal advice.  Even accepting Plaintiff's unexplained assumption that Pennsylvania's attorney-client privilege law would apply to a conversation between Defendant and his California attorney, Plaintiff's view of the law is wrong.

> It should be noted that the law makes no distinction between communications made by a client and those made by an attorney, provided the communications are for the purpose of securing legal advice . . . . In other words, the entire discussion between a client and an attorney undertaken to secure legal advice is privileged, no matter whether the client or the attorney is speaking.

In re Ford Motor Co., 110 F.3d 954, 965 n.9 (3d Cir. 1997) (applying 42 Pa. Cons. Stat. § 5928) (Becker, C.J.).  Defendant cannot be compelled to state what his attorney said to him in a conversation conducted for the purpose of providing legal advice to Defendant.

Moreover, Plaintiff does not explain the relevance of Question 19.  Defendant testified about how he learned about Ms. Ferrier's first statement to the press, how he reacted to it, and its connection to his *National Enquirer* interview.  There is no need to delve into the exact conversations Defendant had with his lawyers in reaction to Ms. Ferrier's first statement to the press.

## PLAINTIFF'S QUESTION 20

Defendant is willing to explain the general parameters of Mr. Singer's representation of Defendant around the time of his *National Enquirer* interview.

## PLAINTIFF'S QUESTION 21

Defendant no longer objects to Question 21 on the grounds of attorney-client privilege. The question, however, is moot. Defendant went on to testify about the reasons for his *National Enquirer* interview and the agreement with the *National Enquirer* that governed the interview. (See Def.'s Dep., 9/29/05, at 161–64.) Plaintiff does not need to know every detail between Defendant's learning of Ms. Ferrier's first statement to the press and his agreement and interview with the *National Enquirer*. Moreover, because Defendant worked closely with his attorneys during that interval, most of those details are privileged.

## PLAINTIFF'S QUESTION 22

Defendant no longer objects to Question 22 on the grounds of attorney-client privilege. The question, however, is moot. Defendant went on to testify about the reasons for his *National Enquirer* interview and the agreement with the *National Enquirer* that governed the interview. (See Def.'s Dep., 9/29/05, at 161–64.) Thus, Defendant explained the connection between Ms. Ferrier's first statement to the press and his *National Enquirer* interview.

## PLAINTIFF'S QUESTION 23

Defendant no longer objects to Question 23 on the grounds of attorney-client privilege. The question, however, is moot.  Defendant went on to testify about the reasons for his *National Enquirer* interview and the agreement with the *National Enquirer* that governed the interview. (See Def.'s Dep., 9/29/05, at 161–64.)  Plaintiff does not need to know whether somebody other than Defendant negotiated the agreement.

## **PLAINTIFF'S QUESTION 24**

Question 24 is moot.  Plaintiff already knows that there was a written contract between

Defendant and the *National Enquirer*.

## PLAINTIFF'S QUESTION 25

Question 25 makes no sense.  As Plaintiff concedes, Defendant already answered the question.  There were no interruptions from counsel.  (See Def.'s Dep., 9/29/05, at 161–63.)

## PLAINTIFF'S QUESTION 26

Question 26 blatantly misstates Defendant's testimony.  Defendant did not, as Plaintiff contends, admit that "he prevented the [Ferrier] article being [sic] published because he believed it bolstered Plaintiff's allegations against him."  Defendant testified that he did not want Ms. Ferrier's interview to be published because it would embarrass his family and because certain parts of it are false.  (See Def.'s Dep. 9/29/05, at 161–64.)  Ms. Troiani then asked him, "And you knew that if Beth Ferrier's story was printed, that would add credence to not only Andrea's story but also to Tamara Green's story?"  (Id. at 221.)  Defendant answered, "You can't put words in my mouth," and, "The Answer is no."  (Id.)  Nor did he even approach testifying that he and his counsel decided to respond to Ms. Ferrier's first statement to the press by "defam[ing] Plaintiff in order to discredit her."  Defendant never mentioned Plaintiff in his interview with the *National Enquirer*, and, as the article reflects, he refused to answer questions about Plaintiff's motives.  Plaintiff cannot make her case by misrepresenting the record.

