

# TROIANI/KIVITZ, L.L.P.

———————————— ATTORNEYS AT LAW ————————————

DOLORES M. TROIANI, ESQUIRE
BEBE H. KIVITZ, ESQUIRE

38 NORTH WATERLOO ROAD
DEVON, PA 19333

(610) 688-8400
FAX (610) 688-8426

December 5, 2005

Office of the Clerk of Court
Eastern District of Pennsylvania
U.S. Courthouse
601 Market Street, Room 2609
Philadelphia, PA 19106

**RE:**   **Andrea Constand vs. William H. Cosby, Civil Action No. 05-CV-1099**
        **Plaintiff's Reply To Defendant's Requests To Compel and**
        **Memorandum Concerning Overarching Issues**

Dear Sir/Dear Madam:

   Enclosed for filing in the above-captioned matter, please find an original and a CD disk.

   Thank you for your anticipated cooperation.

Respectfully submitted,

Dolores M. Troiani

DMT:m
Enclosure
cc:   Patrick J. O'Connor, Esquire (via hand-delivery)
      Andrew D. Schau, Esquire (first class mail)
      Andrea Constand (first class mail)
      Mark Rupp, Esquire (first class mail)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREA CONSTAND, | : CIVIL ACTION |
| Plaintiff | : |
| v. | : NUMBER 05-1099 |
| | : |
| WILLIAM H. COSBY, JR., | : |
| Defendant | : |

## **ORDER**

And Now this __ day of December 2005, Plaintiff's Motion to Compel The National

Enquirer's Compliance With Subpoena for Documents is GRANTED and it is hereby

ORDERED that The National Enquirer shall produce documents pursuant to the subpoena

served upon it on November 6, 2005 within 5 days of entry of this Order.

_____

J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANDREA CONSTAND,            : CIVIL ACTION
        Plaintiff               :
      v.                        : NUMBER 05-1099
                              :

WILLIAM H. COSBY, JR.,      : FILED UNDER SEAL
        Defendant          :

**PLAINTIFF'S MOTION TO COMPEL THE NATIONAL ENQUIRER'S
COMPLIANCE WITH SUBPOENA FOR DOCUMENT AND REQUEST FOR
EXPEDITED  RESOLUTION**

For the reasons set forth in the accompanying Memorandum of Law, Plaintiff Andrea

Constand respectfully moves this Court to enter an Order compelling The National Enquirer to

Produce Documents pursuant to the subpoena served upon it on November 7, 2005 and further

that the resolution of this matter be expedited in that the statute of limitations for a cause of

action for Defamation is one year and will expire on or about February 21, 2006.

Respectfully submitted,

TROIANI/KIVITZ, L.L.P.

By:                            

Dolores M. Troiani, Esquire
I.D. No. 21283
Bebe H. Kivitz, Esquire
I.D. No. 30253
38 North Waterloo Road
Devon, Pennsylvania 19333
(610) 688.8400

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREA CONSTAND, | : CIVIL ACTION |
| Plaintiff | : |
| v. | : NUMBER 05-1099 |
| | : |
| WILLIAM H. COSBY, JR., | : FILED UNDER SEAL |
| Defendant | : |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL THE NATIONAL ENQUIRER'S COMPLIANCE WITH SUBPOENA FOR DOCUMENTS

Plaintiff Andrea Constand submits the following Memorandum of Law in support of her

motion to compel The National Enquirer's Compliance with Subpoena for Documents and

request for expedited resolution of this motion.

### BACKGROUND

Plaintiff's Amended Complaint, filed on August 24, 2005, includes a claim of defamation

against Defendant, which relates to various publications made by Defendant or his

representatives in the days following Plaintiff's disclosure of the defendant's sexual misconduct.

Among the publications was a February 21, 2005, "Exclusive Interview" given to The National

Enquirer ("Enquirer") by the Defendant, attached hereto as Exhibit A. Defendant has testified

that he agreed to speak to the National Enquirer so it would "kill" a similar story about Beth

Ferrier, another accuser, and publish his story instead. The intent, of course, was to prevent the

Ferrier story from being made public, thereby, undermining the credibility of plaintiff's own

story. Defendant has failed to produce the written agreement.

On or about October 31, 2005, Plaintiff served a subpoena *duces tecum* on the Enquirer

by serving it – at the direction of the Enquirer's counsel, Marc Rupp – upon the newspaper's

1

registered agent, CT Corporation in New York City. The subpoena requested the Enquirer to

produce all documents related to the agreement between Bill Cosby and The National Enquirer,

its interview of him and Beth Ferrier, concerning the February 21, 2005 interview as well as

documents related to any polygraph testing. *See* Subpoena, Exhibit B. At his request, Plaintiff

simultaneously provided a courtesy copy of the subpoena to Mr. Rupp. *See* Letter, Kivitz to

Rupp, 10/26/05, Exhibit C. On November 1, 2005, CT Corporation wrote to Ms. Kivitz

returning the subpoena and informing her that the New York City office of CT Corporation was

not the registered agent of the Enquirer. *See* Letter, CT Corp. to Kivitz, 11/01/05, Exhibit D. On

the same date, in a letter to Ms. Kivitz, Mr. Rupp denied having represented that CT

Corporation, New York was the Enquirer's registered agent and denied being authorized to

accept service. Mr. Rupp recommended serving CT Corporation in Florida. *See* Letter, Rupp to

Kivitz, 11/01/05, Exhibit D. Rather than waste additional time, on November 7, 2005, Plaintiff

effected personal service – through a process server – by giving a copy of the subpoena to the

Enquirer's receptionist, at the company's New York City office's front desk.[1]  *See* Affidavit of

Service, 11/8/05 and Subpoena *duces tecum*, Exhibit E.   On November 9, 2005, plaintiff's

counsel again provided another courtesy copy of the subpoena to Mr. Rupp. *See* Letter, Kivitz to

Rupp, 11/09/05, Exhibit F. By letter of the same date, Mr. Rupp confirmed that Plaintiff had

served his client's receptionist although he denied that Plaintiff had made good service. *See*

Letter, Rupp to Kivitz, 11/09/05, Exhibit F. In the interim, Mr. Rupp raised objections to the

subpoenas and Plaintiff's counsel offered to discuss the scope of the subpoena with the

Enquirer's lawyer. *See* Letters, Rupp to Kivitz, 11/10/05, 11/11/05, Letter, Kivitz to Rupp,

---

[1] The Enquirer's counsel insists that the subpoena was served on him but this is plainly incorrect. The subpoena names the "Enquirer" and the process server was instructed to serve the Enquirer, not any specific individual. *See* subpoena attached here to as Exhibit E.

2

11/15/05, Exhibit G.   Finally, in a letter to Plaintiff's counsel written on November 16, 2005,

the Enquirer's counsel raised several objections to the subpoena, repeated his insistence that the

Enquirer was not properly served because lawyers cannot be served, and offered to produce

some documents if Plaintiff would agree to a confidentiality order.  *See* Letter, Rupp to Kivitz,

11/16/05, Exhibit H.   That compromise is unacceptable to Plaintiff and she, therefore, filed this

motion.

