IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREA CONSTAND, | : |
| | : |
|     Plaintiff, | : |
| | :    No. 05-cv-1099 |
| v. | : |
| | : |
| WILLIAM H. COSBY, JR., | : |
| | : |
|     Defendant. | : |

**DEFENDANT'S BRIEF IN OPPOSITION TO THE MOTION OF
THE ASSOCIATED PRESS TO INTERVENE AND TO LIFT SEAL**

    The Associated Press (the "AP") again has moved to intervene in this case. This time, it seeks to vacate one of the Court's Case Management Orders, the Order entered on November 4, 2005 titled "Case Management Order 2" (doc. #47). That Order sets deadlines for the filing of certain discovery motions. It also provides that the motions will be temporarily sealed, for a short period of time, until the parties have had the opportunity to argue that any material in the motions should be kept confidential. On behalf of the public, the AP argues that Case Management Order 2 must be vacated, and that the parties' discovery motions should be released to the public, immediately, in their entirety, and without opportunity for advance review by this Court.

    The AP's motion must be denied. First, the AP's argument rests fundamentally on a misimpression that Case Management Order 2 is a protective order that imposes permanent confidentiality. That is not the case, and what the AP fears—a permanent seal and/or order of confidentiality—has not yet even been requested by either party. As it now stands, the temporary seal imposed by Case Management Order 2 will dissolve, by its own terms. Thus, the

AP's grievance is unripe, and its motion is premature.  Second, the AP ignores that neither it nor the public has any presumptive right of access to discovery material or discovery motions.  Case Management Order 2 concerns only certain discovery motions.  Therefore, the AP lacks standing to move to vacate that order.  The AP's seeming outrage that the Court would even consider sealing a discovery motion, even temporarily, without broadcasting its intent with sufficient notice to the AP, demonstrates the AP's inflated view of its right to access the discovery proceedings in this case.  For these reasons, which are stated in detail below, the Court should deny the AP's motion.

## COUNTER-STATEMENT OF FACTS

The AP misconstrues the relevant facts in several critical ways.  First, the AP blatantly mischaracterizes Case Management Order 2 as "directing that '*all* requests for discovery, responses and legal memoranda' be filed under seal."  (AP's Br. at 1 (emphasis added); see also id. at 4, 15.)  Perhaps the AP did so to strengthen the appeal of its argument that the November 4, 2005 Order violates the Federal Rules of Civil Procedure "on its face."  (Id. at 7 n.2.)  In reality, the Order is far more narrow.  It provides that requests for discovery and related briefs "*filed pursuant to this order* shall be filed under seal."  (Case Mgmt. Order 2, at 2 (emphasis added).)  The Order does not govern all discovery motions that may ever be filed in this case.

That distinction is critical, because of another provision of Case Management Order 2 AP ignored by the AP—by its terms, the Order is temporary.  The AP contends that the Order sets forth a protocol for "testing" the propriety of the seal and merely "contemplate[es] that the seal "may" be lifted.  (AP's Br. at 4.)  In other words, the AP construes the Order as imposing a permanent seal, which the parties may then challenge.  The opposite is true.  The Order imposes a *temporary* seal.  It is up to any party "opposing the lifting of the seal" to file a memorandum

"show[ing] cause why the seal should not be lifted." (Case Mgmt. Order 2, at 2.) Thus, unless a party moves to make any part of the seal permanent by December 21, 2005, the seal will be lifted. The Court carefully required the parties to articulate every request on separate pages, so that any later permanent sealing could be cleanly limited to the extent requested and justified.

The AP also contends that there is no public record explaining the genesis of, the reasons for, and the limitations of Case Management Order 2. To the contrary, the November 4, 2005 conference, which preceded the Order, occurred on the record. There is a publicly available transcript of that proceeding. During the proceeding, the Court recognized its responsibility to balance any public interest with any legitimate basis for confidentiality. The Court noted that the purpose of Case Management Order 2 was to establish a protocol whereby the Court could review that issue *in camera*, so as not to decide the issue as a matter of default:

> The second issue is whether or not these proceedings [i.e., the motions to compel relating to the parties' depositions] should then be conducted under some special rules of confidentiality. Or whether they should be treated in the same manner that other litigation is treated, i.e., that while discovery itself is confidential, ordinarily proceedings involving the Court and enforcement of the Court's Orders, are conducted in open court and on the record. And there can be pretty good arguments both ways. So, the way to join that issue, it seems to me, is these requests should be filed under seal and the answers should be filed under seal.
>
> When that is completed, then there will be an opportunity for any party that wishes to argue that the seal should not be lifted, to so show. And an opportunity to oppose that. That is, it seems to me, that before we have an argument of whether or not the seal should be lifted, we need to have on the record what it is that is going to be subject to public review.

