IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANDREA CONSTAND,                          :
                                          :
                Plaintiff,                :
                                          :
                                          :      No. 05-cv-1099
        v.                                :
                                          :
WILLIAM H. COSBY, JR.,                    :      **FILED UNDER SEAL**
                                          :
                Defendant.                :

## DEFENDANT'S MEMORANDUM OF LAW IN
## PARTIAL OPPOSITION TO THE LIFTING OF THE
## SEAL ESTABLISHED BY CASE MANAGEMENT ORDER 2

Pursuant to Case Management Order 2 (doc. #47), Defendant submits this memorandum

of law opposing, in part, the lifting of the seal imposed by Case Management Order 2 on certain

discovery motions and related submissions.  Defendant also seeks a limited order that the

transcript of his deposition be kept confidential before trial, and directing that it be used solely

for purposes of this litigation.

## INTRODUCTION

In civil litigation, discovery occurs in private.  Federal Rule of Civil Procedure 5(d)

forbids litigants from filing initial disclosures, interrogatories, and deposition transcripts with the

court.  The public and the press have no presumed right to be present for discovery, to access

discovery materials, or to read discovery motions.  In most litigations, it is not necessary for the

parties to appeal to the court for assistance in maintaining this convention.

Three aspects of this case make it unique and threaten this default method of practice.

First, Defendant is a celebrity.  Second, the case concerns sex.  Third, and perhaps most

importantly, Plaintiff and her counsel admit that they hope to use information obtained in discovery to sully the public's perception of the Defendant in advance of trial. They overtly seek to use pretrial publicity as an instrument of redemption and punishment. Without the slightest regard for the effect such pretrial publicity would have on the integrity of the jury pool and these proceedings, Plaintiff has thus done everything in her power to publish what she has learned in discovery.

This is an abuse of the discovery process. The Court should exercise its discretion to protect Defendant's privacy and thwart Plaintiff's attempt to use discovery to generate prejudicial publicity before the trial. At least at this stage, however, the decision is easy, for the public has no presumed right of access to the parties' discovery motions or the material attached to those motions. Nor does the public have any right to access the transcript of Defendant's deposition. On the other hand, disclosure of the deposition or the motions—which Plaintiff has larded with page after page of salacious and embarrassing personal information—would violate the real privacy interests of Defendant and others.

## BACKGROUND

This case is not about business or politics or other matters of legitimate public concern. Rather, it is a private dispute between two individuals, neither of whom is a public official, who have different accounts and perceptions of an evening they spent alone together in January 2004. Plaintiff alleges that Defendant, once her mentor, tricked her into ingesting a debilitating drug and then sexually assaulted her. Defendant denies it, insisting that their limited sexual contacts were entirely consensual.

But for the fact that Defendant is a well-known celebrity, none of this would generate more than private attention. That factor, however, and several others have combined to convert

2

this case into a media centerpiece. In addition to Defendant's celebrity, which is heightened here in Philadelphia, the allegations and details of the case are salacious. Moreover, armed with nothing more than a few police statements and newspaper articles, of varying specificity and of slight or no similarity to her own allegations, Plaintiff has attempted to inflate the scope of her case to include the private lives of twelve additional persons (the so-called "Rule 415 witnesses"). Before this case was filed, none of the Rule 415 individuals ever alleged that Defendant mistreated them. Nevertheless, enticed by the scent of a case involving the private life of a celebrity, alleged drug use, and the prospect of salacious stories from several anonymous women, the media has covered these proceedings in copious detail.[1]

Obviously, this publicity does not affect the parties equally. Defendant's reputation is his livelihood, and the media constantly clamors to intrude upon his private life. Plaintiff has thus sought to exploit the media's interest by fomenting as much pretrial publicity as possible, most notably through abuse of her ability as a litigant to make public filings. For instance, Federal Rule of Civil Procedure 5(d) forbids the filing of Initial Disclosures, but Plaintiff filed her initial

