IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREA CONSTAND, | : |
| Plaintiff, | : |
| | : No. 05-cv-1099 |
| v. | : |
| WILLIAM H. COSBY, JR., | : **FILED UNDER SEAL** |
| Defendant. | : |

### DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL THE NATIONAL ENQUIRER'S COMPLIANCE WITH SUBPOENA FOR DOCUMENT AND REQUEST FOR EXPEDITED RESOLUTION

Defendant respectfully submits this brief in opposition to "Plaintiff's Motion to Compel the National Enquirer's Compliance with Subpoena for Document and Request for Expedited Resolution" ("Plaintiff's Motion to Compel the *National Enquirer*") and Plaintiff's supporting memorandum of law (doc. # 61). Plaintiff seeks discovery that is irrelevant to the claims and defenses in this action, and she seeks to do so in a fashion that will unnecessarily and purposefully violate Defendant's right to privacy.

**I. PLAINTIFF'S MOTION TO COMPEL THE *NATIONAL ENQUIRER* RESTS ON FUNDAMENTAL MISCHARACTERIZATIONS OF HER CLAIM AND THE RECORD.**

Plaintiff paints a misleading picture of her defamation claim and the discovery necessary to prove it. The portion of her defamation claim at issue here is based on a *National Enquirer* article quoting and characterizing a February 21, 2005 interview with Defendant. There is no dispute over the content of that article (which is attached to Plaintiff's memorandum as Exhibit A). Defendant agrees that he made the statements attributed to him in that article. He agrees that

he had an opportunity to review the article before it was printed. There is no dispute that the article was published. In other words, there is little, if any, additional discovery that Plaintiff needs in prosecution of this claim.

It is critical to note, before Plaintiff takes discovery on her claim any farther, that the article does not quote any statement by Defendant about Plaintiff. Plaintiff contends that Defendant stated in the article "that Plaintiff was attempting to commit the crime of extortion." (Pl.'s Reply Def.'s Req. Compel [doc. # 57] at 7.) The truth, however, is written in black and white. The article states: "Cosby, who has been the victim of an extortion plot in the past, did not want to speculate as to whether money was [Plaintiff's] prime motive. 'Let's not go there,' he told the ENQUIRER." (Pl.'s Mem. Supp. Mot. Compel Nat'l Enquirer [doc. # 61] Ex. A.) Plaintiff ignores this part of the article and focuses entirely on another part, which quotes Defendant as stating, generally, that "I am not going to give in to people who try to exploit me because of my celebrity status." (Id.) This statement, especially when taken in the context of Defendant's express refusal to comment about Plaintiff's motives, does not even resemble an accusation that Plaintiff was attempting "extortion."

Plaintiff's defamation claim certainly has nothing to do with Beth Ferrier, whose unpublished interview with the *National Enquirer* is the entire reason for Plaintiff's subpoena. Plaintiff contends that Defendant made an agreement with the *National Enquirer* that caused the magazine not to publish Beth Ferrier's story that, several years ago, she too had an illicit relationship with the Defendant. Plaintiff says that Defendant "killed" Ms. Ferrier's story in order to eliminate the jolt of "credibility" that Plaintiff believes the story would have given to her

own allegations. Defendant vigorously denies this.[1] Such a devious plot would have been pointless, anyway—when the *National Enquirer* declined to publish her story, Ms. Ferrier simply shopped it to a different tabloid, the *Philadelphia Daily News*, which printed it. Thus, even if Plaintiff's theory about Defendant's motives were true, it would have nothing to do with her defamation claim. Preventing a publication that arguably would bolster a potential plaintiff's allegations does not constitute defamation.[2]

## II. THE NATIONAL ENQUIRER SUBPOENA SEEKS IRRELEVANT INFORMATION.

The above clarification of Plaintiff's claim and the record shows that the information Plaintiff is seeking from the *National Enquirer* is largely irrelevant. The only dispute between the parties is whether the Defendant, in the article, accused Plaintiff of extortion. The article at issue, however, speaks for itself. Defendant is quoted as *refusing* to comment on whether Plaintiff's motive was money. No reasonable trier of fact could conclude that Defendant's refusal to characterize Plaintiff's motives amounted to an accusation that she was attempting to extort him, or that he intended to make such an accusation. Indeed, this issue is so clear cut in Defendant's favor that he likely will be entitled to summary judgment.

---

[1] Plaintiff's repeated contention—that Defendant "admitted" that he "killed" Ms. Ferrier's story because "he believed it bolstered Plaintiff's allegations against him"—is wrong. Defendant testified that he did not want Ms. Ferrier's interview to be published because it would embarrass his family and because material aspects of her story are false. (See Def.'s Dep. 9/29/05, at 161–64.) Plaintiff's counsel then asked him, "And you knew that if Beth Ferrier's story was printed, that would add credence to not only Andrea's story but also to Tamara Green's story?" (Id. at 221.) Defendant answered, "You can't put words in my mouth," and, "The Answer is no." (Id.)

