Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
Tel: 215.963.5000
Fax: 215.963.5001
www.morganlewis.com

# Morgan Lewis

COUNSELORS AT LAW

**Jennifer B. Jordan**
215.963.5959
jjordan@morganlewis.com

December 27, 2005

**VIA HAND DELIVERY**

Michael E. Kunz
Clerk of Court
United States District Court
 for the Eastern District of Pennsylvania
601 Market Street
Philadelphia, PA  19106

Re:     Constand v. Cosby, Civ. A. No. 05-1099-ECR

Dear Mr. Kunz:

Enclosed you will find the original and an electronic copy of Nonparty National Enquirer's Memorandum of Law in Opposition to Plaintiff's Motion to Compel, certificate of service, and proposed order.  This document is to be filed under seal.  Should you have any questions, please feel free to contact me at the telephone number above.

Thank you for your attention to this matter.

Very truly yours,

Jennifer B. Jordan

Enclosures

cc:     Bebe Kivitz, Esq. for Plaintiff (via First Class Mail)
        Patrick J. O'Connor for Defendant (via First Class Mail)
        Andrew D. Schau for Defendant (via First Class Mail)



## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANDREA CONSTAND,

    Plaintiff,

    v.

WILLIAM H. COSBY, JR.,

    Defendant.

CIVIL A. NO. 05-1099

Judge Eduardo C. Robreno

**FILED UNDER SEAL**

## NONPARTY THE NATIONAL ENQUIRER'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

**MORGAN, LEWIS & BOCKIUS LLP**

Paul D. Weller (Bar. Id. No. 61175)
Jennifer B. Jordan (Bar Id. No. 87011)
1701 Market Street
Philadelphia, PA 19103
Telephone: 215.963.5000
Fax: 215.963.5001
Email: pweller@morganlewis.com
       jjordan@morganlewis.com

*Attorneys for The National Enquirer*

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ........................................................................................................ 1

II.   BACKGROUND ....................................................................................................... 1

III.  ARGUMENT ............................................................................................................. 3

    A.   The Motion To Compel Should Be Denied Because Plaintiff Did Not Properly Serve The Subpoena. ............................................................................ 4

    B.   The Motion To Compel Should Be Denied Because The Subpoena Seeks Information Protected From Disclosure By Reporter Shield Laws And The First Amendment Of The United States Constitution. ........................................... 8

        1.   Choice Of Law .......................................................................................... 8

        2.   Plaintiff Has Failed To Meet Her Heavy Burden To Overcome the National Enquirer's Reporter's Privilege Under New York Law And The First Amendment Of The United States Constitution. .............. 12

            a.   New York Reporter Shield Law .................................................... 13

                (1)   Plaintiff Has Failed To Prove That The Information Sought By The Subpoena Is Highly Material And Relevant To Her Claims .................................................... 14

                (2)   Plaintiff Has Failed To Demonstrate That The Information Sought By The Subpoena Is Critical To The Maintenance Of Her Claims ...................................... 15

                (3)   Plaintiff Has Failed To Demonstrate That The Information Sought By The Subpoena Is Not Obtainable From Other Sources ........................................ 15

            b.   First Amendment Protection .......................................................... 16

                (1)   Plaintiff Has Failed To Demonstrate That The Only Practical Access To Crucial Information Necessary For The Development Of Her Case Is In The Information Sought By The Subpoena ............................. 17

                (2)   Plaintiff Has Failed To Demonstrate That The Information Sought By The Subpoena Is Crucial Information Going To The Heart Of Her Claims ............. 18

                (3)   Plaintiff Has Failed To Demonstrate That She Has Exhausted Other Means Of Obtaining The Information Sought By The Subpoena ............................. 18

    C.   Because The Motion To Compel Has No Merit Whatsoever, The National Enquirer Should Be Awarded The Fees And Costs Incurred In Responding To The Motion. ..................................................................................................... 19

**TABLE OF CONTENTS**
(continued)

**Page**

|  | D. | In The Unlikely Event That The Court Orders Production Of Any Of The Information Sought By The Subpoena, A Protective Order Should Be Issued To Protect The Information. | 20 |
| IV. | | CONCLUSION | 21 |

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alloway v. Wain-Roy Corp.*, 52 F.R.D. 203 (E.D. Pa. 1971) ............................................................ 4

*Altemose Construction Co. v. Building and Construction Trades Council*, 443 F. Supp.
489 (E.D. Pa. 1977) ..................................................................................................................... 17–18

*Ayers v. Jacobs & Crumplar, P.A.*, 99 F.3d 565 (3d Cir. 1996) ........................................................ 8

*Board of Trustees of Laborers' District Council Health and Welfare Fund v. Pennsbury
Excavating and Landscaping, Inc.*, Civ. A. No. 99-1078, 2000 WL 633021 (E.D. Pa.
May 10, 2000)..................................................................................................................................... 5

*Branzburg v. Hayes*, 408 U.S. 665 (1972)...................................................................................... 11

*Budget Rent-A-Car Sys., Inc. v. Chappell*, 407 F.3d 166 (3d Cir. 2005) ......................................... 9

*Garcia v. Plaza Oldsmobile Ltd.*, 421 F.3d 216 (3d Cir. 2005) .......................................... 9–10, 12

*GE Medical Systems Information Technologies, Inc. v. Ansar, Inc.*, Civ. A. No. 04-2775,
2004 WL 2988513 (E.D. Pa. Dec. 23, 2004)..................................................................................... 5

*Grand Entertainment Group Ltd. v. Star Media Sales Inc.*, 988 F.2d 476 (3d Cir. 1993).............. 8

*Hemmerich Industries Inc. v. Moss Brown & Co. Inc.*, 114 F.R.D. 31 (E.D. Pa. 1987)................. 4

*Lacey v. Cessna Aircraft Co.*, 932 F.2d 170 (3d Cir. 1991) ........................................................... 10

*LeJeune v. Bliss-Salem, Inc.*, 85 F.3d 1069 (3d Cir. 1996) .............................................................. 9

*Melville v. American Home Assur. Co.*, 584 F.2d 1306 (3d Cir. 1978) ............................................ 9

*Mitsubishi International Corp. v. Keystone Camera Corp.*, Civ. A. No. 89-8595, 1990
WL 16090 (S.D.N.Y. Feb. 13, 1990) ............................................................................................... 7

*Near v. Minnesota*, 283 U.S. 697, 51 S. Ct. 625, 75 L. Ed. 1357 (1931)...................................... 11

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964)................................................................... 17

*Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994)............................................... 20–21

*Parker v. Doe*, Civ. A. No. 02-7215, 2002 WL 32107937 (E.D. Pa. Nov. 21, 2002)..................... 4

*Perry v. Keulian*, Civ. A. No. 96-1374, 1997 WL 117027 (E.D. Pa. Mar. 11, 1997).................. 19

