# TROIANI/KIVITZ, L.L.P.
### ATTORNEYS AT LAW

DOLORES M. TROIANI, ESQUIRE
BEBE H. KIVITZ, ESQUIRE

38 NORTH WATERLOO ROAD
DEVON, PA 19333

(610) 688-8400
FAX (610) 688-8426

January 5, 2006

**(Hand-Delivered)**

Office of the Clerk of Court
Eastern District of Pennsylvania
U.S. Courthouse
601 Market Street, Room 2609
Philadelphia, PA 19106

RE: **Andrea Constand vs. William H. Cosby, Civil Action No. 05-CV-1099**
  **Motion For Leave To File Plaintiff's Reply To the National Enquirer's**
  **Memorandum of Law In Opposition to Plaintiff's Motion To Compel**

Dear Sir/Dear Madam:

Enclosed for filing in the above-captioned matter, please find an original and a disk.

Thank you for your anticipated cooperation.

Respectfully submitted,

s/ Bebe Kivitz
Bebe H. Kivitz

BHK:m
Enclosure
cc:  Patrick J. O'Connor, Esquire (w/enclosure-first class mail)
   Andrew D. Schau, Esquire w/enclosure -first class mail)
   Andrea Constand (w/enclosure - first class mail)



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREA CONSTAND, <br> Plaintiff <br> v. <br><br> WILLIAM H. COSBY, JR., <br> Defendant | : CIVIL ACTION <br> : <br> : NUMBER 05-1099 <br> : <br> : FILED UNDER SEAL <br> : |

### PLAINTIFF'S MOTION FOR LEAVE TO FILE
### REPLY MEMORANDUM OF LAW IN RESPONSE TO
### NATIONAL ENQUIRER'S MEMORANDUM IN OPPOSITION
### TO PLAINTIFF'S MOTION TO COMPEL
### COMPLIANCE WITH SUBPOENA FOR DOCUMENTS

Plaintiff Andrea Constand respectfully moves for leave to file the attached Memorandum of Law in response to The National Enquirer's Memorandum in Opposition to Plaintiff's Motion to Compel The National Enquirer's Compliance with a Subpoena. A reply is necessary to respond to legal arguments which have been asserted by The National Enquirer for the first time in their response.

Respectfully submitted,

TROIANI/KIVITZ, L.L.P.

By: /s/ Dolores M. Troiani
Dolores M. Troiani, Esquire
I.D. No. 21283
Bebe H. Kivitz, Esquire
I.D. No. 30253
38 North Waterloo Road
Devon, Pennsylvania 19333
(610) 688.8400

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREA CONSTAND,<br>Plaintiff | : <br> : CIVIL ACTION <br> : |
| v. | : NO. 05-CV-1099 <br> : |
| WILLIAM H. COSBY, JR.,<br>Defendant | : FILED UNDER SEAL <br> : |

**PLAINTIFF'S REPLY TO THE NATIONAL ENQUIRER'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

Plaintiff Andrea Constand submits the following Reply Memorandum of Law in support of her Motion to Compel. The arguments presented here are limited to the privilege issues raised by the National Enquirer. Further briefing in connection with the service issues is unnecessary because the National Enquirer concedes the facts necessary to conclude that service was proper: it admits that it has a New York office, and that half of its staff works there; and it admits that a process server left a copy of the subpoena with the (only) receptionist at the National Enquirer address of record, after a person named "Mark" declined to retrieve it from the receptionist's desk. *See*, Introduction, National Enquirer's Memorandum of Law, at 1; *See also*, Memorandum of Law, National Enquirer, at 8 and 11 ("The National Enquirer is located in New York").

