IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANDREA CONSTAND                :    CIVIL ACTION
                               :    05-1099
          Plaintiff,           :
                               :
     v.                        :
                               :
WILLIAM H. COSBY, JR.          :
                               :
          Defendant.           :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          JANUARY 31, 2006

     Before the Court are the parties' motions to compel

further deposition testimony (docs. no. 49 and 50) and

plaintiff's motion for sanctions (doc. no. 48).

     Discovery in this case began with the exchange of

interrogatories and requests for production, and the taking of

the depositions of plaintiff and defendant.  During the course of

discovery, several issues arose which the parties brought to the

Court's attention for resolution via letter.[1]  The instant

dispute over the parties responses at deposition was raised in an

October 5, 2005 letter from defense counsel requesting assistance

from the Court.  Plaintiff submitted a response letter on October

6, 2005 in which she also raised issues regarding these

--------------------------------------------

[1]The first correspondence with the Court in this regard
involved plaintiff's August 25, 2005 letter to the Court and
defendant's September 12, 2005 letter to the Court regarding
interrogatories. During a discovery conference, held in open
court on September 26, 2005, the Court ruled on the issues from
the bench.

depositions.

On November 4, 2005, the Court held a telephone conference to address the proper procedure by which the parties' discovery disputes regarding depositions could be resolved. The conference did not address the merits of the dispute, but was intended to afford the parties an opportunity to comment on a procedure within which the Court could evaluate the parties' conflicting arguments. See Nov. 4, 2005 Tr. at 2. At the end of the conference, the Court entered its November 4, 2005 interim order setting forth the procedure discussed and sealing the parties' motions to compel and the responses pending review by the Court. See Case Mgmt. Order 2 (doc. no. 47). These motions to compel and the motion for sanctions were filed under seal pursuant to that order.

I.   MOTIONS TO COMPEL

The parties' motions to compel further deposition testimony involve questions left unanswered because of assertions of the attorney client privilege or objections by counsel, including instructions not to answer.[2]  To date, the depositions of both parties remain incomplete subject to the motions to compel.  Consistent with the Court's ruling of January 13, 2006,

_____

[2]All references to question numbers are consistent with the parties' numbered motions to compel, organized pursuant to the Court's November 4, 2005 order.

the parties' depositions shall continue to be conducted in private.[3]  The notes of testimony of the depositions taken pursuant to the order of this date shall be sealed until further order of the Court.  Upon completion of the depositions, as set forth below, the Court will determine whether there is good cause for the seal to continue to attach to the motions and the notes of deposition testimony attached to the motions, as well as to the entire transcripts of the depositions in accordance with the November 4, 2005 Order.  Moreover, the deposition questioning pursuant to the Court's ruling on these motions to compel will be limited to the questions listed in the parties' motions to compel and those questions that reasonably arise from the answers.  These reconvened depositions of plaintiff and defendant shall not extend beyond the scope that is permitted by the order of this date.

A.   Plaintiff's Motion to Compel.

1.   Alleged prior acts of sexual assault.

The information sought through plaintiff's motion to compel can be placed in one of three categories: (1) core information about the alleged incident between plaintiff and

_____

[3]The date, time and place and the logistics of the depositions were agreed upon by the parties.  The depositions, so far, have taken place in private.  See Seattle Times v. Rhinehart, 467 U.S. 20, 33 (1984) ("pretrial depositions . . . are conducted in private as a matter of modern practice" (internal citations omitted)); see also Sept. 26, 2005 Tr. at 12.

defendant that is directly relevant; (2) information about the
Jane Doe witnesses; and (3) information about other alleged
sexual affairs, use of prescriptions or controlled substances and
trust arrangements with unrelated third parties involving the
defendant, that do not involve already identified Federal Rule of
Evidence 415 witnesses.[4]

