IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANDREA CONSTAND,

Plaintiff,

v.

WILLIAM H. COSBY, JR.,

Defendant.

No. 05-cv-1099

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR THE ISSUANCE OF INTERNATIONAL LETTERS OF REQUEST**

Defendant respectfully submits this memorandum in support of his Motion for the Issuance of International Letters of Request directed to the appropriate judicial authorities in Ontario, Canada. Defendant seeks the Court's assistance in obtaining certain discovery from sources located in Ontario.

## I. BACKGROUND

The Court already is familiar with the allegations and scope of discovery in this case. Plaintiff alleges that Defendant sexually assaulted her, in January 2004. (Am. Compl. [doc. # 41] ¶¶ 11–25.) She did not, however, report the incident to police until January 2005. (Id. ¶ 28.) She alleges that, after she spoke to police, she and her mother had telephone conversations with Defendant. (Id. ¶ 32.) Subsequently, according to Plaintiff, Defendant made statements to the media, directly and through "representatives," which were untruthful and defamatory. She claims that the content of her mother's telephone conversations with Defendant prove that he knew his statements to the press were false. (Id. ¶¶ 29–32.)

Placing much about herself at issue, Plaintiff alleges that Defendant's conduct has caused her, among other things, "mental anguish," "post-traumatic stress disorder," "the loss of enjoyment of life's pleasures," "a set back in her education," and "a loss of earnings and earning capacity." (Id. ¶¶ 36–39.) Plaintiff's defamation claim also places at issue her motivations in deciding to accuse Defendant of assault, a year after the alleged attack. (See id. ¶¶ 29, 31.) Defendant denies Plaintiff's allegations. (See Def.'s Answer Pl.'s Am. Compl. [doc. # 42].)

The parties currently are conducting discovery. What would be routine discovery, however, has become complicated, because Plaintiff is Canadian. Several obvious subjects of discovery—such as persons identified in Plaintiff's Initial Disclosures, her family members who witnessed her mental state and with whom she discussed her allegations, and the police officers to whom she first made her accusations—are in Ontario, Canada. Thus, they are outside the subpoena power of this or any United States court. Plaintiff has done nothing to mitigate this complication—she has not agreed to make her relatives available for deposition or consented to any routine documentary discovery. Thus, to prepare his defense and receive the discovery to which he is entitled, Defendant must seek judicial assistance abroad. To do so, Defendant must ask this Court to act, by issuing international letters of request. Defendant's proposed international letters of request are attached hereto as Exhibits A-K.

## II. THE DISCOVERY REQUESTED

### A. Depositions

Through discovery, Defendant has learned that there are at least eight individuals located in Ontario, Canada who possess relevant information not obtainable from other sources.

**1. Gianna Constand**

Gianna Constand is Plaintiff's mother. The parties agree that she possesses relevant information. Indeed, in her Initial Disclosures, Plaintiff identified Gianna Constand as a person whose testimony Plaintiff may use to support her claims. Gianna Constand's telephone conversations with Defendant are a central fact of Plaintiff's case. Moreover, as Plaintiff's mother, who lived with Plaintiff after the alleged attack, Gianna Constand is also likely to have information about several other aspects of the case, including Plaintiff's relationship with Defendant, the alleged attack, its effect on Plaintiff, Plaintiff's decision to reveal it, and the events that occurred thereafter.

**2. Andrew Constand**

Andrew Constand is Plaintiff's father. He lived with Plaintiff after the alleged attack and specifically, when she decided to reveal the attack a year after it allegedly occurred. As he explained to the Toronto Sun, he knows the effect that the alleged attack had on Plaintiff, what caused Plaintiff to break her silence, Plaintiff's motivations in bringing this suit, her propensity for telling the truth, and the nature of Plaintiff's and Defendant's relationship. Thus, Defendant wishes to learn this information from Mr. Constand at a deposition.

**3. Jennifer Sprague**

In her Initial Disclosures, Plaintiff identified Jennifer Sprague, a Canadian psychotherapist, as a person whose testimony Plaintiff may use to prove her claims. Indeed, Plaintiff sought counseling from Ms. Sprague both before and after the alleged attack. Thus, Ms. Sprague may possess knowledge and documents that bear upon Plaintiff's allegations of injury. Defendant must depose Ms. Sprague.

4. **Darryl Rastorp**

Discovery has revealed that Plaintiff did not live alone at the time she alleges Defendant assaulted her. Her cousin, Darryl Rastorp, lived with her at the time. In fact, according to Plaintiff, Mr. Rastorp was with her on a daily basis during this period of time. Thus, Mr. Rastorp is likely to have information concerning, among other things, Plaintiff's relationship with Defendant and her behavior after the alleged attack. Accordingly, Defendant wishes to depose Mr. Rastorp.

