## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| ANDREA CONSTAND, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| | : | |
| v. | : | Civ. Action No. 05-cv-1099 |
| | : | |
| | : | |
| WILLIAM H. COSBY, JR, | : | |
| | : | |
| Defendant. | : | |

_____

## MEMORANDUM OF LAW IN RESPONSE TO COURT ORDER OF JUNE 18, 2015
## BY INTERVENOR THE ASSOCIATED PRESS

Pursuant to Local Rule of Civil Procedure 5.1.5 and this Court's Order dated June 18, 2015, The Associated Press ("AP"), as intervenor,[1] files this memorandum of law in support of unsealing all court filings in this matter, as well as correspondence from parties submitted in connection with requests to seal.

Now, one decade after this litigation began, the factual circumstances that made tentative sealing of court-filed documents a possibility have changed drastically. At this point, only the defendant objects to unsealing the documents placed tentatively under seal by this Court nine years ago. The grounds for his objection have now gone stale and the time has thus come to open the files of this Court pursuant to rule, policy and precedent.

_____

[1] _See_ Order, June 18, 2015, at 2, Dkt. No. 100.

# BACKGROUND

**The *Constand* Litigation**

Andrea Constand filed suit on March 8, 2005, alleging that defendant William H. Cosby, Jr. drugged and sexually assaulted her, seeking to recover damages on several causes of action arising from that alleged conduct.  When discovery commenced, the defendant sought a broad protective order placing under seal not only "[a]ll information uncovered or obtained in discovery," but also "[a]ll court filings referring to, quoting, summarizing, or attaching" any discovery.  Def.'s Proposed Prot. Order ¶ 1, 3, Dkt. No. 17-1.  Defendant's rationale for his request was the protection of his reputation, avoidance of embarrassment and safeguarding the jury pool.  *Constand v. Cosby*, 229 F.R.D. 472, 480 (E.D. Pa. 2005), *amended in part*, June 24, 2005.  Plaintiff  also sought to protect the identities of her proposed "Jane Doe" witnesses at trial, who were expected to give testimony similar to her own and who might thus be subjected to the scrutiny of the media and the unpredictable actions of "overzealous fans."  *Id*. at 479. The Court denied the parties' motions, finding that neither side had shown "good cause" sufficient to permit the imposition of a protective order.  *Id.* at 479-80; *see also* Fed. R. Civ. P. 26(c).

The Court found that plaintiff failed to demonstrate that "disclosure will work a clearly defined and serious injury," *id*. at 479 (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)), and that defendant's justifications did not demonstrate that "the private interests in this case outweigh the public interest in access to these proceedings," *id.* at 480; *see also id*. at 472 (noting the "well established" "common law public right of access to judicial proceedings in civil cases . . . which entails not only the ability to attend open court proceedings, but also the ability to inspect and copy judicial records and documents") (citing *Publicker Indus.,*

*Inc. v. Cohen*, 733 F.2d 1059, 1066 (3d Cir. 1984)).  The Court, however, described its Order as "a work in progress" and allowed the parties to move for modification of the Order as discovery progressed.  *Id.*[2]

As discovery continued, the parties became embroiled in certain discovery disputes and one or both parties apparently requested that submissions made in support of their respective positions be filed under seal.  *See* Case Management Order No. 2, Nov. 4, 2005.  The Court agreed, entering, in effect, a confidentiality order for material submitted in connection with discovery disputes.[3]  *Id.*  On November 23, 2005, the AP filed a second motion to intervene to be heard on the sealing procedure.  Dkt. No. 51.  Noting that its sealing procedure would not necessarily result in permanent sealing, the Court denied this motion without prejudice, pending the outcome of discovery.  *See* Memorandum and Order at 12, Dkt. No. 72; *see also* Dkt. No. 76 at 1-2, 27 (same).  In particular, the Court held that, should it choose at the conclusion of discovery to issue a protective order maintaining any materials under seal, "any interested party will have an opportunity to request to intervene and challenge the ruling granting the protective order at that time."  Dkt. 72 at 12.

Thereafter, the parties filed numerous motions and responses thereto under seal, including but not limited to motions for sanctions (*e.g.*, Dkt No. 48), to strike (*e.g.*, Dkt. No. 52),

---

[2] The AP moved to intervene in this action to challenge these motions.  Dkt. No. 26. After denying both parties' motions, the Court denied the AP's motion to intervene as moot.  229 F.R.D. at 481.

