# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREA CONSTAND, | : |
| Plaintiff, | : |
| | : No. 05-cv-1099 |
| v. | : |
| WILLIAM H. COSBY, JR., | : |
| Defendant. | : |

## DEFENDANT'S BRIEF IN OPPOSITION TO THE LIFTING OF THE SEAL

Pursuant to the Court's June 18, 2015 Order (doc. # 100), Defendant, William H. Cosby, Jr., respectfully submits this brief in opposition to the lifting of the seal impressed by the Court in its November 4, 2005 Case Management Order (doc. # 47).

## INTRODUCTION

The current proceedings concern the media's desire to gain access to discovery motions, which contain private information of no legitimate public interest. The specific information in question has been under seal for many years. The Court's sealing order was interim and provisional, but the parties then settled this dispute and agreed to keep the discovery from this litigation confidential forever. That agreement made a determination on the finality of the seal unnecessary.

Now, provoked by a new media frenzy concerning Defendant and allegations of sexual misconduct, the Associated Press (the "AP") desires to publish, for all to see, the private discovery material from this case. Although the case is over, and although the parties agreed to keep the discovery confidential, the AP knows that certain discovery material was filed with the

Court as a part of discovery motions. Hoping to circumvent the parties' settlement, the AP argues that the discovery motions are "judicial documents" to which it has a right of access, and it demands a review of the sealing order under Local Rule of Civil Procedure 5.1.5. The AP undertakes this effort not to shine the light of public scrutiny on the judicial process or any matter of legitimate public concern, but rather to sell copy about a celebrity sex scandal.

The documents at issue are discovery motions and material, to which no public right of access applies. In this unique context, the balancing of the private and public interests at stake weighs heavily in favor of maintaining the seal. Specifically, the information at issue is of no legitimate public interest, while public disclosure of it would invade the parties' privacy and also that of numerous non-parties, whose identities and alleged sexual encounters with the Defendant were revealed in the course of discovery. Disclosure also would undermine the settlement in this case and create publicity that would prejudice a current proceeding in another court.

For these reasons, which are explained in more detail below, Defendant requests the Court to maintain the seal, pursuant to Local Rule of Civil Procedure 5.1.5(c).

**BACKGROUND**

This action ended nearly nine years ago. This case did not concern a public official, a public company, or other matters of legitimate public concern. Rather, it was a private dispute between two individuals over their personal relationship. Specifically, Plaintiff alleged that Defendant, once her mentor, tricked her into ingesting a debilitating drug and then sexually assaulted her. Defendant denied these allegations. Plaintiff stated that she would call several other women as witnesses, pursuant to Federal Rule of Evidence 415, to testify to allegedly similar acts by Defendant. These women were identified as "Jane Does," and the identity of

most was not made public at the time. Their alleged encounters with the Defendant, however, were the subject of discovery.

The parties settled the case before discovery ended. Thus, the Court never was called upon to adjudicate the merits of Plaintiff's claims. In fact, the Court's role in the case was limited to administration, deciding discovery motions, and deciding motions about confidentiality and protective orders. The Court did not decide any substantive rights of the parties.

The parties were deposed in September 2005. Those depositions led to several discovery disputes. On November 4, 2005, the Court entered an order creating an interim procedure for the resolution of these disputes. Specifically, the Court ordered the parties to file their discovery motions under seal, and to detail their respective requests to compel on separate pages. (Doc. # 47 at 2.) The Court then set deadlines for the parties to oppose or to support the lifting of the seal. (*Id.*) As the Court later noted, it adopted this procedure to create a context in which the Court could balance the parties' privacy interests with any public rights, without defeating the parties' privacy rights in the process. (*Id.* at 1 n.1).

Accordingly, the parties filed several discovery motions and related memoranda, and they did so under seal. The discovery motions quoted and characterized portions of the parties' respective depositions. The specific discovery motions (and associated briefs in support and opposition) filed under seal were:

- Plaintiff's motion for discovery sanctions, concerning Defendants' counsel's conduct during Defendant's deposition. (*See* doc. ## 48, 52, 60.)
- Defendant's motion to compel and a brief concerning "overarching issues." (*See* doc. ## 49, 57.)
- Plaintiff's motion to compel further deposition testimony from Defendant. (Doc. ## 50, 58.)

- Plaintiff's motion to compel the National Enquirer. (Doc. ## 61, 64, 65, 66, 68.)

