IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANDREA CONSTAND,                  :    CIVIL ACTION
                                     :    No. 05-1099
            Plaintiff,        :
                                       :
     v.                          :
                                     :
WILLIAM H. COSBY, JR.,        :
                                     :
            Defendant.       :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                     July 6, 2015

       Before the Court is a motion to intervene and obtain access to documents filed under seal during the discovery phase in this matter.[1] Defendant has objected to the unsealing of the documents at issue. For the reasons that follow, the Court will overrule Defendant's objections and unseal the documents.

       Plaintiff Andrea Constand ("Plaintiff" or "Constand") was at the time of the relevant events Director of Operations for the women's basketball program at Temple University. Defendant William H. Cosby, Jr. ("Defendant" or "Cosby") is an internationally known entertainer.

---

[1]      In its order dated June 18, 2015, the Court construed a letter from the Associated Press (ECF No. 99) "as a motion to intervene and obtain access to documents filed under seal" (ECF No. 100).

On March 8, 2005, Plaintiff filed a civil complaint in this Court against Defendant, asserting claims of battery, sexual assault, intentional and negligent infliction of emotional distress, defamation/defamation per se, and false light/invasion of privacy. During the course of discovery, Plaintiff took Defendant's deposition. Excerpts of the deposition as well as several briefs prepared by counsel were filed with the Court in connection with sanctions- and discovery-related motions ("the Documents"). The Court entered a temporary seal removing the Documents from public view pending a full hearing on whether they should be permanently sealed. Before the Court could rule on the motion to seal, the parties settled the case.

Now, nearly ten years later, the Associated Press ("the AP") has requested that the Documents be "unsealed" and made available to the public. Defendant opposes the request. Plaintiff has not asserted objections to the request. The issue before the Court is whether Defendant has shown good cause under Federal Rule of Civil Procedure 26(c) to keep the Documents under seal.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

During the course of discovery, a number of issues arose concerning, inter alia, attorney conduct during depositions, insufficient responses to deposition questions and interrogatories by both Plaintiff and Defendant, and Plaintiff's attempt to compel the National Enquirer to produce certain documents. The parties also disputed whether filings related to said discovery issues--particularly filings incorporating deposition material--should or should not be sealed by the Court.

On November 4, 2005, the Court entered an interim order setting forth how discovery would proceed and temporarily sealing the parties' motions related to the disputes and responses thereto. Order dated Nov. 4, 2005, ECF No. 47. In that order, the Court directed that "[a]ny party opposing the lifting

_____

[2]   Early on in the case, the parties requested broad protective orders. Plaintiff sought to avoid the public disclosure of the identities of a number of Jane Doe witnesses whose testimony may have been admissible pursuant to Federal Rule of Evidence 415. The Court concluded that Plaintiff had not shown "good cause" as required by Federal Rule of Civil Procedure 26(c) and denied the motion. Mem. and Order dated June 2, 2005, at 20, ECF No. 29. On the other hand, Defendant sought to preclude public access to all material obtained during discovery through what essentially would have been a gag order. The Court denied Defendant's motion, finding that he had failed to meet the "good cause" standard by not connecting his expected embarrassment to any specific injury. Id. at 21-22. The Court also determined that a far-reaching gag order was not warranted. Id. at 15. Instead the Court adopted Rule 3.6 of the Pennsylvania Rules of Professional Conduct in a case management order to govern counsel's interaction with the media. See Order dated June 2, 2005, ECF No. 30.

of the seal shall show cause why the seal should not be lifted," id. at 2, and explained that the purpose of the interim sealing and protocol was "to develop a record upon which the Court may calibrate the scales upon which the proper balancing of private and public interests may take place," id. at 3 n.1. It is pursuant to this order that the Documents were initially sealed.

On November 23, 2005, the AP filed a motion to intervene and lift the seal on the filings related to the parties' discovery disputes.[3] See Second Mot. Intervene and Unseal, ECF No. 51. The Court denied the AP's motion without prejudice pending the outcome of discovery. See Mem. and Order dated Jan. 13, 2006, ECF No. 72. In its memorandum, the Court stated that "[i]n the event that the Court grants a protective order supported by specific findings sealing any materials, any interested party will have an opportunity to request to intervene and challenge the ruling granting the protective order at that time." Id. at 12. The Court further stated that "[a]fter the Court rules on the motions to compel and unless the protection of the seal is extended, the seal will lapse." Id. at

---

[3]      The Third Circuit has "determined that media outlets have 'standing to challenge protective orders and confidentiality orders' as long as they can demonstrate that the order is an obstacle to their attempt to obtain access." United States v. Wecht, 484 F.3d 194, 202-03 (3d Cir. 2007) (quoting Pansy v. Borough of Stroudsburg, 23 F.3d 772, 777 (3d Cir. 1994)).

