IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANDREA CONSTAND              :
      Plaintiff             : CIVIL ACTION
                           :
      v.                 : NO. 05-CV-1099
                           :

WILLIAM H. COSBY, JR.       :
      Defendant          :

---

**PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF AND OTHER
SANCTIONS FOR VIOLATIONS OF CONFIDENTIAL SETTLEMENT AGREEMENT
AND MOTION TO STRIKE FOOTNOTE 5 IN DEFENDANT'S BRIEF FILED AT
DOCUMENT NUMBER 102**

Plaintiff Andrea Constand by her undersigned counsel make this her Motion for

Injunctive and other Equitable Relief for Violations of the Parties' Settlement Agreement and

Motion to Strike Footnote 5 in Defendant's Brief Filed at Document Number 102 and avers as

follows:

1.      Jurisdiction over this matter is vested in the Court by agreement of the parties

memorialized in a certain confidential settlement agreement.

2.      Plaintiff seeks relief from the provisions of the agreement which prohibit her

from making fair response to the numerous and inaccurate statements and innuendos publicized

by defendant and his "camp" as well as correcting revisionist history promulgated by individuals

peripheral to the suit.

3.      On March 8, 2005, Plaintiff Andrea Constand filed an action against William

Cosby in which she alleged that while visiting Cosby, whom she considered to be a mentor and

grandfather figure, he gave her an unknown substance which he misrepresented was a "herbal

1

remedy" for a cold she had.  Cosby then sexually assaulted her while she was in a semi-conscious

state which left her unable to defend herself.

      4.      On or about October 3, 2006,  Plaintiff entered into a Confidential Settlement

Agreement, (the agreement), whereby the parties settled the case.

      5.      It was agreed that the amount of the settlement would remain confidential and that

neither Cosby nor his undersigned counsel would disclose any defenses or make any public

appearances or interviews about the information in 14(A) of the agreement, which includes not

only Ms. Constand's allegations but also the allegations made by the so called Jane Doe

witnesses. The parties further agreed that they would not assist anyone else in making such

statements.  In addition, the parties agreed that disputes regarding violations of the agreement

would initially be submitted to Magistrate Judge Thomas J. Rueter.

      6.      Defendant is a well known celebrity who employs numerous attorneys, publisits,

agents and other individuals capable of manipulating the media.

      7.      Defendant has admitted to such media manipulation in the past in that he

agreed to an exclusive interview with the National Enquirer in exchange for them to not print a

story they had written as a result of an interview with one of Cosby's accusers. (See. Document

50, p. 49)

      8.      Plaintiff is devoid of such resources and is incapable of policing defendant and

his surrogates to insure their compliance with the terms of the agreement.

      9.      At the time of the litigation between the parties 13 women came forward as

Rule 415 witnesses.  Each of the women claimed to have been assaulted in a manner similar to

the assault perpetrated upon plaintiff, that is, each claimed that Cosby gave them a drug and then

had sexual contact with them while they were unable to respond to the acts being perpetrated upon them. Although some of the women engaged in consensual relations with Cosby, their accounts substantiated defendant's alleged predilection for somnophilia.

10.     Although the women were known as the "Jane Does", Cosby successfully petitioned the Court to permit their names to be made public.

11.     On or about, November 16,  2014, Cosby by his attorney issued the statement which is attached hereto as Exhibit A.  In that statement, Cosby claimed the allegations of his accusers had been "discredited."       Exhibit A is reprinted from one of multiple media that published the statement from "Cosby's camp."

12.     Plaintiff's counsel immediately protested the statement as a violation of the agreement and a joint statement was issued which reads:   "The statement released by Mr. Cosby's attorney over the weekend was not intended to refer in any way to Andrea Constand. As previously reported, differences between Mr. Cosby and Ms. Constand were resolved to the mutual satisfaction of Mr. Cosby and Ms. Constand years ago.      (See Exhibit B) Despite the retraction, most of the media outlets publicized the first statement, not the second.

13.     On November 23, 2014, Cosby issued a statement saying he would not respond to innuendos. (See Exhibit C)

14.     On November 20, 2014, Cosby asked AP to not use an statement in which he questioned their "integrity" for asking about the rape accusations. (Exhibit D)

15.     As the momentum of women coming forward to recount their experiences increased, Cosby by his various representatives have engaged in repeated violations of the confidentiality agreement.

16.     In a December 7 , 2014, defendant's counsel Patrick O'Connor, Esquire was quoted as giving his opinion s to Cosby's guilt or innocence, "If this conduct is true, Bill Cosby has major issues," he said. "Bill's got to live with that.  But maybe, if he's innocent and the relations were consensual–wow."  Again counsel for plaintiff objected. (See Exhibit E)

17.     On December 14, 2014, defendant's wife compared the accusations against her husband to a discredited article about an alleged rape. (See Exhibit F)

18.     Since November, 2014, approximately 49 women have come forward to publically allege sexual misconduct perpetrated upon them by Cosby.

19.     Three women including two whom were Rule 415 witnesses filed suit against Cosby in Massachusetts.

20.   On June 5, 2015 the Massachusetts plaintiffs issued a subpoena to co-counsel, Dolores M. Troiani. Cosby objected to the subpoena and the Honorable Court issued a stay while a Motion to Dismiss filed by Cosby was pending in the Court in Massachusetts.

