**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANDREA CONSTAND, | : | |
| | : | |
| Plaintiff, | : | |
| | : | No. 05-cv-1099 |
| v. | : | |
| | : | |
| WILLIAM H. COSBY, JR., | : | |
| | : | |
| Defendant. | : | |

**ORDER**

AND NOW, this _____ day of _____, 2015, upon

consideration of Plaintiff's Motion for Injunctive Relief, Defendant's opposition thereto, and

Defendant's Motion to Strike, it is hereby ORDERED and DECREED that Plaintiff's Motion is

DENIED and Defendant's Motion is GRANTED. Accordingly, the Clerk is DIRECTED to

STRIKE from the record Plaintiff's Motion for Injunctive Relief (ECF Doc. 107) and any

attachments or exhibits thereto.

_____
Robreno, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANDREA CONSTAND, | : | |
| | : | |
| Plaintiff, | : | |
| | : | No. 05-cv-1099 |
| v. | : | |
| | : | |
| WILLIAM H. COSBY, JR., | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S MOTION FOR
INJUNCTIVE RELIEF**

Defendant William H. Cosby, Jr., files this motion to strike Plaintiff's motion for injunctive relief (ECF Doc. 107). For the reasons set forth in the accompanying brief in support hereof, which is fully incorporated herein, Plaintiff's motion should be denied, Defendant's motion should be granted, and Plaintiff's motion for injunctive relief (ECF Doc. 107), and any attachments or exhibits thereto, should be struck from the record.

Dated: July 21, 2015

/s/ Patrick J. O'Connor
Patrick J. O'Connor (No. 13086)
George M. Gowen III (No. 83210)
Matthew L. Bleich (No. 208069)
Michael P. Zabel (No. 310278)
COZEN O'CONNOR
One Liberty Place
1650 Market Street
Philadelphia, PA  19103
215.665.2000

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

ANDREA CONSTAND,          :
                                     :
              Plaintiff,        :
                                     :        No. 05-cv-1099
       v.                     :
                                     :
WILLIAM H. COSBY, JR.,    :
                                     :
             Defendant.     :

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION TO STRIKE AND IN OPPOSITION
<u>TO PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF</u>**

       Defendant William H. Cosby, Jr., respectfully submits this memorandum of law, in

support of his Motion to Strike Plaintiff's Motion for Injunctive Relief, and also in opposition to

Plaintiff's motion.

<u>**INTRODUCTION**</u>

       The timing of Plaintiff's July 8, 2015 motion reflects an attempt on her part to ride on the

coattails of the barrage of inaccurate and negative media attention that followed this Court's July

6, 2015 release of excerpts from Defendant's deposition. Those deposition excerpts included

Defendant's candid testimony that he had had an extramarital affair with one of the Rule 415

Witnesses in the 1970's, and that, as part of that affair, she took Quaaludes offered by Defendant.

(Doc. #48, at 15.)  Those excerpts did *not*, however, contain *any* testimony that Defendant

engaged in any non-consensual sex or gave the Rule 415 Witness (or anyone else) Quaaludes

without her knowledge or consent.  Indeed, Quaaludes were a highly popular recreational drug in

the 1970's, labeled in slang as "disco biscuits," and known for their capacity to increase sexual

1

arousal.  There are countless tales of celebrities, music stars, and wealthy socialites in the 1970's willingly using Quaaludes for recreational purposes and during consensual sex.  Yet, upon the unsealing of those excerpts, the media immediately pounced, inaccurately labeling the released testimony as Defendant's "confession" of "drugging" women and assaulting them.[1]  Reading the media accounts, one would conclude that Defendant has admitted to rape.  And yet Defendant admitted to nothing more than being one of the many people who introduced Quaaludes into their consensual sex life in the 1970's.  Especially now that Defendant's entire deposition is in the public domain, it is all the more obvious that the media, armed with only one side of the story, cavalierly misinterpreted Defendant's testimony.  Emboldened by the media's one-sided reporting, Plaintiff has now filed a Motion that is a barely-veiled attempt to continue her and her counsel's campaign against him in the public eye, despite having settled her actual claim against him and having agreed to say no more.

In sum, Plaintiff argues in her motion that, because other women accused Defendant after this case was settled—causing publicity and generating benign, non-substantive comments from Defendant and his counsel—her crucial promise to Defendant of confidentiality should simply be voided.  In this obvious attempt to smear Defendant, Plaintiff even goes so far as to claim that she, as opposed to Defendant, is the victim of the current barrage of negative publicity about Defendant.