In any event, Defendant is willing to answer whether, to his knowledge, Ms. Ferrier's first statement to the press differed from the statement that was published by the *Philadelphia Daily News*.

## **PLAINTIFF'S QUESTION 27**

Plaintiff's incomplete quotation hides that Defendant answered Question 27, after his counsel objected to the form of the question.  (See Def.'s Dep., 9/29/05, at 181–82.)

## **PLAINTIFF'S QUESTION 28**

Again, Plaintiff fails to note that Defendant answered Question 28.  (See Def.'s Dep.,
9/29/05, at 184.)  The difficulty was caused by Ms. Troiani's misquotation of the writing about
which she sought to examine Defendant.  Mr. O'Connor's interruptions were necessary to
correct the record and to help his client, who was unable to read what Ms. Troiani was reading.
In any event, Defendant has answered Question 28.

## **PLAINTIFF'S QUESTION 29**

Defendant already testified that he offered Plaintiff money for her education because he feared that she would use her allegations (and the truth of their consensual relationship) to embarrass him. (See Def.'s Dep., 9/29/05, at 198.) He also accepts that Plaintiff will attempt to distort that fact into a suggestion of wrongdoing. Asking whether Defendant made a similar offer to anyone else out of fear of embarrassment, however, is an undisguised fishing expedition. Defendant testified openly about his interactions with Plaintiff and the Rule 415 witnesses. Without some basis from Plaintiff, no more is required. See Shellenberger v. Chubb Life America, Civil Action No. 95-4514, 1996 WL 92092, at *3 (E.D. Pa. Feb. 29, 1996) (disallowing discovery "based on pure speculation" and noting that "discovery is not a fishing expedition") ; Fitzpatrick v. QVC, Inc., Civil Action No. 98-3815, 1999 WL 1215577, at *3 (E.D. Pa. Dec. 7, 1999) (holding that speculative discovery is all the more improper where "the requested discovery is of a highly personal nature"). Plaintiff's argument that she is entitled generally to examine Defendant's character, simply because Defendant may introduce evidence of good character, is meritless.

## **PLAINTIFF'S QUESTION 30**

Question 30 introduces yet another, highly sensitive subject into which Plaintiff seeks to delve, wholesale, simply because it tangentially relates to her case: Defendant's "educational trusts." Defendant is a wealthy and generous person. He and his wife have established educational trusts and otherwise funded education for a variety of people, for a variety of reasons. The identities of the recipients and the reasons for the trusts are highly personal both to the Cosbys and the recipients. Simply because Defendant offered Plaintiff an "educational trust," however, she now hopes to learn everything about them.

Question 30, for instance, is overbroad and highly invasive. Defendant did answer the question, "Have you ever offered any educational trust to any woman who has made a claim of inappropriate sexual contact with you?" Asking whether he has done so with respect to consensual sexual relationships, however, goes beyond what is relevant. Plaintiff apparently hopes to hopes to learn the names of any such person, *and then approach the person to find out for herself whether that person agrees that the relationship was truly consensual.* The inquiry, however, would invade Defendant's privacy and potentially invade the privacy of third parties. Without some basis, and without more than the mere hope that additional relevant evidence exists, Plaintiff is not entitled to pry into the personal lives of others. See Shellenberger v. Chubb Life America, Civil Action No. 95-4514, 1996 WL 92092, at *3 (E.D. Pa. Feb. 29, 1996) (disallowing discovery "based on pure speculation" and noting that "discovery is not a fishing expedition"); Fitzpatrick v. QVC, Inc., Civil Action No. 98-3815, 1999 WL 1215577, at *3 (E.D. Pa. Dec. 7, 1999) (holding that speculative discovery is all the more improper where "the requested discovery is of a highly personal nature"); Lawrence v. Texas, 539 U.S. 558, 567 (2003) (recognizing that sexual conduct is "the most private of human conduct").

## PLAINTIFF'S QUESTION 31

Defendant incorporates his response to Question 30.