## ARGUMENT

### A. The Enquirer should be compelled to respond to Plaintiff's Subpoena because it has waived its right to object to Service.

The overriding consideration under Rule 45 is "notice."   The rule's objective should be to

ensure fair notice to the person summoned and an opportunity to challenge the subpoena,

without unnecessarily imposing on the party seeking the discovery an unnecessarily cumbersome

or expensive service requirement.  *See Hall v. Sullivan*, 229 F.R.D. 501, 505 (D. Md. 2005)

(*citing Moore's Federal Practice*, ¶ 45.03(4)(b)(i)).   While the Enquirer protests the manner of

service, it does not deny that it received the subpoena in multiple copies.   More to the point, it

has admittedly reviewed the subpoena, raised objections, offered a compromise response, and

has reserved its right to seek protection should the parties not agree.   On November 16, 2005,

the Enquirer's counsel wrote to counsel for Plaintiff:

> Notwithstanding the subpoena's jurisdictional, procedural, and
> substantive deficiencies, and in order to spare the parties additional
> expense, my client may be willing to produce one specific segment
> of responsive documents if you agree to an acceptable protective
> order governing the confidentiality of these documents.  If you are
> open to such a compromise, I would ask that you contact me at
> your earliest convenience so that we can work towards a stipulated
> protective order.

*See* Exhibit G, Letter, Rupp to Kivitz, 11/16/05.  Under these circumstances, the Enquirer

clearly received notice of the subpoena and its continued insistence upon raising the issue of the validity of service is a red herring. Focusing on the details of service once the Enquirer has offered a response to the subpoena simply elevates form over substance. The federal rules are clear. F.R.C.P. 1 states that the rules are to be "construed and administered to secure the just, speedy, and inexpensive determination of every action." This simple rule serves as a reminder that in interpreting the rules, a court should not place form over substance. *Hall v. Sullivan*, 229 F.R.D. 501, 504 (D. Md. 2005). The Enquirer has received the subpoena, contemplated and analyzed the request and offered a compromise – albeit, unacceptable. Accordingly, the Court should reject the Enquirer's objections to the manner of service and compel it to respond to Plaintiff's subpoena.

## B. The Enquirer should be compelled to respond to Plaintiff's Subpoena because Plaintiff obtained Adequate Personal Service on the Enquirer.

F.R.C.P. 45(b)(1) provides, "Service of a subpoena upon a person named therein shall be made by delivering a copy thereof to such person...." Rule 45 makes no distinction between individuals, corporations or other legal entities; nor does it state that personal service is required. Consequently, federal courts have looked to Rule 4 – governing service of original process – to determine the adequacy of service under Rule 45. *See, e.g., Pappas v. Robinson*, 214 B.R. 84, 85 (D. Conn. 1997) (Because Rule 45 does not specify what constitutes personal service upon corporation, courts look to F.R.C.P. 4 for guidance). The federal rules further state that service upon a corporation is governed by the same rules as service upon individuals, which states that service may be "effected in any judicial district of the United States: (1) pursuant to the law of the state in which the district court is located, or in which service is effected ..." *See F.R.C.P.* 4(h)(1) and 4(e)(1). Hence, if service is valid under the rules of one qualifying state, the Enquirer should be compelled to produce documents pursuant to the subpoena. *See, e.g., Webster Industries, Inc. v. Northwood Doors, Inc.*, 244 F.Supp.2d 998, 1005-1006 (N.D. Iowa 2003) (if service is valid under rules of one qualifying state, court need not consider law of the other qualifying state, nor make any "choice of law" decision). In this case, the law of both states are similar. Service of the subpoena was effected in New York State. New York courts

4

have been clear that service of a subpoena upon a corporate receptionist is adequate service and

fulfills the underlying policy of "fair notice". The court in *Mitsubishi Intern. Corp. v. Keystone*

*Camera Corp.*, 1990 WL 16090 (S.D.N.Y. 1990), applying F.R.C.P. 4 to service of a summons,

held that service upon the corporation's receptionist was adequate:

> New York allows service based on delivery of the summons and
> complaint "to an officer, director, managing or general agent, or
> cashier or assistant cashier or to any other agent authorized by
> appointment or by law to receive service." N.Y.Civ.Prac.L. & R. §
> 311. It is not unusual for a corporation's employees to accept
> service of process on behalf of the corporation's officers. *See M.*
> *Prusman, Ltd. v. Ariel Maritime Group,* 719 F.Supp. 214, 220
> (S.D.N.Y.1989). When this occurs, service may be valid, even if
> the employee were expressly unauthorized by the corporation to
> accept service, because a "process server cannot be expected to
> know the corporation's internal practices." *Fashion Page, Ltd. v.*
> *Zurich Ins. Co.,* 50 N.Y.2d 265, 271, 406 N.E.2d 747, 751, 428
> N.Y.S.2d 890, 893-94 (1980). The New York Court of Appeals has
> commented: "if service is made in a manner which, objectively
> viewed, is calculated to give the corporation fair notice, the service
> should be sustained." *Fashion Page, Ltd. v. Zurich Ins. Co.,* 50
> N.Y.2d 265, 272, 406 N.E.2d 747, 751, 428 N.Y.S.2d 890, 893
> (1980); *see M. Prusman, Ltd. v. Ariel Maritime Group,* 719
> F.Supp. 214, 218 (S.D.N.Y.1989); *Breene v. Guardsmark, Inc.,*
> 680 F.Supp. 88, 90-91 (S.D.N.Y.1987); *Dai Nippon Printing Co.,*
> *Ltd. v. Melrose Publishing Co.,* 113 F.R.D. 540, 544
> (S.D.N.Y.1986); *Kuhlik v. Atlantic Corp., Inc.,* 112 F.R.D. 146,
> 148-49 (S.D.N.Y.1986). New York courts will find service valid
> where "the process server has gone to [the corporation's] offices,
> made proper inquiry of the defendant's own employees, and
> delivered the summons according to their directions." *Fashion*
> *Page,* 50 N.Y.2d at 272, 406 N.E.2d at 751, 428 N.Y.S.2d at 893-
> 94.

*Id.* at 2. *See also Pappas v. Robinson*, 214 B.R. 84 (D. Conn. 1997) (under Connecticut law

service upon receptionist "constitutes service on a person in charge of the office of a

corporation").