(Nov. 4, 2005 Tr. at 4.) The Court noted that, without such a temporary seal, a party's motion to compel could very well, unilaterally, moot any legitimate claim to confidentiality:

> The difficulty here is the following. The courts have recognized that confidentiality can be attached to discovery because, among other reasons, the Court is not directly involved.

3

> The parties privately can make those arrangements. If a motion to compel becomes a vehicle to disclose the discovery, then the entire point of any agreement that the parties have or any desire that the courts have endorsed in the past for discovery, as opposed to court proceedings, to remain confidential, would be pointless.

(Id. at 6.) The Court emphasized that, unless a party objected, the seal would be lifted: "Maybe nobody will oppose it, maybe they will." (Id. at 7.)

Case Management Order 2 itself provides the record and careful, tailored judicial decision-making that the AP insists is absent. The Order recognizes the authority relied on by the AP. The Court explained that, "It is in the context of a discovery dispute that [the] Court again is called upon to balance the private and public interests implicated in this case. The purpose of this protocol is to develop a record upon which the Court may calibrate the scales upon which the proper balancing of private and public interests may take place." (Case Mgmt. Order 2, at 3 n.1.) Thus, the Order makes clear that it is not a protective order or any other order of confidentiality, but rather a case management order, establishing a procedure for the orderly discharge of the Court's consideration of the balance between public and private interests.

## ARGUMENT

**I.    THE AP'S MOTION IS PREMATURE.**

The central fallacy of the AP's argument is that the Court permanently sealed judicial records. Laboring under this misconception, the AP cites to authority governing the procedure for decisions to close court proceedings, to seal judicial records permanently, and for the entry of protective orders.[1] (See AP's Br. at 6–9.) As Case Management Order 2 states, however, the

---

1    Globe Newspaper Co. v. Superior Court, 457 U.S. 596 (1982), concerned an order closing a criminal trial. Press-Enterprise Co v. Superior Court, 464 U.S. 501 (1984), and United States v. Antar, 38 F.3d 1348 (3d Cir. 1994), concerned a decision to close and seal the transcript of criminal voir dire proceedings. Shingara v. Skiles, 420 F.3d 301 (3d

seal it imposes is temporary. Unless a party objects to the lifting of the seal, which neither party has done, the motions to compel will become publicly available. Thus, what the AP fears is not yet even a possibility. Permanent sealing will only become *possible* if and when a party moves for a permanent seal, and only to whatever extent the parties assert. At that putative point, the Court will apply the law, issue a ruling, and articulate whatever findings are required by the law. Therefore, the AP's motion should be denied as premature.

In fact, it is difficult to determine exactly what the AP thinks *should* have occurred. The AP states that it "does not here argue that good cause never exists for sealing." (AP's Br. at 8.) It even recognizes that "the parties certainly have the right to ask the Court to review sensitive or privileged information *in camera*." (Id. at 9.) Yet, at the same time, the AP criticizes the Court for placing "the cart before the horse," "as the Court apparently decided to seal first and determine the validity of sealing later." (Id. at 8.) The AP has it topsy-turvy. If there may be good cause here for sealing a discovery motion, and if that may only be determined by submitting the motion to the Court, then the motion *must* be submitted, at first, under seal. Otherwise, the discovery motion would become public (thanks to the AP itself), and the motion to seal it would become moot. *That* procedure would put the cart before the horse. Case Management Order 2 establishes a sensible, orderly procedure that preserves the rights of the parties.

---

Cir. 2005), concerned a protective order governing the parties' dissemination of all discovery material. United States v. Raffoul, 826 F.2d 218 (3d Cir. 1987), concerned the closure and sealing of the transcript from a criminal trial. Publicker Industries v. Cohen, 733 F.2d 1059 (3d Cir. 1984), concerned the closure and sealing of the transcript from a preliminary injunction hearing.