---

[1]  Plaintiff filed the Complaint on March 8, 2005. Less than 24 hours later, the *Philadelphia Daily News* not only published a story detailing the allegations in the detail, but it printed a separate human interest piece on Plaintiff and her family. When Plaintiff filed her unilateral "Report Following Rule 26 Conference of the Parties" the Daily News published another article, seizing upon Plaintiff's mention of ten potential witnesses under Federal Rule of Evidence 415. When Defendant moved on April 15, 2005 to Compel Plaintiff's Initial Disclosures, the press covered it in an article dated April 19. Plaintiff's filing of an opposition brief, and Defendant's filing of motion for leave to file a reply brief, each were the subjects of articles dated April 20, 2005 and April 23, 2005. The Court's June 2, 2005 opinion was reported immediately and widely, as were the briefs, argument, and order in the subsequent motion for confidentiality filed by the Rule 415 witnesses. The press also reported in detail on the Court's September 26, 2005 hearing. Moreover, the Associated Press twice has moved to intervene to preserve and augment the press's ability to publicize this proceeding. In what must surely be an event unprecedented in the history of tabloid journalism, the press even reported the granting of Defendant's motion *pro hac vice*.

disclosures with the Court anyway, publicly revealing her intent to call several "Jane Doe" witnesses under Rule 415.  More recently, the Court redacted from the transcript of a status conference certain of Plaintiff's counsel's characterizations (and mischaracterizations) of the evidence relating to her defamation claim.  Proving both her ability and her intent to author the public record, and in the face of the Court's own decisions about which of counsel's characterizations should be redacted, Plaintiff filed a brief that repeated the very same statements.  In fact, Plaintiff's counsel has made no secret of their continuing intent to publicize this case and to use discovery for purposes other than preparing for trial.  In an October 6, 2005 letter to the Court, Plaintiff's counsel laid bare her desire to make the fruits of discovery public, to afford Plaintiff "a public forum in which to clear her name."  In a November 16, 2005 letter, she openly argued that the purpose of discovery is to afford "Plaintiff the opportunity to vindicate her name in public."  Indeed, in a recent brief, Plaintiff argued that "the seal should be lifted so that Plaintiff may be vindicated."  (Resp. Pl. Mot. AP Intervene & Lift Seal [doc #57] at 4.)  Not content to wait for the jury trial she has demanded in this case, Plaintiff apparently plans to punish Defendant in the press.[2]

---

[2]     During the parties' first appearance before the Court, on May 11, 2005, Plaintiff's counsel openly professed that she intended to use her role in this case to give her client a premature public mouthpiece. She said, "The problem with this case is that our client has no one to speak for her publicly but us." (May 11, 2005 Tr. [doc. #25] at 6.) The Court asked, "[Y]ou'll have the jury to speak to; what is the point of speaking in public?" (Id.) The "point" is obvious: to taint the jury pool. Neither party should be concerned with speaking in public about this case until the facts have been decided by a jury.

## ARGUMENT

I.  **REFERENCES IN THE DISCOVERY MOTIONS TO CERTAIN PARTS OF DEFENDANT'S DEPOSITION SHOULD REMAIN SEALED.**

As expected, Defendant's deposition included questions and testimony about several private and embarrassing topics, invading both Defendant's privacy and that of third parties. Plaintiff asked Defendant about his relationship with his wife. She repeatedly asked him about consensual sexual relationships he may have had with women other than his wife. She asked him about his medical history, and any medications, remedies, and supplements he may have taken. She asked him whether he suffered from any sexual dysfunction. She asked about his financial gifts and scholarships he has given to others.

Plaintiff then asked Defendant about the content of certain of the Rule 415 witnesses' purported statements to police or newspaper reporters. Because one such individual apparently claims that Defendant offered her an illegal substance in the 1970's, Plaintiff asked Defendant several general questions about his knowledge and possession of illicit drugs. Plaintiff also asked about the private and confidential agreement between Defendant and the *National Enquirer*, which preceded the interview at issue in this case. Not surprisingly, having laid the ground work by delving into matters that any person would rightly regard as extremely personal, Plaintiff's discovery motions submitted pursuant to Case Management Order 2 selectively focus on the most embarrassing and private areas of Defendant's deposition.

The public has no right to access any part of Defendant's deposition, let alone the sensitive areas discussed in the parties' discovery motions. "[P]retrial depositions and interrogatories are not public components of a civil trial. Such proceedings were not open to the public at common law, and, in general, they are conducted in private as a matter of modern practice." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 33 (1984) (citations and footnotes

omitted).  "Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action.  Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information."  Id.