[2] Killing the *National Enquirer* story for the reasons Plaintiff suggests would have been pointless for another reason as well. Plaintiffs' attorneys have used the press to actively recruit women to come forward with allegations patterned after Plaintiff's accusations. They then used the press to trumpet the fact that there were women who responded to the call.

Even if there were a colorable question of fact about the Defendant's statements, the documents Plaintiff seeks have no bearing on her claim. For instance, Plaintiff seeks a copy of Defendant's agreement with the *National Enquirer*, and any other documents "concerning" that agreement. Plaintiff already knows the terms of this agreement, from Defendant's own testimony. Yet Plaintiff fails to explain how the agreement advances her claim. All she says is that "all the requested documents relate to issues of liability, defamation and credibility." That explanation is no explanation at all. Defendant's agreement—to give the interview in reaction to the embarrassing and untrue statements of a *different* person—does not bear on Plaintiff's claim that the Defendant accused her of extortion. The agreement is irrelevant to Plaintiff's defamation claim.

## III. IN THE ALTERNATIVE, THE COURT SHOULD ENTER AN ORDER PROTECTING THE CONFIDENTIALITY OF THE *NATIONAL ENQUIRER* AGREEMENT.

In the alternative, if the Court orders the *National Enquirer* to produce its agreement with Defendant, or any documents "concerning" that agreement, the Court should enter an order protecting the confidentiality of that agreement.

Plaintiff's attempt to subpoena the agreement from the *National Enquirer* provides further evidence of her willingness to abuse the discovery process. Defendant *already has agreed* to produce a copy of the agreement, provided that Plaintiff agree to keep it confidential. Plaintiff refused, instead declaring that, if she procured a copy of the agreement, she would immediately publish it to "vindicate her name." In other words, Plaintiff admits that, relevance aside, she wants discovery of the agreement so that she can use it *outside* of this proceeding. Thus, rather than address Defendant's request for temporary confidentiality, Plaintiff simply subpoenaed a third party, the *National Enquirer*.

4

Given the liberal and unsupervised discovery permitted in federal court, courts should be especially vigilant to protect against the disclosure of information that treads upon the privacy interests of the litigants:

> Because of the liberality of pretrial discovery permitted by Rule 26(b)(1), it is necessary for the trial court to have the authority to issue protective orders conferred by Rule 26(c). It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse. This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties. The Rules do not distinguish between public and private information. Nor do they apply only to parties to the litigation, as relevant information in the hands of third parties may be subject to discovery.
>
> There is an opportunity, therefore, for litigants to obtain— incidentally or purposefully—information that not only is irrelevant but if publicly released could be damaging to reputation and privacy. The government clearly has a substantial interest in preventing this sort of abuse of its processes.

Seattle Times, 467 U.S. at 34-35 (footnotes omitted). In other words, "[t]he unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders." Id. at 36. Accordingly, Rule 26(c) "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." Id.

The Third Circuit considered the courts' use of this discretion in Pansy v. Borough of Stroudsbourg, 23 F.3d 772 (3d Cir. 1994). The court was concerned with the practice of some district courts of approving confidentiality orders without giving any thought or consideration to the public interest. Id. at 785-86. The court held that, while district courts have latitude to fashion protective orders, they must first consider the public interest at stake, and determine whether that interest is outweighed by the parties' need for privacy. Pansy, 23 F.3d at 786. The Pansy court provided a list of factors to be considered when performing this balancing analysis and determining whether "good cause" exists for the order. Id. at 787; see also Shingara v.

Skiles, 420 F.3d 301, 306 (3d Cir. 2005). Pansy requires the Court to make findings in support of a confidentiality order, but those findings themselves may be sealed, if necessary. Pansy, 23 F.3d at 789.

Application of the Pansy factors reveals that the Court should enter a protective order concerning the *National Enquirer* agreement. The first Pansy factor asks whether disclosure will violate any privacy interests. Undoubtedly, this factor weighs in favor of confidentiality in this case. The agreement is a private agreement between Defendant and the *National Enquirer*. The agreement even contains a confidentiality clause. In other words, the parties considered the agreement so private that they contractually bound each other to maintain that privacy. Since then, they have done so. Moreover, unlike the release of an agreement in a typical case, there is a voracious media appetite for information about this case, and public release of the agreement would quickly lead to widespread public knowledge of it. There can be no doubt that disclosure of the agreement would violate privacy interests.

The Pansy court also stated that preventing embarrassment is a factor that weighs in favor of a protective order. Id. at 787. The embarrassment must be "particularly serious." Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986). "[E]mbarrassment is usually thought of as a nonmonetized harm to individuals." Id. Where the litigants are natural persons, as opposed to businesses, it is easier to show the embarrassment necessary to justify a protective order. Id. If the agreement is released, it will undoubtedly draw further attention to Ms. Ferrier's embarrassing, unsworn, and untrue allegations. In its June 2, 2005 opinion, this Court recognized that such allegations "may cause Defendant serious embarrassment." (June 2, 2005 Mem. [doc. #25] at 21.) The release of the *National Enquirer* agreement presents a concrete and specific threat of serious embarrassment to Defendant.