*Riley v. City of Chester*, 612 F.2d 708 (3d Cir. 1979) .................................................................. 17

*In re Roche*, 448 U.S. 1312 (1980) ............................................................................................... 16

*Roth v. United States*, 354 U.S. 476 (1957) ................................................................................. 17

*Samuelson v. Susen*, 576 F.2d 546 (3d Cir. 1978) ......................................................................... 9

*In re Scott Paper Co. Securities Litigation*, 145 F.R.D. 366 (E.D. Pa. 1992) ............................. 18

*State Farm Mutual Auto. Ins. Co. v. CPT Medical Serv. Inc.*, Civ. A. No. 04-5045, 2005
    WL 2465818 (E.D.N.Y. Oct. 6, 2005) ...................................................................................... 4

*In re Subpoena Directed to Anne Barnard*, Misc. No. 98-189, 1999 WL 38269 (E.D. Pa.
    Jan. 25, 1999) ......................................................................................................................... 13

*United States v. Criden*, 633 F.2d 346 (3d Cir. 1980) ............................................................ 17, 21

*United States v. Cuthbertson*, 630 F.2d 139 (3d Cir. 1980) .......................................................... 17

## STATE CASES

*In re Application of CBS Inc.*, 648 N.Y.S.2d 443 (N.Y. App. Div. 1996) ..................................... 14

*Arce v. Sybron Corporation*, 441 N.Y.S.2d 498 (N.Y. App. Div. 1981) ........................................ 7

*Matter of Beach v. Shanley*, 62 N.Y.2d 241, 476 N.Y.S.2d 765, 465 N.E.2d 304 (1984) ............ 11

*Colbert v. International Security Bureau Inc.*, 437 N.Y.S.2d 360 (N.Y. App. Div. 1981) ............. 7

*In re Estate of Agostini*, 311 Pa. Super. 233, 457 A.2d 861 (1983) .............................................. 10

*Hopkinson v. Hopkinson*, 323 Pa. Super. 404, 470 A.2d 981 (1984) .............................................. 7

*In the matter of Grand Jury Subpoenas Served on National Broadcasting Co., Inc.*, 178
    Misc. 2d 1052, 683 N.Y.S.2d 708 (1998) ............................................................................... 11

*Kuchinic v. McCrory*, 422 Pa. 620, 222 A.2d 897 (1966) ......................................................... 9–10

*O'Neill v. Oakgrove Construction, Inc.*, 71 N.Y.2d 521, 523 N.E.2d 277 (1988) ........................ 11

*In re Subpoena Duces Tecum to American Broadcasting Companies, Inc.*, 735 N.Y.S.2d
    919 (N.Y. Sup. Ct. 2001) .................................................................................................... 14-15

*Trzcinski v. Prudential Property and Casualty Ins. Co.*, 409 Pa. Super. 114, 597 A.2d
  687 (1991)..................................................................................................................................6

## FEDERAL STATUTES

28 U.S.C. § 1332 ........................................................................................................................8

## FEDERAL RULES

Fed. R. Civ. P. 4(e) ..................................................................................................................6-7

Fed. R. Civ. P. 4(h)...................................................................................................................4-5

Fed. R. Civ. P. 26......................................................................................................................14

Fed. R. Civ. P. 45(b)..............................................................................................................4, 12

Fed. R. Civ. P. 45(c) ................................................................................................3, 13, 19, 20

## STATE STATUTES

N.Y. Const., art. I, § 8..............................................................................................................11

N.Y. Civ. Rights § 79-h(c) ........................................................................................................14

## STATE RULES

N.Y. C.P.L.R. § 311(a)(1) ...........................................................................................................7

Pa. R. Civ. P. 424........................................................................................................................6

## I.    INTRODUCTION

Plaintiff has filed a motion to compel nonparty The National Enquirer to comply with a

subpoena seeking a broad range of confidential documents related to an article that The National

Enquirer published in its March 14, 2005 issue concerning Defendant, as well as an equally

broad range of unpublished, confidential documents related to a third party, Beth Ferrier. *See*

Exh. B to Pl.'s Mem. (Subpoena).  As set forth below, Plaintiff's motion to compel should be

denied.

As a threshold matter, Plaintiff has not effected proper service of the subpoena.  Rather

than serve the authorized, registered agent for The National Enquirer (as The National Enquirer

suggested), Plaintiff had a process server simply leave the subpoena on the desk of a receptionist

who was not authorized to accept service.  This failure to effect proper service of the subpoena is

fatal to Plaintiff's motion to compel, and it should be denied on this basis alone.

Second, Plaintiff's motion to compel fails because the subpoena seeks information

protected by the reporter's privilege under both state and federal law (including the First

Amendment itself).  To overcome the broad protection afforded by the reporter's privilege,

Plaintiff must make a clear showing that the subpoena is the only method of obtaining material

absolutely critical to Plaintiff's claims.  In her moving papers, Plaintiff has not even come close

to meeting this burden.

## II.    BACKGROUND

The National Enquirer is a weekly news publication with staff located at the offices of its

parent corporation, American Media, Inc., in New York City, Boca Raton, Florida, and Santa

Monica, California.  Exh. A hereto, Declaration of Michael B. Kahane, ¶ 3.  The National

Enquirer was established more than three decades ago, and has continually reported local,

national and worldwide news events and other matters of public concern or public interest or affecting the public welfare. *Id.* at ¶ 5.

In this case, Plaintiff sued Defendant alleging claims for assault, battery, intentional and negligent infliction of emotional distress, defamation and false light/invasion of privacy. Am. Comp. ¶¶ 1, 33–72. The gravamen of the lawsuit is that Defendant sexually assaulted Plaintiff and defamed her. The National Enquirer is not a party to the action.

On October 31, 2005, Plaintiff attempted to effect service of a subpoena on The National Enquirer by serving CT Corporation of New York. Pl.'s Mem. at 1–2. The subpoena requested the following:

> All correspondence, memoranda, agreements, contracts, notes, meeting notes, recorded statements, unrecorded statements, summaries or other documents in your possession concerning the February 21, 2005, Exclusive Interview given by Bill Cosby to The National Enquirer, as well as any polygraph tests, correspondence, memoranda, agreements, contracts, notes, meeting notes, recorded statements, unrecorded statements, summaries, or other documents in your possession concerning your interviews and/or polygraphs of Beth Ferrier, as well as any correspondence or documents concerning any discussions or agreements not to run the Beth Ferrier story, or to run the Cosby "Exclusive Interview" instead. Also, any documents concerning any compensation paid to Bill Cosby regarding the above.

Exh. B to Pl.'s Mem. (Subpoena).