### ARGUMENT

**The Discovery Materials Sought by Plaintiff Should be Produced because Plaintiff is not seeking Confidential Source Materials and to the Extent that National Enquirer has Made Source Materials Public it Has Waived its Privilege.**

Plaintiff has sued Defendant for defamation for statements he made to the media, including those made in an exclusive interview published by the National Enquirer. Plaintiff

1

may also have claims against the media in connection with those publications. Therefore, what Defendant said to the National Enquirer reporter, what he revised, if anything, and what he was shown, are all relevant to Plaintiff's claims and to decisions concerning joinder. The National Enquirer is the *only* entity that possesses the notes of Defendant's conversations with National Enquirer's reporter, Barry Levine, and the drafts of the Ferrier and Cosby interviews. Moreover, although Mr. Cosby or his counsel presumably have an original or copy of the actual contract Defendant entered into with the tabloid, *Defendant has refused to produce it without* a confidentiality agreement.

The National Enquirer argues that all unpublished information related to Defendant's and Beth Ferrier's interviews are confidential and protected. Under the circumstances presented here, however, the National Enquirer's position is without merit. Defendant testified at his deposition that he learned from Martin Singer, Esquire, his representative, that Beth Ferrier, another woman accusing him of sexual misconduct, had made a statement to the National Enquirer. (Cosby dep. 9/29/05, p. 148, Exhibit A). In response, Defendant and the National Enquirer entered into a written agreement wherein Cosby agreed to an exclusive interview with the National Enquirer in exchange for the National Enquirer's agreeing to kill the Beth Ferrier story. (Cosby dep. 9/29/05, pp. 155-156, 161, Exhibit A). At the time of the agreement, Defendant was aware of Beth Ferrier's allegations and may have been aware of a polygraph taken by her at the request of the National Enquirer. (Cosby dep. 9/29/05, p. 166-168, Exhibit A). Most importantly, Defendant testified that he was read a draft of Beth Ferrier's story by his counsel, Jack Schmitt, Esquire. (Cosby dep. 9/29/05, p. 169, Exhibit A). Clearly, the National Enquirer had voluntarily disclosed the Beth Ferrier story and the facts in connection with the story to the Defendant.

2

The National Enquirer's disclosure extends even further. Defendant testified that he was given the opportunity to review his own interview before it was published. (Cosby dep. 9/29/05, pp. 171, 182, Exhibit A). According to Defendant, Barry Levine had accurately quoted him. *Id.* At the deposition, his attorneys, including John Schmitt, Esquire, who accompanied Defendant at the meeting with the National Enquirer, stipulated that Defendant had, in fact, said everything that the National Enquirer placed in quotation marks, as coming from him, in its published interview. (Cosby dep. 9/29/05, pp. 172-173, Exhibit A).

The material that Plaintiff seeks, therefore, is vastly different than "source" material protected by the Pennsylvania Shield Law. 42 Pa. C.S. § 5942(a). Indeed, once a newspaper's source materials are made public or disclosed to those outside of the newspaper, its privilege is waived and will not protect the materials from disclosure to third parties. *See, Steaks Unlimited, Inc. v. Deaner*, 623 F.2d 264, 278 (3d Cir. 1980) (shield law protects all sources of information persons, documents, and recordings with *exception* of information for which privilege was waived by actual publication or public disclosure) (*citing Re Taylor and Selby Appeals*, 412 Pa. 32, 193 A.2d 181 (1963)). *See also Anderson v. Nixon*, 444 F. Supp 1195 (D.D.C. 1978) (Reporter waived the privilege by filing suit to vindicate his rights).

Accordingly, the National Enquirer may not assert a privilege over materials it has printed or made public by revealing same to the Defendant or his agents. Once shared with non-newspaper individuals, the Ferrier draft <u>shown by the National Enquirer to Defendant and Mr. Schmitt,</u> cannot be deemed privileged. Similarly, Defendant's "draft" interview, whether revised by him, or simply endorsed and adopted by him, has already been shown to Defendant and his representative. Thus, it, too, can no longer be characterized as privileged.