Comprehensive discovery is the staple of modern
American litigation practice. The ability to develop the
parties' cases pretrial results in efficiency and leads to a
trial on the merits. While liberal, the scope of discovery is
not unbound. Discovery comes at a cost both in financial terms
and in its impact on the privacy interests of parties.
Additionally, particular care should be employed when requiring
the production of sensitive personal information concerning
persons who are not parties to the dispute. Federal Rule of
Civil Procedure 26(b) strikes a balance between these competing
interests. Rule 26(b)(1) provides:

> Parties may obtain discovery regarding any
> matter, not privileged, that is relevant to
> the claim or defense of any party . . . . For
> good cause, the court may order discovery of
> any matter relevant to the subject matter
> involved in the action. Relevant information
> need not be admissible at the trial if the

---

[4]Although the motions to compel and responses are filed
under seal, the Court may reveal as much "as is necessary to
produce a reasoned opinion that can itself be reviewed." See In
re Ford Motor Co., 110 F.3d 954 (3d Cir. 1997) (addressing in
camera review).

discovery appears to lead to the discovery of
admissible evidence. All discovery is subject
to the limitations imposed by Rule
26(b)(2)(i), (ii), and (iii).

Additionally, relevant information may nevertheless be cloaked
with a mantle of confidentiality, upon a showing of good cause.
See Pansy v. Borough of Stroudsburg, 23 F.3d 772 (3d Cir. 1994).
See generally Fed. R. Civ. Pro. 26(c).

Information in category one, i.e. core information
about plaintiff and defendant's relationship, clearly is relevant
non-privileged discovery central to the parties' claims and
defenses. It is without question that any alleged history of sex
or use of prescriptions or controlled substances between
plaintiff and defendant is core to this action. Therefore,
defendant is required to answer the following questions pursuant
to plaintiff's motion to compel: 13, 27, 28 and 34.

For good cause, the Court may order discovery of
relevant evidence if it appears reasonably calculated to lead to
the discovery of admissible evidence. See Fed. R. Civ. Pro.
26(b)(1). Information in category two, i.e. information about
defendant's alleged encounters with the Jane Doe witnesses, is
relevant and may lead to the discovery of admissible evidence of
defendant's propensity for sexual assault, if any, or his modus
operandi, if any, under Rule 415. The admissibility of
propensity evidence in sexual assault cases is governed by Rule
415.

Rule 415 states:

> In a civil case in which a claim for damages
> or other relief is predicated on a party's
> alleged commission of conduct constituting an
> offense of sexual assault or child
> molestation, <u>evidence of that party's
> commission of another offense or offenses of
> sexual assault or child molestation is
> admissible</u> and may be considered as provided
> in Rule 413 and Rule 414 of these rules.

(emphasis added).[5]  The language of the rule itself does not

define the scope of inquiry.  The Third Circuit, however, has

filled the gap.  <u>See Johnson v. Elk Lake Sch. Dist.</u>, 283 F.3d 138

(3d Cir. 2002).

    In <u>Johnson</u>, the Third Circuit considered the standards

for admission of evidence of prior sexual misconduct under Rule

415.  The Court determined that "a court may admit the [Rule 415]

evidence so long as it is satisfied that the evidence is

relevant, with relevancy determined by whether a jury could

reasonably conclude by a preponderance of the evidence that the

past act was a sexual assault and that it was committed by

defendant."  <u>Id.</u> at 144 (applying to Rule 415 the standard for

admissibility of Rule 404(b) evidence from <u>Huddleston v. United

States</u>, 485 U.S. 681 (1988)).  Once that initial determination is

made, the Court is then free to conduct a balancing analysis

under Rule 403.  <u>Id.</u>

---

[5]The relevant portion of Rule 413(d) defines the phrase
"offense of sexual assault."  Rule 414 relates to child
molestation cases specifically, and does not apply here.