5. **Stuart Parsons**

Stuart Parsons is Plaintiff's brother-in-law and a Toronto police officer. He learned of Plaintiff's allegations around the time Plaintiff first reported the alleged incident to the police. Mr. Parsons discussed the alleged assault with Plaintiff, helped her find a lawyer, and accompanied her to Pennsylvania to report the incident to police in Montgomery County. Thus, Mr. Parsons is likely to possess information concerning the alleged attack, Plaintiff's decision to make her allegations public, Plaintiff's state of mind before and after the alleged attack, and Plaintiff's motivations in bringing this suit. Therefore, Defendant should be permitted to take Mr. Parsons' deposition.

6. **Diana Parsons**

Diana Parsons is Plaintiff's sister and is married to Mr. Parsons. According to Mr. Parsons, it was Diana Parsons who told him about the alleged attack around the time Plaintiff reported it to Canadian police. Thus, Diana Parsons is likely to have information about Plaintiff's decision to make her allegations public, and the events that occurred thereafter. Moreover, as Plaintiff's sister, Diana Parsons is also likely to have information concerning the

attack itself, Plaintiff's relationship with Defendant, and Plaintiff's state of mind before and after the alleged attack. Thus, Defendant requires testimony from Diana Parsons.

### 7. **David Mason and Ken Anderson of the Durham Police Department**

The Durham Police Department in Ontario, Canada possess critical information relevant to determining the truth of Plaintiff's allegations. It was the Durham police to whom Plaintiff first reported the alleged assault. The Durham police officers who spoke with Plaintiff issued a report of their conversation with her. The report identified officers David Mason and Ken Anderson as responsible for the report. Accordingly, Defendant seeks the depositions of these officers, as the initial recipients of the complaint at issue in this case.

## B. **Requests For The Production Of Documents**

Discovery also has revealed several entities located in Ontario, Canada that possess relevant documents not obtainable from other sources.

### 1. **The Sutherland-Chan School of Massage Therapy**

In September 2004, Plaintiff enrolled in classes at Sutherland-Chan School of Massage Therapy ("Sutherland-Chan") in Ontario. As of September 2005, Plaintiff still was enrolled at Sutherland-Chan. Sutherland-Chan is likely to have documents concerning Plaintiff's educational endeavors and her potential earning capacity. These documents will bear on the truth of Plaintiff's allegations that Defendant's actions caused her a loss of continuity in her education and a loss of earnings and earning capacity.

Discovery has further revealed Jennifer Sprague, Plaintiff's psychoanalyst, is affiliated with Sutherland-Chan. As is set forth above, the records relating to Ms. Sprague's discussions with Plaintiff are obviously relevant. To the extent that Sutherland-Chan is the custodian of

these records, Defendant seeks to obtain them from Sutherland-Chan. While Plaintiff could simply consent to Sutherland-Chan's release of these records to Defendant, she has not agreed to do so.

2. **Bell Canada telephone records**

Between the alleged attack and her decision to reveal it, Plaintiff lived with her parents in Ontario. The records of her telephone conversations during that period will bear upon and lead to evidence of her mental condition, including her ability to "enjoy life's pleasures," which she has placed at issue. They will also bear upon the extent of her relationship with Defendant, which continued after the alleged attack. Bell Canada of Toronto, Ontario possesses those records. While Plaintiff could simply consent to Bell Canada's release of these records to Defendant, she has not agreed to do so.

3. **Plaintiff's cellular telephone records**

In addition to her parents' home phone, Plaintiff used a cellular telephone while living in Canada after the alleged attack. The records of this activity on that phone are held by Rogers Communications, Inc. of Toronto, Ontario. Again, Plaintiff refuses to consent to Rogers' release of those records to Defendant. Accordingly, Defendant seeks assistance from the Court.

4. **Realizing Your Potential**

Discovery has revealed that Plaintiff, within two months of her relocation from Philadelphia to Ontario in March 2004, enrolled in classes at Reaching Your Potential, a school of polarity therapy training. Reaching Your Potential since changed its name to Realizing Your Potential. See Welcome to Realizing Your Potential, http://www.reachingyourpotential.com (last visited March 6, 2005). Realizing Your Potential is likely to have documents concerning Plaintiff's educational endeavors and her potential earning capacity. This information will bear

on the truth of Plaintiff's allegations that Defendant's actions caused her a loss of continuity in her education and a loss of earnings and earning capacity. Given the nature of the training, this information also will bear on Plaintiff's state of mind after the attack in general.