[3] As explained in *Pansy v. Borough of Stroudsburg*, 23 F.3d at 777, a confidentiality order is any order that "in any way restricts access to or disclosure of any form of information or proceeding, including but not limited to 'protective orders,' 'sealing orders' and 'secrecy orders.' 'Protective orders' properly denote court orders over information exchanged during discovery."

3

and to compel discovery (*e.g.*, Dkt. Nos. 49, 50, 61).[4]  On July 12, 2006, the Court approved the

parties' Stipulation of Confidentiality, which described the November 4 Order as "preserving the

confidentiality of certain discovery materials," and applying this standard to the consolidated

case, *Constand v. Singer*, No. 06-483, Dkt. No. 94.  The Stipulation further stated that it "is made

by Plaintiff without prejudice to her right to continue to oppose the confidentiality order."  *Id*. at

2, ¶ 3.

    The docket reflects that the parties settled the case on or about November 8, 2006, before

discovery was complete, Dkt. No. 98, with no definitive analysis or ruling regarding sealing

made by the Court.[5]

**Recent Allegations and Litigation**

    Since the settlement in *Constand*, numerous other women, each of whom has been

publicly identified, have recently come forward, alleging that they too were victims of drugging

and sexual assault by Cosby, a topic that has been the subject of far-reaching media coverage.[6]

---

[4] The January 12, 2015 Notice issued by the Clerk of Court initiating the review process
for sealed records identifies over a dozen court filings still under seal.  *See* Dkt. No. 97 (Notice
of Clerk Regarding Local Rule of Civil Procedure 5.1.5).  The Notices omits Dkt. No. 63
(Defendant's Memorandum of Law in Partial Opposition to the Lifting of the Seal Established by
Case Management Order 2) and Dkt. No. 55 (redacted portion of transcript from November 4,
2005 court hearing).  *See* Dkt. No. 97; *see also infra* pp. 6-7, for a list of documents under seal.

[5] Prior to the settlement, plaintiff also filed suit arising out of statements made by
Cosby's attorney to the National Enquirer.  *See Constand v. Singer*, No. 06-cv-00483 (E.D. Pa.
filed Feb. 1, 2006).  The Court consolidated the two actions.  *See* Dkt. No. 30.  On May 5, 2012,
following notice to the parties, *see* Dkt. No. 37, documents in this second action filed under seal
prior to consolidation were unsealed pursuant to Local Rule of Civil Procedure 5.1.5.

[6] Jackie Willis, *Bill Cosby Addresses Allegations: 'I've Never Seen Anything Like This'*,
ETOnline, May 15, 2015,
http://www.etonline.com/news/164575_bill_cosby_first_tv_interview_since_sex_scandal/
(Cosby responds to questions about the abuse allegations and his legacy); Matt Giles & Nate
Jones, *A Timeline of the Abuse Charges Against Bill Cosby*, Vulture, Mar. 3, 2015,
http://www.vulture.com/2014/09/timeline-of-the-abuse-charges-against-cosby.html (identifying

These accusations, and Cosby's public responses to them, have resulted in yet another civil

action against him.  *See Green v. Cosby*, No. 3:14-cv-30211-MGM (D. Mass. filed Dec. 10,

2014) (*Green I*).  *Green I* was initiated in federal court in Massachusetts by three named female

plaintiffs, who allege that they were drugged and sexually assaulted by Cosby and then defamed

by him in statements to the press in which he denigrated their accusations.[7]

**Proceedings Pursuant to Local Rule 5.1.5**

Nine years after the settlement in *Constand*, all of the documents filed under seal remain

hidden from public view.  Contrary to Local Rule 5.1.5, which requires that sealed documents be

reviewed after two years for potential unsealing, it appears that none of the sealed documents in