On January 31, 2006, the Court ruled on the parties' respective motions to compel. (Doc. ## 63, 67.) The Court took Plaintiff's Motion for Sanctions under advisement, and, on June 9, 2006, the Court ultimately concluded that her Motion for Sanctions was moot. (Doc. # 89.)

The parties submitted briefs with respect to whether the interim seal should become permanent.[1] (Doc. ## 63, 67.) In October 2006, before the Court issued a final order with respect to the interim seal, the parties reached a confidential settlement. On November 8, 2006, in accordance with the parties' stipulated wishes, the Court dismissed this action. Because the case settled before the Court ruled upon the finality of the interim sealing order, the parties' discovery motions remained sealed.

The parties' settlement requires each party to maintain the confidentiality of the discovery generated in this case, including Defendant's deposition and sealed discovery motions.[2] Further, each party to the settlement agreement explicitly agreed not to disclose to anyone the information that it learned during discovery. The confidentiality provisions were a material inducement to each of the parties to enter into the settlement, and Defendant relied on those provisions in agreeing to the settlement.

---

[1] On November 23, 2005, the Associated Press moved to intervene and to challenge the Court's interim procedure, arguing that even an interim seal was unwarranted. On January 13, 2006, the Court denied the AP's motion to intervene, without prejudice.

[2] The parties' settlement prohibits the disclosure of its terms or conditions, including by filing the agreement itself with any court, except if the agreement itself is the subject of litigation and then only to the extent necessary to assert rights and/or defend litigation. Because the settlement agreement recently became the subject of a motion to quash subpoena, in a separate miscellaneous action in this District Court, Defendant submitted an attorney declaration briefly characterizing the confidentiality terms of the settlement agreement. Here, Defendant refers only to the public record of that proceeding. (See *Green v. Cosby*, 15-mc-144 (E.D. Pa. 2015), Cosby's Mem. Supp. Mot. Quash [doc. #1] at 3-4.)

The seal continued, without comment or dispute, for over eight years. In late 2014, however, allegations of sexual misconduct against Mr. Cosby again became a media centerpiece. In December 10, 2014, three women sued Mr. Cosby in the United States District Court for the District of Massachusetts, alleging that Mr. Cosby defamed them by denying their accusations against him. Shortly thereafter, on December 29, 2014, the AP wrote to the Court, seeking to lift the seal by invoking the review called for under Local Rule of Civil Procedure 5.1.5.

## **ARGUMENT**

The issue now before the Court is narrow and specific. The Court need not determine the wisdom of a blanket protective order governing all discovery, as it did years ago in this case. Nor must the Court decide whether to impose a protective order upon unwilling parties. Rather, the Court's task is to decide whether specific discovery motions, and the specific descriptions and recitals of testimony included in those motions, should remain under seal. The parties themselves already have agreed to keep such documents confidential as a material term of their settlement. Now, the narrow issue is whether the public—in particular the media—should gain access to this private information, through the Court, merely because it was included in discovery motions.

To make this determination, the Court should perform the balancing test announced in *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994), balancing the public's interest with the parties' rights to privacy. Because the documents at issue are discovery motions, however, *there is no public right to access these documents*. Thus, the balancing process does not, as it otherwise would, include a presumption that the public will have access, and the showing required to maintain the seal is significantly lessened. Therefore, given the private and embarrassing nature of the specific material in question, and the complete lack of legitimate

5

public interest in the subject matter, the balance of the interests under *Pansy* decidedly calls for maintaining the seal.

I. **THE PUBLIC DOES NOT HAVE A RIGHT TO ACCESS THE INFORMATION IN QUESTION.**

While the public ordinarily has a presumed right of access to court proceedings and judicial documents, *that right does not apply to discovery motions*. In *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 998 F.2d 157 (3d Cir. 1993), the United States Court of Appeals for the Third Circuit held that "there is a presumptive right to public access to all material filed in connection with *nondiscovery* pretrial motions, . . . *but no such right as to discovery motions and their supporting documents*." 998 F.2d at 165 (emphasis added). The court noted that "we cannot overlook the Supreme Court's statements in *Seattle Times v. [Rhinehart*, 467 U.S. 20 (1984)] . . . that 'pretrial deposition and interrogatories are not part of public components of a civil trial.'" *Id.* at 164. The court stated that "a holding that discovery motions and supporting materials are subject to a presumptive right of access would make raw discovery, ordinarily inaccessible to the public, accessible merely because it had to be included in motions precipitated by inadequate discovery responses or overly aggressive discovery demands. This would be a holding based more on expediency than principle." *Id.* at 165.