8 (emphasis added); see also id. at 12. However, the matter settled before the parties' depositions were concluded, and thus the Court never revisited the sealing of the Documents.

Nearly ten years later, on December 29, 2014, after more recent allegations of similar misconduct by Defendant gained public attention, the AP wrote the Clerk of Court requesting that the seal be lifted on the Documents[4] pursuant to

---

[4]      The Documents at issue are the following:

- Plaintiff's Motion Concerning Conduct of Defendant's Deposition and Motion for Sanctions (ECF No. 48);

- Defendant's Requests to Compel and Memorandum Concerning Overarching Issues (ECF No. 49);

- Plaintiff's Motion to Compel Discovery (ECF No. 50);

- Defendant's Motion to Strike Plaintiff's Motion Concerning Conduct of Defendant's Deposition and Motion for Sanctions (ECF No. 52);

- Redacted Transcript of Proceedings Held on November 4, 2005 (ECF No. 54);

- Pages 8 and 9 of the Redacted Transcript of Hearing on Telephone Conference Dated November 4, 2005 (ECF No. 55);

- Plaintiff's Reply to Defendant's Requests to Compel and Memorandum Concerning Overarching Issues (ECF No. 57);

- Defendant's Responses to Plaintiff's Motion to Compel and Memorandum Concerning Overarching Issues (ECF No. 58);

- Plaintiff's Response to Defendant's Motion to Strike Plaintiff's Motion Concerning Conduct of Defendant's Deposition and Motion for Sanctions (ECF No. 60);

Local Rule of Civil Procedure 5.1.5, which sets forth a procedure by which documents are unsealed two years after their sealing, subject to party objection and court ruling. See AP Mot. 1-2, ECF No. 99. Accordingly, the Clerk issued a notice to counsel of record in this case on January 12, 2015, informing counsel that the Documents would be unsealed unless objections were filed within sixty days from the date of the notice. Notice to Counsel, ECF No. 97.

---

- Plaintiff's Motion to Compel the National Enquirer's Compliance with Subpoena for Document and Request for Expedited Resolution (ECF No. 61);

- Defendant's Memorandum of Law in Partial Opposition to the Lifting of the Seal Established by Case Management Order 2 (ECF No. 63);

- Defendant's Brief in Opposition to Plaintiff's Motion to Compel the National Enquirer's Compliance with Subpoena for Document and Request for Expedited Resolution (ECF No. 64);

- The National Enquirer's Memorandum of Law in Opposition to Plaintiff's Motion to Compel (ECF No. 65);

- Plaintiff's Motion for Leave to File Reply Memorandum of Law in Response to Defendant's Memorandum in Opposition to Plaintiff's Motion to Compel the National Enquirer's Compliance with Subpoena for Documents (ECF No. 66);

- Plaintiff's Memorandum of Law in Support of the Lifting of the Seal Established by Case Management Order 2 (ECF No. 67); and

- Plaintiff's Motion for Leave to File Reply Memorandum of Law in Response to National Enquirer's Memorandum in Opposition to Plaintiff's Motion to Compel Compliance with Subpoena for Documents (ECF No. 68).

On March 10, 2015, Defendant informed the Court that
he objected to the Documents' unsealing and requested briefing
on the matter, Defendant's Objection, ECF No. 98, and on June
17, 2015, the AP apprised the Court of its challenge to the
sealing and echoed Defendant's request for a briefing schedule,
AP Mot. 1-2.

The Court scheduled a hearing for June 26, 2015, on
the AP's motion and Defendant's objections to lifting the
interim seal impressed upon the Documents by the order of
November 4, 2005. ECF No. 100. The Court further provided that
interested parties seeking access to the Documents could file
briefs in support of or in opposition to the lifting of the seal
by June 24, 2015. Id. Both the AP and Defendant filed briefs, in
support of and in opposition to lifting the seal, respectively
(ECF Nos. 101, 102), and argued their positions at the hearing.
Neither Plaintiff nor any other interested party appeared at the
hearing. This matter is now ripe for disposition.