21.     On or about June, 2015, The Associated Press filed a motion to unseal the pleadings in the instant case

22.     On June 6, 2015, defendant  filed a Brief in Opposition to the Motion to Unseal and in that brief at footnote 5, defendant accused counsel of violating F. R. Civ. Proc. 11 by averring that counsel made "misrepresentations as to Questions 2, 9, 10, 15, 26 and 41."(Document 102 at p. 14)

23.     Plaintiff's counsel wrote to each of defendant's counsel of record and demanded that the footnote be stricken in that 1) the brief failed to reveal that on January 31, 2006, the Honorable Eduardo C. Robreno ordered defendant to answer the questions at  issue, 2) the

4

footnote is scandalous and impertinent material in that it is immaterial and inappropriate to the proof of the cause of action, 3) its sole purpose seems to be to soil the reputations of plaintiff's counsel in a public forum where counsel has no ability to defend themselves, 4) it violates the confidentiality agreement in that defendant revealed information which was not public prior to the filing. (Exhibit E)

24.     Cosby's representatives refused to withdraw the footnote.  It now remains a public accusation, in keeping with Cosby's style of branding every woman who has taken a position adverse to Cosby as a liar.  In this instance he did so in a brief so that there is no recourse against it, but the intercession of the Court requested in this motion.

25.     On July 6, 2015, the Honorable Court unsealed the pleadings in this case.

26.     That evening ABC News reported that "Cosby's Camp" had issued the following statement: "The only reason Mr. Cosby settled was because it would have been embarrassing in those days to put all those women on the stand and his family had no clue.  That would have been very hurtful."

27.     Plaintiff's counsel immediately contacted ABC News and requested a copy of the statement.   In response, counsel received the e-mail which is attached hereto as Exhibit G.

28.     ABC News, a respected news outlet claims it cannot determine the author of the statement.

29.     It is believed and therefore averred that at least one of Cosby's many lawyers has stated that he did not release the statement. Nonetheless, the statement has been repeated in numerous media outlets and ABC News attributes it to "Cosby's Camp."

30.     Cosby's behaviors have caused plaintiff unwanted and overwhelming media attention, which has detrimentally affected her.  On July 7, 2015, a reporter "ambushed" her at her place of business, took her picture and the "quoted" her in the newspaper.

31     Throughout this ordeal plaintiff has denied all requests for interviews in spite of the fact the Cosby himself has given a rather incoherent interview and used members of his family and others as surrogates to speak for him.  On May 15, 2015, Cosby appeared on ABC News and was asked if he was concerned the allegations would overshadow his message to improve education, he said: "I've been in this business 52 years. I've never seen anything like this. And reality is the situation. And I, I can't speak." (See Exhibit G)

32     Because the unsealed pleadings do not reveal the answers to the questions to which there were objections, and to which defendant was eventually ordered to provide, the public is left with the impression, as some commentators have opined, that the seminal question of his admission as to administering quaaludes to sex partners was taken out of context.

31.     Because there are so many undisclosed spokesmen for Cosby, and because of Cosby's proven record of press manipulation, plaintiff does not know if the commentators are part of "Cosby's Camp."

33.     Because of plaintiff's counsel's inability to respond, the allegations in footnote 5 in defendant's brief remain in the public record.  They were clearly intended as a further manipulation of the public's impression of the merit of plaintiff's claims and the character of her counsel.

34     Plaintiff has come to the realization that she once again must defend herself in the forum chosen by defendant.

6

35      In that defendant has chosen to ignore the confidentiality provisions of the

settlement agreement, Plaintiff requests that this Honorable Court release the entire deposition

transcripts and further release plaintiff and her counsel from those same provisions which

defendant has chosen to ignore.

36      There can be no doubt  that each of the women about whom Cosby was

questioned in his deposition have an intense interest in discovering what he said about them.[1]

37      Further, in that some of them have now brought suit against him or are

contemplating suit against him they have a right to determine what if anything can be used as

evidence in their respective cases.  It also relieves plaintiff's counsel as custodian of the

information from being embroiled in litigation to which neither they nor their client is a party.

38.      But for Cosby's repeated violations of the confidentially agreement and  attempt

to sway public opinion in his favor this motion would not have been necessary.  Defendant has

opened the door to the relief sought by his continuing actions and those of his "camp."

39.      It is a violation of the confidentiality agreement that defendant should be able to

use the agreement in his defense while plaintiff is prohibited from responding.

40.      Plaintiff seeks to have the entire deposition and settlement agreement released to

the public so that the public can make a determination as to whether or not the statements and

questions were taken out of context.

41.      It is believed and therefore averred the release of these documents will assist other

---

[1] Plaintiff's counsel has been able to contact 9 of the 13 women and alert them that this
motion would be filed and that there names may be revealed..  It is believed that one of the Jane
Does is deceased. Because of the agreement, none of the women could be told what was said
about them.  Of the remaining ones we were able to contact, none have voiced any objection.

women who have been victimized and bring awareness to the fact that sexual assault is not just committed with a gun or knife but is also committed by mentors who engage in exploitative behaviors.

WHEREFORE, Plaintiff prays this Honorable Court to negate the confidentiality portions of the settlement agreement, to strike footnote 5 of Document 102, and grant such equitable relief as the Court deems appropriate.

Respectfully submitted,

Dolores M. Troiani, Esquire
Troiani & Gibney, LLP
1171 Lancaster Avenue, Suite 101
Berwyn, PA 19312

Bebe H. Kivitz, Esquire
Jacobs Kivitz & Drake LLC
1525 Locust Street
12th Floor
Philadelphia, PA 19102

Attorneys for Plaintiff