As she states in her motion, Plaintiff's specific goal is to be permitted to release the entirety of Defendant's deposition transcript to the media.  As the Court already knows, Plaintiff already got what she wanted.  On or about July 18, 2015, Plaintiff's own hired court reporter

---

[1]  For example, *Vanity Fair* reported, "The comedian admitted to drugging women in a 2005 deposition."  (*See* Ex. A.)  *Variety*'s headline was "Bill Cosby Admits to Drugging Women for Sex."  (*See* Ex. B.)  The *New York Daily News* claimed Defendant admitted:  "I drugged gals for sex."  (*See* Ex. C.)

turned Defendant's *entire*, near 1,000-page, deposition transcript over to the media, without a word to Defendant.  The media now has published the transcript worldwide.  This occurred despite Plaintiff's contractual obligation to prevent it.  And this occurred after the Court and Defendant expended significant resources in motion practice over whether motions containing just *some* of Defendant's deposition would become public, and after Judge Padova ordered that Plaintiff's counsel must not turn over Defendant's deposition to certain third-parties seeking it by subpoena.  This massive breach of protocol and of the parties' settlement agreement dwarfs the petty complaints Plaintiff makes in her Motion.

In any event, as is explained below, Plaintiff's accusations against Defendant are incorrect and overstated, and Plaintiff has suffered no injury.  In fact, it is she, and her counsel, who have violated the Settlement Agreement, enabling and fomenting negative—and largely inaccurate—publicity against Defendant.  Plaintiff and her counsel should be sanctioned, and her request for equitable relief should be denied because of her unclean hands.

## FACTUAL BACKGROUND

This case, now closed, was a sexual assault and defamation case between two individuals. Plaintiff claimed that she accepted and ingested pills from Defendant, believing them to be an "herbal remedy of some sort."  She claimed that the pills incapacitated her, and that Defendant sexually assaulted her while she was incapacitated.  Defendant denied these allegations.

Plaintiff professed that, at trial, she would offer testimony from 13 additional women who would accuse Defendant of similar prior acts.  These women became known as the "Rule 415 Witnesses."  Some of the Rule 415 Witnesses kept their names and allegations confidential and were identified as "Jane Does."  Others revealed their names and stories to the public. Defendant did not, as Plaintiff represents, "successfully petition[] the Court to permit" the Jane

Does' names "to be made public."  Rather, Plaintiff forced Defendant to move the Court to require Plaintiff to reveal their names to *him* in confidential discovery.  Defendant and his counsel took care throughout the case and after to keep those names confidential.

From the outset, Plaintiff and her counsel made it clear that they would use publicity and the media to attack Defendant and to pressure him into a settlement.  Early in the case, the Court adopted Pennsylvania Rule of Professional Conduct 3.6, to remind Plaintiff's counsel of their obligations not to make certain extrajudicial statements to the press.  (*See* Doc. #30.)  In an October 6, 2005 letter to the Court, Plaintiff's counsel professed her intent to publish the discovery from this case, thus providing Plaintiff "a public forum in which to clear her name."  Before the case ended, Plaintiff argued that "the seal should be lifted so that Plaintiff may be vindicated."  In fact, the judicial activity in this case was not on the merits but instead was largely *about* publicity—whether discovery would be kept confidential (as is traditional), whether discovery motions would be sealed, whether protective orders would be entered.  At every turn, Plaintiff fought Defendant's attempts to avoid publicity of the case.

On October 16, 2006, the parties and their counsel entered into a "Confidential Settlement Agreement and General Release" (the "Settlement Agreement").[2]  The agreement required Plaintiff, her parents, and her counsel not to disclose or to comment on "any aspect of this LITIGATION," including the allegations in the case and any information they learned through discovery in this case or through the prior criminal investigation by the Montgomery County District Attorney and the Cheltenham Township Police Department.  (*See* Ex. D,

---

[2] The Settlement Agreement itself was to be kept confidential.  The agreement provided an exception, however, allowing the parties to disclose the terms of the agreement to a court, should the agreement become the subject of litigation, but only to the extent necessary.  (See Ex. D, O'Connor Decl. ¶ 3.)  Because Plaintiff's Motion initiates litigation about the confidentiality terms of the agreement, those terms may be noted here.