## **PLAINTIFF'S QUESTION 32**

Defendant incorporates his response to Question 30.  Plaintiff is not entitled to learn, generally, about this highly personal area of Defendant's life.

## PLAINTIFF'S QUESTION 33

Defendant incorporates his response to Question 30.  Plaintiff is not entitled to learn, generally, about this highly personal area of Defendant's life.

## PLAINTIFF'S QUESTION 34

Question 34 is not one question at all.  Rather it apparently covers 13 pages of the deposition transcript, in violation of the Court's November 4, 2005 Order.  Plaintiff is correct, however, that the deposition terminated because Plaintiff's counsel refused to allow Defendant to review his statement to police during the deposition.  (See Def.'s Dep., 9/29/05, at 235–42.)  This was something Ms. Troiani had permitted up to that point in the deposition.  (See, e.g., Def.'s Dep., 9/28/05, at 68–69.)  In fact, during Plaintiff's deposition, her counsel prompted her to read her police statement, during questioning not about that police statement.  (See Pl.'s Dep., 9/27, at 408-09.)  A witness has a right to refresh his recollection. Fed. R. Evid. 612.  For medical reasons, Defendant must do so by having the document read to him.  Nevertheless, Ms. Troiani objected.  The deposition terminated, so that the parties could approach the Court for a resolution of their dispute.

## **PLAINTIFF'S QUESTION 35**

Question 35 reveals Plaintiff's improper tactics.  She argues that she is entitled to examine Defendant about Gladys Rogers, to determine "what if any impeachment may be introduced at trial against Ms. Rogers by Defendant if she is called as a witness for Plaintiff." Plaintiff also touts her "belie[f] that Ms. Rogers has information" about Defendant's "relationships with women with whom he was sexually active."  Yet, *Plaintiff has not disclosed Ms. Rogers as a person likely to have discoverable information.*  She affirmed the completeness of her disclosures during the deposition.  (See Def.'s Dep., 9/29/05, at 10–11.)  To Defendant's knowledge, there is no connection between Ms. Rogers and this case, whatsoever.  Without any good faith basis from Plaintiff—or Plaintiff's compliance with the basic requirements of federal discovery—"delving" into Ms. Rogers would be a fishing expedition into another of Defendant's personal relationships.

## PLAINTIFF'S QUESTION 36

Defendant incorporates his response to Question 35. Plaintiff argues only that this question is "calculated to lead to evidence which may be put forth by defendant to impeach the witness at trial." Even assuming that were correct, it is immaterial. According to her initial disclosures and her counsel's representations at the deposition, Plaintiff does not even believe that Ms. Rogers is likely to have discoverable information to support Plaintiff's claim. (See Def.'s Dep., 9/29/05, at 10–11.) Thus, there is no need to discover how Ms. Rogers may be impeached as a witness. The truth is that Plaintiff wants to "fish" into any sensitive area of Defendant's life that she can find. Whether Defendant entered into a confidentiality agreement with one of his employees is irrelevant to this case.

## PLAINTIFF'S QUESTION 37

Defendant incorporates his response to Questions 6 and 35.

## PLAINTIFF'S QUESTION 38

Defendant incorporates his response to Questions 6 and 35.

## PLAINTIFF'S QUESTION 39

In support of Question 39, Plaintiff admits that she "seeks to question Defendant about his medical history," generally.  Accordingly, she apparently hopes to ask Defendant why he has seen every doctor he has seen.  Such a broad-based inquiry into one of the protected areas of Defendant's life, however, is unnecessary.  Defendant already testified about the drugs he was prescribed and had access to around the time of the night in question.  (See Def.'s Dep., 9/28/05, at 31–46, 75–89.)  He already answered Ms. Troiani's questions about "impotence," "sexual dysfunction," and "diabetes."  (Id.)  He already answered Ms. Troiani's questions about the interaction of Benadryl® and high blood pressure.  (Id.)  Without a good faith basis from Plaintiff, a broad inquiry into Defendant's medical history is unjustified.  See Whalen v. Roe, 429 U.S. 589, 602 (1977) (holding that individuals have a constitutional right of privacy in their medical records); Shellenberger v. Chubb Life America, Civil Action No. 95-4514, 1996 WL 92092, at *3 (E.D. Pa. Feb. 29, 1996) (disallowing discovery "based on pure speculation" and noting that "discovery is not a fishing expedition"); Fitzpatrick v. QVC, Inc., Civil Action No. 98-3815, 1999 WL 1215577, at *3 (E.D. Pa. Dec. 7, 1999) (holding that speculative discovery is all the more improper where "the requested discovery is of a highly personal nature").