Under Pennsylvania law, service by mail of a subpoena is permissible and, therefore,

personal service is more than adequate so long as the person in charge is served. *See, e.g.,*

*Hopkinson v. Hopkinson,* 323 Pa. Super. 404, 470 A.2d 981 (1984) (holding that service on a

receptionist in the defendant's offices who represented to the process server that she was the

person in charge was proper), *overruled on other grounds, Sonder v. Sonder,* 378 Pa. Super. 474,

549 A.2d 155 (1988).

Here, the receptionist refused to accept service only when an unnamed Enquirer

employee, "Mark", was called refused to come out of a back office to the receptionist area. *See*

Return of Service, Exhibit D.   The process server, therefore, left the subpoena with the

receptionist. It is well established that avoidance of service will not invalidate effective service

of process. 'Service cannot be negated by refusing to accept papers, and whether the refusal is by

the defendant or a representative is immaterial." *Aida Lopez v. Nelson Torres,* 1993 WL

1156031 (Phila. C.C.P. 1993).   New York law is similar. *See, e.g., Gammon v. Advanced*

*Fertility Services, P.C.,* 189 A.D.2d 561, 561, 592 N.Y.S.2d 23, 23 (N.Y.A.D. 1 Dept. 1993)

(With respect to the corporate defendant, proper service was made where a receptionist

represented that she was authorized to accept service and defendants had made a studious effort

to avoid service).  Accordingly, the Enquirer's receptionist was the appropriate person to be

served and, therefore, it should be compelled to respond to the subpoena.

## C. The Enquirer's objections to the subpoena are groundless and should be rejected.

The subpoena requested the Enquirer to produce the following documents:

> All correspondence, memoranda, agreements, contracts, notes,
> meeting notes, recorded statements, unrecorded statements,
> summaries, or other documents in your possession concerning the
> February 21, 2005, Exclusive Interview given by Bill Cosby to
> The National Enquirer, as well as any polygraph tests,
> correspondence, memoranda, agreements, contracts, notes,

6

meeting notes, recorded statements, unrecorded statements, summaries o other documents in your possession concerning your interviews and/or polygraph testing of Beth Ferrier, as well any correspondence or documents concerning any discussions or agreements not to run the Beth Ferrier story, or to run the Cosby "Exclusive Interview" instead.

Also, any documents concerning any compensation paid to Bill Cosby regarding the above.

*See* Subpoena, Exhibit E.  In its letter to counsel for Plaintiff of November 16, 2005, the Enquirer posed five objections to the subpoena based upon over breadth, relevance, confidentiality, privilege, and First Amendment violations. *See* Letter, Rupp to Kivitz, 11/16/05, Exhibit H. These objections should be overruled for the following reasons:

2.  Over broad, vague and ambiguous objection.  There is nothing overbroad or vague about the document request.  To the contrary, it is limited to documents and agreements related to the Enquirer's interviews of Bill Cosby and Beth Ferrier.  It is clear and concise in its demand for all the documentation related to those interviews.

3.  Relevance.  The Enquirer is not even a party to the litigation, so it is questionable whether it even has standing to raise a relevance objection.  Notwithstanding, all the requested documents relate to issues of liability, defamation and credibility, all of which are at issue in this case.

4.  The request requires disclosure of confidential and proprietary information.  The simple disclosure of confidential and proprietary information is not a basis for protecting the documents at issue.  In fact, it is well settled that broad allegations of harm, unsubstantiated by specific examples will not suffice as a basis for protecting confidential information from discovery. *See, e.g., Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3rd Cir. 1995).

7

Nevertheless, Plaintiff has informed the Enquirer that even though she will not agree to a protective order, she would be willing to negotiate limitations on the scope of the discoverable materials.

     5. <u>Attorney-Client Privilege and Work Product</u>. Communications between the Defendant, Ms. Ferrier and the Enquirer are certainly not privileged under Attorney-Client privilege and it is questionable that the requested documents related to anticipated litigation naming the Enquirer. Nevertheless, to the extent that Enquirer claims that the Plaintiff's subpoena requests privileged information then the Enquirer should produce a privilege log to permit the Court and the Plaintiff to assess its claims.

     6. <u>First Amendment Objections</u>. The Enquirer's knee jerk invocation of First Amendment rights and the Pennsylvania's media shield law, 42 Pa. C.S.A. § 5942, is inapposite here where the source of information is not confidential but is well known. Defendant has already testified to a meeting he had with one of his attorneys and the Enquirer, and he has testified to a written agreement – a contract – concerning his agreement with the newspaper. Plaintiff is not seeking the identity of confidential sources; rather she is seeking documents concerning interviews and agreements with both Beth Ferrier and Defendant, both of which are already in the public domain. *See, e.g., Philadelphia Daily News*, Beth Ferrier Story, June 23, 2005; 3/21/05 "Exclusive Interview" both attached hereto as Exhibit I.

     For these reasons, the court should reject the Enquirer's objections and compel it to produce documents pursuant to the subpoena.

## REQUEST FOR EXPEDITED RESOLUTION

Plaintiff respectfully requests that this Honorable Court shorten the time for response and Order the immediate release of the documents in that failure to do so will result in irreparable harm to Plaintiff. Under Pennsylvania law the statute of limitations for a cause of action for defamation is one year. The National Enquirer article appeared on February 21, 2005. Consequently, if Plaintiff is to join the paper as an additional defendant she must do so no later than one year from that date. Without the requested information, Plaintiff will be severely prejudiced in her ability to draft a complaint.

## CONCLUSION

For the foregoing reasons, Plaintiff Andrea Constand respectfully requests the Court to enter an Order Compelling the Enquirer to produce documents pursuant to the subpoena served upon it.

Respectfully submitted,

TROIANI/KIVITZ, L.L.P.

By:

Dolores M. Troiani, Esquire
I.D. No. 21283
Bebe H. Kivitz, Esquire
I.D. No. 30253
38 North Waterloo Road
Devon, Pennsylvania 19333
(610) 688.8400

9

# EXHIBIT A

## enquirer world exclusive



ENQUIRER EDITOR Barry Levine interviews Bill Cosby in a hotel suite in Houston, Texas.

# Bill Cosby ends his silence:
# MY STORY!

**By BARRY LEVINE**
© 2005 The National ENQUIRER, Inc.

IN A blockbuster exclusive interview with The ENQUIRER, Bill Cosby has spoken out for the first time since he was cleared of the headline-making sexual molestation charges brought by a Canadian woman.

"I'm not saying that what I did was wrong, but I apologize to my loving wife, who has stood by my side for all these years, for any pain I have caused her," the 67-year-old entertainer told The ENQUIRER.

"These allegations have caused my family great emotional stress."

The soul-baring interview took place on February 21 in a hotel suite in Houston, Texas, during Cosby's concert tour.

Reacting to the prospect of a civil action from the young Canadian woman, furious Cosby vowed to The ENQUIRER that he would stand his ground against anyone who tried to "exploit" him because he is a celebrity.

And about the California woman who publicly supported his accuser and claimed Cosby had acted inappropriately with her, too, Cosby told The ENQUIRER: "She is a wrecking ball."

Responding to the charge by the Canadian woman, Cosby declared: "No man wants to see his family put in the position of having

(Continued on next page)

THE NATIONAL ENQUIRER   29

# BILL COSBY — MY STORY

## 'I apologize to my loving wife for any pain I have caused her'

ENQUIRER WORLD EXCLUSIVE

(Continued from Page 29) these kinds of allegations come out and for your loved ones to suffer emotional stress.

"The charge can influence the view that family and friends have of him as a good person, a person to be trusted.

"That's what happened with this.