## II.  THE AP HAS NO STANDING TO SEEK ACCESS TO DISCOVERY MATERIAL OR DISCOVERY MOTIONS.

The AP's motion also rests on a critical misunderstanding of a substantive nature—namely, that the mere filing of *any* document with the court, rendering it a "judicial document," affords the public a common law or constitutional right to access the document.  The AP lumps all "judicial records and proceedings" together, ignoring that Case Management Order 2 concerns only discovery material and discovery motions.  Throughout its brief, the AP cites broadly to the public's "presumptive right to inspect and copy judicial records and documents." (AP's Br. at 6 (internal quotation marks omitted).)  The AP invokes the right of "the press and public" "to articulate their countervailing interests" in the potential sealing of *any* court filing. (Id. at 13.)  The AP argues that "the seal should be lifted, and the public's right to access motions, requests, and other records filed with the Court should be fully restored."  (Id. at 9.)  Judging from the authority it cites, the AP even equates Case Management Order 2 to an order closing an actual, live courtroom proceeding.  (Id. at 9–10 & n.3.)

Neither the public nor the press has any right, however, to access discovery motions or the discovery material attached to those motions.  In Leucadia, Inc. v. Applied Extrusion Technologies, Inc., 998 F.2d 157 (3d Cir. 1993), the United States Court of Appeals for the Third Circuit held that "there is a presumptive right to public access to all material filed in connection with nondiscovery pretrial motions, . . . *but no such right as to discovery motions and their supporting documents*."  998 F.2d at 165 (emphasis added).  The court noted that "we cannot overlook the Supreme Court's statements in Seattle Times v. [Rhinehart, 467 U.S. 20 (1984)] . . . that 'pretrial deposition and interrogatories are not part of public components of a civil trial.'" Id. at 164.  The court stated that "a holding that discovery motions and supporting materials are subject to a presumptive right of access would make raw discovery, ordinarily inaccessible to the

6

public, accessible merely because it had to be included in motions precipitated by inadequate discovery responses or overly aggressive discovery demands. This would be a holding based more on expediency than principle." Id. at 165.[2]

The AP all but ignores this principle of law, masquerading as the champion of a public right that does not exist. The AP relegates Leucadia to one sentence in a footnote in its brief. Without any explanation, the AP claims that Leucadia "is of limited precedential value," citing to a Pennsylvania state court decision as authority. (AP's Br. at 7 n.2.) To the contrary, and the AP's wishful thinking notwithstanding, Leucadia *controls* this court. No court has even questioned whether Leucadia remains good law.[3] Under the law of this circuit, there is no public right of access to discovery motions or the discovery materials attached to those motions.

The same is true in other circuits. In Anderson v. Cryovac, Inc., 805 F.2d 1 (1st Cir. 1986), the United States Court of Appeals for the First Circuit stated: "We think it is clear and hold that there is no right of public access to documents considered in civil discovery motions." 805 F.2d at 12. The court held:

---

[2] The Supreme Court explained why discovery is not, itself, sufficiently "judicial" to warrant a public right of access. "Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action. Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information." Seattle Times, 476 U.S. at 33.

[3] The Third Circuit's opinion in Pansy v. Borough of Stroudsbourg, 23 F.3d 772 (3d Cir. 1994) does not conflict, expressly or otherwise, with Leucadia. In Pansy, the document at issue was a settlement agreement, not a discovery motion. The Third Circuit already had decided that "a settlement agreement deemed a judicial record is accessible under the right of access doctrine." Pansy, 23 F.3d at 781 (citing Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs., 800 F.2d 339, 344-45 (3d Cir. 1986).) Thus, to determine whether the public had a right to access the settlement agreement in Pansy, the court only was required to decide whether the settlement agreement was a "judicial record." Id. The court did not hold, or even consider, whether the right of access extended to all documents filed with the court by litigants. The remainder of the opinion did not concern access to judicial documents at all.

> [D]iscovery proceedings are fundamentally different from
> proceedings to which the courts have recognized a public right of
> access. . . . [A] request to compel or protect the disclosure of
> information in the discovery process is not a request for a
> disposition of substantive rights. Materials submitted to a court for
> its consideration of a discovery motion are actually one step further
> removed in public concern from the trial process than the
> discovery materials themselves, materials that the Supreme Court
> has said are not subject to the public's right of access.

Anderson, 805 F.2d at 12-13; see also Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1312 (11th Cir. 2001) ("The better rule is that material filed with discovery motions is not subject to the common-law right of access."); United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995) ("We think that the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access.").