The fact that Plaintiff has quoted, referred to, and characterized Defendant's deposition in discovery motions and related memoranda does not afford the public a right of access to the deposition, or even to the motions and memoranda themselves.  In Leucadia, Inc. v. Applied Extrusion Technologies, Inc., 998 F.2d 157 (3d Cir. 1993), the United States Court of Appeals for the Third Circuit held that "there is a presumptive right to public access to all material filed in connection with *nondiscovery* pretrial motions, . . . *but no such right as to discovery motions and their supporting documents*."  998 F.2d at 165 (emphasis added).[3]  The court noted that "we cannot overlook the Supreme Court's statements in Seattle Times v. [Rhinehart, 467 U.S. 20 (1984)] . . . that 'pretrial deposition and interrogatories are not part of public components of a

---

[3]   For the same reason, Plaintiff's contention that raising discovery disputes by letter violates "established case law" and "the Federal Rules of Civil Procedure" is simply wrong.  (Pl.'s Resp. AP's Motion Intervene & Lift Seal [doc. #57] at 2.)  It is entirely proper to hear discovery disputes by letter and to conduct in-chambers or telephonic discovery conferences.  Again, neither discovery nor discovery motions are subject to a public right of access.  Courts frequently hear discovery disputes by letter.  See, e.g., Stafford v. Vaughn, No. Civ.A.02-3790, 2005 WL 226147, at *1 (E.D. Pa. Jan. 20, 2005) (providing that "any such discovery disputes shall be presented to the Court by letter to Chambers").  Some judges of this District Court maintain standing orders *requiring* discovery disputes to be raised by letter.  See, e.g., Laurenzano v. Lehigh Valley Hosp., Inc., No. CIV.A. 00-CV-02621, 2003 WL 21780978, at *2 (E.D. Pa. July 28, 2003) ("A Standing Order of the undersigned dated January 2, 2003 provides that all discovery disputes which cannot be amicably resolved shall be brought to the attention of Magistrate Judge Rapoport "by letter or other informal means").  Other district courts require this practice by local rule.  See Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, Rule 37.3(c).  Not surprisingly, Plaintiff cites no authority for her bold accusation that this Court has violated "established case law."

civil trial.'" Id. at 164. The court stated that "a holding that discovery motions and supporting

materials are subject to a presumptive right of access would make raw discovery, ordinarily

inaccessible to the public, accessible merely because it had to be included in motions precipitated

by inadequate discovery responses or overly aggressive discovery demands. This would be a

holding based more on expediency than principle." Id. at 165.[4]

In Anderson v. Cryovac, Inc., 805 F.2d 1 (1st Cir. 1986), the United States Court of

Appeals for the First Circuit agreed: "We think it is clear and hold that there is no right of public

access to documents considered in civil discovery motions." 805 F.2d at 12. The court held:

> [D]iscovery proceedings are fundamentally different from
> proceedings to which the courts have recognized a public right of
> access. . . . [A] request to compel or protect the disclosure of
> information in the discovery process is not a request for a
> disposition of substantive rights. Materials submitted to a court for
> its consideration of a discovery motion are actually one step further
> removed in public concern from the trial process than the
> discovery materials themselves, materials that the Supreme Court
> has said are not subject to the public's right of access.

Anderson, 805 F.2d at 12-13; see also Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 263

F.3d 1304, 1312 (11th Cir. 2001) ("The better rule is that material filed with discovery motions is

not subject to the common-law right of access."); United States v. Amodeo, 44 F.3d 141, 145 (2d

---

[4]     The Third Circuit's opinion in Pansy v. Borough of Stroudsbourg, 23 F.3d 772 (3d Cir.
1994) does not conflict, expressly or otherwise, with Leucadia. In Pansy, the document
at issue was a settlement agreement, not a discovery motion. The Third Circuit already
had decided that "a settlement agreement deemed a judicial record is accessible under the
right of access doctrine." Pansy, 23 F.3d at 781 (citing Bank of Am. Nat'l Trust & Sav.
Ass'n v. Hotel Rittenhouse Assocs., 800 F.2d 339, 344-45 (3d Cir. 1986).) Thus, to
determine whether the public had a right to access the settlement agreement in Pansy, the
court only was required to decide whether the settlement agreement was a "judicial
record." Id. The court did not hold, or even consider, whether the right of access
extended to all documents filed with the court by litigants. The remainder of the opinion
did not concern access to judicial documents at all.