On the other hand, the public interest in the agreement, as illuminated by the Pansy factors, is non-existent. The Pansy court instructed courts to consider "whether a party benefiting from the order of confidentiality is a public entity or official." Id. at 788. "Similarly, the district court should consider whether the case involves issues important to the public." Id. "Circumstances weighing against confidentiality exist when confidentiality is being sought over information important to public health and safety." Id. at 787. These factors also weigh in favor of confidentiality here. Neither Plaintiff nor Defendant is a public entity or official. The agreement does not concern public health or safety issues. It does not involve issues "important to the public," the media's curiosity about Defendant's private life and prurient gossip notwithstanding.

Plaintiff undoubtedly will argue that Defendant is a "public" person and that, accordingly, the agreement involves issues of public concern. The Pansy court made clear, however, that a "public" person is a "public official," one who serves the public using public funds. Unlike the Defendant here, public officials have diminished privacy interests because their actions may be "subject to *legitimate* public scrutiny" Id. at 787 (emphasis added) (quoting United States v. Smith, 776 F.2d 1104, 1114 (3d Cir. 1985)). Public scrutiny was legitimate in such cases because "'[t]he public has a substantial interest in the integrity or lack of integrity of those who serve them in public office.'"

The Defendant in this case is a celebrity, not a public official. His private life is not the subject of "legitimate public scrutiny." See Paisley Park Enters. v. Uptown Prods., 54 F. Supp. 2d 347, 348 (S.D.N.Y. 1999) (protecting rock star Prince from public scrutiny of deposition). In Condit v. Dunne, 225 F.R.D. 113 (S.D.N.Y. 2004), a case against a public official, the court noted that "[m]ore than mere celebrity interest is involved in this case." Id. at 120. In Flaherty

7

v. Seroussi, 209 F.R.D. 295 (N.D.N.Y. 2001), the court based its decision on the fact that the case involved "elected officials and the performance of their governmental responsibilities." Id. at 299–300. Defendant is an entertainer, not a public servant. To argue that the agreement is of public concern is to argue that all celebrities have no right to privacy.[3]

Finally, Plaintiff will argue, as she has in her letters and other briefs, that she has a right to "clear her name," such that the agreement *should* be published by the media. Plaintiff's convenient argument is that, because Defendant defamed her by questioning her veracity and motivation in filing this suit, she has a right to publish the agreement to "vindicate" herself. Plaintiff notes that the cause of action for defamation exists, in part, to provide the claimant a forum in which to rehabilitate her reputation. Plaintiff's logic, however, is specious at best. Plaintiff only *alleges* that Defendant spoke about her to the media. Defendant denies that he ever did so, and the article proves him right. Moreover, even if there had been a defamation, a *trial* is the proper forum in which Plaintiff will have the opportunity to "clear her name." She should not be permitted to take matters into her own hands and prejudice that very proceeding.[4]

---

[3] As she did in response to Defendant's Motion for Protective Order, Plaintiff likely will cite to defamation law as authority for the proposition that Defendant is a "public figure" for purposes of the Pansy analysis. That law, however, concerns the standard of liability that the media faces in defamation cases brought by public figure. Who constitutes a "public figure," for purposes of determining the standard of conduct for the media, does not bear on who constitutes a "public figure," for purposes of determining whose privacy must bow to the public's right to know.

[4] Plaintiff's contention that her lawyers should be permitted to publish discovery to counter Defendant's "public image" is ridiculous. Again, she is arguing that famous persons, at least those who are famous for positive reasons, should be treated differently by the court system. Defendant has *never* commented on this case in public. In fact, when he was asked by the *National Enquirer* to comment on Plaintiff's motivations, he responded, "Let's not go there." On the other hand, Plaintiff, either herself or through her agents, has spoken repeatedly in the press about Defendant's alleged misconduct. For instance, she gave her own interview to the *National Enquirer*, in which she stated, "He knows what he did." Her lawyers appeared on an MSNBC legal talk show, "The Abrams

Dated: December 22, 2005

        PJO5016
Patrick J. O'Connor
George M. Gowen III
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103
215.665.2000

Andrew D. Schau
PATTERSON, BELKNAP,
  WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
212.336.2000

*Attorneys for Defendant*

---

Report," and engaged in a spirited debate with the host and guest attorneys about the merits of the case and the credibility of the witnesses. Her lawyers gave countless other statements to the press in which they trumpeted Plaintiff's side of the story. In sum, Plaintiff has had ample access to the press, which she has used to tell her story, while, on the other hand, Defendant has refused comment.

## CERTIFICATE OF SERVICE

I hereby certify that, on the date and in the manner indicated below, I caused a copy of the foregoing to be served upon the following counsel for Plaintiff:

<u>Via Federal Express</u>

Bebe H. Kivitz
Dolores M. Troiani
Troiani/Kivitz, L.L.P.
38 North Waterloo Road
Devon, Pennsylvania 19333
610.688.8426 (fax)


Dated: December 22, 2005                                    \_\_\_\_\_PJO5016_____
                                                            Patrick J. O'Connor

1242575v1