Because CT Corporation of New York is not The National Enquirer's registered agent for service, the subpoena was returned. Pl.'s Mem. at 2. The general counsel for The National Enquirer, Marc Rupp, Esq., directed Plaintiff to serve the subpoena on CT Corporation of Florida, which is The National Enquirer's registered agent for service of process. *Id.* Plaintiff refused to comply with this suggestion. One week later, Plaintiff attempted to serve the subpoena on The National Enquirer by personal service at the offices of American Media, Inc. at One Park Avenue, New York, New York.

2

Plaintiff's process server, however, attempted to effect service by leaving a copy of the subpoena on the desk of American Media, Inc.'s receptionist. Exh. E to Pl.'s Mem. (Affidavit of Process Server). The receptionist expressly informed the process server that she was not authorized to accept service of the subpoena. *See* Exh. B hereto, Declaration of Inicia Gallop, ¶ 7. As of this date, Plaintiff has made no attempt to serve the subpoena on the National Enquirer's registered agent, CT Corporation of Florida.

The National Enquirer lodged timely objections to the subpoena in accordance with Federal Rule of Civil Procedure 45(c). Exh. H to Pl.'s Mem. (letter to Plaintiff's counsel). The National Enquirer objected to the subpoena on several grounds, including that it is overbroad and seeks confidential and privileged information. *Id.* The National Enquirer also repeatedly advised Plaintiff that service of the subpoena was improper. *Id.*

In an effort to resolve any dispute over the subpoena, however, The National Enquirer offered to make a limited production of information that would be subject to a protective order. *Id.* Plaintiff refused this offer of compromise and instead filed the instant motion to compel.

Because the matters into which Plaintiff seeks to inquire go to the heart of the reporter's privilege recognized under state statutory law and the United States Constitution, The National Enquirer has been forced to oppose Plaintiff's motion to compel. This motion should be denied for the reasons set forth below.

## III.   ARGUMENT

### A.   The Motion To Compel Should Be Denied Because Plaintiff Did Not Properly Serve The Subpoena.

Plaintiff bears the initial burden of showing that service of the subpoena has been made upon a proper agent of The National Enquirer. *Hemmerich Industries Inc. v. Moss Brown & Co.*

3

*Inc.*, 114 F.R.D. 31, 32 (E.D. Pa. 1987) (citing *Alloway v. Wain-Roy Corp.*, 52 F.R.D. 203, 204 (E.D. Pa. 1971)).  Plaintiff cannot meet this burden.[1]

To effect proper service of a subpoena on a nonparty, such as The National Enquirer, Federal Rule of Civil Procedure 45(b) requires personal service of the subpoena. *See* Fed. R. Civ. P. 45(b) (describing service of subpoena as delivering copy to person); *Parker v. Doe*, Civ. A. No. 02-7215, 2002 WL 32107937, at *2 (E.D. Pa. Nov. 21, 2002) ("service of a subpoena is effected by delivering a copy of the subpoena to the person named within"); 9A Wright & Miller, Federal Practice and Procedure Civil 2d, § 2454 (1995).  When the "person" to whom the subpoena is directed is a corporation, Federal Rule of Civil Procedure 4(h)(1) defines the proper method of service. *See State Farm Mutual Auto. Ins. Co. v. CPT Medical Servs. Inc.*, Civ. A. No. 04-5045, 2005 WL 2465818, at *3 (E.D.N.Y. Oct. 6, 2005) (in determining whether service of subpoena on a corporation is sufficient, "courts may be guided by Fed. R. Civ. P. 4(h)(1) regarding service of process on corporations and individuals").

Rule 4(h)(1) ("Service Upon Corporations and Associations") provides in relevant part that service may be made on a corporation:

> in a judicial district of the United States in the manner prescribed for individuals by subdivision (e)(1) [*i.e.,* the law of the state in which the district court is located], or by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process, and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.

In this case, Plaintiff did not effect proper service of the subpoena under Federal Rule of Civil Procedure 4(h)(1).  The receptionist at American Media, Inc.'s offices at One Park Avenue is not an "officer, a managing or general agent."  Nor is she a person authorized to accept service

---

[1]     Because service was improper, jurisdiction over The National Enquirer is lacking.  The National Enquirer appears only for the limited purpose of opposing the motion to compel.

4

of process on behalf of The National Enquirer. Fed. R. Civ. P. 4(h)(1). *See* Exh. B hereto, ¶¶ 3–4, 6–7 (receptionist expressly told process server that she was not authorized to accept service of subpoena). The Affidavit of Service submitted by Plaintiff provides no basis to conclude otherwise. *See GE Medical Systems Information Technologies, Inc. v. Ansar, Inc.*, Civ. A. No. 04-2775, 2004 WL 2988513, at *4 (E.D. Pa. Dec. 23, 2004) ("The Affidavit of Service contains no information regarding [the person's] position, authority, or control over Defendants' place of business."). Indeed, the Affidavit of Service merely describes the service of the subpoena as "delivering to and leaving a copy [of the subpoena] for the National Enquirer, personally on the reception desk of 'Jane Doe' (receptionist) a person of suitable age and discretion, who was unwilling to accept service after calling a Mark 'Doe', a person who works for the Enquirer who refused to come out to accept subpoena." Exh. E to Pl.'s Mem. This is legally insufficient. *See Board of Trustees of Laborers' District Council Health and Welfare Fund v. Pennsbury Excavating and Landscaping, Inc.*, Civ. A. No. 99-1078, 2000 WL 633021 at *1 (E.D. Pa. May 10, 2000) ("Nothing in the record suggests that [the person served] was 'an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process.'").

Plaintiff's service of the subpoena also is defective under Pennsylvania law, which is the "law of the state in which is the district court is located." Fed. R. Civ. P. 4(e)(1).[2] Pennsylvania Rule of Civil Procedure 424 provides for personal service upon a corporation as follows:

---

[2] Rule 4(h)(1) also states, in the alternative, that service upon a corporation may be made in accordance with subsection (e)(1) — service in accordance with the state in which the district court is located or where service is effected. This alternate means of non-personal service of a summons and complaint is inapplicable to service of a subpoena because Rule 45 requires service by personal delivery. *See Parker v. Doe*, Civ. A. No. 02-7215, 2002 WL 32107937 at *2 (E.D. Pa. Nov. 21, 2002). Therefore, subsection (e)(1) is applicable only to the extent that it allows for a means of personal delivery.

> Service of original process upon a corporation or similar entity
> shall be made by handing a copy to any of the following persons
> provided the person served is not a plaintiff in the action:
>
> (1) an executive officer, partner or trustee of the corporation or
> similar entity, or
>
> (2) the manager, clerk or other person for the time being in charge
> of any regular place of business or activity of the corporation or
> similar entity, or
>
> (3) an agent authorized by the corporation or similar entity in
> writing to receive service of process for it.

Pa. R. Civ. P. 424.