Even assuming that the National Enquirer has not waived its privilege, Plaintiff does not seek the identity of newspaper "sources". It is clear that the only sources are Defendant and Ms. Ferrier themselves, and both agreed to have their stories published. Defendant's interview was published in the National Enquirer; Ms. Ferrier's story was ultimately published by the Philadelphia Daily News.

To the extent that the requested discovery materials contain source information related to sources other than the Defendant and Ms. Ferrier, the law does not bar their production in a defamation action. In *Hatchard v. Westinghouse Broadcasting*, 516 Pa. 184, 532 A.2d 346 (1987), in which plaintiff attempted to obtain videos prepared but not shown in a broadcast, the Pennsylvania Supreme Court reviewed the scope of the protection offered by the Shield Law in the particular context of a defamation suit. The Court refused to preclude disclosure of all unpublished information in the media's possession, holding that "unpublished documentary information ... is discoverable by a Plaintiff in a libel action to the extent [it] does not reveal the identity of a personal source of information or may be redacted to eliminate the revelation of a personal source of information. 516 Pa. at 195. This is so regardless of whether the defamation action is against the media entity itself or some other person. Following *Hatchard*, the Court in *Davis v. Glanton*, 705 A.2d 879 (1997), held that the newspaper was required to produce material, which had been used for a published article. The Court stated:

> Regardless of whether the defendant in the defamation action is the media entity itself or some other person, the public figure Plaintiff faces the same hurdle; the burden of proving that a defamatory statement was maliciously published and that the statement was false. *If the media are permitted to withhold information that is relevant to this burden, whether or not the media are themselves the Defendants, the obstacles placed in the way of a plaintiff in attempting to vindicate his constitutionally protected interest in his reputation are rendered almost insurmountable.* 705 A.2d at

4

884-885 (emphasis added).

## CONCLUSION

Accordingly, Plaintiff seeks the following:

1) The contract entered into between Defendant and the National Enquirer concerning his exclusive interview, which is not "privileged" and, of course, does not relate to sources.

2) The notes of the reporter's interviews with Defendant, which are critical to Plaintiff's defamation claim, and again, do not reveal – or can be redacted to eliminate – the identity of any sources.

3) The drafts and/or any revisions, endorsements, or mark-ups of the Cosby article and Beth Ferrier article already <u>shown</u> <u>to</u> <u>and</u> <u>read</u> <u>by</u> Defendant and his representative. Both articles are relevant to Defendant's state of mind in making statements as to Plaintiff. The newspaper's knowledge, Plaintiff's defamation claim, and Defendant's credibility. Once shown to non-newspaper members of the public, the National Enquirer has waived its argument that any privilege attaches to the above documents.

For all of the above reasons, Plaintiff respectfully requests that the National Enquirer be ordered to produce the requested materials on an expedited basis.

                                        Respectfully submitted,
                                        TROIANI/KIVITZ, L.L.P.

                          By: _____
                                        Bebe H. Kivitz
                                        I.D. No. 30253
                                        Dolores M. Troiani
                                        I.D. No. 21283
                                        Attorneys for the Plaintiff
                                        38 North Waterloo Road
                                        Devon, Pennsylvania 19333
                                        (610) 688.8400

Case 2:05-cv-01099-ER   Document 68   Filed 01/05/06   Page 8 of 18
William Cosby, Jr.

1

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

- - -

ANDREA CONSTAND        :CIVIL ACTION

- VS -                 :NO. 05-CV-1099

WILLIAM H. COSBY, JR.  :VOLUME II       

- - -

Oral deposition of WILLIAM H. COSBY, JR., taken pursuant to notice, held at the Rittenhouse Hotel, 210 West Rittenhouse Square, Philadelphia, Pennsylvania, on Thursday, September 29, 2005, beginning at approximately 9:20 a.m., before Jen Marchesani, a Certified Professional Reporter and a Commissioner of the Commonwealth of Pennsylvania.