The defendant in <u>Johnson</u> was accused of sexually harassing and abusing a female student at the high school where defendant worked as a guidance counselor. The plaintiff sought to introduce the testimony of another teacher who saw defendant, during what appeared to be horseplay, pick up a female student and throw her over his shoulder, in the course of which defendant put his hand on the student's crotch. The court affirmed the exclusion of the testimony based on a purported Rule 403 analysis.[6] The court stated the proper balancing analysis as follows:

> [I]n cases where the past act is demonstrated with specificity and is substantially similar to the act(s) for which the defendant is being sued, it is Congress's intent that the probative value of the similar act be presumed to outweigh Rule 403's concerns. In a case such as this one, however, in which the evidence of the past act differed from the charged act in important ways, we believe that no presumption in favor of admissibility is in order, and that the trial court retain significant authority to exclude the proffered evidence under Rule 403.

<u>Id.</u> at 144.

Therefore, pursuant to the Third Circuit's decision in <u>Johnson</u>, the Court must consider the following factors in determining the admissibility of Rule 415 Jane Doe evidence: (1) the proximity in time of the events, (2) the similarity between

---

[6]Though the district court did not label its analysis as conducted under Rule 403, the Third Circuit interpreted it that way.

events, (3) the frequency of prior acts, (4) the presence/lack of intervening events and (5) the need for evidence beyond the testimony of the defendant and the victim. See id. at 156 (quoting United States v. Guardia, 135 F.3d 1326, 1330 (10th Cir. 1998)). Finally, the past act sought to be introduced under Rule 415 must be "demonstrated with specificity." Id. at 156 (citations omitted). Therefore, there is good cause for discovery of information in category two in order to allow the Court to apply the Johnson factors in determining the likelihood that the inquiry would lead to the discovery of admissible evidence under Rule 415 and/or whether the information should be kept under seal. Defendant is required to answer the following questions pursuant to plaintiff's motion to compel: 2, 3, 4, 9, 14, 15, 17 and 18.

With regard to the information in category three, i.e. information about alleged sexual affairs, use of prescriptions or controlled substances and trust arrangements with unrelated third parties allegedly involving the defendant that do not involve already identified Rule 415 witnesses, the link is more attenuated. The questions in category two involve individuals who have identified themselves as alleged victims of sexual assault involving the defendant, and therefore have voluntarily thrust themselves into the vortex of this case. By contrast, the questions in category three seek to expand this universe to

include the identity and circumstances of persons who allegedly may have been victims of sexual misconduct by defendant beyond the already self-identified Rule 415 Jane Doe witnesses.

The broad scope of the inquiry raises concerns in two areas. One, it implicates the privacy interests of non-parties. Unfettered discovery of the type sought, if productive, would expose and bring into the controversy non-parties who, unlike the Jane Doe witnesses, have not voluntarily agreed to provide personal information that may be relevant to this dispute. Two, it also implicates the privacy interests of the defendant. While the defendant will be made to answer in open court to allegations in the complaint, this defendant, just like any other defendant in a civil action, no matter how high or low his or her status, Clinton v. Jones, 520 U.S. 681, 688 (1997) (citing Jones v. Clinton, 72 F.3d 1354, 1358 (8th Cir. 1996)), does not surrender all privacy rights ipso facto merely by being named as a defendant in a lawsuit. Although defendant is not entitled to a brand of "celebrity justice," neither is he stripped of all of his rights to privacy by virtue of this litigation.

Balancing these competing interests, the plaintiff's right to take discovery in pursuit of admissible evidence versus the privacy rights of non-parties and of the defendant, calls for an initial definition of the outer limits of Rule 415 type discovery under the teachings of Johnson. A temporal perimeter

thus must be imposed. Therefore, as to Rule 415 discovery, and the information that falls within the scope of category three, the defendant shall be required to answer questions limited to conduct, acts or events, if any, which occurred within the five years preceding the alleged assault of plaintiff by defendant.[7] Pursuant to this direction, defendant is required to answer the following questions in plaintiff's motion to compel, limited to the five years preceding the date of the alleged assault of plaintiff: 1, 5, 6, 7, 8, 10, 11, 12, 29, 30, 31, 32, 33, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46 and 47.