## III. THE LETTERS OF REQUEST

Unlike discovery located in different jurisdictions within the United States, Defendant cannot simply issue process from a Canadian court. Nor may he, without this Court's involvement, appeal directly to a Canadian court for assistance. Canada and the United States are not parties to the same treaty or convention regarding discovery or evidence. Canadian courts, however, do have the authority to enforce international letters of request, pursuant to statute. See Canada Evidence Act, R.S.C., ch. C-5, § 46(1) (1985). In particular, Ontario courts have the authority, under the Ontario Evidence Act, R.S.O., ch. E-23, § 60(1) (1990), to enforce letters of request from courts in the United States.

Letters of request, also known as letters rogatory, are a medium whereby one country requests that a court of another country assist in the administration of justice in the former country. United States v. Zabady, 546 F. Supp. 35, 40 (M.D Pa. 1982) (citing The Signe, 37 F. Supp. 819, 820 (E.D. La. 1941)). Courts make and grant such requests for reasons of comity and reciprocity. Id. United States federal courts have the inherent authority to issue letters of request. United States v. Strong, 608 F. Supp. 188, 192 (E.D. Pa. 1985) ("It has been held that federal courts have the inherent power to issue requests for judicial assistance through letters rogatory."). This inherent authority is recognized in Federal Rule of Civil Procedure 28(b) and 28 U.S.C. § 1781. Id. at 192-93; see Fed. R. Civ. P. 28(b); 28 U.S.C. § 1781.

To be enforceable by a court in Ontario, a letter of request from this Court must meet certain requirements. While it is the Ontario court that ultimately will make this determination,

the letters Defendant asks this Court to execute contain proposed conclusions that address those requirements, for the benefit of the Ontario court. Accordingly, Defendant discusses the requirements below.

### A. The Ontario Evidence Act

The relevant portion of the Ontario Evidence Act provides:

> Where it is made to appear to the Superior Court of Justice or a judge thereof, that a court or tribunal of competent jurisdiction in a foreign country has duly authorized, by commission, order or other process, for a purpose for which a letter of request could be issued under the rules of court, the obtaining of the testimony in or in relation to an action, suit or proceeding pending in or before such foreign court or tribunal, of a witness out of the jurisdiction thereof and within the jurisdiction of the court or judge so applied to, such court or judge may order the examination of such witness before the person appointed, and in the manner and form directed by the commission, order or other process, and may, by the same or by a subsequent order, command the attendance of a person named therein for the purpose of being examined, or the production of a writing or other document or thing mentioned in the order, and may give all such directions as to the time and place of the examination, and all other matters connected therewith as seem proper, and the order may be enforced, and any disobedience thereto punished, in like manner as in the case of an order made by the court or judge in an action pending in the court or before a judge of the court.

Canada Evidence Act, R.S.C., ch. C-5, § 46(1) (1985). Thus, pursuant to the Act, an Ontario court may enforce international letters of request issued by a foreign court, provided that three factors are met: (1) the letters of request were issued by a foreign court or tribunal of competent jurisdiction that has authorized the discovery at issue through a commission, order, or some other process; (2) the letters of request could be issued under the rules of an Ontario court; and (3) the evidence sought is within the Ontario court's jurisdiction.

The first requirement concerns the type of adjudicatory body in the requesting country and whether that body has authorized the discovery at issue. For example, Canadian courts may

balk at enforcing a letter of request issued by a private arbitrator in a foreign country. See, e.g., B.F. Jones Logistics Inc. v. Rolko, [2004] 72 O.R.2d 355, 359. Here, this Court is a traditional, constitutionally authorized court of competent jurisdiction. It is empowered to weigh, rule upon, and authorize discovery related to these proceedings.

In determining whether the first factor is met, Ontario courts may also inquire whether they could look to the requesting country for similar assistance. Republic of France v. De Havilland Aircraft of Canada Ltd., [1991] 3 O.R.3d 705, 713. This requirement of willing reciprocity is not limited to the powers of the actual requesting tribunal, but rather applies to the entire jurisdiction. Id. at 714. In other words, "the question must be, is there a mechanism in place within the foreign jurisdiction which could respond favourably to a Canadian request by way of letters rogatory?" Id. United States courts, including this Court, do in fact have a process to favorably respond to a Canadian international letter of request. Under 28 U.S.C. § 1782, a "district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court." See 28 U.S.C. § 1782; see also John Deere, Ltd. v. Sperry Corp., 754 F.2d 132, 134 (3d Cir. 1985) ("Had the Canadian tribunal directly petitioned the district court to permit testimony to be taken, there would be little question as to the propriety of honoring the request for assistance."). Thus, Defendant's proposed letters of request will meet the first requirement of the Ontario Evidence Act.