---

the accusations and litigation against Cosby beginning with his alleged 2002 encounter with
Constand); Nick Vadala, *Bill Cosby Jokes About Sexual Assault Allegations Facing Him*,
Philly.com, Jan. 8, 2015, http://www.philly.com/philly/blogs/trending/Bill-Cosby-jokes-about-
sexual-assault-allegations-at-second-Canadian-tour-stop.html (Cosby's punchline went "against
his stock response to the allegations that has developed in recent months, and publically
shrug[ed] off the grave seriousness of the situation—just as that original stock response did in
the first place."); Lorne Manly & Graham Bowley, *Cosby Team's Strategy: Hush Accusers,
Insult Them, Blame the Media*, N.Y. Times, Dec. 28, 2014,
http://www.nytimes.com/2014/12/29/arts/cosby-teams-strategy-hush-accusers-insult-them-
blame-the-media.html?_r=0 (reporting on Cosby's record of playing hardball with the media
regarding accusations against him and his own confession of an extramarital affair); Lacey
Johnson, *Bill Cosby Sued for Defamation by Sexual Assault Accuser*, Reuters, Dec. 11, 2014,
http://www.reuters.com/article/2014/12/11/us-people-cosby-idUSKBN0JO21820141211
(recounting litigation and public accusations against Cosby and fall-out from same); Lynette
Rice, *Bill Cosby Sued by Woman Who Claims She Was Sexually Assaulted at 15*, People, Dec. 2,
2014, http://www.people.com/article/bill-cosby-sued-woman-alleges-sexual-assault-15-years-old
(charges filed in California by woman who alleged molestation by Cosby); Ta-Nehisi Coates,
*The Rape Allegations Against Bill Cosby Must Not Be Ignored*, THE ATLANTIC, Nov. 19, 2014,
http://www.theatlantic.com/entertainment/archive/2014/11/the-cosby-show/382891/ (reporting
on the consistency of the allegations against Cosby and why he believes them after years of
reporting on the comedian).

[7] In response to a subpoena issued by the *Green* plaintiffs to counsel for Constand, Cosby
filed a motion to quash the subpoena in this Court.  *See Green v. Cosby*, No. 2:15-mc-00144-JP,
Dkt. No. 1 (E.D. Pa. June 2, 2015) (*Green II*).  That motion has been held in abeyance by Judge
Padova pending the outcome of preliminary proceedings in *Green I*.  *See Green II*, Dkt. No. 7,
June 11, 2015.

this case have been reviewed for unsealing.  Therefore, on December 29, 2014, the AP wrote to the Clerk of the Court, requesting that he initiate the process under Local Rule 5.1.5 by which the Court must determine whether there is a valid basis for continuing the seal on any sealed document, or portion of such document.  *See* L. R. Civ. P. 5.1.5(c) ("If a document is still sealed at the conclusion of the two-year period . . . and [a] party objects to the unsealing of the document . . . the Court will make a determination, on a case-by-case basis, whether to maintain the document under seal, to unseal it, or to require further notification.").  The Clerk implemented the process by issuing a Notice to the parties and the AP, directing that any objections must be filed within 60 days.  Dkt. No. 97.  Cosby filed his objection on the 60th day, requesting a briefing schedule for "interested parties."  Dkt. No. 98.  The plaintiff did not file an objection in response to the Clerk's Notice.

On June 17, 2015, the AP wrote to the Court seeking a briefing schedule for the resolution of Mr. Cosby's objection.  On June 18, 2015, the Court entered an Order deeming the AP an intervenor and ordering all interested parties to file briefs on this issue no later than noon on Wednesday, June 24, 2015.  *See* Order at 2 & n.3, June 18, 2015, Dkt. 100 (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772).

**Documents Under Seal**

Numerous filings with the Court remain under seal.

●     In an Order dated September 27, 2005, the Court referred to correspondence from the parties pertaining to "discovery matters."  Dkt. No. 45.  This correspondence was not docketed.  On November 4, 2005, the Court held a hearing with the parties by telephone and thereafter issued the November 4 Order directing the parties to file motions to compel under seal. Dkt. No. 47.  A portion of the transcript from that hearing remains under seal.  Dkt. No. 55.  The

parties proceeded as directed, with the defendant filing a "Request to Compel and Memo Concerning Overarching Issues" (Dkt. No. 49), and the plaintiff filing a "Motion to Compel Discovery" (Dkt. No. 50).  Each of the responses thereto was also filed under seal.  *See* Dkt. Nos. 57, 58.

● Also filed under seal were plaintiff's "Motion for Sanctions Concerning Conduct of Defendant at Deposition and Memorandum Of Law" (Dkt. No. 48), and defendant's "Motion to Strike" the motion for sanctions (Dkt. No. 52), as well as papers pertaining to those dueling motions.  *See* Dkt. No. 60.