When Defendant and the AP briefed this issue to the Court in late 2005 and early 2006, the AP suggested that *Leucadia* "is of limited precedential value." (Doc. # 51 at 7 n.2.) While that argument was wrong then, it is even more clearly so now. In *United States v. Wecht*, 484 F.3d 194, 209 (3d Cir. 2007), the Third Circuit affirmed its holding in *Leucadia*. As the court noted, "documents filed with the court are generally subject to the common law right of access, unless attached to a discovery motion." *Id.* at 209.

Other United States circuit courts agree. In *Anderson v. Cryovac, Inc.*, 805 F.2d 1 (1st Cir. 1986), the United States Court of Appeals for the First Circuit held: "We think it is clear and hold that there is no right of public access to documents considered in civil discovery motions." 805 F.2d at 12. The court noted:

> [D]iscovery proceedings are fundamentally different from proceedings to which the courts have recognized a public right of access. . . . [A] request to compel or protect the disclosure of information in the discovery process is not a request for a disposition of substantive rights. Materials submitted to a court for its consideration of a discovery motion are actually one step further removed in public concern from the trial process than the discovery materials themselves, materials that the Supreme Court has said are not subject to the public's right of access.

*Anderson*, 805 F.2d at 12-13; *see also Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1312 (11th Cir. 2001) ("The better rule is that material filed with discovery motions is not subject to the common-law right of access."); *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("We think that the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access.").

Here, the documents currently under seal are discovery motions (and corresponding briefs in support and opposition) to which there is no right of access. Indeed, the underlying case itself ended before the discovery phase concluded, and the judicial proceedings did not include an adjudication of the parties' substantive rights. Thus, the public does not have a right to access the material in question.

## II. THE *PANSY* FACTORS WEIGH HEAVILY IN FAVOR OF MAINTAINING THE SEAL.

Balancing the private and public interests at stake demonstrates that good cause exists to maintain the interim sealing order in question. *See Wecht*, 484 F.3d at 212. The Third Circuit

detailed its well-known balancing analysis in *Pansy v. Borough of Stroudsbourg*, 23 F.3d 772 (3d Cir. 1994). Under *Pansy*, the Court should consider the following factors:

 (1) whether disclosure will violate any privacy interests;

 (2) whether the information is being sought for a legitimate purpose or for an improper purpose;

 (3) whether disclosure of the information will cause a party embarrassment;

 (4) whether confidentiality is being sought over information important to public health and safety;

 (5) whether the sharing of information among litigants will promote fairness and efficiency;

 (6) whether a party benefitting from the order of confidentiality is a public entity or official; and

 (7) whether the case involves issues important to the public.

*Shingara v. Skiles*, 420 F.3d 301, 306 (3d Cir. 2005) (citing *Glenmede Trust C. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) (citing *Pansy*, 23 F.3d at 787-91)).[3]

Application of the *Pansy* factors in this case demonstrates that the seal should continue. Because the seal concerns only discovery motions, demonstrating good cause "does not require overcoming a strong presumption in favor of public access." *Wecht*, 484 F.3d at 212 n.22. Accordingly, the balance of interests weighs heavily in favor of maintaining the seal.

 **A. Lifting the Seal Would Violate Defendant's and Others' Privacy (Factors #1 & #2).**

Lifting the seal in this case unquestionably would violate Defendant's privacy interests. The motions in question include specific quotations from and characterizations of Defendant's

---

[3] *Pansy* requires the Court to make findings in support of its order, but those findings themselves may be sealed, if necessary. *Pansy*, 23 F.3d at 789.

8

deposition testimony concerning private portions of his and others' lives. Release of these passages would intrude not only on Defendant's privacy but that of others about whom he was questioned.

In particular, the excerpts concern Defendant's sex life, which is "the most private of human conduct." *Lawrence v. Texas*, 539 U.S. 558, 567 (2003). The testimony at issue also concerns Defendant's health, including his medical conditions and use of prescription drugs, another topic of unquestionable private nature. *See Whalen v. Roe*, 429 U.S. 589, 602 (1977). The discovery motions also reveal Defendant's testimony about Defendant's financial affairs and personal relationships. Such information is also private. *See e.g., Fraternal Order of Police, Lodge No. 5. v. City of Philadelphia*, 812 F.2d 105, 115 (3d Cir. 1987). While Defendant cannot explain here the detail of the testimony without defeating the purpose of this brief, Defendant refers the Court to the underlying discovery motions and to pages 5, 8, 9, 15, and 16 of his Brief in Partial Opposition to the Lifting of the Seal (doc. # 63), which contain a more specific explanation.