II. **LEGAL STANDARDS**

    A.   Public Right of Access

"It is well-settled that there exists, in both
criminal and civil cases, a common law public right of access to
judicial proceedings and records." Goldstein v. Forbes (In re
Cendant Corp.), 260 F.3d 183, 192 (3d Cir. 2001). The Third

Circuit has stated that "[t]he public's exercise of its common law access right in civil cases promotes public confidence in the judicial system by enhancing testimonial trustworthiness and the quality of justice dispensed by the court." Littlejohn v. BIC Corp., 851 F.2d 673, 678 (3d Cir. 1988).

However, "[t]he public's common law right to access judicial records 'is not absolute.'" United States v. Wecht, 484 F.3d 194, 208 (3d Cir. 2007) (quoting Littlejohn, 851 F.2d at 678). Rather, when the right attaches, "there is a 'strong presumption' that the public may view the records." Id. "In general, the common law right attaches to any document that is considered a 'judicial record,' which 'depends on whether [the] document has been filed with the court, or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings.'" Id. (alteration in original) (quoting Goldstein, 260 F.3d at 192).

Discovery, on the other hand, has traditionally been conducted by the parties in private, outside of the public's view. See Seattle Times Co. v. Rhinehart, 467 U.S. 20, 33 (1984) ("[P]retrial depositions . . . are conducted in private as a matter of modern practice."). Thus, "[w]hen discovery materials are filed with the trial court, the private nature of discovery comes into conflict with the public's right to access judicial records." Wecht, 484 F.3d at 209. The Third Circuit has resolved

8

this conflict by holding that although "there is a presumptive [common law] right to public access to all material filed in connection with nondiscovery pretrial motions," there is "no such right as to discovery motions and their supporting documents." Leucadia, Inc. v. Applied Extrusion Techs., Inc., 998 F.2d 157, 165 (3d Cir. 1993). Without such a presumption, the party seeking to prevent public access to discovery material--Defendant in this case--must show good cause under Federal Rule of Civil Procedure 26(c) to keep the material away from the public eye.

    B.    Protective Orders Under Rule 26(c)

A party may seek a protective order under Rule 26(c) "on matters relating to a deposition," "for good cause" shown, "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." The party seeking the protective order bears the burden of showing good cause. Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786-87 (3d Cir. 1994). In Pansy, the Third Circuit set forth several factors courts should consider before issuing protective orders, including:

    (1)    whether disclosure will violate any privacy interests;

    (2)    whether the information is being sought for a legitimate purpose or for an improper purpose;

    (3)    whether disclosure of the information will cause a party embarrassment;

(4) whether confidentiality is being sought over information important to public health and safety;

(5) whether the sharing of information among litigants will promote fairness and efficiency;

(6) whether a party benefitting from the order of confidentiality is a public entity or official; and

(7) whether the case involves issues important to the public.

Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995) (citing Pansy, 23 F.3d at 787-91)). The Pansy court also discussed how courts should analyze motions to change or lift protective orders:

> The appropriate approach in considering motions to modify confidentiality orders is to use the same balancing test that is used in determining whether to grant such orders in the first instance, with one difference: one of the factors the court should consider in determining whether to modify the order is the reliance by the original parties on the confidentiality order. The parties' reliance on an order, however, should not be outcome determinative, and should only be one factor that a court considers when determining whether to modify an order of confidentiality.

Pansy, 23 F.3d at 790 (footnote omitted). These factors are "neither mandatory nor exhaustive," but provide a useful framework upon which a court may base its analysis. Glenmede Trust Co., 56 F.3d at 483.

The Third Circuit has emphasized that good cause must be shown by "articulat[ing] a[] specific, cognizable injury from

th[e] dissemination" of the material at issue. Id. at 484.
"Broad allegations of harm, unsubstantiated by specific examples
or articulated reasoning, do not support a good cause showing."
Pansy, 23 F.3d at 786 (internal quotation marks omitted).
Overall, in determining good cause, a court must weigh the
injuries that disclosure may cause against the other party's or
the public's interest in the information. See id. at 787-91.

        Finally, the Third Circuit has stated that "[i]n
determining whether any document or portion thereof merits
protection from disclosure," a court should be mindful that
"continued sealing must be based on 'current evidence to show
how public dissemination of the pertinent materials now would
cause the . . . harm [the party seeking protection] claim[s].'"
Leucadia, 998 F.2d at 167 (quoting Republic of Philippines v.
Westinghouse Elec. Corp., 949 F.2d 653, 663 (3d Cir. 1991)).