4

O'Connor Decl. ¶ 3.)  The Settlement Agreement also required Plaintiff and her counsel to "use their best efforts to ensure that their respective . . . consultants, agents, . . . and vendors comply with the confidentiality provisions" of the agreement.  (*See id.*)  Having procured an end to this case, Defendant and his counsel agreed to the same confidentiality terms.

In 2014, newly public allegations surfaced against Defendant, and some of his accusers have sued him, in various jurisdictions.  Two of the former Rule 415 Witnesses, Tamara Green and Theresa Serignese, have sued Defendant in the United States District Court for the District of Massachusetts, in a proceeding captioned *Green et al., v. Cosby* ("Green").  Defendant, while careful to limit public comment, has responded briefly to media questions about the new allegations, as has his counsel.

Meanwhile, Plaintiff and her counsel, with settlement in hand, are intent on reneging on what they promised Defendant—confidentiality and finality—and depriving Defendant of his end of the bargain.  As long ago as February 2014, Plaintiff, in response to an article about this case, "tweeted" that, "I won't go away, there is a lot more I will say."  (*See* Ex. E.)  In March 2014, she added, "It's not that everybody just forgot about [this case,] truth is nobody cared."  (*See id.*)  On July 6, 2015, in response to the Court's unsealing, Plaintiff "tweeted":  "Yes!" and "Sir!" in quick succession.  (*See id.*)  Then, on July 8, 2015, Plaintiff gave an interview to the *Toronto Sun* about her "heavy ordeal involving Bill Cosby."  (*See* Ex. F.)  In the interview, she lamented her confidentiality restrictions, because "there is so much more to say."  (*See id.*)  Apparently, Plaintiff is no longer satisfied with the settlement in this case, and she now wants to resume her campaign against Defendant in the court of public opinion.

In May 2015, the *Green* plaintiffs issued a subpoena to Plaintiff's counsel, seeking her entire file from this case, including Defendant's deposition transcripts.  They did this despite the

fact that Defendant's motion to dismiss the *Green* case was pending and that discovery in *Green* had not yet begun.  Plaintiff's counsel, Ms. Troiani, was in contact with the Massachusetts plaintiffs' attorney to arrange for the subpoena to be served.  Defendant moved to quash the subpoena, invoking the Settlement Agreement and arguing that the subpoena was premature. *See Green v. Cosby*, 15-mc-144 (E.D. Pa. 2015).  Soon thereafter, the *Green* court stayed discovery in that case, and the Hon. John Padova stayed the subpoena to Plaintiff's counsel.

Recently, in June 2015, prompted by the Associated Press, this Court held proceedings to determine whether to unseal discovery motions in this case.  The parties had filed the motions under seal by leave of Court, and the motions contained quotes from Defendant's deposition in this case.  Defendant objected to the unsealing, but, on July 6, 2015, this Court unsealed the motions.  As Defendant had predicted, an avalanche of media attention immediately followed. In fact, the Associated Press apparently gained access to the unsealed documents almost simultaneously with counsel's notice of the Court's decision.

On July 8, 2015, Plaintiff filed this Motion.  On July 18, 2015, *The New York Times* reported that it had procured Defendant's entire deposition transcript from "a court reporting service."  The media promptly published many embarrassing and private portions of Defendant's deposition, for the world to see.  On July 20, 2015, Plaintiff's court reporter, Kaplan Leaman & Wolfe, wrote to the Court, acknowledging that, without seeking permission from Defendant, it had simply released the deposition to the media.  (*See* Ex. G.)

## ARGUMENT

**I.      PLAINTIFF'S MOTION SHOULD BE STRICKEN.**

Plaintiff's Motion should be stricken because it violates the very agreement under which it seeks relief.  Specifically, the Settlement Agreement precludes Plaintiff from seeking to enforce the Settlement Agreement in court before complying with an initial dispute resolution provision.