## PLAINTIFF'S QUESTION 40

Defendant incorporates his response to Question 39.

## PLAINTIFF'S QUESTION 41

Plaintiff's argument in support of Question 41 is appalling.  First, as Plaintiff knows, the modeling agency is Denver to which she refers is not the William Morris agency (nor did Defendant ever use any agency to "supply him with young women").  Second, Plaintiff admits that she seeks to learn more about Defendant's relationship with the William Morris agency in the vague hope that she will discover "evidence which would result in the amendment of the complaint to add other defendants."  Plaintiff simply presumes the veracity of several women whom she has not met, arguing that "[i]t is inconceivable that the Agency did not know of Defendant's longstanding difficulties with women."  Plaintiff has no right to use discovery in this case to find support for additional claims.  Fed. R. Civ. P. 26(b)(1) Advisory Committee Notes to 2000 Amendments (noting that parties "have no entitlement to discovery to develop new claims or defenses").  Even if such discovery were permissible, it still would not justify a broad inquiry into all the personal matters for which Defendant utilizes the William Morris agency.

## **PLAINTIFF'S QUESTION 42**

Defendant incorporates his response to Question 41.

## PLAINTIFF'S QUESTION 43

Defendant incorporates his response to Question 41.

## PLAINTIFF'S QUESTION 44

Plaintiff has no basis to inquire generally whether Defendant ever has arranged for women to meet him at his concerts.  Rule 415 does not give Plaintiff license to pry into every relationship and action of Defendant that has some tangential similarity to Plaintiff's allegations. See Shellenberger v. Chubb Life America, Civil Action No. 95-4514, 1996 WL 92092, at *3 (E.D. Pa. Feb. 29, 1996) (disallowing discovery "based on pure speculation" and noting that "discovery is not a fishing expedition").

## PLAINTIFF'S QUESTION 45

Plaintiff's unexplained statement that Question 45—"[H]ave you in the past asked unmarried women to come to your house—is somehow "relevant to Defendant's credibility" is absurd. Whether or not Defendant has ever invited an unmarried woman to his house has nothing to do with his credibility. Moreover, whether *Plaintiff* believed it was out of the ordinary to dine at Defendant's house alone at night is entirely relevant to determining the truth of her contention that she had no romantic interest in Defendant. Asking Defendant whether he has asked any *other* unmarried women to his house is not analogous and is simply a thinly veiled fishing expedition.

## **PLAINTIFF'S QUESTION 46**

Question 46 is irrelevant on its face.  Whether any woman has had a relationship with Defendant and told someone else about it has no bearing on any issue in this case.  Instead, it is an example of Plaintiff's treating his deposition as a "treasure hunt."

## PLAINTIFF'S QUESTION 47

Defendant incorporates his responses to Questions 1, 2, 4, and 9.

## CONCLUSION

For these reasons, Defendant respectfully requests the Court to deny Plaintiff's motion.

Dated: December 6, 2005

    PJO5016
Patrick J. O'Connor
George M. Gowen III
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103
215.665.2000

Andrew D. Schau
PATTERSON, BELKNAP,
  WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
212.336.2000

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that, on the date and in the manner indicated below, I caused a copy of

the foregoing to be served upon the following counsel for Plaintiff:

Via First Class Mail

Bebe H. Kivitz
Dolores M. Troiani
Troiani/Kivitz, L.L.P.
38 North Waterloo Road
Devon, Pennsylvania  19333
610.688.8426 (fax)

Dated: December 6, 2005                         PJO5016
                                                Patrick J. O'Connor