"Looking back on it, I realize that words and actions can be misinterpreted by another person, and unless you're a supreme being, you can't predict what another individual will do.

"But that's all behind me now, and I'm looking only toward a bright future."

Cosby became a real-life father figure to countless Americans with his portrayal of doting dad Cliff Huxtable on "The Cosby Show" — and the sexual molestation charge from the Canadian woman came as a bombshell.

On January 13, the woman filed a complaint with police saying she was drugged and attacked by



**COSBY ACCUSER** LAWYER claims Cosby tried to assault her 39 years ago.



'I am not going to give in to people who try to exploit me because of my status'

Cosby in January 2004. The woman told police that after she complained of stress and tension, Cosby gave her pills that made her dizzy.

She said she recalled him touching her and when his awoke at 4 a.m., her clothing was in disarray and her bra was undone. He vigorously denied the woman's allegations.

Cosby told The ENQUIRER that when he heard police had launched an investigation, "My heart sank. I was at home, and these claims hurt me."

And following a five-week investigation, Montgomery County, Pa., District Attorney Bruce L. Castor Jr. said there was "insufficient credible and admissible" evidence to support a charge.

Following the prosecutor's February 17 announcement, the woman's attorney Dolores Troiani said a civil lawsuit would be filed against the star.

Cosby, who has been the victim of an extortion plot in the past, did not want to speculate as to whether money was the woman's prime motive. "Let's not go there," he told The ENQUIRER.

But he did say: "I am not

going to give in to people who try to exploit me because of my celebrity status."

A published report states that the woman's mother called Cosby before her daughter went to police and the comedian "was under the impression" she was after hush money. Because the woman claimed she was the victim of a sex crime, The ENQUIRER is continuing to withhold her name until she goes public in a reduction.

She is a 31-year-old former basketball player who met Cosby while she worked in the athletic department at Philadelphia's Temple University. Temple graduate Cosby is one of the school's biggest boosters. Because of the looming

civil lawsuit, Cosby stressed to The ENQUIRER that he could speak only in broad terms about the case.

But in citing an example, Cosby suggested that the woman might have left out important facts when she made her allegations to authorities.

"Take a kid who comes home from school with a note from the principal," he said.

"The note reads, 'We would like to see you tomorrow to discuss your child's behavior.' So the parent says to the child, 'What did you do?'

"The child says, 'The teacher slapped me, and I kicked her.'

"The parent goes to the school and is angry with the authorities. But as the discussion unfolds, we find that the student has left out the reason for the slap — the child picked up a stick in the classroom and tried to strike the teacher.

"The teacher stepped away and slapped the child in self-defense.

"The child, in talking to the parent, has left out a crucial part of the story — the truth."

After the allegations surfaced, the accuser's family described Cosby as a friend and "mentor" to the woman.

But Cosby told The ENQUIRER that celebrities are often put in

positions where their roles as mentors can lead to trouble.

"Sometimes you try to help people and it backfires on you and then they try to take advantage of you," he said.

"People can sell you by taking advantage."

Cosby admitted that the recent scandal intensified when a California lawyer, 37-year-old Tamara Green, made additional allegations against him.

The one-time actress and former model told a newspaper that she met Cosby at an audition and worked at his Los Angeles nightclub 30 years ago. She said one day she fell ill and Cosby gave her two drug tablets that left her "stoned."

Back at her apartment, Cosby allegedly tried to take advantage of her. She claims Cosby then dropped two $100 bills on a table and fled.

Green said she told family and friends about

Cosby's alleged assault but didn't go to police. She finally called police on January 28 and told them her story, and said she was speaking out now because she feared prosecutors would dismiss the claims made by the former Temple University employee.

Cosby's lawyers insisted that he did not know Green, and directed the media to important information about the woman's credibility.

According to the State Bar of California, Green entered a program for lawyers with substance abuse or mental health problems in October.

The bar had lodged disciplinary charges against her in March 2004, alleging 12 counts of misconduct involving three clients, spokeswoman Kathleen Beilika said.

Among the allegations were failure to perform with competence, failure to maintain client funds in a trust account, and failure to refund unearned fees.

"My problem is with some media and how it appeared that Miss Green was allowed to be a 'wrecking ball,'" Cosby said.

"When Miss Green spoke, they pointed out that she was a lawyer. This gives her credibility.

"Anybody could have checked out her credibility and credentials. But it appears that they never checked her — or did check her and found it was convenient to not mention it.

"It's bothersome that when my side revealed her background, we were blamed for throwing dirt.

"Then I was blamed for having a humongous amount of lawyers ..... That's unfair.

"I guess that a celebrity trying to protect himself is not supposed to

use every ounce of protection."

Cosby added that he doesn't regret having his lawyers reveal information about Green, saying if he didn't, the media "could have been even worse.

"We're not bringing up something that a couple of special investigators would have needed to go underground with trench coats and mustaches to find!"

● COSBY THANKS THE ENQUIRER FOR BRINGING SON'S KILLER TO JUSTICE. See next page



'These allegations have caused my family great emotional stress'

BILL COSBY'S WIFE CAMILLE

THE NATIONAL ENQUIRER

**EXHIBIT B**

# UNITED STATES DISTRICT COURT

EASTERN _____ DISTRICT OF _____ PENNSYLVANIA

Andrea Constand

V.

William H. Cosby, Jr.

## SUBPOENA IN A CIVIL CASE

Case Number:[1]   05-CV-1099

TO:   The National Enquirer C/O
      CT Corporation
      111 8th Avenue-13th Floor
      New York, NY  10011

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

(SEE ATTACHED)

C/O Ralph A. Jacobs & Associates LLC

| PLACE        Troiani/Kivitz | 215 South Broad St.-10th Floor  Philadelphia, PA  19107 | DATE AND TIME 10:00AM  Tuesday 11/15/2005 |
|---|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Bebe H. Kivitz*, Attorney for Plaintifff | October 26, 2005 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Bebe H. Kivitz, Esquire 215 South Broad St. Phila. PA 19107 (215-772-0251

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

All correspondence, memoranda, agreements, contracts, notes, meeting notes, recorded statements, unrecorded statements, summaries, or other documents in your possession concerning the February 21, 2005, Exclusive Interview given by Bill Cosby to The National Enquirer, as well as any polygraph tests, correspondence, memoranda, agreements, contracts, notes, meeting notes, recorded statements, unrecorded statements, summaries, or other documents in your possession concerning your interviews and/or polygraph testing of Beth Ferrier, as well as any correspondence or documents concerning any discussions or agreements not to run the Beth Ferrier story, or to run the Cosby "Exclusive Interview" instead.

Also, any documents concerning any compensation paid to Bill Cosby regarding the above.