The Third Circuit's approach is sensible. The filing and content of a discovery motion is a unilateral decision made by one litigant. A party is free to include whatever it wishes in such a motion. The Supreme Court has held that no part of discovery, let alone the parts contested and repeated in discovery motions, is subject to a public right of access. See Seattle Times, 476 U.S. at 33 ("Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action."). Discovery *motions* concern the *contested* aspects of discovery, i.e., matters that at least one party believes have no relevance to the judicial proceeding at all and should not even be discoverable. In fact, extreme abuse could stem from unfettered public access to discovery motions. In a case such as this one, where legitimate privacy interests are at stake and media scrutiny is acute, a party seeking to use publicity as leverage may feel free to inquire into irrelevant, sensitive areas, knowing that it will respond to any legitimate resistance from its opponent by filing a motion.

In addition to misapplying the constitution and the federal common law, the AP also misapplies the Federal Rules of Civil Procedure, arguing that "its right to access is based on" those rules. (AP's Br. at 7 n.2.) The AP contends that Case Management Order 2 "on its face violates Rule 26(c)." (Id.) Rule 26(c), however, governs discovery itself, not the court's authority to seal any portion of the judicial record. Specifically, Rule 26 governs protective orders in discovery, such as orders limiting the scope of discovery, or orders imposing confidentiality on certain information produced in discovery. Case Management Order 2 is not a protective order. It does not control whether the parties may disseminate discovery material from this case.[4] Rather, it is a case management order, providing a temporary seal so that the broader protective order question may be argued and decided. The Order rests not on Rule 26 but on the Court's "supervisory power over its own records and files," Nixon v. Warner Communications, Inc., 435 U.S. 589, 598 (1978), and on the "equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices." Gumbel v. Pitkin, 124 U.S. 131, 144 (1888). Shingara v. Skiles, 420 F.3d 301 (3d Cir. 2005), the case relied on most heavily by the AP, concerned a Rule 26(c) protective order, not the sort of Case Management Order at issue in the AP's motion.[5]

In summary, the AP does not have a right to access discovery in this case, or to access discovery motions. Its broadly worded brief all but ignores that point. Thus, the AP's motion to intervene to unseal the motions filed pursuant to Case Management Order 2 should be denied.

---

[4] In this case, the parties agreed that they would treat the depositions as confidential until Defendant had sought and received a ruling from the Court.

[5] As for Rule 5, which was also mentioned in the portion of Leucadia quoted and cited by the AP, (AP's Br. at 7 n.2), that rule specifically provides that discovery material must *not* be filed in the public record, a practice this Court has followed for years. See Local R. Civ. P. 26.1(a).

### III.  THE COURT MAY RESOLVE DISCOVERY DISPUTES BY LETTER.

For the same reason, the AP's contention that the Court may not act without "the filing of motions that publicly seek the Court's intervention" is simply wrong.  (AP's Br. at 10.)  Contrary to the AP's implication, it is entirely proper to hear discovery disputes by letter and to conduct in-chambers or telephonic discovery conferences.  Again, neither discovery nor discovery motions are subject to a public right of access.  Courts frequently hear discovery disputes by letter.  See, e.g., Stafford v. Vaughn, No. Civ.A.02-3790, 2005 WL 226147, at *1 (E.D. Pa. Jan. 20, 2005) (providing that "any such discovery disputes shall be presented to the Court by letter to Chambers").  Some judges of this District Court maintain standing orders *requiring* discovery disputes to be raised by letter.  See, e.g., Laurenzano v. Lehigh Valley Hosp., Inc., No. CIV.A. 00-CV-02621, 2003 WL 21780978, at *2 (E.D. Pa. July 28, 2003) ("A Standing Order of the undersigned dated January 2, 2003 provides that all discovery disputes which cannot be amicably resolved shall be brought to the attention of Magistrate Judge Rapoport "by letter or other informal means").  Other district courts require this practice by local rule.  See Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, Rule 37.3(c).

The AP does not have the right to know every detail about discovery in this case.  Its outrage over the procedure in this case is misplaced.  "Simply stated, the purpose of discovery is to resolve legal disputes between parties, not to provide newsworthy material."  Chicago Tribune, 263 F.2d at 1316 (Black, J., concurring).  "If it were otherwise and discovery information and discovery orders were readily available to the public and the press, the consequences to the smooth functioning of the discovery process would be severe."  Id.  "Such

interference by parties who have no interest in the underlying litigation could seriously impair an Article III court from carrying out its core function—resolving cases and controversies." Id.

## CONCLUSION

For these reasons, Defendant respectfully requests the Court to deny the AP's motion.

Dated: December 19, 2005

*Patrick J. O'Connor*
Patrick J. O'Connor
George M. Gowen III
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA  19103
215.665.2000

Andrew D. Schau
PATTERSON, BELKNAP,
   WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
212.336.2000

*Attorneys for Defendant*