Cir. 1995) ("We think that the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access.").[5]

Moreover, in addition to the fact that the public has no right to access the discovery motions or Defendant's deposition, any such access would be terribly embarrassing to Defendant and others and invasive of privacy rights of the Defendant and non-parties. The discovery papers submitted pursuant to Case Management Order 2 are rife with quotations and characterizations of testimony about Defendant's sex life. The Supreme Court has recognized that sexual conduct is "the most private of human conduct." Lawrence v. Texas, 539 U.S. 558, 567 (2003). The discovery papers and the deposition also concern Defendant's health and medical history, in particular an eye condition that he has gone to great lengths to keep private. Individuals have a constitutional right of privacy in their medical records. Whalen v. Roe, 429 U.S. 589, 602 (1977). The discovery papers and the deposition also concern Defendant's personal information and business and financial practices. In particular, the material discusses Defendant's residences, his social security number, his assets, his use of personal assistants, and his practices in charitable giving. Such information is also private. See e.g. Fraternal Order of Police, Lodge No. 5. v. City of Philadelphia, 812 F.2d 105, 115 (3d Cir. 1987).

In the context of discussing Defendant's deposition, Plaintiff's motion papers also repeat and characterize certain vague, unsworn, and untested hearsay statements, purportedly from the Rule 415 witnesses and Defendant's testimony about them. This material is inherently

---

[5]     Plaintiff's "Motion Concerning Conduct of Defendant's Deposition and Motion for Sanctions" is a discovery motion, for purposes of determining the public's right of access to it. Just like Plaintiff's motion to compel, the "Motion Concerning Conduct of Defendant's Deposition" exclusively concerns Defendant's deposition. In fact, 50 of its 62 pages reproduce the transcript verbatim. Like the motion to compel, the "Motion Concerning Conduct of Defendant's Deposition" does not request the disposition of substantive rights.

scandalous. One woman says that the Defendant attended gatherings where drugs and alcohol were prevalent, and had extramarital, consensual sexual relations with younger women. Others say that Defendant possessed and provided recreational drugs to women he knew. Still others imply that Defendant or his agents "slipped" someone an unknown substance. None of this is likely to be admissible at trial, but Plaintiff aims to purvey it all of it in the press.

The discovery papers and deposition also reveal that Defendant paid a sum of money (based upon academic achievement) to a woman with whom he had a consensual relationship, making good on a promise he had made to her when they were together, and also out of fear that she would publicize their relationship in order to embarrass him. The papers quote and characterize Defendant's testimony about Defendant's familiarity with prescription drugs that were widely used for recreational purposes in the 1970's. The papers reveal an agreement between Defendant and the *National Enquirer*, which agreement contains a confidentiality clause and which both parties have kept confidential. Again, while this material would make great "copy" for Plaintiff's extrajudicial purposes, none of it will be admissible at trial because none of it has anything to do with this case.

Public release of this highly personal information, whether it be true or untrue, would prove irreparably damaging to the reputations of the persons involved. Details of any person's private sexual history are unquestionably embarrassing. Even the loosest of references to drugs or to extramarital relationships, for instance, even if the material has no truth or bearing on this case, would be trumpeted for commercial gain by the national news media. Public revelation that Defendant gave money to a woman with whom he had an affair would be devastating and painful. Public knowledge of Defendant's medical conditions would be embarrassing to him. Even more embarrassing would be the unverified but scandalous statements of faceless,

nameless women repeated and characterized in the discovery papers and the deposition. There is no doubt that public disclosure of the motions and Defendant's sworn deposition testimony, which delves into the most intimate subjects imaginable, would generate a firestorm of lurid, embarrassing publicity.