Plaintiff cannot establish that leaving a copy of the subpoena with American Media,

Inc.'s receptionist at One Park Avenue is proper service under Rule 424. As the record makes

clear, the receptionist is not an executive officer, partner or trustee of the corporation; the

manager, clerk or other person for the time being in charge of any regular place of business or

activity of the corporation; or an agent authorized by the corporation or similar entity in writing

to receive service of process for it as required by the Rule. *See* Exh. B hereto, ¶¶ 3–4, 6;

*Trzcinski v. Prudential Property and Casualty Ins. Co.*, 409 Pa. Super. 114, 118, 597 A.2d 687,

689 (1991). Admittedly, service upon a receptionist who represents to the process server that he

or she *is* the person in charge at the time of service may be proper. *See Hopkinson v. Hopkinson*,

323 Pa. Super. 404, 414, 470 A.2d 981, 987 (1984), *overruled on other grounds*, *Sonder v.*

*Sonder*, 378 Pa. 474 (1988). However, the receptionist in this case expressly told Plaintiff's

process server that she lacked the requisite authority. Exh. B hereto, ¶ 7.

Similarly, Plaintiff's service of the subpoena upon the receptionist is defective under

New York law, which is the law of the state "in which service is effected." Fed. R. Civ. P.

4(e)(1). Personal service of process upon a corporation in New York is governed by N.Y.

C.P.L.R. § 311(a)(1), which requires service to be made upon "an officer, director, managing or

6

general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service." New York courts have held that service of process on a receptionist who notifies the process server that he or she is not authorized to accept service, as is the case here, is invalid as a matter of law. *See Arce v. Sybron Corporation*, 441 N.Y.S.2d 498, 502 (N.Y. App. Div. 1981); *Colbert v. International Security Bureau Inc.*, 437 N.Y.S.2d 360, 362 (N.Y. App. Div. 1981).

Plaintiff's reliance on *Mitsubishi International Corp. v. Keystone Camera Corp.*, Civ. A. No. 89-8595, 1990 WL 16090 (S.D.N.Y. Feb. 13, 1990), does not dictate a different conclusion. In *Mitsubishi*, the court found that the process server had not simply left a copy of the summons and complaint with the receptionist. Instead, the process server had actually obtained the signature of a mid-level employee of the corporation to which the complaint was directed. 1990 WL 16090 at *3. The process server specifically stated that he was told that the employee could accept the summons and complaint on behalf of the corporation. *Id.* at *1. In contrast, Plaintiff's process server received no such assurances from American Media, Inc.'s receptionist. *See* Exh. B hereto, ¶ 7. Therefore, *Mitsubishi* is inapposite.

Plaintiff's alternative argument that The National Enquirer nonetheless received notice of the subpoena fares no better. The Third Circuit "has made clear that 'notice cannot by itself validate an otherwise defective service.'" *Ayers v. Jacobs & Crumplar, P.A.*, 99 F.3d 565, 568 (3d Cir. 1996) (quoting *Grand Entertainment Group Ltd. v. Star Media Sales Inc.*, 988 F.2d 476, 492 (3d Cir. 1993)).

Because Plaintiff never effected proper service of the subpoena upon The National Enquirer, Plaintiff's motion to compel must be denied.

**B.** **The Motion To Compel Should Be Denied Because The Subpoena Seeks Information Protected From Disclosure By Reporter Shield Laws And The First Amendment Of The United States Constitution.**

Even if Plaintiff were to cure the defect in service of the subpoena, she is not entitled to the documents requested. State legislatures and courts throughout this country have recognized the freedom of the press to gather and report on the news. As an extension of that freedom is the freedom from unwarranted intrusions upon the press of having to respond to compelled disclosure of materials gathered in the process of investigating and reporting on newsworthy events and matters of public concern. Clearly, the press is not to be used as a private investigatory arm of private litigants involved in civil litigation. With these principles in mind, courts and legislatures have placed an extraordinarily heavy burden on litigants to justify the request for such information — it must be critical to the underlying claims and requested from the press only as a last resort. This is a burden that Plaintiff cannot meet here.

### 1. Choice Of Law.

This Court has jurisdiction over the underlying litigation based on diversity of citizenship. 28 U.S.C. § 1332; *see also* Am. Compl., ¶ 3. The National Enquirer is located in New York, which is where Plaintiff attempted to serve her subpoena. *See* Exh. B to Pl.'s Mem. (Subpoena). Therefore, Plaintiff's motion to compel raises an issue regarding which State's law would apply in determining the scope of The National Enquirer's reporter's privilege.

Federal Rule of Evidence 501 states: "[I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law." Therefore, this Court must look to Pennsylvania's choice of law authority to determine which State's privilege law applies to this motion to compel. *See Samuelson v. Susen*, 576 F.2d 546, 549, 551 (3d Cir. 1978) ("Rule 501 requires a district court

8

exercising diversity jurisdiction to apply the law of privilege which would be applied by the

courts of the state in which it sits" and looking to Pennsylvania's conflict-of-laws rules to

determine whether to apply Pennsylvania or Ohio law to a privilege question).

The current Pennsylvania conflicts-of-law analysis "'combines the approaches of both the

Restatement [(Second) of Conflict of Laws] (contacts establishing significant relationships) and

'interest analysis' (qualitative appraisal of the relevant States' policies with respect to the

controversy).'" *Garcia v. Plaza Oldsmobile Ltd.*, 421 F.3d 216, 219 (3d Cir. 2005) (quoting

*Melville v. American Home Assur. Co.*, 584 F.2d 1306, 1308 (3d Cir. 1978)).  The Third Circuit

has explained the appropriate threshold analysis as follows:

> Under Pennsylvania law, before assessing the governmental
> interests of the jurisdictions whose law may control and examining
> their contacts with the dispute, we must determine what type of
> 'conflict,' if any, exists between the purported competing bodies of
> law.  *See Kuchinic v. McCrory*, 422 Pa. 620, 222 A.2d 897, 899–
> 900 (1966).  We begin with an 'interest analysis' of the policies of
> all interested states and then — based on the result of that analysis
> — determine whether the case involves a true or false conflict or
> whether it is unprovided for. *Budget Rent-A-Car Sys., Inc. v.
> Chappell*, 407 F.3d 166, 169–70 (3d Cir. 2005); *see also LeJeune
> v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir. 1996).
>
> There is a true conflict 'when the governmental interests of both
> jurisdictions would be impaired if their law were not applied.'
> *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 & n. 15 (3d Cir.
> 1991) (emphasis in original).  If a case presents a true conflict,
> Pennsylvania choice-of-law rules 'call for the application of the
> law of the state having the most significant contacts or
> relationships with the particular issue.' *In re Estate of Agostini*,
> 311 Pa. Super. 233, 457 A.2d 861, 871 (1983).  But there is a false
> conflict 'if only one jurisdiction's governmental interests would be
> impaired by the application of the other jurisdiction's law.' *Lacey*,
> 932 F.2d at 187.  If there is a false conflict, we apply the law of the
> only interested jurisdiction. *See, e.g., Kuchinic v. McCrory*, 222
> A.2d at 899–900.