- - -

KAPLAN, LEAMAN AND WOLFE

The Bourse Building, Suite 970

111 South Independence Mall East

Philadelphia, Pennsylvania 19106

(215) 922-7112

William Cosby, Jr.

148

you knew that Beth Ferrier would give a statement to the press?

A.      Maybe about eight, nine months ago.

Q.      How did you know that?

A.      I got a call about it.

Q.      From whom?

A.      I hope I'm accurate, counsel.

Q.      You have four counsel sitting here. Which counsel was it?

A.      It was Marty Singer.

Q.      What did he say to you in that call?

        MR. O'CONNOR: Please don't answer that. It's attorney-client privilege. You know it is. It's absurd.

        THE WITNESS: Would she do that?

BY MS. TROIANI:

Q.      What was Mr. Singer representing you in when he called you?

EXHIBITS

KAPLAN  LEAMAN

William Cosby, Jr.

155

Q.      Do you have a public relations person who negotiates with newspapers when you give them an interview?

A.      Yes.

Q.      Did someone negotiate your interview with the Enquirer?

        MR. O'CONNOR:  Don't answer that question if it was an attorney. If it was not an attorney, you can answer the question.

        THE WITNESS:  I cannot answer the question.

BY MS. TROIANI:

Q.      Did you have a written contract with the Enquirer to give this interview?

        MR. O'CONNOR:  Which interview?

        MS. TROIANI:  Your interview, my story.

        MR. O'CONNOR:  That was dramatic.  Can you answer the question?

EXHIBITS

William Cosby, Jr.

156

THE WITNESS: Yes.

BY MS. TROIANI:

Q. Please do.

A. I did.

Q. You did have -- then my question was can you answer the question.

You do have a written contract with the Enquirer then?

A. Yes.

MS. TROIANI: Are you taking the position that that is also privileged, Mr. O'Connor?

MR. O'CONNOR: Yes, just like Ms. Ferrier's contract was. I would consider exchanging her contract and her payment.

MS. TROIANI: I don't have anything from her.

MR. O'CONNOR: I'm not going to allow anything like that to get in. I allowed him to answer the question it was a contract. I'm not going to allow him to divulge the discussions

KAPLAN, LEAMAN AND WOLFE

couldn't tell me.

    MR. O'CONNOR: That's outrageous. Let's break for lunch.

    (At this time, a lunch break was taken.)

BY MS. TROIANI:

Q.    What is your understanding of the agreement that you had with the National Enquirer concerning the story that appeared in the National Enquirer which was your exclusive interview termed my story?

A.    I would give them an exclusive story, my words.

Q.    What would they give you in return?

A.    They would not print the story of -- print Beth's story.

Q.    Why did you make that agreement?

A.    It was at a time when I did not want any tabloid-type accusations, sexual accusations going into a paper.

Q.    What do you mean by

EXHIBITS

William Cosby, Jr.

now?

A.   Yes.

Q.   At the time you made this agreement with the Enquirer, did you know what her allegations were?

A.   Say that part again.  At the time --

Q.   You made the agreement with the National Enquirer to give your story, did you know what Beth's allegations were?

A.   Her story, I knew at least the National Enquirer's story.

Q.   The National Enquirer's version of what Beth said; is that what you're saying?

A.   Yes.

Q.   Did you know that Beth had been given a polygraph?

   MR. O'CONNOR:  That she had given one?

   MS. TROIANI:  Had been given one.

   THE WITNESS:  When did I

know this?

BY MS. TROIANI:

Q. I'm asking, at any time did you know that Beth had been given a polygraph?

A. That's what they said.

Q. Who said?

A. Somebody told me. I don't remember who.

Q. Do you know if you knew that before --

A. I think it went into print somewhere. I think it was in one of your papers.

Q. So, you don't believe you knew she passed the polygraph before you made the deal with the National Enquirer?

MR. O'CONNOR: I object to the form. I mean, that it was reported that she passed the polygraph I think would be a fair question.