2.   The National Enquirer interview.

Plaintiff's motion to compel also requests information regarding the interview of defendant that appeared in the National Enquirer, which plaintiff alleges is the basis for her defamation claim against defendant. In that regard, plaintiff seeks to compel information concerning defendant's negotiation with the National Enquirer related to that article, in which defendant's counsel Marty Singer, Esquire was involved. There is no question that Marty Singer has served as one of defendant's

_____

[7]Though the allegations of the Jane Doe witnesses span at least twenty years, plaintiff is not entitled to unlimited questioning regarding topics in category three. The Jane Does are self-reported Rule 415 witnesses who have brought themselves into this controversy. As such, the information in category two is not limited in time. The information in category three, however, must be subject to some limitations to protect the privacy interests of unidentified non-parties who may be unwillingly brought into this case.

lawyers for some time and that he acted in that capacity when negotiating the terms of the interview with the National Enquirer. The issue is whether the plaintiff can inquire into defendant's relationship with Marty Singer in general and specifically with regards to the National Enquirer article. Defendant asserts the attorney client privilege protects this communication.[8] On the other hand, plaintiff asserts that the information is relevant to her claim of defamation and that the crime-fraud exception to the privilege may apply if Marty Singer helped defendant commit the alleged tort of defamation.

First, plaintiff's relevancy argument for piercing the protection of the attorney client privilege must fail. "Relevance is not the standard for determining whether or not evidence should be protected from disclosure as privileged, and that remains the case even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant, or even go to the heart of the issue." Rhone-Poulenc Rorer, Inc. v. Home

---

[8]Federal Rule of Evidence 501 requires the application of state privilege law "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision." Both plaintiff and defendant rely on Pennsylvania law in support of their arguments as to whether the attorney client privilege protects the communications at issue. It is not entirely clear whether the conversations with Singer and the negotiation of the contract between defendant and the National Enquirer occurred in Pennsylvania. Since both parties rely on Pennsylvania law and the Court is unaware that the law of another jurisdiction would compel a different result, the Court will apply Pennsylvania law in deciding this issue of privilege.

Indemnity Co., 32 F.3d 851, 864 (3d Cir. 1994).  Therefore,

plaintiff's assertion that the information relates to her

defamation claim is not enough to overcome the attorney client

privilege.

Second, plaintiff's allegation that Marty Singer may

have participated in or helped the defendant to commit the tort

of defamation does not obviate the privilege on the current

record.  In order to invoke the crime-fraud exception, the

plaintiff must "make out a prima facie case that the attorney was

used in order to promote an intended, continuing criminal or

fraudulent activity."  In re Westinghouse, 76 F.R.D. 47, 57 (W.D.

Pa. 1977).  The plaintiff has not made such a showing.  She

alleges that the information may lead to another defendant

(presumably Singer[9]) in the defamation action, but that is not

enough to breach the attorney client privilege.

Although defendant's conversations with Marty Singer

regarding the negotiation with the National Enquirer may be

privileged, the facts surrounding that negotiation are not so

protected.  It is well-settled that:

> The protection of the privilege extends only
> to communications and not to facts.  A fact is

---

[9]At oral argument on January 9, 2006, plaintiff indicated
that the National Enquirer may also be a potential defendant if
discovery reveals they somehow knew of or acquiesced in any
alleged defamatory statements by defendant.  Jan. 9, 2006 Tr. at
84.  The line of questioning involved in this motion to compel,
however, relates specifically to Marty Singer.

> one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to anser the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact merely because he incorporated a statement of such fact into his communication to his attorney.

Rhone-Poulenc, 32 F.3d at 862 (quoting City of Phila. v. Westinghouse Elec. Corp, 205 F. Supp. 830, 831 (E.D. Pa. 1962)); see also Upjohn Co. v United States, 449 U.S. 383, 395-96 (1981). Therefore, certain issues regarding the existence of a contract with the National Enquirer, whether the defendant was paid, and if so, how much, and whether he agreed that the story as written was accurate are facts that are not privileged merely because defendant spoke with a lawyer concerning those facts.[10] Moreover, the negotiation itself, though subject to a confidentiality agreement between defendant and the Enquirer, is not protected by the privilege because it was not a "confidential communication between lawyer and client."[11]  United States v.