The second requirement of the Ontario Evidence Act ensures that letters of request are directed at a purpose for which letters of request could be issued by an Ontario court. Re Mulroney and Coates, [1986] 27 D.L.R.4th 118, 128. The Ontario Rules of Civil Procedure allow litigants to seek depositions from non-parties "who there is reason to believe ha[ve] information relevant to a material issue in the action." See Ont. R. Civ. P. 31.10. The Ontario Rules of Civil Procedure also allow litigants to seek documents from non-parties where "(a) the document[s] [are] relevant to a material issue in the action; and (b) it would be unfair to require the moving party to proceed to trial without having discovery of the document." See Ont. R. Civ. P. 30.10. As is explained above, Defendant's proposed letters of request seek depositions and documents from non-parties, which are directly relevant to several material issues in this case. Thus, his proposed letters will meet the second requirement of the Ontario Evidence Act.

Finally, the Ontario Evidence Act requires that evidence sought is within the jurisdiction of the requested court. Defendant's proposed letters also satisfy this requirement, as the eleven individuals and entities from which Defendant seeks documents and testimony are located in Ontario, Canada.

**B. Discretionary Factors**

When a letter of request meets the requirements of the Ontario Evidence Act, the Ontario court will then decide whether to enforce the letter of request, based on discretionary factors developed by Canadian courts: (1) whether the evidence sought is relevant; (2) whether the evidence sought is necessary for pre-trial discovery or trial; (3) whether the evidence is not otherwise obtainable in the requesting jurisdiction; (4) whether documentary evidence is identified with specificity; (5) whether the assistance sought is contrary to public policy; (6) and whether the order sought is unduly burdensome. Re Friction Division Products and E. I. Du Pont

(No. 2), [1986] 56 O.R.2d 722, 732. The application of these factors to Defendant's proposed letters of request weighs in favor of enforcing them.

First, as is described above, the documents and testimony that Defendant seeks are both relevant and necessary as a matter of pre-trial discovery. The testimony and documents sought will bear on critical issues in this case, including Plaintiff's relationship with Defendant, the alleged attack, Plaintiff's alleged injuries (including her state of mind, education, earning capacity, and "enjoyment of life's pleasures"), Plaintiff's decision to accuse Defendant of assault, Plaintiff's motivations in doing so, and Plaintiff's credibility. Without this information, Defendant cannot prepare a complete defense.

Second, the evidence Defendant seeks is not otherwise obtainable. The individuals and entities at issue are outside the subpoena power of this or any United States court. Only those individuals can provide the evidence Defendant seeks, and only those entities possess the records of Plaintiff's education, employment, and mental therapy that Defendant seeks. This formal process is necessary because Plaintiff has not agreed to make any of these individuals available for deposition or consent to Defendant's receipt of the documents at issue.

Third, Defendant has identified the documents he seeks with specificity. To identify documents with specificity, a party does not have to prove that such documents exist. Id. at 737. Rather, documents are required to be identified with reasonable precision in the circumstances of each case. Id. Where a party is a stranger to the documents it seeks, it is sufficient to identify the documents by topic or class. Id. Defendant has identified the class of documents he seeks, both above, and in his proposed letters of request.

Fourth, Defendant's proposed letters of request do not contravene Canadian public policy. Subjecting a non-party witness to a procedure permitted in Canadian litigation is not

contrary to Canadian public policy. Henry Bacon Bldg. Materials Inc. v. Royal Canadian Mounted Police, [1994] 98 B.C.L.R.2d 59, 70. The Canadian court also will balance two broad policy considerations concerning international comity: (1) the impact of the proposed order on Canadian sovereignty and (2) whether justice requires that the evidence be ordered. Re Fecht and Deloitte & Touche, [1997] 32 O.R.3d 417, 417 affirming, [1996] 28 O.R.3d 188. Canadian sovereignty is violated when enforcement of the letters of request would directly violate Canadian law. De Havilland Aircraft, 3 O.R.3d at 719-20. Again, given the provisions of the Ontario Rules of Civil Procedure, there is no reason to believe that Defendant's proposed letters of request would violate Canadian law. On the other hand, justice requires that Defendant be permitted to procure the discovery necessary to preparing his defense and ensuring a fair trial.

Finally, the order sought is not unduly burdensome. Defendant plans to conduct depositions near the residences of the witnesses in Ontario, thus minimizing any burden or imposition on them. Defendant intends to conduct each deposition according to the same rules that would apply in a deposition in the United States. The document requests adhere to the same rules that apply to document requests upon entities located in the United States. The entities that would be subject to the document requests will have the opportunity to produce the requested documents via mail or on-site inspection, and Defendant will bear the photocopying and other costs.

## IV. CONCLUSION

For the foregoing reasons, Defendant hereby respectfully requests this Court to issue the attached letters of request directed to the appropriate judicial authorities in Ontario, Canada.

Dated: April 12, 2006

s/ *Patrick O'Connor*

Patrick J. O'Connor
George M. Gowen III
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103
215.665.2000

Andrew D. Schau
PATTERSON, BELKNAP, WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
212.336.2000

*Attorneys for Defendant*