● The plaintiff then filed under seal a motion to compel the National Enquirer's compliance with a subpoena (Dkt. No. 61), which was opposed both by defendant and the National Enquirer in papers filed under seal.  *See* Dkt. Nos. 64, 65, 66, 68.

● After the AP moved to intervene and lift the sealing order, the defendant filed an opposition (Dkt. No. 63),[8] and the plaintiff filed a memorandum in support of unsealing (Dkt. No. 67) – both of which were filed under seal.

## ARGUMENT:
## THERE IS NO SUPPORT FOR THE CONTINUED SEALING OF DOCUMENTS

The defendant is the only party who objects to unsealing the record.  However, now that the circumstances that he relied upon to gain preliminary sealing in this matter are nothing more than historic references, bypassed by recent public events, the files at issue should be unsealed. In sum, no good cause exists to maintain the seal on any of the sealed documents.

---

[8] Defendant also filed a public version of this opposition.  Dkt. No. 62.

## I.      The Right of Access and Requirement of Good Cause for Sealing

Access to judicial documents is a right based on the Constitution and the common law. *See, e.g.*, *Leucadia, Inc. v. Applied Extrusion Techns., Inc.*, 998 F.2d 157, 161 & n.6 (3d Cir. 1993); *Doe v. Pub. Citizen*, 749 F.3d 246, 261 (4th Cir. 2014); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120-21 (2d Cir. 2006).[9]  The constitutional analysis focuses on whether the presumption of access can be overcome by proof of a compelling interest in sealing and whether that sealing is narrowly tailored to protect that interest.  *In re Capital Cities/ABC, Inc.'s Application for Access to Sealed Transcripts*, 913 F.2d 89, 93 (3d Cir. 1990). The common law right also begins with a presumption of access, but that right is balanced against competing interests.  *See, e.g.*, *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-99

---

[9] This constitutional and common law right of access applies equally to civil and criminal proceedings.  *See, e.g.*, *Publicker Indus., Inc.*, 733 F.2d at 1071 ("the public and the press possess a First Amendment and a common law right of access to civil proceedings; indeed, there is a presumption that these proceedings will be open").  So, too, does this right extend to judicial records:  "In numerous cases … this court has acknowledged the existence of a pervasive common law right 'to inspect and copy public records and documents, including judicial records and documents.'  The existence of this right, which antedates the Constitution and which is applicable in both criminal and civil cases, is now 'beyond dispute.'"  *Leucadia, Inc.*, 998 F.2d at 161-62 (citations omitted).  And while the right of access to records may "antedate" the Constitution, the First Amendment nevertheless affords a concomitant right.  *Id.* at 161 n.6 ("[T]he First Amendment, independent of the common law, protects the public's right of access to the records of civil proceedings" (citing *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 659 (3d Cir. 1991)).

As the *Leucadia* court explained, "the presumption that the public has a right to inspect and copy judicial records serves numerous salutary functions."  *Id.* at 161.  For example, the "public's exercise of its common law access right in civil cases promotes public confidence in the judicial system" and the "very openness of the process should provide the public with a more complete understanding of the judicial system and a better perception of its fairness."  *Id.* at 161; *accord Constand*, 229 F.R.D. at 478-79 ("The right to access court proceedings and records enhances 'the quality of justice dispensed by the court,' 'diminishes possibilities for injustice, incompetence, perjury, and fraud,' and 'provide[s] the public with a more complete understanding of the judicial system and a better perception of its fairness.'" (quoting *Littlejohn v. BIC Corp.*, 851 F.2d 673, 678 (3d Cir. 1988)).

(1978); *Littlejohn v. Bic Corp.*, 851 F.2d 673, 678 (3d Cir. 1988).  The right of access to documents is now deemed to be "beyond dispute."  *Glenemede Trust Co. v. Thompson*, 58 F.3d 476, 487 (3d Cir. 1995).

In the case of the entry by the Court of a confidentiality or protective order regarding discovery material filed with the Court in non-substantive motions, the test is whether the party seeking sealing can demonstrate good cause for sealing under Rule 26(c).  *See, e.g.*, *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986) ("[T]he party seeking the protective order must show good cause by demonstrating a particular need for protection.  Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test.");[10] *Glenmede Trust Co.*, 56 F.3d at 484 (noting that "general allegations of injury to reputation and client relationships and embarrassment" will not suffice); *see also Pansy*, 23 F.3d at 786 (analyzing good cause requirement of Rule 26(c) with respect to access to unfiled settlement agreement).