Under *Pansy*, the Court should consider whether "privacy interests are diminished" because "the person seeking protection is a public person subject to legitimate public scrutiny." *Pansy*, 23 F.3d at 787. In other words, the Court should ask "whether the information is being sought for a legitimate purpose." *Id.* Here, while the Defendant is a celebrity, as the Court already has held, Defendant is not a public official. (Doc. # 72 at 11 ("*Shingara* emphasized that the issues in that case involved a matter of public concern and the defendant was a public official. Neither is present in this case.").) Given the intensely personal nature of the matters in question, Defendant's privacy interests should remain intact, and these factors weigh in favor of maintaining the seal.

### B. Lifting The Seal Would Embarrass Defendant And Other Parties (Factor #3).

The *Pansy* court also stated that preventing embarrassment is a factor that weighs in favor of a protective order. *Id.* at 787. The embarrassment must be "particularly serious." *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). "[E]mbarrassment is usually thought of as a nonmonetized harm to individuals." *Id.* Where the litigants are natural persons, as opposed to businesses, it is easier to show the embarrassment necessary to justify a protective order. *Id.* As Defendant explained in his Brief in Partial Opposition to Lifting the Seal, his embarrassment at the release of the discovery motions—deposition excerpts about sex, money, health, and marriage—would be severe. (*See* doc. #63 at 8-10, 15-16.) The "Jane Does" about whom he was questioned similarly would be embarrassed.

Indeed, in its June 2, 2005 opinion denying Defendant's request for a blanket protective order, this Court acknowledged that subjects covered in Defendant's depositions "may cause Defendant serious embarrassment." (Doc. #25 at 21.) The Court held that Defendant had yet to link this threat (as well as the threat of invasion of privacy and jury taint) to specific discovery material. Now, Defendant has done precisely that, as the excerpts, quotations, and characterizations of his deposition at issue pose a real, specific threat of serious embarrassment. Defendant no longer seeks to shield all of the discovery material in the case, but rather the specific notes of his testimony currently under seal.

Moreover, unlike a deposition in a typical case, there is a voracious media appetite for Defendant's deposition, and public release of it would quickly become widespread public knowledge of it. There is no doubt that public disclosure of the motions and Defendant's sworn deposition testimony, which delves into the most intimate subjects imaginable, would generate a firestorm of publicity. Indeed, media exposure of Defendant's private life—as opposed to

10

information about the operations of the judicial system—is why the AP sought this review. Especially given that there is no presumption of public access to this material, Defendant's showing of embarrassment weighs in favor of maintaining the seal.

### C. Defendant Is Not A Public Official, And The Sealed Discovery Motions Do Not Present Issues Of A Public Nature Or Important To Public Health Or Safety (Factors #4 and #6).

There is no public interest in disclosing these discovery materials: Defendant is not a public official, nor is the relevant information important to public health or safety. *See Pansy*, 23 F.3d at 787-88 (instructing court to consider "whether a party benefiting from the order of confidentiality is a public entity or official" and whether "confidentiality is being sought over information important to public health and safety"). These factors also weigh against lifting the seal.

Defendant's status as a well-known comedian and entertainer does not render him a "public" person within the meaning of the law. *Pansy* made clear that a "public" person is a "public official," one who serves the public using public funds. Privacy interests are diminished only where the person seeking protection "is subject to *legitimate* public scrutiny," noting that "'[t]he public has a substantial interest in the integrity or lack of integrity of those who serve them in public office.'" *Id.* at 787 (emphasis added) (quoting *United States v. Smith*, 776 F.2d 1104, 1114 (3d Cir. 1985)).

Indeed, this Court already held this case did not "involve[] a matter of public concern" and that Defendant is not "a public official." (Doc. # 72 at 11.) Other courts have confirmed that a case does not involve "public" issues or persons merely because one of the litigants is a celebrity. *See Paisley Park Enters. v. Uptown Prods.*, 54 F. Supp. 2d 347, 348 (S.D.N.Y. 1999) (protecting rock star Prince from public scrutiny of deposition). In *Condit v. Dunne*, 225 F.R.D.