## III. DISCUSSION

        The Documents were filed with the Court in connection
with a number of different discovery disputes between the
parties. While the bulk of the Documents consists of legal
arguments advanced by counsel--including counsel's
characterizations of deposition testimony--the Court impressed
all of the Documents with an interim seal. Some of the Documents

directly quote select portions of Defendant's deposition.[5] A number of other Documents simply refer to Defendant's deposition but do not quote from it. Although the Court must decide whether to lift the seal as to all of the Documents, the central issue before the Court--and the one hotly contested by the parties--is

---

[5]      The following Documents contain select portions of Defendant's deposition testimony:

- Pl.'s Mot. Concerning Conduct of Def.'s Dep. and Mot. for Sanctions 5-7, 9, 15-20, 22-24, 27-28, 30-34, 36-37, 39-41, 46-49, 52, and 55 (ECF No. 48);

- Pl.'s Mot. to Compel Disc. 1-2, 5, 10, 16, 18-20, 26, 28, 41-43, and 45-47 (ECF No. 50);

- Pl.'s Reply to Def.'s Reqs. to Compel and Mem. Concerning Overarching Issues 5 (ECF No. 57);

- Def.'s Resps. to Pl.'s Mot. to Compel and Mem. Concerning Overarching Issues 32 (ECF No. 58);

- Def.'s Brief in Opp'n to Pl.'s Mot. to Compel the National Enquirer's Compliance with Subpoena for Doc. and Req. for Expedited Resolution 3 (ECF No. 64);

- Pl.'s Mot. for Leave to File Reply Mem. of Law in Resp. to Def.'s Mem. in Opp'n to Pl.'s Mot. to Compel the National Enquirer's Compliance with Subpoena for Docs. 3-5 (ECF No. 66);

- Pl.'s Mem. of Law in Supp. of the Lifting of the Seal Established by Case Management Order 2 Exs. D & F (ECF No. 67); and

- Pl.'s Mot. for Leave to File Pl.'s Reply Mem. of Law in Resp. to National Enquirer's Mem. in Opp'n to Pl.'s Mot. to Compel Compliance with Subpoena for Docs. Ex. A (ECF No. 68).

whether the quoted excerpts from Defendant's deposition will be released to the public.[6]

Because this case concerns "discovery motions and their supporting documents," id. at 165, it is clear that no presumptive right of public access exists in this matter, see id.[7] Rather, as the parties agreed during oral argument, the burden lies with Defendant--who argues on a "blank slate," unencumbered by the presumption of a public right of access, Hr'g Tr. 29:4, June 26, 2015--to show good cause under Rule 26(c), as informed by Pansy, for why the Documents should be sealed.[8,9] The AP believes that Defendant has failed to show good

---

[6]     Defendant has not contended that the portions of the deposition appearing in the parties' briefs are not true and correct copies of his testimony. There being no apparent issue with the accuracy of the reporting, the Court need not consider it further. The full deposition transcript in this case is presumably in the parties' possession.

[7]     The Leucadia court stated that "a holding that discovery motions and supporting materials are subject to a presumptive right of access would make raw discovery, ordinarily inaccessible to the public, accessible merely because it had to be included in motions precipitated by inadequate discovery responses or overly aggressive discovery demands." 998 F.2d at 164. The Court notes that nowhere has the Third Circuit indicated that a negative presumption (i.e., against a public right of access) attaches to discovery motions and supporting materials, such as Defendant's deposition testimony here.

[8]     The Documents are not technically sealed at this time, given that the Court initially sealed them temporarily in its efforts to resolve the outstanding discovery disputes, and indicated that the temporary seal would lapse if not definitively extended. See Mem. and Order dated Jan. 13, 2006, at 8, 12.

13

cause for why the Documents should be sealed. Defendant, on the

other hand, contends that the <u>Pansy</u> factors weigh heavily in

favor of sealing the Documents. The Court proceeds to balance

---

[9]     The procedural vehicle that the AP used to bring this matter to light once more is Local Rule of Civil Procedure 5.1.5(c), which reads as follows:

> If a document is still sealed at the conclusion of the two-year period [provided in 5.1.5(b)(2)] and the Court has not entered an order continuing its sealed status beyond that time, the Clerk of Court shall notify the attorney for the party having submitted the sealed document at the attorney's address on the docket that the document will be unsealed unless the attorney or the submitting party advises the Clerk within sixty (60) days that said attorney or submitting party objects. If the attorney or submitting party objects to the unsealing of the document or if the Clerk's notification is returned unclaimed, the Court will make a determination, on a case-by-case basis, whether to maintain the document under seal, to unseal it, or to require further notification.