As is explained above, the key component to the Settlement Agreement, from Defendant's perspective, was confidentiality.  Because Defendant was settling to avoid publicity over his personal life, the parties took care to specifically describe their confidentiality obligations.  They even foresaw that one party may accuse another of violating the Settlement Agreement, and they agreed that, before they did so publicly, they first would submit the dispute for "initial resolution" to Magistrate Judge Thomas Rueter, who had overseen the parties' settlement negotiations.  (*See* Ex. D, O'Connor Decl. ¶ 3.)  This was akin to a private arbitration agreement, demonstrated by the parties' further agreement that, if Judge Rueter no longer was on the bench, the parties would discuss using his services "in an alternative dispute resolution capacity."  In short, as part of strict and detailed confidentiality terms, the parties agreed to first attempt to resolve any disputes over the agreement privately.[3]

With her Motion, Plaintiff has flouted this important provision of the Settlement Agreement.  Although she sent a copy of the motion to Judge Rueter, she publicly filed her motion with this Court, specifically directing her request for relief not to Judge Rueter but to

---

[3]  As often is the case with private arbitration clauses, the parties retained the right to appeal Judge Rueter's decision to the courts.  They agreed that any such action would be filed in the United States District Court of Pennsylvania and consented to personal jurisdiction for that purpose.  (*See* Ex. D, O'Connor Decl. ¶ 3.)

"this Honorable Court" (Doc. #107 at 8). As she and her counsel consistently did throughout this litigation, Plaintiff filed her Motion as a pretext for making statements and accusations that she knows will become public through the Court's records.  Given that Plaintiff specifically agreed not to do so, in exchange for Defendant's settlement, her Motion should be stricken.

## II.     PLAINTIFF'S CHARACTERIZATION OF "FOOTNOTE 5" IS INCORRECT.

Part of the relief Plaintiff seeks is the striking of a footnote from one of Defendant's briefs in the unsealing proceedings.  The crux of the Court's analysis was whether the public's legitimate interest in this case outweighed Defendant's privacy rights and threatened embarrassment.  Accordingly, in a footnote in Defendant's brief in opposition to the unsealing, he argued that any public interest in the discovery motions was diminished to the extent the motions revealed not his actual testimony but merely Plaintiff's counsel's questions and Plaintiff's own discovery arguments, which often mischaracterized testimony and allegations.

Plaintiff now contends that this "footnote 5" was an attempt to brand Plaintiff's counsel "a liar."  She argues that this must be so because the Court granted (in part) the motion to compel in which the mischaracterizations appeared.  As Defendant's counsel recently reminded Plaintiff's counsel, Defendant did not offer footnote 5 as an argument in opposition to Plaintiff's motion to compel, such that an order granting the motion to compel would suggest that the footnote was false.  Nor does the Court's decision to unseal the discovery motions suggest that footnote 5 was inaccurate or otherwise inappropriate.  Rather, Footnote 5 was appropriate advocacy insofar as it set forth a reason *why those motions should remain sealed*.  Defendant merely argued that, even if the public had some legitimate public interest in his actual testimony or accusations against him, the public certainly does not have a legitimate interest in mischaracterizations of his testimony or those accusations.  In short, Defendant argued against

8

the release of motions and deposition excerpts that, once in the hands of the media, would create

an inaccurate impression of his testimony.  As it turns out—and as more fully explained above—

*that is precisely what has happened*.

Of course, Plaintiff fails to mention any of that in her Motion.  Instead, in her recitation

of the events subsequent to the unsealing, Plaintiff mentions only one media report:  a statement

by an unnamed source opining that Defendant settled this case to avoid embarrassment and pain

to his family.  (Pl.'s Mot. at 5.)  With this one statement, Plaintiff claims that, somehow, the

publicity following the unsealing has harmed *Plaintiff*, as opposed to Defendant.  This, of course,

is ludicrous, as a "Google" for recent media reports on Defendant instantly reveals.  Plaintiff's

insistent contention that Defendant somehow controls and manipulates the media is thoroughly

belied by the tidal wave of inaccurate media reports about Defendant.  The media has created the

embarrassing, erroneous public impression that Defendant feared, and that he knew he would be

powerless to prevent.

## III.   PLAINTIFF HAS DEPRIVED DEFENDANT OF MUCH OF HIS BENEFIT OF THE BARGAIN, AND SHE SHOULD BE SANCTIONED AND DENIED FURTHER RELIEF.

The other relief Plaintiff seeks is that the Court "negate the confidentiality portions of the

settlement agreement."  (Pl.'s Mot. at 8.)  While Plaintiff's Motion rambles at times, her central

argument appears to be that Defendant and his counsel have violated the confidentiality terms of

the Settlement Agreement, and therefore those terms simply should be voided.  Now, however,

Plaintiff essentially has received the relief she wanted, as Defendant's entire deposition transcript

was improperly released to the public domain.  Not only did this violate the Settlement

Agreement, but Plaintiff's Motion itself violates the Settlement Agreement.  Plaintiff should be

denied further relief and instead should be sanctioned.  The Court should preserve what little benefit to Defendant remains from the Settlement Agreement.