**EXHIBIT C**

# TROIANI/KIVITZ, L.L.P.

-------------------------- ATTORNEYS AT LAW --------------------------

DOLORES M. TROIANI, ESQUIRE
BEBE H. KIVITZ, ESQUIRE

38 NORTH WATERLOO ROAD
DEVON, PA 19333

(610) 688-8400
FAX (610) 688-8426

October 26, 2005

**Via Facsimile and First Class Mail**
Mark Rupp, Esquire
The National Enquirer
One Park Avenue-3rd Floor
New York, NY 10016

**Re:**   **Andrea Constand v. William H. Cosby, Jr. 05-CV-1099**

Dear Mr. Rupp:

As you requested, we have sent the enclosed Subpoena to The National Enquirer c/o CT
Corporation. Enclosed herewith is a copy of it for you. Should you have any questions, please
don't hesitate to contact me.

Thank you for your anticipated cooperation.

Very truly yours,

Bebe H. Kivitz

BHK:m
Enclosure

**EXHIBIT D**

**CT** CORPORATION

November 01, 2005

Bebo H Kivitz,
Esquire 215 South Broad St.,
Philadelphia, PA 19107

Re: Andrea Constand, Pltf. vs. William H. Cosby, Jr., Dft. To: The National Enquirer.
Case No. 05 CV-1099

Dear Sir/Madam:

After checking our records and the records of the State of NY, it has been determined that C T Corporation
System is not the registered agent for an entity by the name of The National Enquirer.

Accordingly, we are returning the documents received from you.

Very truly yours,

Roopmattee Jairam
Process Specialist

Log# 510666145

cc: Eastern District of Michigan: United States District Court
    Theodore Levin U.S. Courthouse,
    231 West Lafayette,
    Detroit, MI 48226

cc: New York SOP Support

111 Eighth Avenue
New York, NY 10011
Tel. 212 894 8940
Fax 212 590 9180

A WoltersKluwer Company



**AMERICAN MEDIA, INC.**

Marc Rupp
*General Counsel*
*National Enquirer*
Email: mrupp@amilink.com

NATIONAL ENQUIRER
STAR
GLOBE
EXAMINER
SUN
WEEKLY WORLD NEWS

SHAPE
NATURAL HEALTH
FIT PREGNANCY
MUSCLE & FITNESS HERS
MEN'S FITNESS
MUSCLE & FITNESS
LOOKING GOOD NOW
FLEX
SLY

COUNTRY WEEKLY
MPH

MIRA!
SHAPE EN ESPAÑOL

AMI MINI-MAGS/DIGESTS
AMI SPECIALS
AMI BOOKS

DISTRIBUTION SERVICES INC.

November 1, 2005

**VIA FACSIMILE & U.S. MAIL**
(610) 688-8426

Bebe H. Kivitz, Esq.
Troiani / Kivitz LLP
38 North Waterloo Rd
Devon, PA 19333

    Re:   **Andrea Constand Subpoena**

Dear Ms. Kivitz:

    Thank you for your correspondence of October 26, enclosing a courtesy copy of the above referenced subpoena. Your letter is somewhat inaccurate in that it suggests that I requested that you send the subpoena to CT Corp in New York City.

    For the record, I indicated that I was not authorized to accept service of the subpoena, and that you would have to serve the subpoena on my client's registered agent for service of process. I informed you that you would have to double check with the Florida Secretary of State, but that I believed my client's registered agent was a CT Corp location in Florida.

    Because your subpoena was apparently not served on my client's registered agent, the subpoena is deficient and my client will not respond to it. Of course, my client reserves the right to pose appropriate objections to the subpoena if and when it is properly served.

Sincerely,

*Marc Rupp*

Marc Rupp

F:\enquirer\Kivitz Re Cosby 110105.doc

ONE PARK AVENUE, 3RD FLOOR, NEW YORK, NY 10016 • TEL 212-743-6513 • FAX 646-521-2852

# EXHIBIT E

UNITED STATES DISRICT COURT
DISTRICT OF PENNSYLVANIA

Adrea Constsand

                                        Petitioners,

        — against —

William H. Cosby, Jr.

                                        Respondents

AFFIDAVIT OF SERVICE

05-CV-1099

STATE OF NEW YORK    )
                     : SS.:
COUNTY OF NEW YORK )

        Stanley Patterson, being duly sworn, says that deponent, is not a party to
this proceeding and is over 18 years of age..

        On November 7, 2005 at 4:20 p.m. deponent served a copy of the
SUBPOENA IN A CIVIL CASE with a check for $79.80 on The National Enquirer in
the following manner:

Substitute Service: by gaining admittance to 1 Park Ave 3rd Fl. NY, NY and delivering
to and leaving a copy thereof for The National Enquirer, personally on the reception
desk with "Jane Doe" (receptionist) a person of suitable age and discretion, who was
unwilling to accept service after calling a Mark "Doe", a person who works for the
Enquirer who refused to come out to accept subpoena.

The recipient's description is: Black female, black hair, approximately 20-25 yrs. old, 5'2"-
5'3" tall, weighing 100-120 lbs.

                                        _____ 798646
                                        Stanley Patterson

Sworn to before me on
November 8, 2005

_____
Notary Public

MONICA SALVATIERRA
Notary Public, State of New York
No. 01SA4971312
Qualified in Nassau County
Commission Expires Aug. 27, 2006

%AO88 (Rev. 1/94) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

Eastern _____ DISTRICT OF _____ Pennsylvania

Andrea Constand

V.

William H. Cosby, Jr.

SUBPOENA IN A CIVIL CASE

Case Number:[1]  05-CV-1099

TO:  The National Enquirer
One Park Avenue-3rd Floor
New York, New York  10016

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):  See Attached

| PLACE | DATE AND TIME |
|---|---|
| Troiani/Kivitz, L.L.P<br>c/o Ralph A. Jacobs & Associates<br>215 South Broad Street-10th Floor.<br>Philadelphia, PA  19107 | 10:00AM<br>Thursday 11/17/05 |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _Bebe H. Kivitz_ -Attorney for Plaintiff | November 2, 2005 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Bebe H. Kivitz, Esq.
38 N. Waterloo Road
Devon, PA 19333    (610) 688-8400

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

All correspondence, memoranda, agreements, contracts, notes, meeting notes, recorded statements, unrecorded statements, summaries, or other documents in your possession concerning the February 21, 2005, Exclusive Interview given by Bill Cosby to The National Enquirer, as well as any polygraph tests, correspondence, memoranda, agreements, contracts, notes, meeting notes, recorded statements, unrecorded statements, summaries, or other documents in your possession concerning your interviews and/or polygraph testing of Beth Ferrier, as well as any correspondence or documents concerning any discussions or agreements not to run the Beth Ferrier story, or to run the Cosby "Exclusive Interview" instead.

Also, any documents concerning any compensation paid to Bill Cosby regarding the above.

# EXHIBIT F

# TROIANI/KIVITZ, L.L.P.

————————— ATTORNEYS AT LAW —————————

DOLORES M. TROIANI, ESQUIRE
BEBE H. KIVITZ, ESQUIRE

38 NORTH WATERLOO ROAD
DEVON, PA 19333

(610) 688-8400
FAX (610) 688-8426

November 9, 2005

**Via Facsimile and First Class Mail**
Mark Rupp, Esquire
The National Enquirer
One Park Avenue-3rd Floor
New York, NY 10016

Re:   Andrea Constand v. William H. Cosby, Jr. 05-CV-1099

Dear Mr. Rupp:

When we spoke, you requested that we serve our Subpoena on CT Corporation. You did not specify Florida. As a courtesy, only, since this was not original service of process, we served our Subpoena on CT Corporation in New York, despite the fact that we were not required to do so. We then received your November 1, 2005, letter.