As the Supreme Court has held, courts have wide latitude to control access to judicial records and should do so to prevent the release of information "that could be damaging to reputation and privacy." Seattle Times, 467 U.S. at 35. Faced with similar situations involving the combination of heightened media scrutiny and personal and scandalous information, courts have not hesitated to employ their broad discretion to protect the parties' privacy rights. In Jones v. Clinton, 993 F. Supp. 1217, 1998 U.S. Dist. LEXIS 2923 (E.D. Ark. 1998), a case about alleged sexual harassment by the president when he was the governor of Arkansas, the court noted:

> Much of the discovery in this case of alleged sexual harassment has delved deeply into the personal lives of individuals and elicited information that, regardless of its truth or falsity, could prove damaging to reputation and privacy. Many in the media have shown no restraint in their willingness to place such personal information in the public domain despite the pain it may cause. . . . The Court finds that there is good cause under Rule 26(c) in attempting to protect private individuals from the stigma of being associated with a case that involves alleged sexual indiscretions and which is being played out on a national stage.

1998 U.S. Dist. LEXIS 2923, at *30. In another case involving alleged sexual misconduct by a famous entertainer (in this case, criminal molestation of a minor), People v. Jackson, 27 Cal. Rptr. 3d 596 (Cal. Ct. App. 2005), the court held that the combination of the defendant's celebrity and the sexual, as opposed to "white collar," nature of the charges, mandated against public disclosure.

Moreover, in this case, the pretrial publicity threatened by the release of the discovery papers could make it impossible for Defendant to receive a fair trial in accordance with the Federal Rules of Evidence and the Federal Rules of Civil Procedure. Early in the case, this Court noted its concern "that information which is disseminated widely potentially could interfere with the ability to select an impartial jury in this case." (May 11, 2005 Tr. [doc. #25] at 2.) As stated above, the discovery papers and Defendant's deposition concern broad-ranging, prejudicial topics that will likely be inadmissible at trial. See United States v. McVeigh, 119 F.3d 806, 813 (10th Cir. 1997) ("Neither tradition nor logic supports public access to inadmissible evidence.").

In Shingara v. Skiles, 420 F.3d 301, 306 (3d Cir. 2005), the court downplayed the notion that pretrial publicity could make jury selection a serious concern. Id. at 307. In that case, however, the concern over publicity and prejudice was broad and unspecific, proffered in support of a broad, "blanket" protective order over all discovery. Id. Here, the Court has before it specific examples of prejudicial discovery material and a known record of pretrial publicity. Publicity in Philadelphia, for instance, of loose, unsworn allegations of sexual misconduct from third parties could irreparably prejudice the jury pool. The same is true with respect to Defendant's possession of illicit medications in the 1970's and his payments to a former paramour. Indeed, Plaintiff agrees. She contends that the seal on the discovery papers "should be lifted so that Plaintiff may be vindicated", admitting, that she wants the public to prejudge the facts before there is ever a trial. In such a case, concern over pretrial prejudice is warranted. See Anderson v. Cryovac, Inc., 805 F.2d 1, 8 (1st Cir. 1986) ("The district court was concerned that the extensive publicity . . . would inhibit and perhaps prevent the selection of an impartial

jury . . . . Because it was faced with specific instances of massive and potentially harmful

publicity, we find there was good cause for the district court to issue the protective order.").[6]

The Court has the inherent power to seal the discovery motions, to which the public has

no right of access. "[T]o the extent that courthouse records could serve as a source of public

information, access to that source customarily is subject to the control of the trial court." Seattle

Times, 467 U.S. at 33 n.19. The Court has "supervisory power over its own records and files."

Nixon v. Warner Communications, Inc., 435 U.S. 589, 598 (1978). Whether or not any

particular rule authorizes a particular order, "we have no question as to the court's jurisdiction to

[seal records] under the inherent 'equitable powers of courts of law over their own process, to

prevent abuses, oppression, and injustices.'" Int'l Prods. Corp. v. Koons, 325 F.2d 403, 407-08

(2d Cir. 1963) (quoted in Seattle Times, 467 U.S. at 35) (quoting Gumbel v. Pitkin, 124 U.S.

131, 144 (1888)). The Court should exercise this authority and seal those portions of the

discovery motions that refer to the parts of Defendant's deposition mentioned above.