*Garcia,* 421 F.3d at 220 (footnote omitted).

Therefore, the threshold inquiry is which States have an interest in having their relevant law applied, and what type of choice or conflict is presented. In this case, the States with the most direct interest in the dispute are Pennsylvania (where the underlying litigation is pending) and New York (where The National Enquirer is located, and the author as well as the documents subject to the subpoena, are located).

Consideration of Pennsylvania's choice of law analysis demonstrates that New York law should apply to the resolution of the subpoena under the facts here. The New York legislature has enacted legislation that was specifically intended to address this situation:

> Section 79-h of the Civil Rights Law reflects our state's *high regard* for the values of free speech and a free press insofar as it protects journalists and newscasters from penalties for maintaining the confidentiality of their news-gathering activities. While the law provides 'absolute protection for confidential news' (CRL § 79-h[b] ), where, as here, unpublished news has not been obtained in confidence, it is nevertheless protected by a qualified privilege exempting those journalists from contempt sanctions who refuse to disclose it '. . . *unless the party seeking such news has made a clear and specific showing that the news: (i) is highly material and relevant; (ii) is critical or necessary to the maintenance of a party's claim, defense or proof of an issue material thereto; and (iii) is not obtainable from any alternative source.*' (CRL § 79-h[c]).

*In the matter of Grand Jury Subpoenas Served on National Broadcasting Co., Inc.*, 178 Misc.2d 1052, 1054–55, 683 N.Y.S.2d 708, 710–11 (1998) (footnote omitted) (emphasis added). In explaining the heightened protection afforded journalists under New York law, the New York Court of Appeals stated:

> '[C]onstruing [our] own constitution so as to recognize a newsman's privilege', as the *Branzburg* [*v. Hayes*, 408 U.S. 665 (1972)] court foresaw we might (408 U.S., at 706, 92 S. Ct. at 2669, *supra*), we have no difficulty in concluding that the guarantee of a free press in article I, § 8 of the New York Constitution independently mandates the protection afforded by the qualified privilege to prevent undue diversion of journalistic effort and disruption of press functions. The expansive language

10

of our State constitutional guarantee (*compare*, N.Y. Const., art. I,
§ 8, with U.S. Const. 1st Amend.), its formulation and adoption
prior to the Supreme Court's application of the First Amendment
to the States (*compare*, N.Y. Const. of 1821, art. VII, § 8; and
*Brandreth v. Lance*, 8 Paige 24 [1839], *with Near v. Minnesota*,
283 U.S. 697, 51 S. Ct. 625, 75 L. Ed. 1357 [1931] — [citing
*Brandreth v. Lance* and other New York cases with approval, *id.*,
at 719, n. 11, 51 S. Ct. at 632 n. 11]), the recognition in very early
New York history of a constitutionally guaranteed liberty of the
press (*see*, Jay, Address to the People of the State of New York,
May 1788, 3 American Museum [No. 6] 559 [1792], reprinted in 3
Roots of the Bill of Rights, at 554, 560 [Schwartz ed.]; Smith,
Address to the People of the State of New York, May 1788 —
Postscript [agreeing with Jay on that point], *reprinted in id.*, at 566,
576), and the consistent tradition in this State of providing the
broadest possible protection to 'the sensitive role of gathering and
disseminating news of public events' (*Matter of Beach v. Shanley*,
62 N.Y.2d 241, 256, 476 N.Y.S.2d 765, 465 N.E.2d 304
[Wachtler, J., concurring]), all call for particular vigilance by the
courts of this State in safeguarding the free press against undue
interference.

*O'Neill v. Oakgrove Construction, Inc.*, 71 N.Y.2d 521, 528–29, 523 N.E.2d 277, 280–81

(1988).

Thus, New York has unequivocally provided its press with the "broadest possible

protection" against efforts to obtain newsgathering material through a subpoena. Applying

Pennsylvania law in this case would frustrate this legislative effort.

Additionally, Pennsylvania has no fundamental interest that would be impaired by

applying New York law. Importantly, under Pennsylvania's choice-of-law analysis, in such a

false conflicts case, courts would apply the law of New York — the only interested jurisdiction.

*Garcia,* 421 F.3d at 220. Plaintiff has little, if any, connection to Pennsylvania. She is not a

Pennsylvania citizen whose rights Pennsylvania may seek to balance against the interests of a

free press. In contrast, The National Enquirer and its journalists in New York have justifiably

expected that New York law, which provides an environment in which freedom of the press is

11

highly valued and newsgathering materials are clearly protected by statute, would apply to situations such as the subpoena in this case. *See* Fed. R. Civ. P. 45(b)(2).

Even if the Court were to determine that Pennsylvania's interests would be impaired if not applied to the subpoena, New York law would still apply. As the Third Circuit has held, "[i]f a case presents a true conflict, Pennsylvania choice-of-law rules 'call for the application of the law of the state having the most significant contacts or relationships with the particular issue.'" *Garcia,* 421 F.3d at 220 (quoting *In re Estate of Agostini*, 311 Pa. Super. 233, 457 A.2d 861, 871 (1983)). As noted above, New York State has the greatest contacts and relationship with the issue of the reporter's privilege. The National Enquirer and the journalist in question are located in New York, as are the documents sought by Plaintiff's subpoena.[3] For all of these reasons, New York law should apply in determining the proper scope of The National Enquirer's reporter's privilege.

**2.      Plaintiff Has Failed To Meet Her Heavy Burden To Overcome the National Enquirer's Reporter's Privilege Under New York Law And The First Amendment Of The United States Constitution.**

Federal Rule of Civil Procedure 45(c)(3)(A) provides that a court "shall quash or modify [a] subpoena if it . . . requires the disclosure of privileged or other protected matter and no exception or waiver applies." Plaintiff's motion to compel should be denied because her subpoena seeks information that is privileged under both the New York Reporter's Shield Law and the First Amendment of the United States Constitution. *See In re Subpoena Directed to*

---

[3]     Indeed, the subpoena should have (except for Plaintiff's apparent gamesmanship) issued from the United States District Court for the Southern District of New York, thereby making any contacts between the subpoena and Pennsylvania non-existent. In preparing the subpoena, Plaintiff had deliberately selected an office of an attorney not of record located in Center City, Philadelphia as the place for the production of the documents requested by the subpoena (location identified as "Troiani/Kivitz, L.L.P. c/o Ralph A. Jacobs & Associates"). This office is conveniently located 96 miles from The National Enquirer's New York offices. This is no mistake as Plaintiff's counsel's offices are located in Devon, Pennsylvania, which is more than 100 miles from the National Enquirer's New York offices and, therefore, outside the subpoena power of this Court. *See* Fed. R. Civ. P. 45(b)(2).