BY MS. TROIANI:

Q. I'm asking your knowledge.

William Cosby, Jr.

169

asked?

BY MS. TROIANI:

Q.	I'll clarify that. That's fair.

Did someone read to you Beth's story that she had given to the National Enquirer?

A.	Yes.

Q.	When was that?

A.	That was before it was supposed to come out.

Q.	Did she say anything in that story different than the one that we reviewed this morning?

A.	I think that I will not say anything because it was read to me by my counsel.

MR. O'CONNOR: I was just advised, and I want to put this on the record, by Mr. Schmitt that his understanding of that article came through an attorney-client relationship with his counsel.

MS. TROIANI: Marty Singer?

KAPLAN, LEAMAN AND WOLFE

William Cosby, Jr.

172

Q.      Did you tell them, because some of the things you said are in quotes, and some of it is just the story.

MR. O'CONNOR:  This is in quotes, too, Cosby declared no man.

MS. TROIANI:  It's also in quotes, the charge can --

MR. O'CONNOR:  I want it in context.  That's all I'm saying.  His quote starts with no one wants to see his family put in the position of having these kinds of allegations come out and for your loved ones to suffer emotional stress, then it goes on.

MS. TROIANI:  That's fine. I didn't really care about that quote. I'll ask you about every quote that's in here.

THE WITNESS:  Please don't do that.  Go ahead.  I'm sorry.

MR. O'CONNOR:  We're going to stipulate to what's quoted I believe as coming from his mouth;

KAPLAN, LEAMAN AND

William Cosby, Jr.

173

isn't that correct?

     MR. SCHMITT: Yes.

     MR. O'CONNOR: We'll stipulate that whatever is in quotation marks from Mr. Cosby he said.

     MS. TROIANI: That's fine. It doesn't mean I still can't ask him the question.

     MR. O'CONNOR: I know that. I was trying to save some time.

BY MS. TROIANI:

Q.     The charge can influence the view that family and friends have of him as a good person.

A.     Did I say that?

Q.     It has quotations around it, yes. Do you remember saying that?

A.     No, I don't remember saying it, of course not. But when the grammar gets to of him, we're still talking about no man wants to. And then when you get to of him, so I'm talking about no man.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREA CONSTAND,<br>    Plaintiff<br>v.<br><br>WILLIAM H. COSBY, JR.,<br>    Defendant | : CIVIL ACTION<br>:<br>: NUMBER 05-1099<br>:<br>: FILED UNDER SEAL<br>: |

## CERTIFICATE OF SERVICE

I hereby certify that on, January 5, 2006, the undersigned were served in the following manner, a true and correct copy of : **Plaintiff's Motion For Leave to File A Reply Memorandum of Law to The National Enquirer's Memo in Opposition to Plaintiff's Motion To Compel Compliance with Subpoena Issued to the National Enquirer and Memorandum of Law.**

| **NAME** | **MANNER** |
|---|---|
| Patrick J. O'Connor, Esquire<br>Cozen O'Connor<br>1900 Market Street<br>Philadelphia, PA 19103 | United States First Class Mail |
| Andrew D. Schau, Esquire<br>Patterson Belknap Webb & Tyler, LLP<br>1133 Avenue of the Americas<br>New York, NY 10036 | United States First Class Mail |
| Paul D. Weller, Esquire<br>Jennifer B. Jordan, Esquire<br>Morgan, Lewis & Bockius, LLP<br>1701 Market Street<br>Philadelphia, PA 19103 | Unites States First Class Mail |

TROIANI/KIVITZ, L.L.P.

By: /s/ Dolores Troiani
Dolores M. Troiani, Esquire
I.D. No. 21283
Bebe H. Kivitz, Esquire
I.D. No. 30253
38 North Waterloo Road
Devon, Pennsylvania 19333
(610) 688.8400

Date: 1/5/06