---

[10]This is consistent with the Court's ruling from the bench at the September 26, 2005 hearing. There, the Court directed the defendant to "provide information concerning when, where and to whom, as far as communications between himself and the Enquirer" in response to plaintiff's interrogatory. See Sept. 26, 2005 Tr. at 10. Further the Court determined that "any agreement between the defendant and the National Enquirer concerning the terms of the interview will be required, at least by way of interrogatory and at this stage of the proceedings, the rest of the objection will be sustained." Id.

[11]Whether defendant's testimony should be cloaked with confidentiality pursuant to a private agreement with the National Enquirer is not a question addressed by the Court today. Whether

Betinsky, No. 88-198, 1998 U.S. Dist. LEXIS 10520, at *7 (E.D. Pa. 1988) (finding that counsel's negotiations with bank on behalf of client were not protected by the attorney client privilege).  Plaintiff is allowed to question defendant about the facts of his negotiation with the National Enquirer, including any information revealed to him by Marty Singer that was obtained from third parties, and also including the terms of the agreement with the National Enquirer.  However, plaintiff may not inquire as to any advice Marty Singer may have given defendant which goes beyond that information that was obtained from third parties.  Defendant, therefore, is required to answer the following questions pursuant to plaintiff's motion to compel: 19, 20, 21, 22, 23, 24, 25 and 26.

> 3.    Reading prior statements in response to a
>          question.

Finally, plaintiff challenges defendant's assertion that a deponent may be allowed to answer a question by reading from a document which contains his previous response to a similar question.  Defendant attempted to read the statement he gave to the police regarding the alleged assault of plaintiff when asked to recount the events in his own words.  A deponent may not read

---

deposition testimony which would disclose the terms of the agreement with a third party, i.e. the National Enquirer, should not be disclosed is a question reserved until completion of the parties' depositions, upon notice to the National Enquirer.

from a document when he is asked to recite his recollection of an event.  Rather, the deponent is required to testify in his own words.  Of course, if a deponent's recollection is exhausted, he may use the document to refresh his recollection and continue the deposition testimony in his own words based on that refreshed recollection, if any.  <u>See</u> Fed. R. Evid. 612.  Therefore, defendant is required to testify at deposition in response to question 34 of plaintiff's motion to compel from his recollection of the events in his own words and may not read from a previous statement in response to a question posed.[12]

B.   Defendant's Motion to Compel.

1.   <u>Plaintiff's contact with the Philadelphia lawyers.</u>

Defendant has moved to compel further deposition testimony from plaintiff concerning her interactions with counsel before contacting the police to report the incident at issue. The scope of the attorney client privilege, therefore, is at the center of defendant's motion to compel.

Federal Rule of Evidence 501 instructs the Court, "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of

---

[12]The only question not addressed above is question 16 in plaintiff's motion to compel.  The question as to whether defendant lied about the names of guests at a dinner party is, at best, impeachment material.  The issue appears exhausted on this record and defendant is not required to answer further question 16.

decision, the privilege . . . shall be determined in accordance with State law." Here, both parties argue in their motions that Pennsylvania law applies to the plaintiff's assertion of privilege.[13]

The Pennsylvania attorney client privilege is codified at 42 Pa. Cons. Stat. Ann. § 5928, which states: "In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon trial by the client." The traditional elements of the attorney client privilege protect information from discovery if the following factors are met:

> (1) the asserted holder of the privilege is or sought to become a client;
>
> (2) the person to whom the communication was made (a) is a member of the bar of a court, or his or her subordinate, and (b) in connection with this communication is acting as a lawyer;
>
> (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily

---

[13]Both parties relied on Pennsylvania law, therefore the Court will construe the privilege accordingly. Aside from Pennsylvania law, Canadian privilege law could apply to plaintiff's assertion of the attorney client privilege as that is the origin of her contact with the lawyers at issue in defendant's motion to compel. Defendant addressed this potential conflict of law issue in his motion to compel, remarking that Canadian privilege law does not differ from that of Pennsylvania. Plaintiff applied Pennsylvania privilege law in her response to defendant's motion to compel and did not raise the issue of Canadian privilege law.

either (I) an opinion of law or (ii) legal
services or (iii) assistance in some legal
proceeding, and (d) not for the purpose of
committing a crime or tort; and

(4) the privilege has been (a) claimed and (b)
not waived by the client.