Rule 5.1.5 is itself a reflection of the recognition of the judiciary that continued sealing, which would be the easier course, is not the preferred course.  It reflects the Rules' presumption that accessible Court files are favored.  *See, e.g.*, *Doe v. Lower Merion Sch. Dist.*, 2010 WL 724685, at *1 (E.D. Pa. Feb. 23, 2010) (permitting media intervenors to "assert[] First Amendment rights" and ordering party to publicly produce unsealed versions of briefs because sealing is disfavored in civil rights litigation and other actions not involving trade secrets) (citations omitted); *id.* at *1 n.2 ("The sealing of Court records is a matter of national concern."

---

[10] The court further stated:  "We add to the district court's comments only our own understanding that, because release of information not intended by the writer to be for public consumption will almost always have some tendency to embarrass, an applicant for a protective order whose chief concern is embarrassment must demonstrate that the embarrassment will be particularly serious."  785 F.2d at 1121.

9

(citing Federal Judicial Center, *Sealed Cases in Federal Courts* (2009))); *Doe v. Methacton Sch. Dist.*, 878 F. Supp. 40, 41 (E.D. Pa. 1995) ("Once a document is filed with a court, the public presumptively gains a right to access it." (citation omitted); *see also Policy on Sealed Cases*, United States Courts' Judicial Conference (Sept. 13, 2011),

http://www.uscourts.gov/news/2011/09/13/conference-approves-standards-procedures-sealing-civil-cases-0 (setting forth specific criteria to be met before sealing a case) (available as PDF file).  The Local Rule expressly provides that "a case-by-case" determination must be made with respect to each sealed record, and each portion thereof.  L. R. Civ. P. 5.1.5(c); *see also* David Sellers, *Conference Approves Standards & Procedures for Sealing Civil Cases*, Judicial Conference of the United States, Sept. 13, 2011, *available at*

http://www.uscourts.gov/News/NewsView/11-09-13/Conference_Approves_Standards_Procedures_for_Sealing_Civil_Cases.aspx (policy provides that a civil file should be sealed only in extraordinary circumstances and should be unsealed once those extraordinary circumstances have passed).

## II.     No Good Cause Exists for Continued Sealing

Defendant cannot demonstrate that any cause – let alone good cause – remains for sealing.  The test must be applied as of today; that is, the Court is required to make its assessment of the purported justifications under present circumstances, where (1) plaintiff has not objected to unsealing; (2) defendant's accusers have now publicly identified themselves; (3) there is no jury pool capable of being tainted; and (4) the Court has already ruled, in accordance with firmly established precedent, that defendant's fear of embarrassment and humiliation is insufficient to support a finding a good cause.  *See, e.g.*, *Shingara v. Skiles*, 420

F.3d 301, 307 (3d Cir. 2005); *Glenmede Trust Co.*, 56 F.3d at 483-85; *Constand*, 229 F.R.D. at 479-80.

With respect to reputational harm and embarrassment, there is little doubt that the new onslaught of allegations has already impacted the defendant's reputation. Thus the possibility that the sealed material will do further material damage appears remote at best. This is vividly demonstrated by the fact that the explicit accounts given by defendant's alleged victims are now easily found by a simple Google search.[11] Defendant has already incurred the consequences of these accounts. Simply by way of example, according to published reports, NBC cancelled plans to develop a show with him, several institutions to which he was tied, such as Temple University and Spelman College, have distanced themselves, and he has become a pervasive topic of derision and humor.[12]

---

[11] In his motion to quash the subpoena served on Constand's attorney in *Green II*, Cosby's attorney, Robert P. LoBue, averred in his declaration that the defendant entered into the agreement in this case with the understanding that documents filed in this litigation would remain confidential. Decl. of R. LoBue ¶ 5. Given the existence of Rule 5.1.5 in this District and the fact that the discretion to seal rests in the Court, and not the parties, this reliance, if it existed, seems to have been ill-advised. *See Legal Newsline v. Garlock Sealing Techs. LLC*, 518 B.R. 358, 364 (W.D.N.C. 2014) ("While a court may seal any number of documents, proceedings, or applications for appropriate reasons, it simply cannot delegate that responsibility to the litigants by giving deference to protective orders. As a gatekeeper, a judge must consider sealing as the exception not the rule."); *Pownall v. PNC Bank*, 2011 U.S. Dist. LEXIS 11407, *2 (N.D. Ohio Jan. 31, 2011) (rejecting jointly proposed protective order allowing parties to designate information as confidential, noting that "the fact that all parties jointly seek a protective order does not overcome this presumption" of public access).