11

113 (S.D.N.Y. 2004), a case against a public official, the court noted that "[m]ore than mere celebrity interest is involved in this case." *Id.* at 120. In *Flaherty v. Seroussi*, 209 F.R.D. 295 (N.D.N.Y. 2001), the court based its decision on the fact that the case involved "elected officials and the performance of their governmental responsibilities." *Id.* at 299–300. Defendant is an entertainer, not a public servant.

Finally, while the allegations of sexual misconduct by Defendant have attracted significant media attention, that does not mean that the *discovery motions* that the AP seeks are matters of significant public interest. The media has had no apparent difficulty flooding the airwaves and press with reports on this story, even without access to the discovery materials. Nor is there any credible argument that public knowledge of the details of those motions will serve some public purpose.

As the *Pansy* Court held, "if a case involves private litigants, and concerns matters of little legitimate public interest, that should be a factor weighing in favor of . . . maintaining an order of confidentiality." *Pansy*, 23 F.3d at 788. That is the case here, and thus the public interest factors weigh in favor of maintaining the Court's seal in this case.

### D. Lifting The Seal Would Undermine The Settlement Of This Case And Create Inefficiencies.

The *Pansy* court also recognized that encouraging settlement is a factor to consider when deciding whether to impose confidentiality. *Pansy*, 23 F.3d at 788.[4] In this case, a material term of the parties' settlement was their agreement to keep all discovery from the case confidential. Indeed, due to the private nature of the information at issue, confidentiality was an important

---

[4] The fifth *Pansy* factor asks whether "the sharing of information among litigants will promote fairness and efficiency." *Pansy*, 23 F.3d at 787. This factor weighs in Defendant's favor, too, as no fairness or efficiency will be gained by disclosing the materials.

inducement to the settlement, and Defendant relied on the confidentiality provisions in entering into the settlement. Disclosing that material now would undermine the settlement and deprive Defendant of one of the material benefits of that agreement. Indeed, this Court has already recognized that, where the parties have agreed to keep discovery material confidential, it would render such agreements pointless if the material became public anyway because it was included in a discovery motion. (*See* doc. # 54 at 6.) This factor also weighs in favor of maintaining the seal.

### E. Lifting The Seal Would Interfere With The Massachusetts Litigation.

Early in the case, this Court noted its concern "that information which is disseminated widely potentially could interfere with the ability to select an impartial jury in this case." (Doc. #25 at 2.) Now, lifting the seal would create widespread publication of Defendant's specific testimony about specific topics that would impact jury selection in the case currently proceeding against him in the District of Massachusetts. The Court now has before it specific examples of prejudicial discovery material and a known record of pretrial publicity on matters directly at issue in the Massachusetts proceeding. This case is therefore markedly different from *Shingara v. Skiles*, 420 F.3d 301, 306 (3d Cir. 2005), where the court declined to find that a broad and unspecific concern over publicity could interfere with jury selection. *Id.* at 307. Thus, lifting the seal over this material would prejudice the selection of an impartial jury. In such a case, concern over pretrial prejudice is warranted. *See Anderson v. Cryovac, Inc.*, 805 F.2d 1, 8 (1st Cir. 1986) ("The district court was concerned that the extensive publicity . . . would inhibit and perhaps prevent the selection of an impartial jury . . . . Because it was faced with specific instances of

13

massive and potentially harmful publicity, we find there was good cause for the district court to issue the protective order.").[5]

### III. THE COURT SHOULD USE ITS DISCRETION TO MAINTAIN THE SEAL IN THIS CASE.

As the Supreme Court has held, courts have wide latitude to control access to judicial records and should do so to prevent the release of information "that could be damaging to reputation and privacy." *Seattle Times*, 467 U.S. at 35. Faced with similar situations involving the combination of heightened media scrutiny, personal information, and scandalous allegations, courts have not hesitated to employ their broad discretion to protect the parties' privacy rights. In *Jones v. Clinton*, 993 F. Supp. 1217, 1998 U.S. Dist. LEXIS 2923 (E.D. Ark. 1998), a case about alleged sexual harassment by President Clinton when he was the governor of Arkansas, the court noted:

> Much of the discovery in this case of alleged sexual harassment has delved deeply into the personal lives of individuals and elicited information that, regardless of its truth or falsity, could prove damaging to reputation and privacy. Many in the media have shown no restraint in their willingness to place such personal information in the public domain despite the pain it may cause. . . . The Court finds that there is good cause under Rule 26(c) in attempting to protect private individuals from the stigma of being associated with a case that involves alleged sexual indiscretions and which is being played out on a national stage.