Thus, Local Rule 5.1.5(c) provides a procedure by which documents are automatically unsealed two years after their sealing, unless a party objects and the court orders otherwise.

     Rule 5.1.5 is an administrative rule of procedure which does not set forth a substantive rule of decision. Under it, the Court is afforded broad discretion to determine whether or not documents should remain sealed. The Local Rule--which expressly provides that a "case-by-case" determination must be made with respect to each sealed record, and each portion thereof--reflects a general policy that access to court records serves the public interest. <u>See</u> United States Courts' Judicial Conference, <u>Policy on Sealed Cases</u>, United States Courts (Sept. 13, 2011), http://www.uscourts.gov/news/2011/09/13/conference-approves-standards-procedures-sealing-civil-cases-0 (available as PDF) (setting forth specific criteria to be met before sealing a case, and providing that a civil file should be sealed only in "extraordinary circumstances" and should be unsealed once those extraordinary circumstances have passed).

the relevant factors, grouping them together as it deems
appropriate.

    A.   <u>Privacy Interests and Legitimate Purpose</u>

      Justice Louis Brandeis famously defined privacy as
"the right to be let alone." <u>Olmstead v. United States</u>, 277 U.S.
438, 478 (1928) (Brandeis, J., dissenting). Defendant has
asserted potentially significant privacy interests in this
matter--namely, the fact that disclosing his deposition
testimony would reveal intimate knowledge about his sex life,
health, medical history, prescription use, financial affairs,
and personal relationships. Def.'s Br. 9.

      The Supreme Court has recognized that "discovery . . .
may seriously implicate privacy interests." <u>See Seattle Times
Co.</u>, 467 U.S. at 35. However, the precise contours of a party's
privacy interest may expand or contract depending on the
public's interest in either the party or the information at
issue. <u>See Pansy</u>, 23 F.3d at 787.

      Initially, it is the scope of this privacy interest
that the Court must define in this case. The Third Circuit has
recognized a curtailment of this interest for persons holding
public office. <u>See id.</u>[10] Although it has not expressly extended

---

[10]     <u>See also Shingara v. Skiles</u>, 420 F.3d 301, 303-04 (3d
Cir. 2005) (concerning the Pennsylvania State Police); <u>Pansy</u>, 23
F.3d at 776 (concerning the government of the Borough of

this principle to "public figures" outside the category of
office holders, <u>Pansy</u> and its progeny suggest that the privacy
interest may be diminished when a party seeking to use it as a
shield "is a public person subject to legitimate public
scrutiny." <u>Id.</u>

Although Defendant is a public person in the sense
that his name, fame, and brand are worldwide in scope, he does
not surrender his privacy rights at the doorstep of the
courthouse. Were this so, well-known nongovernmental public
figures, visible in the public eye but pursuing strictly private
activities, would be subject to spurious litigation brought
perchance to gain access to the intimate details of their
personal lives. Under these circumstances, the potential for
abuse is high.

This case, however, is not about Defendant's status as
a public person by virtue of the exercise of his trade as a
televised or comedic personality.[11] Rather, Defendant has donned
the mantle of public moralist and mounted the proverbial

_____

Stroudsburg); <u>United States v. Smith</u>, 776 F.2d 1104, 1114 (3d
Cir. 1985) ("[T]he public has a substantial interest in the
integrity or lack of integrity of those who serve them in public
office.").

[11]     <u>Cf., e.g., Paisley Park Enters., Inc. v. Uptown
Prods.</u>, 54 F. Supp. 2d 347, 349 (S.D.N.Y. 1999) (allowing
Prince's deposition to be videotaped with restrictions, after
noting that privacy concerns outweigh the public's "interest in
every imaginable detail about the life of a rock star").

electronic or print soap box to volunteer his views on, among

other things, childrearing, family life, education, and crime.[12]

To the extent that Defendant has freely entered the public

square and "thrust himself into the vortex of th[ese] public

issue[s]," Gertz v. Robert Welch, Inc., 418 U.S. 323, 352

(1974), he has voluntarily narrowed the zone of privacy that he

is entitled to claim.[13]