A.     **<u>Plaintiff's Accusations Are Pretextual.</u>**

Plaintiff cites to prior alleged violations of the Settlement Agreement, but those incidents simply prove that Plaintiff's current Motion is a pretext and itself violates the Settlement Agreement.  In 2014, Plaintiff's counsel asserted that Defendant and his counsel had violated the Settlement Agreement, when they fended off and briefly commented on *new* allegations in the media, by other women.  The Settlement Agreement does not restrict the parties from discussing allegations made by non-parties *after* the settlement, which necessarily could not be considered an "aspect of the litigation."  Thus, the agreement does not restrict Defendant or his counsel from responding to allegations of sexual misconduct lodged against him now, by other women.  This is true even if the accusers also were Rule 415 Witnesses in this case, and even if their accusations now are similar to what they would have said in this case.

In each case, Plaintiff raised her objections not by making a public filing, but by approaching Defendant's counsel.  In each case, Defendant's counsel explained that the comments, brief and innocuous as they were, concerned other women and not Plaintiff or this case.  The parties agreed that no material breach had been committed, and, in one case, they agreed to a public clarification that no breach had occurred.  In other words, Plaintiff knows precisely how the Settlement Agreement envisioned the resolution of disputes over confidentiality.  Now, however, with this new Motion, she did not bother to mediate with

Defendant's counsel or even to follow the agreed-upon private dispute procedure before Judge Rueter.[4]

Tellingly, Plaintiff does not seek to void the *entire* Settlement Agreement; obviously, she wants to keep what she was paid.  Even where a material breach *has* occurred, however, the non-breaching party cannot simply pick and choose which contractual obligations will be void and which will stand.  Only where "performances to be exchanged under an exchange of promises can be apportioned into corresponding pairs of part performance so that the parts of each pair are properly regarded as agreed equivalent" can the cancellation of the contract be partial.  *See* Restatement (Second) of Contracts § 240.  Where the provisions of a contract are not so easily severable, the entire contract must be voided and "the party in breach is entitled to restitution for any benefit that he has conferred by way of part performance or reliance in excess of the loss that he has caused by his own breach."  Restatement (Second) of Contracts § 374.  Here, that would require Plaintiff to disgorge some or all of the money paid to her by Defendant as part of the settlement.[5]

---

[4]  Plaintiff does not cite any law to support her argument that the confidentiality terms of the Settlement Agreement simply should be discarded.  This is understandable because the applicable law prevents the relief she seeks.  Contractual obligations cannot be disregarded lightly.  Only "[i]f a breach constitutes a *material* failure of performance" can the non-breaching party's performance under the contract be excused.  *Oak Ridge Const. Co. v. Tolley*, 504 A.2d 1343, 1348 (Pa. 1985) (emphasis added).  The parties agreed that the Settlement Agreement would be construed pursuant to Pennsylvania law.

[5]  Here, Defendant's July 6, 2015 statement is, at worst, an inconsequential error prompted by the storm of publicity unleashed by the release of the partial transcript.  Again, the statement disclosed nothing, offering merely a self-serving claim about Defendant's reason for settling, drowned out by a cacophony of press claiming that Defendant had "confessed" to assault.  Plaintiff's insistence that, somehow, *she* has been harmed by this publicity, is ridiculous (as is the idea that releasing Defendant's entire deposition would make things better).  Given all the facts, it would be unjust and nonsensical to vitiate the entire confidentiality section of the parties' Settlement Agreement.

11

**B.**     **Plaintiff Has Made A Mockery Of The**
           <u>**Confidentiality Terms Of The Settlement Agreement.**</u>

Plaintiff's requested relief is all the more unwarranted because she and her counsel

themselves have committed blatant violations of the Settlement Agreement, and thus come into

court with unclean hands.  What's worse, Plaintiff's violations actually disclose evidence from

this case, something of which she does not even accuse Defendant.