I enclose herewith a copy of a Subpoena which was served upon the National Enquirer at its New York headquarters, and the Affidavit of Service. Should the National Enquirer fail to comply with the Subpoena, we will be forced to file a motion to enforce same with the Court, as well as seek attorneys' fees and sanctions for non-compliance.

Very truly yours,

Bebe H. Kivitz

BHK:m
Enclosure
cc:   Andrea Constand
      Patrick O'Connor, Esquire
      Andrew Schau, Esquire



**AMERICAN
MEDIA, INC.**

**Marc Rupp**

*General Counsel
National Enquirer*

Email: mrupp@amilink.com

NATIONAL ENQUIRER

STAR

GLOBE

EXAMINER

SUN

WEEKLY WORLD NEWS

SHAPE

NATURAL HEALTH

FIT PREGNANCY

MUSCLE & FITNESS HERS

MEN'S FITNESS

MUSCLE & FITNESS

LOOKING GOOD NOW

FLEX

SLY

COUNTRY WEEKLY

MPH

MIRA!

SHAPE EN ESPAÑOL

AMI MINI-MAGS/DIGESTS

AMI SPECIALS

AMI BOOKS

DISTRIBUTION SERVICES INC.

November 9, 2005

**VIA FACSIMILE & U.S. MAIL**
(610) 688-8426

Bebe H. Kivitz, Esq.
Troiani / Kivitz LLP
38 North Waterloo Rd
Devon, PA 19333

    Re:   Andrea Constand Subpoena

Dear Ms. Kivitz:

    On Monday, your process server simply dropped off the above-referenced subpoena and an appearance check at my client's front desk in New York City. This is not valid service, and therefore my client will not be responding to your subpoena. The appearance check is enclosed herewith for your financial records.

    As I previously indicated, you are more than welcome to effect service of process by serving my client's registered agent for service of process, which is a CT Corporation location in Florida. You need only go to the Florida Secretary of State website to obtain the registered agent's address.

    Once again, my client reserves the right to pose appropriate objections to the subpoena if and when it is properly served.

Sincerely,

Marc Rupp

Marc Rupp

Encls.

**EXHIBIT G**



# AMERICAN MEDIA, INC.

Marc Rupp
*General Counsel*
*National Enquirer*
*E-mail: mrupp@amilink.com*

NATIONAL ENQUIRER
STAR
GLOBE
EXAMINER
SUN
WEEKLY WORLD NEWS

SHAPE
NATURAL HEALTH
FIT PREGNANCY
MUSCLE & FITNESS HERS
MEN'S FITNESS
MUSCLE & FITNESS
LOOKING GOOD NOW
FLEX
SLY

COUNTRY WEEKLY
MPH

MIRA!
SHAPE EN ESPAÑOL

AMI MINI-MAGS/DIGESTS
AMI SPECIALS
AMI BOOKS

DISTRIBUTION SERVICES, INC.

November 10, 2005

**VIA FACSIMILE & U.S. MAIL**
(610) 688-8426

Bebe H. Kivitz, Esq.
Troiani / Kivitz LLP
38 North Waterloo Rd
Devon, PA 19333

Re:   Andrea Constand Subpoena

Dear Ms. Kivitz:

I am in receipt of your correspondence of yesterday. Your letter misstates the substance of our lone telephone conversation in that I did direct you to a CT Corp location in Florida as my client's registered agent. I would never have indicated that CT Corp in New York City is my client's registered agent because it is not.

Additionally, your threat to recover attorneys' fees is an idle and inappropriate one which will be pointed out to the court should you decide to compel. If anything, Federal Rule 45(c)(1) places a duty upon you and your client to avoid placing undue burden and expense on my client, and provides for sanctions for your failure to adhere to this duty.

My client is certain to face undue burden and expense opposing a motion to compel a subpoena that still has not been served properly, which is wildly overbroad, and seeks records that are clearly protected by applicable reporter's privileges and the First Amendment. As such, our opposition to your threatened motion will include a request for sanctions and fees pursuant to Rule 45(c)(1).

Of course, my client reserves its right pursuant to Federal Rule 45(c)(2)(B) to pose pertinent objections prior to the date set for production in your deficient subpoena.

Sincerely,

Marc Rupp



## AMERICAN MEDIA, INC.

**Marc Rupp**

*General Counsel*
*National Enquirer*

Email: mrupp@amilink.com

NATIONAL ENQUIRER

STAR

GLOBE

EXAMINER

SUN

WEEKLY WORLD NEWS

SHAPE

NATURAL HEALTH

FIT PREGNANCY

MUSCLE & FITNESS HERS

MEN'S FITNESS

MUSCLE & FITNESS

LOOKING GOOD NOW

FLEX

SLY

COUNTRY WEEKLY

MPH

MIRA!

SHAPE EN ESPAÑOL

AMI MINI-MAGS/DIGESTS

AMI SPECIALS

AMI BOOKS

DISTRIBUTION SERVICES INC.

November 11, 2005

**VIA FACSIMILE & U.S. MAIL**
(610) 688-8426

Bebe H. Kivitz, Esq.
Troiani / Kivitz LLP
38 North Waterloo Rd
Devon, PA 19333

    Re:   **Andrea Constand Subpoena**

Dear Ms. Kivitz:

    Thank you for your correspondence of yesterday. While I appreciate your stated intention to resolve this dispute prior to court intervention, this issue is not yet ripe for such a discussion because, as set forth in my last letter to you, my client has until prior to the deposition date of November 17 to lodge its formal objections.

    I have yet to confer fully with my client as to what its ultimate position will be with respect to your subpoena. However, I trust that you will adhere to the Federal Rules and afford my client the time it is procedurally due to respond.

    With that said, the point of my prior letters was to treat your failure to effectuate service courteously, and to inform you from the outset that you have not effectuated valid service. Because I thought I was being helpful in pointing out an easy method of service, *i.e.*, via my client's registered agent, I was somewhat taken aback that my correspondence would be met with the threat of sanctions over a subpoena that has deficiencies.

    Therefore, I would ask that you please kindly inform me if you will adhere to your apparent position that service has been effectuated so that I can advise my client, and fashion a formal response to your subpoena.