Defendant has submitted to the Court with this memorandum redacted versions of five

filings made in connection with Case Management Order 2 (including a redacted copy of this

memorandum), which he respectfully suggests the Court enter in the public record, while

---

[6]     Moreover, much of what Defendant proposes to seal is simply Plaintiff's counsel's deposition questions and Plaintiff's written characterizations of Defendant's testimony, which often, and at times grossly, misrepresent the record. Question 15 of Plaintiff's Motion to Compel, for instance, mischaracterizes a Rule 415 witness's purported police statement. Questions 2, 9, 10, and 26 misrepresent Defendant's testimony. Question 41 blatantly misrepresents the evidence. Counsel's questions misrepresented the content of the Daily News article about Ms. Ferrier. (Pl.'s Mot. Sanctions at 30.)

Other portions of Plaintiff's discovery motions were clearly unnecessary. Plaintiff presented Questions 16, 25, 27, 28 purely for the purpose of embarrassing Defendant, as the record makes clear that Defendant already answered those questions. Most, if not all, of Plaintiff's 62-page Motion for Sanctions, which quotes 50 pages of the transcript, is unnecessary.

permanently sealing the originals.  Defendant also submits a redacted version of the "Response

of Plaintiff to Motion of the Associated Press to Intervene and to Lift Seal."  If Plaintiff files an

opposition to this memorandum, Defendant will submit a proposed redacted version of that

opposition.

## II.    DEFENDANT'S DEPOSITION SHOULD BE KEPT CONFIDENTIAL AND USED SOLELY FOR PURPOSES OF THIS LITIGATION.

It would make little sense to seal the discovery motions that refer to Defendant's

deposition, only to allow Plaintiff, or to attach it to the next motion she files.[7]  For that reason,

Defendant also requests that the Court enter a limited order of confidentiality, requiring Plaintiff

to keep the transcript of Defendant's deposition confidential and to use it solely for purposes of

this litigation.  Defendant also requests that the order require Plaintiff, if she later intends to file a

motion referring to or attaching the transcript, to provide Defendant with sufficient notice of the

anticipated filing, so that Defendant can move the Court for an order that such filing be made

under seal.

Such an order is clearly necessary, given Plaintiff's expressed intentions to publicize the

fruits of discovery in this case.  Plaintiff has already abused her ability to publish information

through unilateral filings, such as her filing of initial disclosures in violation of Rule 5(d), her

December 8, 2005 filing repeating the evidentiary characterizations that the Court had redacted

from the record, and her inclusion of unnecessary portions of Defendant's deposition in her

discovery papers.  At Defendant's deposition, Plaintiff's counsel even openly threatened

---

[7]    Defendant's counsel has approached Plaintiff's counsel several times and asked that they agree to keep the transcript of Defendant's deposition confidential.  They refused.  They agreed to refrain from publishing the transcript only for as long as it took Defendant to appeal to the Court for an order preventing them from doing so.

Defendant with her power to publish.  (See Def.'s Dep., 9/28/05, at 102 ("What's going to happen is we're going to file a motion with the court and attach this deposition.").)  Plaintiff's refusal to agree not to publish the deposition transcript, which would be a sharp departure from normal practice, speaks volumes.

Given the liberal and unsupervised discovery permitted in federal court, courts must enter protective orders to protect the parties' reputations and privacy against such abuse.

> Because of the liberality of pretrial discovery permitted by Rule 26(b)(1), it is necessary for the trial court to have the authority to issue protective orders conferred by Rule 26(c).  It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse.  This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties.  The Rules do not distinguish between public and private information.  Nor do they apply only to parties to the litigation, as relevant information in the hands of third parties may be subject to discovery.
>
> There is an opportunity, therefore, for litigants to obtain— incidentally or purposefully—information that not only is irrelevant but if publicly released could be damaging to reputation and privacy.  The government clearly has a substantial interest in preventing this sort of abuse of its processes.

Seattle Times, 467 U.S. at 34-35 (footnotes omitted).  In other words, "[t]he unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders."  Id. at 36.  Accordingly, Rule 26(c) "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."  Id.

The Third Circuit considered the use of this discretion in Pansy v. Borough of Stroudsbourg, 23 F.3d 772 (3d Cir. 1994).  The court was concerned with certain courts' practice of approving agreed-upon confidentiality orders between the parties, without consideration of the public interest.  Id. at 785-86.  The court held that, while district courts have latitude to fashion

protective orders, they must first consider the public interest at stake, and determine whether any public interest is outweighed by the parties' need for privacy. Pansy, 23 F.3d at 786. The Pansy court provided a list of factors to be considered when performing this balancing analysis and determining whether "good cause" exists for the order. Id. at 787; see also Shingara v. Skiles, 420 F.3d 301, 306 (3d Cir. 2005). Pansy requires the Court to make findings in support of a confidentiality order, but those findings themselves may be sealed, if necessary. Pansy, 23 F.3d at 789.