*Anne Barnard*, Misc. No. 98-189, 1999 WL 38269, at *2 (E.D. Pa. Jan. 25, 1999) (applying both

state shield law and federal constitutional privilege to privilege analysis in diversity case).

### a.    New York Reporter Shield Law.

New York's Reporter Shield Law states, in relevant part:

> Exemption of professional journalists and newscasters from
> contempt: Qualified protection for nonconfidential news.
> Notwithstanding the provisions of/ any general or specific law to
> the contrary, no professional journalist or newscaster presently or
> having been employed or otherwise associated with any
> newspaper, magazine, news agency, press association, wire
> service, radio or television transmission station or network or other
> professional medium of communicating news to the public shall be
> adjudged in contempt by any court in connection with any civil or
> criminal proceeding, or by any legislature or other body having
> contempt powers, nor shall a grand jury seek to have a journalist or
> newscaster held in contempt by any court, legislature or other body
> having contempt powers for refusing or failing to disclose any
> unpublished news obtained or prepared by a journalist or
> newscaster in the course of gathering or obtaining news as
> provided in subdivision (b) of this section, or the source of any
> such news, where such news was not obtained or received in
> confidence *unless the party seeking such news has made a clear
> and specific showing that the news: (i) is highly material and
> relevant; (ii) is critical or necessary to the maintenance of a
> party's claim, defense or proof of an issue material thereto; and
> (iii) is not obtainable from any alternative source.  A court shall
> order disclosure only of such portion, or portions, of the news
> sought as to which the above-described showing has been made
> and shall support such order with clear and specific findings made
> after a hearing.*

N.Y. Civ. Rights § 79-h(c) (emphasis added).[4]

All unpublished information related to interviews of Defendant and Beth Ferrier is

entitled to the qualified protections of New York's Reporter Shield Law. *See In re Subpoena*

---

[4]     Subsection (c) quoted above cross-references the following subsection (b): "any news obtained or received
in confidence or the identity of the source of any such news coming into such person's possession in the
court of gathering or obtaining news for publication or to be published in a newspaper, magazine, or for
broadcast by a radio or television station or network or for public dissemination by any other professional
medium or agency which has as one of its main functions the dissemination of news to the public, by which
such person is professionally employed or otherwise associated in a news gathering capacity."

*Duces Tecum to American Broadcasting Companies, Inc.*, 735 N.Y.S.2d 919, 922 (N.Y. Sup. Ct. 2001) (interview with disclosed informant is nonconfidential news).  As such, Plaintiff bears the heavy burden of satisfying, in her moving papers, the requirements of the three-prong test articulated in the statute.  *See In re Application of CBS Inc.*, 648 N.Y.S.2d 443, 443-44 (N.Y. App. Div. 1996).  Plaintiff fails to meet this burden.

> **(1)   Plaintiff Has Failed To Prove That The Information Sought By The Subpoena Is Highly Material And Relevant To Her Claims.**

Under New York's Reporter Shield Law, Plaintiff bears the initial burden of making a "clear and specific showing" that the information she seeks to compel from the National Enquirer is "highly material and relevant."  N.Y. Civ. Rights § 79-h(c).  A mere relevance standard would require Plaintiff to make a specific showing that the material is at least likely to lead to the discovery of admissible evidence.  Fed. R. Civ. P. 26.  In her moving papers, Plaintiff has not met this standard, let alone proven that the requested discovery is "highly material and relevant."

Instead, Plaintiff relies *solely* on the conclusory statement that "all the requested documents relate to issues of liability, defamation and credibility, all of which are at issue in this case."  Pl.'s Mem. at 7.  Under the relevant decisional authorities, this bare allegation fails to demonstrate that the requested discovery is highly material and relevant to Plaintiff's claims.  *See In re Subpoena Duces Tecum to American Broadcasting Companies, Inc.*, 735 N.Y.S.2d at 922 (such a conclusory allegation amounts to pure conjecture).

> **(2)   Plaintiff Has Failed To Demonstrate That The Information Sought By The Subpoena Is Critical To The Maintenance Of Her Claims.**

Plaintiff has likewise failed to demonstrate that the requested information is critical or necessary to the maintenance of her claims.

The compelled disclosure of information from a newsperson, such as here, must be ordered only when there is an "urgent requirement." *In re Subpoena Duces Tecum to American Broadcasting Companies, Inc.*, 735 N.Y.S.2d at 921–22. It should be available to litigants as only a "last resort." *Id.* "Thus, the provision of the Civil Rights Law at issue is not satisfied *absent clear and specific proof* 'that the claim for which the information is to be used virtually rises or falls with the admission or exclusion of the proffered evidence.'" *Id.* at 922 (internal citations omitted).

Moreover, "when the legislature speaks of unpublished news being critical or necessary to the proof of a claim or defense, it does not have in mind general and ordinary impeachment materials or matters which might arguably bear on the assessment of credibility of witnesses." *Id.* General allegations of credibility and unspecified issues of "liability and defamation," as Plaintiff alleges, cannot meet this burden as a matter of law. *Id.*[5]

### (3) Plaintiff Has Failed To Demonstrate That The Information Sought By The Subpoena Is Not Obtainable From Other Sources.

Plaintiff's motion to compel also is fundamentally flawed because Plaintiff makes *no* showing that the information in question is available only from The National Enquirer. This failure of proof provides a separate and independent basis for denying Plaintiff's motion to compel.

Courts require that before burdening the press with requests for newsgathering materials, litigants much exhaust all other available sources for the information that they seek. This exhaustion requirement is strictly enforced. *See, e.g., In re Roche*, 448 U.S. 1312 (1980)

---

[5]     Plaintiff alludes to the fact that she needs this information on an expedited basis "if Plaintiff is to join the paper as an additional defendant" and that "[w]ithout the requested information, Plaintiff will be severely prejudiced in her ability to draft a complaint." Pl.'s Mem. at 9. However, Plaintiff cannot simply use the power of the subpoena as a fishing expedition to determine whether she wants to add The National Enquirer as a defendant. Moreover, whatever The National Enquirer published that would be the subject of any potential claim against it is already well known to Plaintiff, without the need for an improper subpoena.

(plaintiff required to seek information from 65 witnesses before seeking disclosure from journalist).

In addressing the scope of the subpoena, Plaintiff argues that the subpoena is limited only to documents and agreements concerning The National Enquirer's interviews of Defendant and Beth Ferrier. *See* Pl.'s Mem. at 7. Plaintiff, however, does not even attempt to articulate how, if at all, she sought this information from Defendant or Ms. Ferrier.

Because Plaintiff has not met her burden of showing that The National Enquirer is the only available source of the information critical to the maintenance of her claims, her motion to compel should be denied.