Rhone-Poulenc, 32 F.3d at 862 (citing In re Grand Jury

Investigation, 599 F.2d 1224, 1233 (3d Cir. 1979) (citing United

States v. United Shoe Machinery Corp., 89 F. Supp. 357, 358-59

(D. Mass. 1950))) (applying Pennsylvania law and finding there

were no characteristics that differed from these elements).

The first and second elements that need to be satisfied

in order to apply the privilege are that "the asserted holder of

the privilege is or sought to become a client" and the

communication was made to a member of the bar.  There is no

dispute that plaintiff was not and is not a client of either

Joseph Cincotta or Richard Myers, the Philadelphia attorneys to

whom she placed the telephone call at issue, nor is there a

dispute that both Cincotta and Meyers are members of the bar.

Rather, the issue is whether "communications [made] prior to the

establishment of a formal attorney-client relationship" are

protected by the attorney client privilege.  Commonwealth of

Penn. v. Mrozek, 657 A.2d 997, 999 (Pa. Super. Ct. 1995).

Defendant's main argument in support of his motion to

compel is that plaintiff did not speak with the lawyers for the

purpose of securing legal advice, therefore she was not "seeking

to become a client" within the meaning of the privilege.  That

argument is based on certain statements made by plaintiff during her deposition that she did not call the lawyers to hire them and she did not discuss the facts of the case with them. On the other hand, plaintiff researched the telephone numbers of the lawyers on the Internet, identified Messrs. Cincotta and Meyers as lawyers who could provide her with guidance and called the lawyers' office for advice on how to proceed with her complaint against defendant.

In Pennsylvania, a lawyer need not actually have been hired for the privilege to apply. See Mrozek, 657 A.2d at 999; see also Irvin v. Mason, 50 Pa. D. & C.4th 129 (C.P. Allegheny County 2002). "The privilege requires the existence of a relationship in which an attorney is acting in his professional capacity as a lawyer; the key is whether there has been a professional consultation with an attorney, who acts or advises as such." Okum v. Penn. Unemployment Compensation Bd. of Review, 465 A.2d 1324, 1325 (Pa. Commw. 1983) (citing Alexander v. Queen, 97 A. 1063 (Pa. 1916) and Fogg's Estate, 94 A. 453 (1915)). As a leading commentator has put it: "It is not necessary that an attorney-client relation have actually existed. One who consults a lawyer with a view to obtaining professional legal services from him or her is regarded as a client for purposes of the privilege." 8 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2017, at 258-60 (2d ed. 1994).

In Mrozek, the defendant contacted a lawyer with whom he had a previous professional relationship in another matter. The fact of the previous relationship was not determinative, as the court noted: "not even considering the fact that appellant already had a pre-existing attorney client relationship with Davis, the fact that appellant called to seek legal assistance would satisfy the first requirement." Mrozek, 657 A.2d at 999. The lawyer's secretary said he was unavailable to take defendant's call. After repeating his request and again being denied an opportunity to speak with the lawyer, defendant told his secretary: "Honey, I don't think you understand. I've just committed a homicide. I need to speak with Sam." Id. at 998. At trial, the statement was admitted over defendant's motion to suppress and defendant was convicted of murder. The Superior Court vacated his conviction and remanded the case, finding that defendant's statement to the secretary was protected by the attorney client privilege "despite [the] lack of a formal attorney-client relationship." Id. at 999.