[12] *See, e.g.*, *NBC Firmly Shuts Door on Bill Cosby*, CBS News, Jan. 16, 2015, http://www.cbsnews.com/news/nbc-firmly-shuts-door-on-bill-cosby/ (reporting on NBC's statements that number of accusers had become "critical mass"); Evelyn Diaz, *Bill Cosby's Daughter Slams Spelman College, Beverly Johnson and Accusers*, BET.com, Dec. 16, 2014, http://www.bet.com/news/celebrities/2014/12/16/bill-cosby-s-daughter-slams-spelman-beverly-johnson.html (reporting on public statements by Cosby's daughter); Adam Howard, *Spelman College Severs Ties with Bill Cosby*, MSNBC.com, Dec. 15, 2014, http://www.msnbc.com/msnbc/spelman-college-severs-ties-bill-cosby (reporting Spelman's decision to cancel program endowed by Cosby); Maria Puente, *Bill Cosby Resigns from Temple*

Defendant is thus even less likely now than he was in 2005 to be able to show good cause for maintaining the seal on these documents. *See*, *e.g.*, *Shingara*, 420 F.3d at 307 (applying *Pansy* factors to deny sealing because a party "whose chief concern is embarrassment must demonstrate that the embarrassment will be particularly serious") (citing *Pansy,* 23 F.3d at 783-84). And, although courts may consider privacy in evaluating good cause, "privacy interests are diminished when the party seeking protection is a public person subject to legitimate public scrutiny." *Pansy*, 23 F.3d at 787. Cosby is unquestionably a public figure, and his conduct – both as alleged in the complaint, in the litigation itself, and as more details have come to light in the intervening years since the case began – is a legitimate matter for public scrutiny.

---

*University Board*, USA TODAY, Dec. 2, 2014,
http://www.usatoday.com/story/life/people/2014/12/01/bill-cosby-resigns-from-temple-u-board/19746149/ ("Beset by toxic sexual assault allegations, Bill Cosby has resigned his seat on the board of trustees of his beloved Temple University."); Ann Oldenburg, *TV Land Pulls 'Cosby' Reruns; Fallout Continues*, USA TODAY, Nov. 20, 2014,
http://www.usatoday.com/story/life/people/2014/11/19/bill-cosby-netflix-don-lemon-cnn-latest/19266133/ (reporting on cancellation of *The Cosby Show* reruns and other consequences of scandal); Bill Carter, *Comeback by Bill Cosby Unravels as Rape Claims Re-emerge*, N.Y. TIMES, Nov. 19, 2014, http://www.nytimes.com/2014/11/20/business/media/bill-cosby-fallout-rape-accusations.html (detailing the allegations by individual accusers, the lawsuits against Cosby, and why the accusations have generated attention now); *see also supra* n.6.

**CONCLUSION**

Given the public disclosure of the matters under seal, the lack of any objection from any party other than defendant, his failure to demonstrate the required particular and serious injury that is a prerequisite of a finding of  good cause for sealing, and the fact that disclosure is heavily favored, by rule, by policy and by precedent, the AP respectfully requests that the long-sealed court records in this case be unsealed.

Dated:  June 24, 2015     Respectfully submitted,

         LEVINE SULLIVAN KOCH & SCHULZ, LLP

         By:_____*/s/ Gayle C. Sproul*_____

         Gayle C. Sproul (GCS8092)
         1760 Market Street, Suite 1001
         Philadelphia, PA 19103
         Tel: (215) 988-9778
         Fax: (215) 988-9750
         gsproul@lskslaw.com

**<u>CERTIFICATE OF SERVICE</u>**

I, Gayle C. Sproul, hereby certify that on this date, this Memorandum and all

accompanying documents were served on counsel of record via the Court's CM/ECF system.

Date:  June 24, 2015                           _____*/s/ Gayle C. Sproul*_____
                                                            Gayle C. Sproul