---

[5] Moreover, much of what Defendant proposes to seal is simply Plaintiff's counsel's deposition questions and Plaintiff's written characterizations of Defendant's testimony, which often, and at times grossly, misrepresent the record. Question 15 of Plaintiff's Motion to Compel, for instance, mischaracterizes a Rule 415 witness's purported police statement. Questions 2, 9, 10, and 26 misrepresent Defendant's testimony. Question 41 blatantly misrepresents the evidence. Counsel's questions misrepresented the content of a Daily News article. (Doc. # 48 at 30.) Other portions of Plaintiff's discovery motions cite discovery material—including quotes from over 50 pages of transcript—that is clearly unnecessary and irrelevant to the relief sought by Plaintiff, apparently for the purpose of attempting to disclose Defendant's private information.

1998 U.S. Dist. LEXIS 2923, at *30.  In another case involving alleged sexual misconduct by a famous entertainer (in this case, criminal molestation of a minor), *People v. Jackson*, 27 Cal. Rptr. 3d 596 (Cal. Ct. App. 2005), the court held that the combination of the defendant's celebrity and the sexual, as opposed to "white collar," nature of the charges, mandated against public disclosure.

The Court has the inherent power to seal the discovery motions, to which the public has no right of access.  "[T]o the extent that courthouse records could serve as a source of public information, access to that source customarily is subject to the control of the trial court." *Seattle Times,* 467 U.S. at 33 n.19.  The Court has "supervisory power over its own records and files." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978).  Whether or not any particular rule authorizes a particular order, "we have no question as to the court's jurisdiction to [seal records] under the inherent 'equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices.'" *Int'l Prods. Corp. v. Koons*, 325 F.2d 403, 407-08 (2d Cir. 1963) (*quoted in Seattle Times*, 467 U.S. at 35) (quoting *Gumbel v. Pitkin*, 124 U.S. 131, 144 (1888)).  The Court should exercise this authority and maintain the seal protecting the discovery motions.

## CONCLUSION

"Simply stated, the purpose of discovery is to resolve legal disputes between parties, not to provide newsworthy material." *Chicago Tribune*, 263 F.2d at 1316 (Black, J., concurring).  "If it were otherwise and discovery information and discovery orders were readily available to the public and the press, the consequences to the smooth functioning of the discovery process would be severe." *Id.*  "Such interference by parties who have no interest in the underlying litigation could seriously impair an Article III court from carrying out its core function—

15

resolving cases and controversies." *Id.*  For this reason and those stated above, Defendant respectfully requests the Court to maintain the seal imposed in this case.


Dated: June 24, 2015                                        <u>*George M. Gowen III*</u>
                                                                         George M. Gowen III
                                                                         COZEN O'CONNOR
                                                                         1900 Market Street
                                                                         Philadelphia, PA  19103
                                                                         215.665.2000

                                                                         *Attorneys for Defendant*

# CERTIFICATE OF SERVICE

I, George M. Gowen, hereby certify that on June 24, 2015, I caused a true and correct copy of the foregoing Brief in Opposition to the Lifting of the Seal via the court's electronic filing system and/or first class mail as follows:

Bebe H. Kivitz, Esquire
JACOBS SINGER KIVITZ & HERMAN, LLC
1525 Locust Street, 12th Floor
Philadelphia, PA 19102

Ann C. Lebowitz, Esquire
200 South Broad Street
Suite 600
Philadelphia, PA 19102

Dolores M. Troiani, Esquire
TROIANI & GIBNEY, LLP
1171 Lancaster Avenue, Suite 101
Berwyn, PA 19312
*Attorneys for Plaintiff*

Jennifer B. Jordan, Esquire
Paul D. Weller, Esquire
MORGAN LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
*Attorneys for National Enquirer*

Gayle Chatilo Sproul, Esquire
Michael Berry, Esquire
LEVINE SULLIVAN KOCH & SCHULZ LLP
1760 Market Street, Suite 1001
Philadelphia, PA 19103
*Attorneys for The Associated Press*

B. Joyce Thompson Dale, Esquire
204 South Avenue
Media, PA 19063
*Attorneys for Jane Doe Witnesses*

                                                *George M. Gowen III*
                                                George M. Gowen