---

[12]     See, e.g., Pound Cake Speech, Wikipedia,
https://en.wikipedia.org/wiki/Pound_Cake_speech (last visited
July 6, 2015); Dr. Bill Cosby Speaks at the 50th Anniversary
Commemoration of the Brown vs. Topeka Board of Education Supreme
Court Decision, www.eightcitiesmap.com/transcript_bc.htm (last
visited July 6, 2015); Bill Cosby Tells Don Lemon Black Men Need
to Raise Their Kids, Has Message for "No-groes," Mediaite (Sept.
14, 2013), www.mediaite.com/tv/bill-cosby-tells-don-lemon-black-
men-need-to-raise-their-kids-has-message-for-no-groes; Victor
Fiorillo, Bill Cosby to Temple Grads: Algebra Easier than Cotton
Picking, Philadelphia Magazine (May 21, 2014), www.phillymag.
com/news/2014/05/21/bill-cosby-temple-grads-algebra-easier-
cotton-picking.

[13]     Defendant offers a number of other cases in support of
his position, but each is readily distinguishable. See Morgan v.
Wal-Mart Stores, Inc., No. 14-4388, 2015 WL 3882748 (D.N.J. June
23, 2015); People v. Jackson, 27 Cal. Rptr. 3d 596 (Cal. Ct.
App. 2005); Jones v. Clinton, 12 F. Supp. 2d 931 (E.D. Ark.
1998); Damiano v. Sony Music Entm't, Inc., 168 F.R.D. 485
(D.N.J. 1996). In Morgan, the court confronted a sealed
application for attorneys' fees that was collateral to the
central issues of the case, 2015 WL 3882748, at *1; the court in
Jackson heavily weighed the privacy interests of minors and the
risk of prejudice to a fair trial, 27 Cal. Rptr. 3d at 599-600;
the Clinton court unsealed all records at issue, except for
those revealing the identities of Jane Does, 12 F. Supp. 2d at
934-35; and in Damiano, the court was concerned that the
plaintiff sought access for an improper commercial purpose, 168
F.R.D. at 491-93. None of these considerations is present in
this case.

Furthermore, as it relates to the claims in this case, the allegations (which are of course just that, and have not been proven) are already in the public domain. The Complaint is explicit in detail. See Am. Compl. ¶¶ 8-27, ECF No. 41. A number of other persons have publicly alleged similar conduct on the part of Defendant in the media and in at least two pending civil actions.[14] In turn, Defendant has responded publicly with denials as to the veracity of the claims and questioned the possible motives of his accusers.[15] By joining the debate about the merits

---

[14]    See Green v. Cosby, No. 14-30211 (D. Mass.) (filed Dec. 10, 2014); Huth v. Cosby, No. BC565560, (Cal. Super. Ct.) (filed Dec. 2, 2014); see also, e.g., Chris Perry, New Cosby Accuser: "Do You Remember Me?," CNN (Mar. 22, 2015), www.cnn.com/2015/02/24/us/cosby-accuser-heidi-thomas/index.html; Manuel Roig-Franzia et al., Bill Cosby's Legacy, Recast: Accusers Speak in Detail About Sexual-Assault Allegations, Washington Post (Nov. 22, 2014), http://www.washingtonpost.com/ lifestyle/style/bill-cosbys-legacy-recast-accusers-speak-in-detail-about-sexual-assault-allegations/2014/11/22/d7074938-718e-11e4-8808-afaa1e3a33ef_story.html; Robert Huber, "Cosby Threw Me on the Bed," Philadelphia Magazine (Nov. 1, 2006), www.phillymag.com/articles/cosby-threw-me-on-the-bed.

[15]    See Barry Levine, Bill Cosby Ends His Silence: My Story!, Nat'l Enquirer, Mar. 2, 2005, at 29, 29-30. At oral argument, Defendant's counsel insisted that Defendant's interview with the National Enquirer did not cover the allegations in the underlying case. Hr'g Tr. 55:11-56:3. However, that characterization is not accurate, as a review of the article in question reveals. See Levine, supra, at 29-30 (discussing the allegations). Defendant has also continued to comment publicly on the allegations in other similar cases. See, e.g., Jackie Willis, Bill Cosby Addresses Allegations: "I've Never Seen Anything Like This," ETOnline (May 15, 2015), http://www.etonline.com/news/164575_bill_cosby_first_tv_intervie w_since_sex_scandal/; Nick Vadala, Bill Cosby Jokes About Sexual Assault Allegations Facing Him at Second Canadian Tour Stop,

of the allegations against him, he has further diminished his entitlement to a claim of privacy.