"Unclean hands is 'a self-imposed ordinance that closes the doors of a court of equity to

one tainted with inequitableness or bad faith relative to the matter in which he seeks relief,

however improper may have been the behavior of the defendant.'" *Romero v. Allstate Ins. Co.*,

52 F. Supp. 3d 715, 734 (E.D. Pa. 2014) (quoting *Precision Instrument Mfg. Co. v. Auto. Maint.*

*Mach. Co.*, 324 U.S. 806, 814 (1945)). "A claim is barred under the doctrine of unclean hands

when (1) a party seeking affirmative relief (2) is guilty of conduct involving fraud, deceit,

unconscionability, or bad faith (3) directly related to the matter in issue (4) that injures the other

party and (5) affects the balance of equities between the litigants." *Romero*, 52 F. Supp. 3d at

734. That doctrine plainly applies here.

First, Plaintiff breached the Settlement Agreement when she ignored her obligation to use

best efforts to ensure that her "vendor" did not publish Defendant's deposition transcript.

Apparently, Plaintiff's counsel never even *informed* her court reporter about the confidentiality

agreement.  When Defendant's counsel reminded her about this obligation, Plaintiff's counsel

responded that she simply had assumed the court reporter would not release the transcript.

Plaintiff's counsel went on to argue that the Court's July 6, 2015 opinion somehow made the

*entire* deposition public and justified this egregious violation of both the parties' contract and

ethical and industry norms.  (*See* Ex. H.)  This nonsensical and cavalier response reveals

Plaintiff's and her counsel's disdain for the very confidentiality that they agreed to provide Defendant.  Not surprisingly, that conscious neglect now has led directly to a colossal breach of that confidentiality.

This appalling development violated prior orders of this Court, both in letter and spirit. The *Green* plaintiffs have been trying to get Defendant's deposition for some time.  In coordination with Plaintiff's counsel, they served a friendly subpoena on Plaintiff's counsel, seeking the deposition.  On June 11, 2015, Judge Padova ruled that such efforts to procure the deposition from Plaintiff's counsel were stayed, unless and until the stay of discovery in the *Green* case should be lifted.  After that Order, Plaintiff's counsel's court reporter simply sent the entire deposition to the media.  In short, due to Plaintiff's failure to comply with her contractual duties, Plaintiff's counsel and the *Green* plaintiffs have performed an end-run around Judge Padova's order, circumventing the process that Judge Padova carefully put in place.

Plaintiff's Motion *itself* violates the Settlement Agreement, in more ways than one.  As is explained above, Plaintiff ignored the requirement to submit her dispute in private to Judge Rueter, before invoking her right to "further review by the courts."  This was no mistake, and instead was a bad-faith resumption of her campaign to attack Defendant, by fashioning a podium out of her unilateral ability to make court filings.

Indeed, in Plaintiff's Motion, she goes out of her way to characterize and to describe the accusations purportedly lodged by the Rule 415 witnesses long ago in this case.  (*See* Pl.'s Mot. ¶ 9.)  For the logical purposes of her Motion, Plaintiff simply could have noted the existence of the Rule 415 Witnesses and that she had planned to offer testimony from them about "prior bad acts" by Defendants, as was known in the case at the time.  Instead, knowing her Motion would be publicized, Plaintiff specifically describes what she claims the witnesses would have said:

"each claimed that Cosby gave them a drug and then had sexual contact with them while they were unable to respond to the acts being perpetuated upon them." (*Id.* ¶ 9.) Plaintiff does not stop there; she adds: "Although some of the women engaged in consensual relations with Cosby, their accounts substantiated defendant's alleged predilection for somnophilia." (*Id.*) Again, this is a blatant violation of the Settlement Agreement, and it strikes directly at the heart of Defendant's bargain. To make matters worse, this gratuitous summary and characterization of the evidence is not even accurate.

Plaintiff's counsel also violated the Settlement Agreement in preparing to file it. Plaintiff admits that her counsel contacted many of the former Rule 415 Witnesses for permission to seek to release Defendant's deposition to the media. (Pl.'s Mot. at 7 n.1.) Necessarily, Plaintiff's counsel must have informed these women that they were subjects of the deposition, which, again, squarely violates the Settlement Agreement.[6] Plaintiff's counsel also published her intent to file the Motion and the support she was gathering to do so. On July 8, NBC News and *The New York Times* covered and publicized these preparations for the Motion. *The Times* quoted two of the women whom Plaintiff's counsel contacted, one of whom commented, "I think more will come out . . . . and it's going to strengthen the case against him." (*See* Ex. I.) Plaintiff's contention that her counsel did not reveal "what was said" about these women in the deposition strains credulity. (*See* Pl.'s Mot. at 7 n.1.)