Sincerely,

Marc Rupp

# TROIANI/KIVITZ, L.L.P.

————————— ATTORNEYS AT LAW —————————

DOLORES M. TROIANI, ESQUIRE
BEBE H. KIVITZ, ESQUIRE

38 NORTH WATERLOO ROAD
DEVON, PA 19333
—————
(610) 688-8400
FAX (610) 688-8426

November 15, 2005

**Via Facsimile and First Class Mail**
Mark Rupp, Esquire
General Counsel
The National Enquirer
One Park Avenue-3rd Floor
New York, NY 10016

**Re:**   **Andrea Constand v. William H. Cosby, Jr. 05-CV-1099**

Dear Mr. Rupp:

We have received your November 11, 2005, correspondence. We disagree that the issue you have already raised concerning our subpoena to the National Enquirer is not ripe for attempting to resolve it. You have now objected to the service of the subpoena several times, and despite your suggestion that you need until November 17, 2005, to ultimately decide your client's position, we think at least this aspect of your position has been made known in your various letters to date.

We have asked you why you believe that valid service was not made. You have declined to answer that question. We told you that we believe the National Enquirer was served properly at its New York office, yet you have failed to respond concerning why you believe your client could be served only via your client's registered agent in Florida, rather than also at its New York office.

You have also ignored our request to discuss substantively the scope of the documents sought by the subpoena, or your concern as to privilege.

Contrary to your assertion that we threatened "sanctions", we have never done so. Certainly you are aware that the Federal Rules of Civil Procedure contemplate motions being filed where, as here, a subpoena has been validly served, the recipient of the subpoena is on notice, and its enforcement is necessary to effectuate justice. Particularly in this situation, where our client has sued Mr. Cosby for defamation, and our client seeks to vindicate her name, and

TROIANI/KIVITZ, LLP
————— ATTORNEYS AT LAW —————

Mark Rupp, Esquire
November 15, 2005
Page Two


mitigate her damages, through the use of these documents, we believe that further undue delay
will prejudice her.  We are amenable to refraining from seeking judicial intervention based on
your confirmation that you will send all formal objections to me by telecopy no later than the
close of business November 17, 2005.    We remain agreeable to attempting to resolve this issue,
should you wish to discuss it further before that time.


                                        Very truly yours,


                                        Bebe H. Kivitz

BHK:m
cc:     Andrea Constand
        Patrick O'Connor, Esquire
        Andrew Schau, Esquire

**EXHIBIT H**



**AMERICAN MEDIA, INC.**

Marc Rapp

*General Counsel*
*National Enquirer*

Email: mrapp@enlinknet

NATIONAL ENQUIRER
STAR
GLOBE
EXAMINER
SUN
WEEKLY WORLD NEWS

SHAPE
NATURAL HEALTH
FIT PREGNANCY
MUSCLE & FITNESS HERS
MEN'S FITNESS
MUSCLE & FITNESS
LOOKING GOOD NOW
FLEX
SLY

COUNTRY WEEKLY
MPH

MIRA!
SHAPE EN ESPAÑOL

AMI MINI-MAGS/DIGESTS
AMI SPECIALS
AMI BOOKS

DISTRIBUTION SERVICES INC.

November 16, 2005

**VIA FACSIMILE & U.S. MAIL**
(610) 688-8426

Bebe H. Kivitz, Esq.
Troiani / Kivitz LLP
38 North Waterloo Rd
Devon, PA 19333

Re:   Andrea Constand Subpoena

Dear Ms. Kivitz:

Without waiving the right to challenge the court's jurisdiction, National Enquirer, Inc. objects to the subpoena as follows:

1.   The subpoena is vague, ambiguous, and so overly broad so as to be unduly burdensome.
2.   The documents sought are neither relevant, nor calculated to lead to the discovery of admissible evidence.
3.   The documents sought are confidential and proprietary, and would only be produced upon the entry of a stringent protective order that would: (1) prevent the public disclosure of any such documents; and (2) limit the inspection of such documents to Plaintiff's attorneys only.
4.   National Enquirer, Inc. objects to the subpoena to the extent it seeks information protected by attorney-client, work-product, or other applicable privileges.
5.   National Enquirer, Inc. objects to the subpoena to the extent it seeks unpublished information and story files which are protected from disclosure by all applicable reporter's privileges, including but not limited to 42 Pa C.S. 5942(a) and the First Amendment of the United States Constitution.

Additionally, in response to your letter of yesterday, please allow me to repeat the thrust of my prior correspondence. I never stated that my client could only be served in Florida. Instead, I was merely pointing out that the subpoena had not been properly served in New York City. Indeed, I have repeatedly informed you by telephone and letter that my client has not authorized me to accept service of the subpoena. Nevertheless, you directed your process server to attempt some sort of substitute service of the subpoena on me on behalf of my client. This is not valid service, and therefore the court lacks jurisdiction over my client. See U.K. LaSalle, Inc. v. Lawless, 421 Pa.Super. 496, 501, 618 A.2d 447, 450 (1992) ("as all courts acknowledge, where a



AMERICAN
MEDIA, INC.

NATIONAL ENQUIRER
STAR
GLOBE
EXAMINER
SUN
WEEKLY WORLD NEWS

SHAPE
NATURAL HEALTH
FIT PREGNANCY
MUSCLE & FITNESS HERS
MEN'S FITNESS
MUSCLE & FITNESS
LOOKING GOOD NOW
FLEX
SLY

COUNTRY WEEKLY
MPH

MIRA!
SHAPE EN ESPAÑOL

AMI MINI-MAGS/DIGESTS
AMI SPECIALS
AMI BOOKS

DISTRIBUTION SERVICES INC.

lawyer has been served with process but does not have express authority to accept the same on behalf of his client, the court lacks jurisdiction to act against the person of the client").

Notwithstanding the subpoena's jurisdictional, procedural, and substantive deficiencies, and in order to spare the parties additional expense, my client may be willing to produce one specific segment of responsive documents if you agree to an acceptable protective order governing the confidentiality of these documents. If you are open to such a compromise, I would ask that you contact me at your earliest convenience so that we can work towards a stipulated protective order.

Sincerely,

Marc Rupp

F:\enquirer\Kivitz Re Cosby 111605.doc

EXHIBIT I

## THE COSBY CASE

# Another Cosby accuser speaks out

## Jane Doe No.5: 'I felt very threatened by him'

**By NICOLE WEISENSEE EGAN**
weisenn@phillynews.com

ON OFFICIAL COURT documents, her name is Jane Doe No. 5.

Now she wants everyone to know her real name.

Beth Ferrier.

And she wants everyone to hear her story about Bill Cosby.

About 21 years ago, after she ended a months-long consensual affair with the entertainer, she says he drugged her when she visited him before a performance in Denver.

"He said, 'Here's your favorite coffee, something I made, to relax you,'" said Ferrier, 46, who at the time worked as a model.

In a telephone interview from her Denver home, Ferrier told how she drank the coffee and soon began to feel woozy. The next thing she knew, several hours had passed, and she had no memory of what happened.

"I woke up and I was in the back of my car all alone," she said. "My clothes were a mess. My bra was undone. My top was untucked. And I'm sitting there going, 'Oh my God. Where am I?' What's going on? I was so out of it. It was just awful."

Security guards approached her car, saying Cosby had told them to get her home, she said.

After gathering her senses, she said she decided to confront Cosby at his hotel.

"You just had too much to drink," she said he told her.

Ferrier has passed a lie-detector test about her claims.