Application of the Pansy factors reveals that protection is justified in this case. The first factor is whether disclosure will violate any privacy interests. Undoubtedly, this factor weighs in favor of confidentiality in this case. As is noted above, public revelation of virtually any part of Defendant's deposition would violate his privacy. See supra pp. 8-11. The deposition exclusively concerns his private life and that of third parties. It also concerns several particularly personal and private aspects of his private life, such as his health, his past sexual and social life, and his personal financial affairs. The deposition also concerns unverified, untested, and likely inadmissible accusations of a sexual nature. It concerns his confidential contract with the National Enquirer, which he is bound to keep confidential. Moreover, unlike a deposition in a typical case, there is a voracious media appetite for Defendant's deposition, and public release of it would quickly become widespread public knowledge of it. There can be no doubt that disclosure of the deposition would violate privacy interests.

The Pansy court also stated that preventing embarrassment is a factor that weighs in favor of a protective order. Id. at 787. The embarrassment must be "particularly serious." Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986). "[E]mbarrassment is usually thought of as a nonmonetized harm to individuals." Id. Where the litigants are natural persons, as

opposed to businesses, it is easier to show the embarrassment necessary to justify a protective

order. Id. Again, Defendant's embarrassment at the release of his deposition would be terrible.

See supra pp. 8-11. His medical history, his past social and sexual life, his health, his

involvement with recreational drugs in the 1970's, his private agreement with the *National*

*Enquirer*, and the Rule 415 witnesses' unsworn accusations would quickly become the subject of

scandal. In its June 2, 2005 opinion, this Court stated, "It is true that allegations of, inter alia,

sexual assault and battery . . . by the Jane Doe witnesses[] may cause Defendant serious

embarrassment." (June 2, 2005 Mem. [doc. #25] at 21.)  The Court held that Defendant had yet

to link this threat (as well as the threat of invasion of privacy and jury taint) to specific discovery

material.  Now, Defendant has done precisely that, as the transcript of his deposition provides a

real, specific threat of serious embarrassment.

On the other hand, the public interest, as illuminated by the Pansy factors, is non-existent.

The Pansy court instructed courts to consider "whether a party benefiting from the order of

confidentiality is a public entity or official." Id. at 788.  "Similarly, the district court should

considerer whether the case involves issues important to the public." Id.  "Circumstances

weighing against confidentiality exist when confidentiality is being sought over information

important to public health and safety." Id. at 787.  These factors also weigh in favor of

confidentiality here.  Neither Plaintiff nor Defendant is a public entity or official.  This case does

not concern public health or safety issues.  It does not involve issues "important to the public,"

the media's curiosity in Defendant's private life and the prurient notwithstanding.  This is a

private dispute between the individuals.

Plaintiff undoubtedly will argue that Defendant is a "public" person and that,

accordingly, this case involves issues of public concern. The Pansy court made clear, however,

that a "public" person is a "public official," one who serves the public using public funds.  The

Pansy court held that privacy interests are diminished only where the person seeking protection

"is subject to *legitimate* public scrutiny," noting that "'[t]he public has a substantial interest in

the integrity or lack of integrity of those who serve them in public office.'"  Id. at 787 (emphasis

added) (quoting United States v. Smith, 776 F.2d 1104, 1114 (3d Cir. 1985)).  Other courts have

confirmed that a case does not involve "public" issues or persons merely because one of the

litigants is a celebrity.  See Paisley Park Enters. v. Uptown Prods., 54 F. Supp. 2d 347, 348

(S.D.N.Y. 1999) (protecting rock star Prince from public scrutiny of deposition).  In Condit v.

Dunne, 225 F.R.D. 113 (S.D.N.Y. 2004), a case against a public official, the court noted that

"[m]ore than mere celebrity interest is involved in this case."  Id. at 120.  In Flaherty v. Seroussi,

209 F.R.D. 295 (N.D.N.Y. 2001), the court based its decision on the fact that the case involved

"elected officials and the performance of their governmental responsibilities."  Id. at 299–300.