### b. First Amendment Protection.

Even if the Court were for any reason to conclude that the New York Reporter Shield Law should not determine the privilege applicable to this case, the law of this circuit clearly provides non-party news organizations, like The National Enquirer, with a qualified privilege against compelled disclosure of information that they gather, generate, use or rely upon in the course of their work as journalists. *See, e.g., Riley v. City of Chester*, 612 F.2d 708 (3d Cir. 1979). The Third Circuit has repeatedly recognized this privilege, which has as its source the First Amendment to the United States Constitution. *See, e.g., United States v. Criden*, 633 F.2d 346 (3d Cir. 1980). As the Third Circuit noted, "[t]he First Amendment 'was fashioned to assure unfettered interchange of ideas for the bringing about of political and social change desired by the people' and bottomed on 'a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *Criden*, 633 F.2d at 355 (quoting *Roth v. United States*, 354 U.S. 476, 484 (1957) and *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964), respectively).

16

This privilege protects not only confidential sources but the widest range of confidential and non-confidential work product of journalists. Indeed, "compelled production of a reporter's resource materials is equally as invidious as the compelled disclosure of . . . confidential sources." *Altemose Construction Co. v. Building and Construction Trades Council*, 443 F. Supp. 489, 491 (E.D. Pa. 1977); *see also United States v. Cuthbertson*, 630 F.2d 139, 147 (3d Cir. 1980).

Courts from this circuit have repeatedly protected newspersons' materials from compelled production except in extraordinary cases. For example, in *Riley*, the Third Circuit adopted a three-prong test, similar to that crafted by the New York legislature, to be applied when a party seeks to compel the production of newsgathering material. A moving party must show: (1) "that [the] only practical access to crucial information necessary for the development of the case is through the newsman's sources"; (2) that "[t]he material sought must provide a source of crucial information going to the heart of a claim"; and (3) that the moving party "exhausted other means of obtaining the information." *Riley*, 612 F.2d at 717. Under this standard, a litigant must show a "demonstrated, specific need for the evidence" before a reporter can be compelled to produce his or her documents. *Id.* at 716. Because this is a civil case, the burden on Plaintiff to demonstrate this extraordinary need is heavier than if the underlying case was criminal. *Id.* at 717. Plaintiff fails to meet this burden here.

> **(1)  Plaintiff Has Failed To Demonstrate That The Only Practical Access To Crucial Information Necessary For The Development Of Her Case Is In The Information Sought By The Subpoena.**

As stated in subsection two, *infra*, Plaintiff has made no showing that crucial information necessary for the development of her case is available solely through The National Enquirer. *See Altemose Construction Company*, 443 F. Supp. at 491 (protecting affidavits and all other written

17

statements from individuals interviewed for television program because the parties showed "no particularized need for these affidavits; there was not even a demonstration that the information could not be secured from alternative sources.") Plaintiff's attempt to ignore this requirement is unavailing.

### (2)   Plaintiff Has Failed To Demonstrate That The Information Sought By The Subpoena Is Crucial Information Going To The Heart Of Her Claims.

Similarly, Plaintiff has made no showing in her moving papers that the information she seeks is critical to her claims against Defendant. Plaintiff's single, conclusory allegation that the newsgathering source information sought by the subpoena relates somehow to the issues of "liability, defamation and credibility" is legally insufficient. *In re Scott Paper Co. Securities Litigation*, 145 F.R.D. 366, 371 (E.D. Pa. 1992) (unpublished notes and source materials protected by reporter's privilege because "mere possibility of helpful information . . . is not a sufficiently strong showing of need to justify the great intrusion into the deliberative process of the press.").

### (3)   Plaintiff Has Failed To Demonstrate That She Has Exhausted Other Means Of Obtaining The Information Sought By The Subpoena.

Finally, Plaintiff fails to demonstrate that she has exhausted other means of obtaining the same information requested from The National Enquirer. *See Perry v. Keulian*, Civ. A. No. 96-1374, 1997 WL 117027 at *1 (E.D. Pa. Mar. 11, 1997) ("Since Defendant represents an alternative route of access to these, her own statements, and since Plaintiffs have *failed to show* that they have made an effort to obtain this information from her or any other sources, Plaintiffs have failed to meet the first two prongs . . . ."). As noted above, Plaintiff's moving papers do not address at all this requirement. For this additional reason, Plaintiff has not carried her burden of

overcoming The National Enquirer's reporter's privilege, and her motion to compel should be denied.

## C. Because The Motion To Compel Has No Merit Whatsoever, The National Enquirer Should Be Awarded The Fees And Costs Incurred In Responding To The Motion.

For the reasons already described, Plaintiff has failed to overcome the objections asserted by The National Enquirer in response to the subpoena.[6]  By its plain terms, the subpoena seeks *all* information related in any way to the interviews of Defendant and Ms. Ferrier, irrespective of whether they concern Plaintiff.  This goes far beyond the boundaries of any possible relevance in this case.  The subpoena also deliberately seeks confidential and privileged information that is clearly protected from discovery under state and federal law.

Not only did Plaintiff improperly serve the subpoena, Plaintiff then brought her motion to compel without making any meaningful effort to comply with the legal requirements for such a motion.  As set forth above, Plaintiff made *no* effort to demonstrate a connection between the information sought by the subpoena and her claims, the inability to obtain this information from other sources, or the critical nature of the information to her claims.  There is no reasonable excuse for this conduct.

In every way, Plaintiff's motion to compel justifies sanctions.  The National Enquirer respectfully submits that the Court should not condone this type of conduct.  Accordingly, The National Enquirer asks that the Court enter an Order awarding The National Enquirer the fees and costs incurred in responding to the motion to compel.  Fed. R. Civ. P. 45(c)(1).

---

[6]     Consistent with Federal Rule of Civil Procedure 45(c), The National Enquirer formally objected to the subpoena on the grounds, among others, that it is overbroad, seeks confidential and privileged information, and is not reasonably calculated to lead to the discovery of admissible evidence.  Exh. H to Pl's. Mem.

19

**D.     In The Unlikely Event That The Court Orders Production Of Any Of The Information Sought By The Subpoena, A Protective Order Should Be Issued To Protect The Information.**

In the alternative, if the Court decides to order production of any of the information requested by Plaintiff (which for the reasons already stated should not be the case), the Court should enter an appropriate protective order protecting the confidentiality of the information. The National Enquirer's need for privacy unquestionably outweighs the public's interest in obtaining access to the requested materials.

In *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994), the Third Circuit outlined factors that should be considered by a lower court before entering a protective order. *Id.* at 787–88. Those factors include whether the disclosure will violate any privacy interests, whether the information is being sought for a legitimate purpose, whether the disclosure will impose embarrassment, and whether the matter involves issues of public concern. *Id.* These factors weigh in favor of entering a protective order in this case.