Similarly, here it appears that plaintiff's telephone call to the Philadelphia lawyers sought guidance concerning the legal implications of her alleged encounter with defendant. That a formal attorney client relationship had not been established or that plaintiff did not intend to hire the lawyers at the time of the phone call at issue is not dispositive. Rather, since

plaintiff was consulting counsel and discussing a problem, issue or event that has legal implications, for the purpose of obtaining guidance, even before counsel is retained, she satisfies the requirement that the consultation be for the purpose of "becoming a client." See id.

The third element of the privilege at issue requires that plaintiff have been seeking legal advice from the lawyers during the communication. Defendant argues that plaintiff, by her own admission, was not seeking legal advice during the communication with the lawyers. Precisely what constitutes legal advice depends upon the circumstances at issue. In In re Ford Motor Company, 110 F.3d 954, 965 (3d Cir. 1997), the issue before the court was "whether the communications memorialized by the minutes [of a meeting of Ford executives] were made for the purpose of obtaining legal advice." The court examined the circumstances of the meeting and concluded that the meeting was for the purpose of obtaining legal advice with respect to the Ford Bronco II. Id. at 966. The factors that led to that conclusion were the company's concerns about the product, that a particular course of action was proposed with respect to those concerns and that the meeting was called to discuss the proposal. Id. at 966.

Here, by analogy, plaintiff was concerned about how to proceed against defendant, she had not determined a particular

course of action and she admittedly was seeking "guidance" from the attorneys. Those factors point to the conclusion that plaintiff called the attorneys for the purpose of securing legal advice within the bounds of the attorney client privilege. Plaintiff cannot be compelled to answer "What did you talk about [with your lawyers]?" See Rhone-Poulenc, 32 F.3d at 862 ("The client cannot be compelled to answer the question 'What did you say or write to the attorney?'" (quoting Upjohn Co. v. United States, 449 U.S. 383, 395-96 (1981))). Therefore, plaintiff is not compelled to answer questions 1 and 2 of defendant's motion to compel because the attorney client privilege prevents disclosure.

However, the fact of whether the lawyers' gave plaintiff legal advice is not protected by the attorney client privilege and must be disclosed. Rhone-Poulenc, 32 F.3d at 862. "Did any of these lawyers whom you talked to give you any advice?" merely requests a fact and would not reveal any client confidences in violation of the privilege. Therefore, plaintiff is required to answer question 3 of defendant's motion to compel because the fact of advice is discoverable. In the event plaintiff was provided advice by the lawyers, the substance of that communication is protected by the attorney client privilege. Rhone-Poulenc, 32 F.3d at 862 (listing elements of privilege). However, even if the answer is no, i.e. that plaintiff was not

provided legal advice, under these circumstances, what the
lawyers told the plaintiff would still be protected by the
attorney client privilege.  See Coregis Ins. Co. v. Kaffrisen,
186 F. Supp. 2d 567 (E.D. Pa. 2002).  The circumstances here are
such that a single telephone call serves as the only source of
information from plaintiff to the lawyers.  There can be no other
conclusion than that the lawyers' communications to the client,
even if not in the form of legal advice, would necessarily be
based on and would reveal what plaintiff told the lawyers in that
one telephone call.  Therefore, although plaintiff is required to
disclose the fact of whether advice was given, she is not
required to disclose what the lawyers told her whether she
answers the question in the affirmative or the negative.

        The final element of the attorney client privilege
requires that it not have been waived.  Defendant argues that
plaintiff waived the privilege through discussions with a third
party.  "[I]t is well-settled that when a client voluntarily
discloses privileged communications to a third party, the
privilege is waived."  Westinghouse Elec. Corp. v. Republic of
the Philippines, 951 F.2d 1414, 1424 (3d Cir. 1991) (citing
United States v. Rockwell Int'l, 897 F.2d 1255, 1265 (3d Cir.
1990)).  It is unclear whether plaintiff revealed any privileged
communications to her friend during the conversation at issue.
Plaintiff should answer the question as to what she told her

friend.  If privileged information was not revealed, the

privilege remains protected.  If privileged information was

revealed, the privilege was waived.  In any event, the answer as

to what plaintiff revealed to her friend cannot be withheld on

the basis of attorney client privilege.  Therefore, plaintiff is

required to answer question 4 of defendant's motion to compel.