Moreover, the AP's interest in obtaining Defendant's depositions is legitimate. The purpose for which the deposition is sought (and surely will be distributed to the world) is not merely commercial gain[16] or prurient interest[17] in exposing the details of Defendant's personal life. Nor is it simply a matter collateral to the issues in the lawsuit.[18] Rather, the stark contrast between Bill Cosby, the public moralist and Bill Cosby, the subject of serious allegations concerning improper (and perhaps criminal) conduct, is a matter as to which the AP--and by extension the public--has a significant interest.

Finally, the nature of the allegations--sex, drugs, seduction, etc.--do not cloak this case, including the

---

Philly.com (Jan. 8, 2015), http://www.philly.com/philly/blogs/trending/Bill-Cosby-jokes-about-sexual-assault-allegations-at-second-Canadian-tour-stop.html.

[16]      See, e.g., Damiano, 168 F.R.D. at 491-93 (finding in favor of Bob Dylan's privacy interests, in light of plaintiff's improper commercial purpose of directly monetizing revealed material).

[17]      See, e.g., Paisley Park Enters., Inc., 54 F. Supp. 2d at 349 (holding that the public's "interest in every imaginable detail about the life of a rock star" did not outweigh Prince's privacy concerns).

[18]      See, e.g., Morgan, 2015 WL 3882748, at *2 (concluding that the "public has no legitimate interest in gaining access to . . . confidential information" regarding settlement-related matters collateral to the central issues of the case).

depositions of one of the parties, with an automatic or per se
seal of silence. Were it otherwise, the distinction would create
a category of cases which, because of the inflammatory nature of
their subject matter, would always lie outside public scrutiny.
This point is particularly relevant here where the allegations
of improper conduct are not collateral to, or background
information in, the case but rather form its very essence.

Given the circumstances of this case, the Court
concludes that Defendant has a diminished privacy interest and
that this diminished interest is outweighed by the AP's and the
public's interest in gaining access to his deposition testimony.

B.   Embarrassment

The Third Circuit has stated that, "because release of
information not intended . . . for public consumption will
almost always have some tendency to embarrass, an applicant for
a protective order whose chief concern is embarrassment must
demonstrate that the embarrassment will be particularly
serious." Cipollone v. Liggett Grp., Inc., 785 F.2d 1108, 1121
(3d Cir. 1986); see also Shingara v. Skiles, 420 F.3d 301, 307
(3d Cir. 2005) (requiring a showing of a "risk that particularly
serious embarrassment will result from the release of the
documents" (internal quotation marks omitted)). Defendant has
not done so here. In his brief, he worries that release of the

20

deposition testimony, "which delves into the most intimate subjects imaginable, would generate a firestorm of publicity." Def.'s Br. 10. At oral argument, Defendant's counsel stressed that the Court simply must recognize how embarrassing this all would be for Defendant. See Hr'g Tr. 32:1-34:22.

Although of course intense media scrutiny into one's private matters would almost always cause embarrassment, cf., e.g., Cipollone, 785 F.2d at 1121, this is the type of general allegation that does not satisfy Pansy. Defendant has not specifically shown why his embarrassment would be "particularly serious" at this time and in the context of this case.[19] In short, Defendant has failed to show what specific and severe injuries he would suffer upon release of the deposition testimony at this time which he has not already experienced.[20]

The Court finds that Defendant has failed to make the necessary showing that disclosure will cause him a "clearly defined and serious injury" with respect to Pansy's

---

[19]     Defendant suggests that he has satisfied the specificity requirement by his linking of the "threat [of serious embarrassment] to specific discovery material." Def.'s Br. 10. However, this mischaracterizes the legal standard, which requires specificity of injury, not merely that of the material to be sealed. See Pansy, 23 F.3d at 786.

[20]     The Court recognizes that Defendant is operating under the constraint of not being able to detail the information in the deposition testimony. However, this does not remove his burden of establishing what "particularly serious" embarrassment he would suffer.

embarrassment factor. <u>Pansy</u>, 23 F.3d at 786 (internal quotation marks omitted).