Plaintiff and her counsel also committed other breaches of the Settlement Agreement. In a telephone conversation with Defendant's counsel in 2014, Plaintiff's counsel admitted that she spoke to new would-be accusers of Mr. Cosby about the identity of the Rule 415 Witnesses,

---

[6] Former Rule 415 Witness Rebecca Cooper admits in her recent proposed memorandum in support of Plaintiff's Motion that Plaintiff's counsel informed her that she is a topic of Defendant's deposition in this case.

14

confirming whether or not someone was, indeed, a Rule 415 Witness.  This was a direct and substantive violation of the Settlement Agreement, which precludes counsel from discussing the content of discovery in the case.  It was made by Plaintiff's counsel, who herself negotiated the Settlement Agreement.

Plaintiff represents that, "[t]hroughout this ordeal plaintiff has denied all requests for interviews."  To the contrary, on July 8, 2015, Plaintiff gave an interview to the *Toronto Sun*, about her "heavy ordeal involving Bill Cosby."  (*See* Ex. F.)  As long ago as February 2014, Plaintiff, in response to an article about this case, "tweeted" that, "I won't go away, there is a lot more I will say."  (*See* Ex. E.)  In March 2014, she added, "It's not that everybody just forgot about [this case,] truth is nobody cared."  (*See id*.)  On July 6, 2015, in response to the Court's unsealing, Plaintiff "tweeted":  "Yes!" and "Sir!" in quick succession.  (*See id*.)

These breaches injured Defendant, depriving him of much of the benefit of his bargain with Plaintiff.  In fact, Plaintiff's Motion rests on the notion that the confidentiality terms of the Settlement Agreement exist as some discrete, independent agreement, of equal importance to both sides.  Of course, this is not the case.  Throughout this case, Plaintiff made no secret of her desire to publicize it, and she fought mightily, every chance she got, to achieve that publicity.  Defendant settled—and paid Plaintiff—to avoid that very publicity, and Plaintiff reluctantly agreed to the confidentiality terms.  While Defendant also agreed to the basic confidentiality terms, the rest of the agreement makes clear that the confidentiality was Defendant's benefit of the bargain.  Specifically, the agreement contains Plaintiff's recognition that Defendant, alone, wished to "keep permanently under seal the portion of the court's records current under seal" and agreed "not to oppose any action necessary to do so."  (*See* Ex. D, O'Connor Decl. ¶ 3.)  Confidentiality was the "heart" of the bargain—*for Defendant*.  Indeed, due to the private nature

15

of the information at issue, confidentiality was an important inducement to the settlement, and Defendant relied on the confidentiality provisions in entering into the settlement.  Disclosing that material now would undermine the settlement and deprive Defendant of one of the material benefits of that agreement.  Further, in her most recent letter to Defendant's counsel, Plaintiff's counsel notes that she has no objection to the release of her own deposition from the case.  Obviously, the "heart" of Plaintiff's bargain was not secrecy, but rather the receipt of money, which she still has.  Plaintiff's Motion is a sham and an obvious attempt to have her cake and eat it, too.

Defendant will seek relief for Plaintiff's violations separately.  Unlike Plaintiff, Defendant will honor the terms of the settlement agreement by asking that the dispute be submitted to and resolved by Judge Rueter. For purpose of this memorandum, however, Plaintiff's conduct calls for the striking and rejecting of Plaintiff's Motion

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that Plaintiff's motion be stricken.

Dated:  July 21, 2015         */s/ Patrick J. O'Connor*

Patrick J. O'Connor (No. 13086)
George M. Gowen III (No. 83210)
Matthew L. Bleich (No. 208069)
Michael P. Zabel (No. 310278)
COZEN O'CONNOR
One Liberty Place
1650 Market Street
Philadelphia, PA  19103
215.665.2000

*Attorneys for Defendant*

16

**CERTIFICATE OF SERVICE**

I, Patrick J. O'Connor,  hereby certify that on July 21, 2015, I caused a true and correct copy of the foregoing Motion to Strike and in Opposition to Plaintiff's Motion for Injunctive Relief with Supporting Memorandum of Law in Support thereof, with related papers, to be filed on all counsel of record through the court's electronic filing system.


*/s/  Patrick J. O'Connor*
                  Patrick J. O'Connor