She is one of 12 anonymous "Jane Doe" witnesses in former Temple University women's basketball executive Andrea Constand's civil lawsuit accusing Cosby of drugging and groping her. A 13th woman, California attorney Tamara Green, has already allowed Constand to use her name in the lawsuit.

Joyce Dale, of Media, Delaware County, an attorney and contact for the Jane Does, and Constand's lawyers, Bebe Kivitz and Dolores Troiani, declined to comment. Two of Cosby's lawyers, Andrew Schau and Patrick O'Connor, also declined to comment.

In legal pleadings responding to Constand's lawsuit, Cosby has denied he drugged or sexually assaulted Constand.

Montgomery County authorities investigated Constand's claims but declined to file criminal charges against Cosby.

Both sides were in federal court yesterday arguing whether 10 of the Jane Does should be publicly identified. Jane Doe No. 7's attorney withdrew her request for ano-



It was during her modeling days that Beth Ferrier, now 46, met Bill Cosby.

nymity, although her actual name was not mentioned. Jane Doe No. 5 — Ferrier — has never requested anonymity, although her name hasn't been made public.

U.S. District Judge Eduardo Robreno did not issue a ruling.

Ferrier said she told no one about the night in Denver for years. Then in February, she read in the *National Enquirer* about Constand's allegation that Cosby drugged and groped her at his Montgomery County mansion in January 2004.

"I was like, 'Oh my gosh!' It's just like what happened to me," said Ferrier, who has three children and is going through her second divorce. "That explains it. I've not, all these years, had an explanation."

She called the *Enquirer* trying to reach Constand. She ended up agreeing to tell her story to the supermarket tab for $7,500, so long as she passed a lie-detector test. She did the interview and passed the lie test.



I want to support Andrea [Constand] And I want to support Tamara [Green] I want Bill Cosby to know I'm not afraid of him and that what he did to me was wrong.

BETH FERRIER
Jane Doe No.5

Her story was never published. Instead, the paper published a front-page interview with Cosby in which he said he wouldn't give in to people who were trying to exploit him because of his celebrity.

Stuart Zakim, an *Enquirer* spokesman, would not say why Ferrier's interview was never published.

Ferrier said she's aware her personal life may now come under scrutiny. But she said she's willing to take the risk for what she believes is right. She had been working as a special education teacher until an accident disabled her several years ago.

"I want to support Andrea. And I want to support Tamara," Ferrier said. "I want Bill Cosby to know I'm not afraid of him and that what he did to me was wrong."

Ferrier said she was a girl jock growing up. She played basketball, ran track, swam on the swim team in school. She was raised in the Midwest, then moved to Denver when she was about 14. She didn't make it as a high school cheerleader. She investigated modeling but learned that at 5-feet-11 and 125 pounds, she was a little pudgy.

At the University of Northern Colorado in Greeley, she pursued a degree in special education. As she finished her studies, she again decided to try modeling.

Ferrier said she signed with Steven Noy of Vannoy Talent, then Denver's number-two modeling agency, even thou

See COSBY Page 25

## COSBY
*Continued from Page 10*

too, thought she needed to lose weight.

"Beth was exceptional to work with," Vannoy said through his assistant this week.

In May 1982, just as her first big ad campaign was about to launch and not long after she married her college sweetheart, Ferrier was nearly killed in a car wreck.

By the time she emerged from the hospital, her career had taken off. And she'd lost 40 pounds, thanks to severe facial injuries that caused her to lose most of her teeth.

After a couple of years of working for Vannoy, she signed with Denver's top modeling agent, Jo Farrell. She began splitting her time between Chicago and New York.

Sometime in 1984, Farrell sent her to New York with another woman — a modeling agency booker — and a male model, Ferrier said. They were staying in Farrell's apartment in New York, and Farrell had arranged for them to meet with Cosby at his New York brownstone.

"He was going to help us with our careers," she recalled.

Cosby was a warm and gracious host, she said. They all went



Bill Cosby is accused of drugging, groping in civil suit.

out to dinner at a restaurant called Mr. Chow. After they returned to Cosby's home, Cosby served coffee. The other woman became ill, Ferrier said, and the male model took her back to Farrell's apartment.

Ferrier said she stayed with Cosby, who assured her the woman would be OK, then began talking to her about her career and asking her about her father, who had died of cancer.

"He just wanted to know everything about me," she said.

She saw Cosby the following day and they began an affair, she said.

Soon, she said she fell in love.

About six months into the relationship, he bought her a plane ticket to New York, and they shared a romantic night together, she said. The next morning, he handed her a $100 bill and sent her to the local deli for bagels and cream cheese.

When she returned to his home, laden with bagels, he abruptly told her to pack her bags and move into a nearby hotel, she said. She still has no idea why.

Puzzled and upset, she checked into the hotel, doubting herself for having an extramarital affair.

"What am I doing," she said she thought. "I need to go home. This is not right."

She said she flew back to Chicago without saying goodbye to Cosby.

She said she didn't see him

again until a few weeks late when he called to tell her he w: coming to Denver and asked hi to see him at the now-defunc nightclub where he was perform ing. She met him backstage.

That's when he handed her th coffee, which she believes wa drugged, she said.

What happened that night ha haunted her for 20 years.

"I felt very threatened by him, she said. "He knew everything about me. There wasn't anything to hide about me, but this is a very powerful person that everyone believes, that everyones loves and admires. I did.

"The impact on my life has been monumental," she said. "You can't keep secrets if you're being hurt, if you're being victimized. He made me feel like I'd done something wrong." ★



**WE'RE AVAILABLE FOR YOU 24/7**

www.service.pnionline.com

Check Payment History

Did you know that you can use our customer service web site to check on your account payment history?

Just go to www.service.pnionline.com and find out how easy it can be to stay in touch with us.

The Inquirer    DAILY NEWS

## CERTIFICATE OF SERVICE

I hereby certify that on,  December 8, 2005, the undersigned were served in the following

manner,  a true and correct copy of :  **Plaintiff's Motion To Compel Compliance with**

**Subpoena Issued to the National Enquirer and Memorandum of Law.**

### NAME                                    ### MANNER

The Honorable Eduardo C. Robreno                Hand-Delivered
Eastern District of Pennsylvania
U.S. Courthouse
601 Market Street, Room 2609
Philadelphia, PA 19106

Office of the Clerk of Court                    Hand-Delivered
Eastern District of Pennsylvania
U.S. Courthouse
601 Market Street, Room 2609
Philadelphia, PA 19106

Patrick J. O'Connor, Esquire                    Hand-Delivered
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103

Andrew D. Schau, Esquire                        United States First Class Mail
Patterson Belknap Webb & Tyler, LLP
1133 Avenue of the Americas
New York, NY  10036

Marc Rupp, Esquire                              Unites States First Class Mail
One Park Avenue, 3rd Floor
New York, NY 10016

                                                TROIANI/KIVITZ, L.L.P.

                                    By: _____
                                                Dolores M. Troiani
                                                Attorney I.D. No. 21283
                                                Attorney for Plaintiff

Date: 12/8/05