Defendant is an entertainer, not a public servant.  To argue that this case is of public concern is

to argue that all celebrities have no right to privacy.[8]

Finally, Plaintiff will argue, as she has in her letters and other briefs, that she has a right

to "clear her name," such that Defendant's deposition *should* be published by the media.

Plaintiff's convenient argument is that, because Defendant defamed her by questioning her

veracity and motivation in filing this suit, she has a right to public discovery to "vindicate"

herself.  Plaintiff notes that the cause of action for defamation exists, in part, to provide the

---

[8]    As she did in response to Defendant's Motion for Protective Order, Plaintiff likely will
cite to defamation law as authority for the proposition that Defendant is a "public figure"
for purposes of the Pansy analysis.  That law, however, concerns the standard of liability
that the media faces in defamation cases brought by public figure.  Who constitutes a
"public figure," for purposes of determining the standard of conduct for the media, does
not bear on who constitutes a "public figure," for purposes of determining whose privacy
must bow to the public's right to know.

claimant a forum in which to rehabilitate her reputation. Plaintiff's logic, however, is specious at best. Plaintiff only *alleges* that Defendant spoke about her to the media; Defendant denies that he ever did so. That dispute of fact must be resolved in this forum before Plaintiff has any right to any remedy for defamation. Moreover, *trial* is the forum for rectifying defamation. Plaintiff will have the opportunity to "clear her name"—at a public trial, in this case, using admissible evidence. She should not be permitted to take matters into her own hands and prejudice that very proceeding.[9]

## CONCLUSION

"Simply stated, the purpose of discovery is to resolve legal disputes between parties, not to provide newsworthy material." Chicago Tribune, 263 F.2d at 1316 (Black, J., concurring). "If it were otherwise and discovery information and discovery orders were readily available to the public and the press, the consequences to the smooth functioning of the discovery process would be severe." Id. "Such interference by parties who have no interest in the underlying litigation could seriously impair an Article III court from carrying out its core function—

---

[9]     Plaintiff's contention that her lawyers should be permitted to publish discovery to counter Defendant's "public image" is ridiculous. Again, she is arguing that famous persons, at least those who are famous for positive reasons, should be treated differently by the court system. Defendant has *never* commented on this case in public. In fact, when he was asked by the *National Enquirer* to comment on Plaintiff's motivations, he responded, "Let's not go there." On the other hand, Plaintiff, either herself or through her agents, has spoken repeatedly in the press about the facts of the case. For instance, she gave her own interview to the *National Enquirer*, in which she stated, "He knows what he did." Her lawyers appeared on an MSNBC legal talk show, "The Abrams Report," and engaged in a detailed debate with the host and guest attorneys about the merits of the case and the credibility of the witnesses. Her lawyers gave countless other statements to the press in which they trumpeted Plaintiff's side of the story. In sum, Plaintiff has had ample access to the press, which she has used to tell her story, while, on the other hand, Defendant has refused to comment about the case. Plaintiff does not need unusual and untoward pretrial publicity in this case.

resolving cases and controversies." Id.  For this reason and those stated above, Defendant

respectfully requests the Court to enter the proposed Order attached to this memorandum.


Dated: December 21, 2005                              _____PJO5016_____
                                                      Patrick J. O'Connor
                                                      George M. Gowen III
                                                      COZEN O'CONNOR
                                                      1900 Market Street
                                                      Philadelphia, PA  19103
                                                      215.665.2000

                                                      Andrew D. Schau
                                                      PATTERSON, BELKNAP,
                                                          WEBB & TYLER LLP
                                                      1133 Avenue of the Americas
                                                      New York, NY 10036-6710
                                                      212.336.2000

                                                      *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that, on the date and in the manner indicated below, I caused a copy of the foregoing to be served upon the following counsel for Plaintiff:

<u>Via Federal Express</u>

Bebe H. Kivitz
Dolores M. Troiani
Troiani/Kivitz, L.L.P.
38 North Waterloo Road
Devon, Pennsylvania  19333
610.688.8426 (fax)

Dated: December 21, 2005

PJO5016
Patrick J. O'Connor