Here, the subpoena seeks information that is among the most confidential information of any news organization. This information includes The National Enquirer interviewer's notes, summaries and source agreements with Defendant and Beth Ferrier. At all times, The National Enquirer expected that this information would remain private.

As recognized by the courts for decades, these materials are at the core of the reporters' privilege under the First Amendment. *See Criden*, 633 F.2d at 355 ("The First Amendment 'was fashioned to assure unfettered interchange of ideas for the bringing about of political and social change desired by the people' and bottomed on 'a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open.'"). Without the ability to protect this confidential information, The National Enquirer's capacity to function as a news organization will be seriously harmed. Absent this protection, The National Enquirer will not be

20

able to ensure the free flow of information with its news sources, who will naturally be reluctant to share information knowing that it can be publicly disclosed against their wishes.

In contrast, the public interest in obtaining access to these materials is nonexistent. This matter does not involve issues that are important to the "public health, safety and welfare" such that disclosure is warranted. *Pansy*, 23 F.3d at 788. This is a case involving private litigants, and the materials to which Plaintiff seeks access are of little legitimate public interest. *Id.*

To the extent that Plaintiff opposes the entry of a protective order, there is no question that the information is being sought by Plaintiff for an improper purpose. Put bluntly, no legitimate public purpose will be served by Plaintiff openly publicizing the confidential information of The National Enquirer. A contrary position by Plaintiff would only highlight the improper nature of Plaintiff's motion to compel.

## IV.    CONCLUSION

For the foregoing reasons, nonparty The National Enquirer respectfully requests that the Court deny Plaintiff's motion to compel and award The National Enquirer the fees and costs incurred in responding to the motion.

DATED:  December 27, 2005                    Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By: _____

Paul D. Weller (Bar. Id. No. 61175)
Jennifer B. Jordan (Bar Id. No. 87011)
1701 Market Street
Philadelphia, PA 19103
Telephone:  215.963.5000
Fax:  215.963.5001
Email:  pweller@morganlewis.com
        jjordan@morganlewis.com

*Attorneys for The National Enquirer*

21

"H"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANDREA CONSTAND,       :

      Plaintiff,       :       CIVIL A. NO. 05-1099

      v.       :       Judge Eduardo C. Robreno

WILLIAM H. COSBY,       :       **FILED UNDER SEAL**

      Defendant.       :

---

## DECLARATION OF MICHAEL B. KAHANE
## PURSUANT TO 28 U.S.C. § 1746

I, Michael B. Kahane, declare under penalty of perjury as follows:

1.     My name is Michael B. Kahane, and I am over the age of 18.

2.     I am the Executive Vice-President and General Counsel of American Media, Inc. National Enquirer, Inc. is a Florida corporation, and a wholly owned subsidiary of American Media, Inc., and I am the corporate Secretary of National Enquirer, Inc. I make this Declaration based on personal knowledge.

3.     The National Enquirer is a weekly news publication which utilizes American Media Inc.'s offices in New York City, Boca Raton, Florida, and Santa Monica, California. Approximately one-half of the staff that works on The National Enquirer is located in New York City.

4.     Barry Levine, the individual with by-line credit on the article that is referenced in Plaintiff's subpoena, is based in American Media's New York office.

5.     The National Enquirer was established more than three decades ago, and has continually reported local, national and worldwide news events and other matters of public concern.

6.     In this industry, The National Enquirer hires reporters to gather and report on newsworthy events.

7.     The National Enquirer published an article regarding an interview between its editor, Barry Levine, and Defendant William Cosby.

8.     As part of its investigation for the article regarding Mr. Cosby, The National Enquirer gathered documents and other resource material regarding the subject article.  The National Enquirer considers these materials privileged from production in response to subpoenas and discovery requests.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
Michael B. Kahane

Dated:  December 22, 2005

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANDREA CONSTAND,        :
                          :
        Plaintiff,       :      CIVIL A. NO. 05-1099
                          :
        v.              :      Judge Eduardo C. Robreno
                          :
WILLIAM H. COSBY,     :      **FILED UNDER SEAL**
                          :
        Defendant.     :

## DECLARATION OF INICIA GALLOP
## PURSUANT TO 28 U.S.C. § 1746

I, Inicia Gallop, declare under penalty of perjury as follows:

1.    My name is Inicia Gallop, and I am over the age of 18.  I make this Declaration based on personal knowledge

2.    I am a receptionist for American Media, Inc.. located at One Park Avenue, New York, New York.  I have been employed in this capacity since November 29, 2004.

3.    As a receptionist, my duties are receiving office visitors and telephone calls.  I am not in charge of the office and have no managerial or discretionary responsibilities.

4.    I am not an officer, partner, or trustee of National Enquirer, Inc., nor am I in charge of any of The National Enquirer's operations.

5.    On the afternoon of November 7, 2005, a gentleman approached me at my desk. He identified himself as a process server and asked if I would accept service of a subpoena addressed to The National Enquirer.

6.    I am not authorized to accept any service of process.

7.    After I informed the process server that I was not authorized to accept service of the subpoena, the process server left a copy of the subpoena on the reception desk and left the building.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Inicia Gallop

Dated:  December  22, 2005

2

## CERTIFICATE OF SERVICE

I hereby certify that on this date a true and correct copy of the foregoing The National

Enquirer's Memorandum of Law in Opposition to Plaintiff's Motion to Compel and proposed

order were served on the following via first class mail:

> Dolores M. Troiani
> Bebe Kivitz
> Troiani/Kivitz LLP
> 38 N. Waterloo Road
> Devon, PA 19333
>
> *Attorneys for Plaintiff*
>
> Patrick J. O'Connor
> Cozen O'Connor
> 1900 Market Street
> Philadelphia, PA 19103
>
> Andrew D. Schau
> Patterson Belknap Webb & Tyler, LLP
> 1133 Avenue of the Americas
> New York, NY 10036
>
> *Attorneys for Defendant*

DATED:  December 27, 2005

Jennifer B. Jordan

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANDREA CONSTAND, | : | |
| | : | |
| Plaintiff, | : | CIVIL A. NO. 05-1099 |
| | : | |
| v. | : | Judge Eduardo C. Robreno |
| | : | |
| WILLIAM H. COSBY, JR., | : | **FILED UNDER SEAL** |
| | : | |
| Defendant. | : | |

---

## PROPOSED ORDER

AND NOW, this _____, day of _____, 200_, upon Plaintiff's motion to

compel The National Enquirer's compliance with subpoena for documents and request for

expedited resolution, and The National Enquirer's response thereto, it is hereby ORDERED that

Plaintiff's motion to compel is DENIED.

It is further ORDERED that Plaintiff shall pay the fees and costs incurred by The

National Enquirer in responding to Plaintiff's motion to compel.

BY THE COURT.

_____, J.

Eduardo C. Robreno
United States District Court