      2.   Request to serve additional interrogatories upon
              plaintiff.

      In his motion to compel, defendant requests leave to

serve additional interrogatories on plaintiff following

information revealed during plaintiff's deposition.  Pursuant to

Federal Rule of Civil Procedure 33, the Court will grant

defendant leave to serve additional interrogatories on plaintiff.

Defendant will be allowed to serve additional interrogatories to

inquire as to persons who may have discoverable information who

were not disclosed by plaintiff in her Rule 26 disclosures.

      3.   Request for equal time at deposition.

      Finally, defendant requests additional time to depose

plaintiff that is commensurate with any additional deposition

testimony to which defendant will be subject.  There is no

absolute rule that requires symmetry of the length of deposition

testimony of the parties.  Cf. Fed. R. Civ. Pro. 30(d)(2) (limits

deposition testimony to one seven-hour day, but the parties may

stipulate to other arrangements).  Rather, plaintiff and

defendant shall proceed as to those matters covered by the motions to compel and within the scope of this order.

II.  MOTION FOR SANCTIONS

Plaintiff's motion to sanction defense counsel for his conduct at defendant's deposition concerns two overarching issues: (1) the scope of the attorney client privilege as invoked by defendant's lawyer, and (2) the acceptability in this circuit of the deposition guidelines set forth in <u>Hall v. Clifton Precision</u>, 150 F.R.D. 525 (E.D. Pa. 1993).

Plaintiff's motion for sanctions is taken under advisement until the completion of the parties' depositions.  Any further deposition testimony should be taken in accordance with the Court's instruction at the January 9, 2006 hearing.  <u>See</u> Jan. 9, 2006 Tr. at 87-89.

III. CONCLUSION

Plaintiff's motion to compel will be granted in part and denied in part.  Defendant is required to answer questions 1-15 and 17-47 of plaintiff's motion to compel.  Defendant is not required to answer question 16 of plaintiff's motion to compel.

Defendant's motion to compel will be granted in part and denied in part.  Plaintiff is required to answer questions 3 and 4 of defendant's motion to compel.  Plaintiff is not required

to answer questions 1 and 2 of defendant's motion to compel. Defendant's request for leave to serve additional interrogatories (issue number 5 in defendant's motion to compel) will be granted. Defendant is not permitted to conduct further deposition testimony of plaintiff outside of the subjects listed in his motion to compel (issue number 6 in defendant's motion to compel).

Plaintiff's motion for sanctions is taken under advisement until the completion of the parties' depositions.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDREA CONSTAND | : | CIVIL ACTION |
| | : | 05-1099 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| WILLIAM H. COSBY, JR. | : | |
| | : | |
| Defendant. | : | |

## ORDER

**AND NOW**, this **31st** day of **January 2006**, it is hereby **ORDERED** that:

1.   Plaintiff's Motion to Compel is **GRANTED IN PART** and **DENIED IN PART** in accordance with the Court's January 31, 2006 Memorandum;

2.   Defendant's Motion to Compel is **GRANTED IN PART** and **DENIED IN PART** in accordance with the Court's January 31, 2006 Memorandum; and

3.   Plaintiff's Motion for Sanctions is taken under advisement until the completion of the parties' depositions.  Any further deposition testimony shall be taken in accordance with the Court's instruction at the January 9, 2006 hearing.  See Jan. 9, 2006 Tr. at 87-89.

**IT IS FURTHER ORDERED** that the deposition questioning shall be limited to the questions listed in the parties' motions to compel and those questions that reasonably arise from the

26

answers.

**IT IS FURTHER ORDERED** that the parties shall agree as to the date, time and place of the depositions and shall report to the Court by letter concerning their agreement within thirty (30) days from the date of this order.

**AND IT IS SO ORDERED.**

s/Eduardo C. Robreno
**EDUARDO C. ROBRENO, J.**