    C.   <u>Reliance</u>

        Defendant contends that releasing the deposition testimony now would undermine the parties' reliance on their private settlement agreement, in which, according to Defendant's representation (as it has not been filed of record in this action), the parties agreed to keep all discovery material confidential. Def.'s Br. 12-13. This reliance is not justified for two reasons. One, the Court was never presented with the settlement agreement or asked to retain jurisdiction over the enforcement of the confidentiality portion of that agreement. Two, when the case settled, the Court was not asked to permanently seal the discovery material, which at that time was subject to an interim sealing order. Because Defendant did not seek the Court's imprimatur on his intent to keep the Documents from ever seeing the light of day, his reliance that the discovery materials would remain out of the public eye was misplaced.[21]

_____

[21]    Defendant also suggests that if the Court released the deposition testimony now, it would have a chilling effect on other settlement agreements because parties would not be able to rely on the persistence of confidentiality. <u>See</u> Def.'s Br. 12-13. However, as the Court noted above, parties can ensure the permanency of a seal by simply requesting a court order to that

    D.    Efficiency and Fairness

        Defendant argues specifically that releasing his
deposition testimony now "would impact jury selection in [a]
case currently proceeding against him in the District of
Massachusetts." Id. at 13. However, the Third Circuit is
"ordinarily . . . confident that a district court will be able
to select a fair and impartial jury in cases even where there
has been pre-trial media attention to the case." Shingara, 420
F.3d at 307. The Shingara court refused to countenance the
generalized concern that disclosure would affect a fair and
impartial jury where "the defendants did not present any
evidence to support their argument, drawn from the information
already published, that there will be difficulty selecting a
jury in this case or evidence that if additional information is
published there would be such difficulty." Id.

        Defendant attempts to distinguish Shingara from the
instant case on the theory that "[t]he Court now has before it
specific examples of prejudicial discovery material and a known
record of pretrial publicity on matters directly at issue in the
Massachusetts proceeding." Def.'s Br. 13. But the specificity of

---

effect (provided good cause is shown). Moreover, as the AP's
counsel pointed out during oral argument, parties settle for
many reasons other than confidentiality. See Hr'g Tr. 10:6-20.
The "chilling effect" argument therefore does not carry much
analytical weight.

the discovery material and the pretrial publicity does not explain what about Defendant's deposition testimony will interfere with the selection of an impartial jury in the Massachusetts case. In other words, Defendant does not show why or how the Court's release of additional documents here will overcome the district court's ability to choose a fair jury. Therefore, the Court relies on Shingara and finds that Defendant has failed to show a specific, clearly defined injury with respect to Pansy's fairness and efficiency factor. Pansy, 23 F.3d at 786.[22]

* * *

At bottom, it is not unfair to Defendant for the Court to unseal the Documents, including those portions of the deposition testimony that were filed in this case. Defendant is highly educated (he earned a doctoral degree from the University of Massachusetts).[23] He is a successful professional, accustomed to performing in the public eye. He appeared at his deposition in a federal court case with able legal counsel who actively interposed objections and directed Defendant not to answer when

---

[22]    Any other concerns of efficiency and fairness are not relevant under the circumstances of this case, as some ten years have elapsed since the parties settled the matter without court involvement.

[23]    See Gail Jennes, That Doctorate After Bill Cosby's Name Is No Honorary Freebie, People Magazine, June 6, 1977, at 30, available at www.people.com/people/archive/article/0,,20068008,00.html.

he thought the questions were improper. At the end of this exercise, punctuated by vigorous verbal combat between counsel, what emerged from those portions of the deposition testimony that were filed with the Court is Defendant's version of certain of the events surrounding this lawsuit--in his own words.

**IV.  CONCLUSION**

After balancing all of the pertinent <u>Pansy</u> factors,[24] the Court finds that Defendant has pervasively failed "to articulate any specific, cognizable injury" that would result upon the Documents' release to the public, <u>Glenmede Trust Co.</u>, 56 F.3d at 484, and therefore has not carried his burden of showing good cause under Rule 26(c) and <u>Pansy</u>. <u>Pansy</u>, 23 F.3d at 787-91. Accordingly, the Court will overrule Defendant's objections and order the Documents to be unsealed forthwith.[25] An appropriate order follows.

---

[24]     The remaining <u>Pansy</u> factor, relating to public health and safety, <u>see Pansy</u>, 23 F.3d at 788, is not applicable to this case.

[25]     Defendant appears to request that, should the Court deny his request to keep the Documents at issue under seal, he be allowed to redact them before they are released. <u>See</u> Hr'g Tr. 43:13-47:20. For the same reasons the Court provides above in support of its decision to unseal the Documents, it will deny Defendant's request to redact them.