Page 1

```
1              IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA
2                          -   -   -
3   ANDREA CONSTAND,              :   2:05-cv-01099-ER
            Plaintiff,            :   PHILADELPHIA, PA
4        vs.                      :
    WILLIAM H. COSBY, JR.,        :   June 26, 2015
5            Defendant.           :   10:07 a.m.
6               TRANSCRIPT OF MOTION HEARING
            BEFORE THE HONORABLE EDUARDO C. ROBRENO
7               UNITED STATES DISTRICT JUDGE
8   APPEARANCES:
9   For the Movant,          GAYLE CHATILO SPROUL, ESQUIRE
    The Associated Press:    LEVINE, SULLIVAN,
10                           KOCH & SCHULZ, LLP
                             1760 Market Street, Suite 1001
11                           Philadelphia, PA 19103
                             (215) 988-9778
12                           gsproul@lskslaw.com
13  For the Defendant:       GEORGE M. GOWEN, III, ESQUIRE
                             COZEN O'CONNOR
14                           1900 Market Street
                             Philadelphia, PA 19103
15                           (215) 665-2000
                             ggowen@cozen.com
16
    AUDIO OPERATOR:          N. PHILLIPPI
17
    TRANSCRIBER:             JUDI Y. OLSEN, RPR
18
19
20  (Proceedings recorded by electronic sound recording,
    transcript produced by transcription service.)
21
22
23          VERITEXT NATIONAL COURT REPORTING COMPANY
                     MID-ATLANTIC REGION
24          1801 Market Street - Suite 1800
                  Philadelphia, PA  19103
25                  (888) 777-6690
```

Page 2

1                         I N D E X

                                                  PAGE

2

3    ARGUMENT:

       By Ms. Sproul                              3, 48
4      By Mr. Gowen                               26, 55

5

6

7

8

9

10

11

                          E X H I B I T S

12

     NUMBER      DESCRIPTION            MARKED    ADMITTED

13

     (None marked.)

14

15

16

17

18

19

20

21

22

23

24

25

ARGUMENT - MS. SPROUL

Page 3

```
 1                         -  -  -
 2                 THE COURT:  Okay.  Let me hear from the
 3    movant.
 4                 MS. SPROUL:  I'm not sure, Your Honor,
 5    which one of us is designated as the movant, but --
 6                 THE COURT:  You filed the motion.
 7                 MS. SPROUL:  I filed the motion, right,
 8    in 2006.
 9                 Okay.  Your Honor, I'm Gayle Sproul.  I
10    represent The Associated Press.
11                 In a nutshell --
12                 THE COURT:  Yeah, why don't you come up
13    here?  Yeah, yeah.
14                 MS. SPROUL:  Thank you, Your Honor.
15                 In a nutshell, Your Honor, Mr. Cosby is
16    urging the court to maintain everything in this file
17    that has been sealed -- everything in this case that
18    has been sealed under seal because, first, he claims
19    that the information that's under seal is not a
20    matter of legitimate public concern.  He claims that
21    release of the information would invade his privacy
22    and that of third parties.  He argues that release of
23    information would undermine the settlement agreement
24    and the judicial process.  And he argues that it
25    would prejudice a current proceeding in another
```

ARGUMENT - MS. SPROUL

Page 4

1    court.

2                    That is the case that we referred to as

3    Green 1, Your Honor, which is now pending in the

4    District of Massachusetts.  It's a case in which

5    Mr. Cosby has been accused of sexual assault and

6    defamation by three named female plaintiffs.

7                    In fact, none of Mr. Cosby's assertions

8    actually demonstrate good cause as that term has been

9    defined in Pansy and Cipollone and Glenmede Trust.

10                    First of all, he attempts to portray The

11    AP as some sort of villain that would make improper

12    use of the public contents of a public docket.

13                    There's no authority for that

14    proposition, nor does he cite any.  News reporting

15    is, of course, not an improper purpose.  It's

16    protected by the First Amendment.

17                    The test, instead, is whether he's able

18    to demonstrate that he -- not third parties, but

19    he -- will suffer a clearly defined and serious

20    injury from disclosure.

21                    The Third Circuit has made clear that

22    it's not just any embarrassment that can be deemed an

23    injury, but a particularly serious embarrassment.  I

24    believe it was the court in Cipollone that said any

25    disclosure that a person does not intend tends to

ARGUMENT - MS. SPROUL

Page 5

1    cause some embarrassment.  But what he has to show

2    here is a particularly serious injury.

3              In fact, he cannot do that.  First, just

4    as an -- just to begin, Rule 5.15, which is the

5    reason that we're here today, is a reflection of the

6    judiciary's commitment to transparency in the courts.

7    Not everything is going to be made public, but it

8    demonstrates also that the passage of time can have

9    an impact on what should be made public.

10             And in this case, it's asking -- it's

11   requiring the court to take a look at everything

12   that's already been sealed and examine it under

13   today's circumstances.

14             THE COURT:  Now, you're at somewhat of a

15   disadvantage because you don't know what's under

16   seal.

17             MS. SPROUL:  Correct.

18             THE COURT:  So --

19             MS. SPROUL:  I don't.

20             THE COURT:  So you could -- you're

21   arguing somewhat hypothetically at that point.

22   Mr. Gowen knows what's under seal.  You do not.

23             MS. SPROUL:  I do not.

24             THE COURT:  So how does that impact your

25   analysis?

ARGUMENT - MS. SPROUL

Page 6

1           MS. SPROUL:  Well, I can't give you --

2           THE COURT:  In other words, you're

3   assuming that what's under seal is going to -- I

4   guess for purposes of this argument, you're assuming

5   that it would cause some embarrassment, but it would

6   not be particularly serious embarrassment within the

7   meaning of that term.

8           MS. SPROUL:  I am arguing that, and I am

9   arguing -- because, as Your Honor has said, I don't

10  know what's in the record.  And I -- I think when a

11  party argues that everything that's under seal has to

12  stay under seal and doesn't take a

13  document-by-document, page-by-page approach, which is

14  what Pansy requires --

15          THE COURT:  Um-hmm.

16          MS. SPROUL:  -- then it can't be that

17  everything will cause embarrassment.

18          THE COURT:  Now, you can tell from the

19  docket that some of it is the briefs and memoranda

20  that lawyers have filed.  What do you think of that?

21          MS. SPROUL:  Your Honor, I think that

22  they should be unsealed.  I mean, one of the things

23  that we didn't say in our brief but -- we were

24  waiting to see what Mr. Cosby had to say -- is that

25  there's a role for redaction in this matter.

ARGUMENT - MS. SPROUL

Page 7

1           What the courts require is, essentially,

2    that, you know, Your Honor -- unfortunately, it falls

3    to you -- has to -- the plaintiff can -- I mean --

4    sorry -- the defendant can suggest what he believes

5    needs to be redacted.  He didn't do that here.

6                THE COURT:  Um-hmm.

7                MS. SPROUL:  But that is the way it

8    should proceed, because only he can say -- and it's

9    important to note at this point, Your Honor, that

10   Mr. Cosby hasn't put in a declaration.

11               THE COURT:  Um-hmm.

12               MS. SPROUL:  There's no evidence from

13   him directly about any embarrassment in this case.

14   You know, he has -- he took a deposition, and that --

15   that is somewhere, and it's under seal, the parts of

16   it that are on file with the court.

17               We have no -- and Your Honor has no way

18   of judging what he would say --

19               THE COURT:  Um-hmm.

20               MS. SPROUL:  -- because he has not -- he

21   has not demonstrated that in this proceeding, and I

22   believe he has an obligation to do that.

23               But with respect to briefs and

24   memorandum, I think it's clear that legal argument,

25   you know, any sort of recitation of facts that are

ARGUMENT - MS. SPROUL

Page 8

1   not facts that are unduly sensitive --

2                 Mr. Gowen cites in his brief testimony

3   that Mr. Cosby gave about his marriage, about

4   prescription drugs, his sex life, and so on.

5                 You know, if those things are unduly

6   sensitive, even without his declaration, it may be

7   that the court will decide that those matters should

8   not be released.

9                 But there are many other facts in this

10  case, and they're under seal.  And so what we're

11  asking is that -- is that the court follow what the

12  rule is, which is, essentially, that anything that

13  there's no cause for sealing should come out --

14                THE COURT:  Um-hmm.

15                MS. SPROUL:  -- of the sealing and be

16  made public, available on the docket through PACER to

17  anyone who would like to see it.

18                THE COURT:  What do you think of the --

19  we don't have a settlement agreement on the record

20  here.  What do you think of the argument that

21  Mr. Cosby entered into a settlement agreement and --

22  with the plaintiff and that this court should honor

23  the agreement that he entered into with another

24  party, that there was some reliance on that?

25                MS. SPROUL:  There are two points on

1   that, Your Honor.

2                 First of all, again, we don't have his

3   testimony.  We don't have a declaration from him

4   where he says, I relied.  We have a brief that says

5   he relied.  The settlement agreement has not been

6   given to Your Honor to look at in camera.  So there's

7   no evidence of that.  There's a brief.

8                 But in addition to that, there's two

9   facts that are of importance here.  One is that -- or

10  two concepts that are important.

11                One is that the parties cannot divest

12  Your Honor of discretion by making an agreement to do

13  something and keep it confidential.

14                It's very similar to parties in

15  discovery entering into a protective arrangement, a

16  confidentiality agreement, in which they agree to

17  keep things, you know, between themselves.  But the

18  court is not required to so order that agreement.

19                The court, in fact, is tasked by the

20  Judicial Conference with, you know, being very

21  cautious about entering into -- about signing

22  something into effect as a protective order.

23                So just because the parties have agreed

24  to it -- and we cite a couple of cases in our

25  footnote; I think it's Footnote 11 in our brief --

ARGUMENT - MS. SPROUL

Page 10

1    it's not -- it's not --

2                  THE COURT:  Okay.

3                  MS. SPROUL:  -- it doesn't take away

4    from if you, Your Honor, your discretion in this

5    matter.

6                  Secondly, in Pansy, the court downplays

7    the need to encourage settlements as a basis for

8    ensuring confidentiality.

9                  They say -- quoting U.S. versus Kentucky

10   Utilities, they say, settlements will be entered into

11   in most cases whether or not confidentiality can be

12   maintained.  In other words, there's lots of reasons

13   why parties enter into settlement agreements, not

14   just because of confidentiality.

15                 They said, the parties might prefer to

16   have confidentiality, but this does not mean that

17   they would not settle otherwise; for one thing, if

18   the case goes to trial, even more is likely to be

19   disclosed than if the public had access to pretrial

20   matters.

21                 And then they say from their own voice,

22   to the extent that parties may have to more often

23   enforce orders of confidentiality in private contract

24   suits -- in other words, sue each other for

25   disclosing something that they agreed not to -- we

ARGUMENT - MS. SPROUL

Page 11

1    believe this may, in fact, be preferable to the

2    current trend of increasing judicial secrecy.

3              So both with respect to the parties --

4    and, of course, the plaintiff is not here, and the

5    plaintiff does not object to the unsealing here.  The

6    plaintiff -- apparently, in the stipulation of

7    confidentiality that was signed when The National

8    Enquirer case was consolidated with this one, the

9    plaintiff signed under protest with respect to

10   confidentiality.  There's an explicit paragraph in

11   there that says that.

12             So the fact that these parties have

13   different views on confidentiality and the fact that

14   Mr. Cosby may -- and I emphasize "may" -- have relied

15   on that, that single provision that we haven't seen,

16   doesn't matter.

17             THE COURT:  Now, I -- your -- your

18   brief -- let me put it this way.  Is Pansy the

19   authority that this court has to apply; that is,

20   apply the Pansy factors and then call it depending

21   upon that balance?  Is that how you see the case?

22             MS. SPROUL:  Yeah.

23             THE COURT:  Because you did not go

24   through the Pansy factors in your --

25             MS. SPROUL:  We didn't go through them

ARGUMENT - MS. SPROUL

Page 12

```
 1   as factors, Your Honor.
 2                THE COURT:  Yeah.
 3                MS. SPROUL:  But what -- the reason that
 4   we didn't is because we don't know really exactly
 5   what's under seal.
 6                And there are certain motions under seal
 7   that perhaps wouldn't be characterized as discovery
 8   motions.  I don't know.  It has to do with motions
 9   for sanctions.
10                And there are cases -- and I have some;
11   they're not in the brief, but I have some -- that
12   are -- that talk about different types of motions.
13   You know, you have to apply different standards to
14   different motions and to different judicial records.
15                THE COURT:  Now -- well, that brings me
16   to the point -- and maybe we'll go back to that, but
17   just to clarify that, if a motion is a discovery
18   motion --
19                MS. SPROUL:  Um-hmm.
20                THE COURT:  -- you would agree that the
21   right of access would not apply to that?
22                MS. SPROUL:  I would agree that under
23   the current Third Circuit analysis [indiscernible] --
24                THE COURT:  But you make a point some of
25   them may not be discovery --
```

ARGUMENT - MS. SPROUL

Page 13

1          MS. SPROUL:  Yeah.

2          THE COURT:  -- motions --

3          MS. SPROUL:  Yeah.

4          THE COURT:  -- because you don't know.

5          MS. SPROUL:  I don't know.

6          THE COURT:  But to the extent that they

7     are so classified --

8          MS. SPROUL:  Yes.

9          THE COURT:  -- the analysis would not

10    include that right of access?

11         MS. SPROUL:  It is not a constitutional

12    right of access.  It is not a common law right of

13    access.  However, what the Judicial Conference has

14    said -- and we're here on 5.15, which is

15    incorporating 26(c), but -- but what we're here on is

16    a -- is a rule that is, in effect -- and I think both

17    of those rules, in effect, embody a preference for

18    disclosure.

19         THE COURT:  Um-hmm.

20         MS. SPROUL:  And it is just like the

21    balancing that occurs in the Commonwealth.  The --

22         THE COURT:  So the burden is on the

23    party seeking to seal the documents --

24         MS. SPROUL:  That is right.

25         THE COURT:  -- applying the good cause

ARGUMENT - MS. SPROUL

Page 14

1    standard --

2                    MS. SPROUL:  Right.

3                    THE COURT:  -- and then in forming that

4    judgment by the line of juris prudence in this

5    circuit that deals with Pansy and the related cases

6    that apply factors to -- to what is good cause and

7    what is not good cause --

8                    MS. SPROUL:  Right.  Yes, Your Honor.

9                    THE COURT:  -- in discovery -- in

10   discovery issues?

11                   MS. SPROUL:  In -- in discovery.  And

12   Pansy was a settlement --

13                   THE COURT:  Right.

14                   MS. SPROUL:  -- agreement issue.  But

15   the Pansy court is very explicit in saying that, you

16   know, here, we're giving you some factors.  And they

17   were very much driven by the facts in that case.  For

18   example, it was a borough on the defense --

19                   THE COURT:  Yeah, it was a public

20   entity, sure.

21                   MS. SPROUL:  Yes.  And it was a former

22   public employee as a plaintiff.  So they said -- they

23   were talking about public officials.  But by no

24   means, did they restrict the analysis to public

25   officials --

ARGUMENT - MS. SPROUL

Page 15

1                    THE COURT:  Yeah.

2                    MS. SPROUL:  -- as Mr. Cosby suggests.

3                    And, in fact, if I might say a word

4      about that, Your Honor?

5                    THE COURT:  Yeah, please.

6                    MS. SPROUL:  I --

7                    THE COURT:  Why don't -- does it make

8      any impact?  Does he -- I think Pansy used the word

9      "public figure," but I don't think it meant really

10     public figure.  It meant public official.

11                   MS. SPROUL:  Yeah, they weren't -- Your

12     Honor, they weren't talking about a public official.

13                   THE COURT:  Yeah.

14                   MS. SPROUL:  They were talking about a

15     public body, but that doesn't -- that doesn't matter,

16     because what -- what they're also saying is, we're

17     giving you some factors; we're talking about them;

18     we're balancing based on what we see before us.  But

19     they say explicitly, this is not an exhaustive list.

20                   THE COURT:  Yeah.  But at least you

21     should start off by checking those off.

22                   MS. SPROUL:  Yeah.

23                   THE COURT:  There may be some other

24     factors --

25                   MS. SPROUL:  Yeah, right.

1              THE COURT:  -- but don't cross out any

2    of these --

3              MS. SPROUL:  Right.

4              THE COURT:  -- unless they're not

5    relevant.

6              MS. SPROUL:  Look at them and balance

7    them.

8              THE COURT:  Yeah.

9              MS. SPROUL:  Mr. Cosby portrays himself

10   in the brief as an entertainer, a celebrity.  He is

11   far more than that.  He is an icon, particularly in

12   this city, but he is an icon.  He is, you know, a

13   person who has attempted to make a difference in the

14   African American community by reaching out to

15   students, young students.  He's written over 20

16   books.

17             THE COURT:  So what does that make him?

18             MS. SPROUL:  That makes him -- that

19   makes him of great interest to the community.  So

20   when the court is analyzing, is this an important

21   dispute --

22             THE COURT:  In other words, if he was a

23   person that was not in the public eye in some

24   fashion, the analysis would -- that would -- that

25   would factor into the analysis?

ARGUMENT - MS. SPROUL

Page 17

1           MS. SPROUL:  It would factor into it, I

2   think.  I think if he had not held himself out as

3   someone who, you know, would guide the public in ways

4   of morality, which he has done, and then to have

5   himself become a defendant in these lawsuits -- and

6   in this particular lawsuit ten years ago, he was

7   being investigated by a District Attorney for an

8   assault.

9           You know, he's a different type of

10  person.  I don't know exactly what he is, but he is

11  not a celebrity like someone on a -- you know, a TV

12  show on cable TV.  He is someone who has had probably

13  a 50-year career and --

14          THE COURT:  Well, that's what I'm asking

15  you.  What do we call that, and how do we analyze --

16          MS. SPROUL:  Well --

17          THE COURT:  -- that?  A public person of

18  some sort?

19          MS. SPROUL:  Okay.

20          THE COURT:  I don't find anything in the

21  cases that address that particularly --

22          MS. SPROUL:  There isn't --

23          THE COURT:  -- the difference between a

24  public official and a regular person.  There is some

25  category in the middle of individuals who have

ARGUMENT - MS. SPROUL

Page 18

1   some -- I guess they call them celebrity sort of

2   thing.  They -- they may either bring attention to

3   themselves or -- by the way they act or the way they

4   talk.  Kardashians, that type of thing, in other

5   words, what are they?  Are they over here, or are

6   they over here?

7              MS. SPROUL:  Well, I would -- based on

8   the work that I normally do, Your Honor, I wouldn't

9   venture to characterize the Kardashians.  But I

10   represent a lot of defendants in defamation

11   actions --

12              THE COURT:  Yeah.

13              MS. SPROUL:  -- where the public figure

14   concept comes into play.

15              THE COURT:  Yes.

16              MS. SPROUL:  And as Your Honor is aware,

17   where there is a public figure, the public figure has

18   to -- has to prove a heightened level --

19              THE COURT:  Yeah, but I don't think --

20   that's a constitutional standard, isn't it?

21              MS. SPROUL:  Well, yeah, it is.

22              THE COURT:  Yeah.

23              MS. SPROUL:  But I mean, just to guide

24   your analysis --

25              THE COURT:  Well, one thing is whether

ARGUMENT - MS. SPROUL

1   or not -- and I think this comes from the defamation

2   law -- whether -- if you inject yourself --

3               MS. SPROUL:  Yes.

4               THE COURT:  -- in the thrust of the

5   debate --

6               MS. SPROUL:  Um-hmm.

7               THE COURT:  -- whether at that point,

8   you've given up some privacy.

9               MS. SPROUL:  Um-hmm.

10              THE COURT:  In other words, you can stay

11  home and don't say anything, but if you say

12  something, then -- then that may open the door or may

13  reduce your right of -- it doesn't eliminate it, but

14  it may limit it.

15              MS. SPROUL:  Well, that is what I was

16  getting at, Your Honor --

17              THE COURT:  Yeah.

18              MS. SPROUL:  -- because that is the test

19  for a public figure, is if someone thrusts themselves

20  into the vortex of some sort of --

21              THE COURT:  Yeah.

22              MS. SPROUL:  -- controversy, and then

23  there's a legitimate interest in what they're doing.

24  So the press [indiscernible] --

25              THE COURT:  So that deals with the

ARGUMENT - MS. SPROUL

Page 20

1    improper purpose of the Pansy analysis?

2                    MS. SPROUL:  Yes, yes.  They're -- and

3    they're -- they're, really -- I mean, as I said at

4    the outset, I don't think there's any way that news

5    coverage should be characterized as an improper

6    purpose.

7                    And, you know, this is a matter that is

8    of legitimate public concern because Mr. Cosby is

9    someone who is very notable and has thrust himself

10   into the public eye with respect to issues relating

11   to morality and been very specific and adamant about

12   it, and -- and here he is.

13                   And on that note, Your Honor, I would

14   point out that the -- Mr. Cosby has said that the

15   coverage of this latest round of disclosures is,

16   quote, unquote -- a media centerpiece he called it.

17                   Even before The AP or anyone, because it

18   wouldn't just be The AP, of course, sees what's on

19   the public docket, if Your Honor puts anything

20   further on the docket -- I don't see how the -- given

21   the media centerpiece this is and the tremendous

22   amount of publicity associated with what has happened

23   recently, the publication of the events of ten years

24   ago and the testimony of ten years ago and nine years

25   ago can make a material difference.

ARGUMENT - MS. SPROUL

Page 21

1           And I don't believe Mr. Cosby, because

2    he hasn't produced any evidence and he hasn't

3    explained anything to you that I've seen, can

4    demonstrate to Your Honor a material difference in

5    what is already out there.

6           And to restrict a public docket in this

7    case because it might embarrass him further is not

8    the standard, cannot be the standard, and should not

9    be the reason that this court restricts the docket

10   because it adds a certain, you know, thumb on the

11   scale, whatever it is.

12          And, also, just to follow up on that,

13   Your Honor, Mr. Cosby has also urged the court to

14   consider the jury pool in Massachusetts.  So --

15   obviously, a different district.

16          But even putting that aside, the cases

17   in this court are very clear, the [indiscernible]

18   case and the [indiscernible] case, that the way to

19   deal with that is not to restrict information but to

20   do a very thorough and careful voir dire.

21          So up there in Massachusetts, if they

22   have a trial at some point, the judge there will

23   conduct a voir dire, or the lawyers will, and that

24   will -- that is constitutionally -- the Supreme Court

25   has said it as well, that is the favored approach to

ARGUMENT - MS. SPROUL

Page 22

1    deal with jury [indiscernible] --

2                    THE COURT:  Well, I think the tainting

3    of the jury concept grew out of the rule of

4    professional conduct that prohibited lawyers -- the

5    efforts to get gag orders and having lawyers talk

6    about the case.

7                    I don't know if tainting the jury has

8    ever been connected to the disclosure of discovery

9    material.

10                   MS. SPROUL:  I have seen that argument,

11   Your Honor.

12                   THE COURT:  Yeah.

13                   MS. SPROUL:  And I think in the Sheppard

14   case years ago, Sam Sheppard, who --

15                   THE COURT:  Right.

16                   MS. SPROUL:  -- allegedly murdered -- I

17   guess was convicted of murdering his wife, there was

18   a tremendous amount of pretrial publicity --

19                   THE COURT:  Well, that was -- yeah.

20   Well, that was a criminal case, yeah.

21                   MS. SPROUL:  Yeah, it was a criminal

22   case.

23                   THE COURT:  Yeah, yeah.

24                   MS. SPROUL:  So there was a fair trial,

25   Sixth Amendment right at issue.

ARGUMENT - MS. SPROUL

Page 23

1              THE COURT:  Yeah.

2              MS. SPROUL:  But, you know -- but the

3    solution in civil cases and criminal cases to any

4    sort of -- and gag orders are part of that -- any

5    sort of --

6              THE COURT:  Well, they have to be very

7    carefully tailored.

8              MS. SPROUL:  Yes.

9              THE COURT:  Yeah.  Which we had the

10   issue in this case.

11             MS. SPROUL:  Yes.  And Your Honor

12   refused --

13             THE COURT:  And I denied the gag order.

14             MS. SPROUL:  And what you did is what a

15   lot of judges have now done --

16             THE COURT:  Yeah.

17             MS. SPROUL:  -- following your

18   example --

19             THE COURT:  Yeah.

20             MS. SPROUL:  -- is to just follow the

21   rules of professional responsibility.

22             THE COURT:  That was my recollection of

23   what happened here --

24             MS. SPROUL:  It is what you did.

25             THE COURT:  -- and everybody seemed to

Page 24

1   behave afterwards, yeah.

2               MS. SPROUL:  So, you know, that is --

3   that is the way that it goes.  So that --

4               THE COURT:  Okay.  So your bottom line

5   is good cause -- plaintiff has failed to show good

6   cause, and good cause is informed by the application

7   of Pansy factors, and in this case, we don't have

8   affidavits, we don't have anything of what the

9   plaintiff says and that he has not identified -- has

10  not defined specific injury in this.  It is somewhat

11  speculative what would happen here.  You don't know

12  because you don't know what's in the documents.

13              MS. SPROUL:  That is right, yes.  And

14  just to put a --

15              THE COURT:  Yeah.

16              MS. SPROUL:  -- final point on it, Your

17  Honor, I would like to urge that the review has to be

18  done on a document-by-document basis --

19              THE COURT:  So some documents --

20              MS. SPROUL:  -- [indiscernible] page by

21  page --

22              THE COURT:  -- would fall one way, and

23  some the other way?

24              MS. SPROUL:  And page by page, as you

25  did with one of the transcripts of a hearing that you

ARGUMENT - MS. SPROUL

Page 25

1    had.  You redacted two pages from it that are still

2    under seal.

3                   THE COURT:  Do you think there is a

4    difference between a deposition of a party and either

5    depositions or statements or materials from

6    non-parties?

7                   MS. SPROUL:  I don't, unless someone

8    demonstrates to you that there is a reason.  I think

9    the content is the issue.  It's not necessarily --

10                  I mean, and there are no third parties

11   here to tell the court how they feel about it.  And

12   they may be -- I don't know who they are.  They may

13   be the plaintiffs in the Massachusetts case.  They

14   may be some of the other, I believe more than 20,

15   women who have made statements in the press.

16                  So I -- to answer your question -- and I

17   wish I could answer it more directly --

18                  THE COURT:  Okay.  You would need to

19   know what it is?

20                  MS. SPROUL:  -- I need to know what it

21   is, yeah.

22                  THE COURT:  Okay.  Well, thank you.

23                  MS. SPROUL:  Thank you.

24                  THE COURT:  We'll give you a chance to

25   reply here.

ARGUMENT - MR. GOWEN

Page 26

1              MS. SPROUL:  Okay.

2              THE COURT:  Mr. Gowen, please.

3              MR. GOWEN:  Thank you, Your Honor.

4              May it please the court.  My name is

5     George Gowen, and I represent the defendant.

6              Your Honor, we've had some discussion

7     already, but I think because this case ended so long

8     ago, it might be helpful just to set the stage and

9     remember where we were, which was a dispute between

10    individuals, not between public officials or

11    involving a public official, not even public

12    companies, not involving the government.

13             One of those individuals happens to be a

14    celebrity.  The dispute was about the personal

15    components of his relationships, nothing that had

16    been injected into the public eye.

17             The parties engaged in private pretrial

18    discovery, and before too long, they decided to

19    settle their dispute.  And they decided to settle it

20    before it became public, before it left the

21    traditionally private discovery phase, and they did

22    so with an agreement in which they agreed to keep the

23    discovery they had learned through the case

24    confidential forever.

25             Now, The AP, many years later, would

ARGUMENT - MR. GOWEN

Page 27

1    like the court to unseal a few of the discovery

2    motions and associated briefs that were filed in that

3    case under seal before it was settled.

4                As we just heard and, certainly, as we

5    see in the brief, The AP quotes relies upon, even

6    quotes itself, in the well-known authority supporting

7    and encouraging judicial openness and public scrutiny

8    of the judicial process.

9                But it's worth noting that in the over

10   eight years since this case was settled, The AP did

11   nothing to champion those causes in this case.  Now

12   it comes forward, and it does so by its own

13   admission, because a new crop of scandalous

14   allegations have been lodged against the defendant

15   and a new barrage of tabloid-style media publicity

16   has followed.

17               So to be clear, The AP wants these

18   records unsealed not because it wants to inspect the

19   particulars of the judicial process in this case, but

20   because it wants to sell a story about a celebrity

21   scandal.

22               When you look at The AP's brief, at

23   least -- we heard some more today, but when you look

24   at the brief, the brief would suggest that the

25   analysis is very simple.

ARGUMENT - MR. GOWEN

Page 28

1           The AP argued in its brief that the
2   public simply has a right to see everything that is
3   ever filed with a court and that the court's analysis
4   has to begin with a strong presumption that the
5   material -- all material becomes unsealed and it's up
6   to defendant to make a strong showing to overcome --
7           THE COURT:  Well, isn't that law?
8           MR. GOWEN:  No, Your Honor.  It's not.
9   The AP went on at length about the Leucadia case, and
10  the Leucadia case, which --
11          THE COURT:  So you think that the burden
12  of proof is on The AP?
13          MR. GOWEN:  No, no.  I didn't mean to
14  say that, Your Honor.
15          THE COURT:  Okay.
16          MR. GOWEN:  What Leucadia said --
17          THE COURT:  Well, there's no
18  presumption.  I think we agree with that.
19          MR. GOWEN:  Okay.
20          THE COURT:  We don't have to spend a lot
21  of time.
22          The question is -- on the 26(c), I think
23  that the party seeking to seal has the burden of
24  proof, and that's what you're here to show.
25          MR. GOWEN:  You're right, Your Honor.  I

ARGUMENT - MR. GOWEN

Page 29

1    merely meant to make the point, as is made very clear

2    in the Hecht [ph] case, which was decided after this

3    case ended, that that analysis, which, of course, we

4    bear the burden of leading, occurs on a blank slate.

5               THE COURT:  Right.

6               MR. GOWEN:  It doesn't occur amidst the

7    presumption of openness.  It occurs on a blank slate.

8               THE COURT:  I agree.

9               MR. GOWEN:  Okay.  And the factors to be

10   considered, certainly the factors that must be

11   considered -- and there may be others -- are

12   announced in Pansy and [indiscernible] --

13              THE COURT:  Okay.  Good.  Let's get to

14   those.

15              MR. GOWEN:  And we checked through those

16   factors in our brief, and I'm ready to do that here,

17   because blank slate or not, none of the factors in

18   Pansy ways in favor of unsealing here.

19              The first one is privacy.  Pansy asked,

20   will unsealing and not protecting the documents

21   violate privacy interests?

22              THE COURT:  So what is the clearly

23   defined specific and cognizable injury that the

24   plaintiff claims -- that -- I'm sorry -- that

25   defendant claims?

ARGUMENT - MR. GOWEN

Page 30

1              MR. GOWEN:  Well, first, we claim that
2    the material at issue here is private.  So just to
3    check off that factor, it's private.  These are
4    not -- this is not questions and answers about
5    accounting records or a business dispute.
6              THE COURT:  But what is the injury?
7              MR. GOWEN:  Well, the injury, Your
8    Honor, would be embarrassment and a violation of --
9              THE COURT:  Well, every case involving
10   sex or drugs involves some measure of embarrassment.
11   So the question is, what is the specific injury?
12              Those subjects in the Complaint, for
13   example --
14              MR. GOWEN:  Right.
15              THE COURT:  -- is the embarrassing.
16              MR. GOWEN:  Right.  But -- but --
17              THE COURT:  It doesn't mean it's true,
18   but it's embarrassing to be accused of those kinds of
19   things.  Nobody would like to be accused of them,
20   even if one is completely innocent.
21              So the question, I think, that the case
22   law asks is -- that's sort of general embarrassment.
23   You wouldn't want to be accused of that.  But in your
24   case, what is the defined, specific, and cognizable
25   injury?  What is going to happen if this material is

ARGUMENT - MR. GOWEN

Page 31

1   released?

2                MR. GOWEN:  Well, the big difference,

3   Your Honor, is, first of all, we're talking about

4   specifics now.  We're no longer analyzing the

5   abstract.  And I understand The AP is at a

6   disadvantage.

7                THE COURT:  Right.

8                MR. GOWEN:  But Your Honor is not, and

9   we are not.  We are not talking about abstract

10  principles, as we were earlier in the case.  We now

11  have specifics.  We have pages -- separated into

12  pages --

13               And, most importantly, getting at Your

14  Honor's point, we're not talking about what someone

15  else says about defendant.  We're talking about what

16  defendant himself has said --

17               THE COURT:  Um-hmm.

18               MR. GOWEN:  -- and we're talking about

19  things that defendant said at a deposition in

20  testimony that was elicited from him.  These are not

21  subjects that he has injected into the public.

22               And while it would defeat the purpose of

23  today's proceeding and our argument here to talk

24  about the specifics here --

25               THE COURT:  Right.  I appreciate that.

ARGUMENT - MR. GOWEN

Page 32

1          MR. GOWEN:  -- I would note that if

2    these subjects are not embarrassing, it is hard to

3    imagine what the Pansy court would think would be

4    embarrassing.

5               And, in fact, I have to add, The AP, as

6    it did today and in its brief, agrees that the

7    subject matter generally is embarrassing.

8               And, in fact, Your Honor noted early in

9    the case that unlike perhaps an accounting case, this

10   is the sort of case that could lead to embarrassing

11   discovery, but any protection would have to be over

12   specific material specifically shown to be

13   embarrassing.

14              And, again, that's what we have here.

15   We have specifics.  They are embarrassing.  And,

16   again, The AP seems to agree but only to say, well,

17   gee, the guy's been embarrassed so much about what

18   other people have said -- by what other people have

19   said about him, this shouldn't matter at all; let's

20   just let this stuff out, and let's let everyone see

21   what he was forced to say.

22              Well, that -- frankly, it's offensive,

23   but more importantly, it doesn't make any sense, Your

24   Honor.  Again, we're talking about the defendant's

25   own testimony elicited from him at a deposition by

ARGUMENT - MR. GOWEN

Page 33

1    opposing counsel about very embarrassing subjects.

2              And you're right.  While they're not

3    here and we don't know whether they know about this,

4    the questions and answers also --

5              THE COURT:  Well, now, that's

6    interesting that you mentioned that, because I was

7    thinking of that, that taking one aspect of the

8    materials which are under seal, which have been

9    identified as portions of his deposition, he -- you

10   said, "he was forced to."

11             I mean, he was asked questions, and he

12   gave answers.  He had a lawyer present.  He was under

13   oath.  There was vigorous back-and-forth as to what

14   those questions should be and what they meant.

15             Isn't that his own version of the facts?

16   Why would he be embarrassed by his own version of the

17   facts?

18             MR. GOWEN:  Your Honor, it's hard,

19   again, to answer the question without defeating the

20   purpose, so perhaps --

21             THE COURT:  Right.

22             MR. GOWEN:  -- I could use a

23   hypothetical --

24             THE COURT:  Yes, please.

25             MR. GOWEN:  -- and just talk about me?

ARGUMENT - MR. GOWEN

Page 34

1              THE COURT:  Yeah.

2              MR. GOWEN:  There's a lot in my personal

3    life that is my version of the facts and is true, but

4    I don't want anyone to know about it because it would

5    be embarrassing.  And I don't want anyone to know,

6    even if it's one person.

7              If this material comes out, everyone

8    will know about it.  It would be terribly

9    embarrassing for this material to come out.

10             And that brings me to another point,

11   about a declaration.  Your Honor, we'd be very happy

12   to submit a declaration about this, but, frankly,

13   reading the authority, I don't think it would add

14   much.

15             Embarrassment, obviously, is subjective.

16   Of course, Mr. Cosby can submit an affidavit that

17   says, this will be embarrassing to me, and we can

18   explain why, but it really is up to the court to

19   decide whether it should be embarrassing.

20             THE COURT:  Okay.

21             MR. GOWEN:  I submit that if you look at

22   this material, the court will conclude that it is.

23             THE COURT:  Um-hmm.

24             MR. GOWEN:  Now --

25             THE COURT:  Yes.  Go ahead.  I'm sorry.

ARGUMENT - MR. GOWEN

Page 35

```
 1              MR. GOWEN:  Okay.

 2              THE COURT:  Now, privacy and

 3   embarrassment seem to be somewhat conflated.  Are

 4   they -- is there a difference between the two?

 5              MR. GOWEN:  Well, in this case, no,

 6   probably, because it's embarrassing because it's

 7   private.

 8              THE COURT:  Okay.

 9              MR. GOWEN:  I think that Pansy --

10              THE COURT:  Um-hmm.

11              MR. GOWEN:  -- imagined the distinction,

12   but here, they really run together.

13              THE COURT:  Now, what about this

14   argument that he may be somewhere between a public

15   official and a private person -- that is, a person

16   who's not only an entertainer but who also has opined

17   on matters of public interest -- and that, therefore,

18   the public -- there would be a proper inquiry whether

19   the individual opining in matters of public interest,

20   morality, et cetera -- about, you know, his

21   background, et cetera, which may not be the same as

22   you or -- or me, perhaps, if we had some private

23   matters?

24              If I go out there and I talk about a --

25   you know, morality, would it be -- would that weigh
```

ARGUMENT - MR. GOWEN

Page 36

1    in the balance here?

2              MR. GOWEN:  No, Your Honor.  And I admit

3    it's an interesting concept, but the answer is no.

4    And to conclude that, you need go no further than The

5    AP's brief.  They make this argument in one half-

6    hearted sentence at the end of their brief, and they

7    offer no authority, because there is no authority,

8    and we provide authority which holds the opposite.

9              THE COURT:  Which one?  Which is your

10   authority here?

11             MR. GOWEN:  I can run back to --

12             THE COURT:  Well, I think you had a case

13   of some -- yeah --

14             MR. GOWEN:  There was one about Prince.

15             THE COURT:  -- a rapper or something

16   who's deposition --

17             MR. GOWEN:  Right.

18             THE COURT:  -- was kept under seal from

19   the district court somewhere.  Yeah.

20             MR. GOWEN:  And then there was a case

21   against, I believe, Gary Condit, who actually was a

22   public official.

23             THE COURT:  Right.

24             MR. GOWEN:  And --

25             THE COURT:  Well, he was a public

ARGUMENT - MR. GOWEN

Page 37

1    figure.

2                    MR. GOWEN:  -- the court noted, mere

3    celebrity interest here isn't -- this isn't just

4    about mere celebrity interest.

5                    THE COURT:  Yeah.

6                    MR. GOWEN:  The point being that it has

7    to be more than that.  And that makes sense if you

8    look at what I'll call the public interest factors in

9    Pansy and the other cases.

10                   When you read the context in which those

11   are articulated and, most importantly, when you read

12   the citations Pansy uses to articulate those factors,

13   it's very clear Pansy is talking about public in

14   the not only defamation sense but in the governmental

15   sense; public officials, the use of public funds, the

16   workings of government.

17                   Mere celebrity here doesn't make this

18   case or any one person public for the Pansy sense of

19   the word.

20                   THE COURT:  Yeah.  Okay.

21                   MR. GOWEN:  A word -- could I offer a

22   word about the settlement issue?

23                   THE COURT:  Yeah, that's -- I'd like

24   to -- you know, I mean, proceed through the factors.

25   I don't mean to cut you off here.

ARGUMENT - MR. GOWEN

Page 38

1              MR. GOWEN:  Pansy mentions settlement as

2      a factor --

3              THE COURT:  Yeah.

4              MR. GOWEN:  -- and, certainly, it -- it

5      offered a rather hypothetical notion that parties

6      will settle anyway.  But let's talk about this case.

7                  Again, this case was between private

8      individuals, and they ended it before it become

9      public, and they ended it avoiding the publicity and

10     embarrassment that a trial would bring.  And they

11     entered into an agreement keeping everything

12     confidential.

13                  Now, if key portions --

14             THE COURT:  Well, keeping everything

15     confidential, what does that mean?

16             MR. GOWEN:  Well, they --

17             THE COURT:  In other words, did they --

18     they didn't come to the court and ask to seal

19     anything.

20             MR. GOWEN:  Well, we did, Your Honor.  I

21     know what Your Honor means.  We -- defendant did, and

22     there was an interim sealing order --

23             THE COURT:  Right.

24             MR. GOWEN:  -- which took place when the

25     case ended.

ARGUMENT - MR. GOWEN

Page 39

1          And you're right, and as The AP says, we
2    can't rely -- merely by settling, we can't rely on
3    the courts keeping that under seal forever.
4          But we did everything we could.  So did
5    the plaintiff.  And, more importantly, there is no
6    public right of access to discovery documents.
7          THE COURT:  Right.
8          MR. GOWEN:  And here, we otherwise --
9          THE COURT:  Well, but the court never
10   decided whether or not these documents should be
11   sealed.
12         What it said, as I understand it from my
13   own writing, is, let's stop; let's gather the
14   documents; and then we'll make a decision.
15         That decision was never made.  That's
16   what we're doing now.
17         MR. GOWEN:  Right.
18         THE COURT:  In a sense, we're rolling
19   the -- we're turning the clock back to eight years
20   ago and trying to decide whether or not this
21   should -- should be sealed.
22         MR. GOWEN:  Right.
23         THE COURT:  So two things should have
24   happened.  Either the courts should have made that
25   determination back then, or the parties should have

1   asked the court, we have a confidentiality agreement,

2   Judge; we want you to seal all the discovery

3   materials.  And then we could have done a Pansy

4   analysis and then decide one way or the other, I

5   think, in which case, then reliance would have been

6   much greater.

7                The court -- you told us this was going

8   to be sealed, and now somebody comes in and wants to

9   unseal it.

10                MR. GOWEN:  Understood, Your Honor.

11                THE COURT:  Yeah.

12                MR. GOWEN:  And that didn't happen, and

13   perhaps in retrospect, it should have.

14                THE COURT:  Um-hmm.

15                MR. GOWEN:  However, what I'm trying to

16   say now is -- and it pertains only to this case and

17   not the hypothetical imagined in Pansy -- if we had

18   been asked at the time whether -- would you settle if

19   you know all this stuff is going to get out, the

20   answer would be, I'm not so sure I want to settle.

21                THE COURT:  It would have -- it would

22   have discouraged you.

23                MR. GOWEN:  It would have discouraged

24   the settlement --

25                THE COURT:  Um-hmm.

ARGUMENT - MR. GOWEN

Page 41

1            MR. GOWEN:  -- in a very big way.

2            And so what you have here is -- merely

3    because something was included in a routine discovery

4    motion in a case that never went to trial, you

5    have --

6            THE COURT:  No.  Well --

7            MR. GOWEN:  -- [indiscernible]  --

8            THE COURT:  Let me ask you about that,

9    because when you have your deposition taken, wouldn't

10   you anticipate that that would work its way, through

11   summary judgment or trial, into the public?

12           In other words, is [sic] the taking of a

13   deposition, which is taken in private, give you some

14   assurances that that will not get out into the public

15   arena at some point in the future unless you settle

16   the case and you get a sealing order?

17           So is your reliance affected by --

18   certainly, by the legal prospect that this may come

19   out in the regular course of -- of the trial?

20           MR. GOWEN:  Your Honor, let me slip into

21   hypotheticals a little bit.

22           THE COURT:  Yeah.

23           MR. GOWEN:  But absolutely.  You can

24   imagine a party beginning a case.  Discovery, The

25   Seattle Times says, is private, and the depositions

ARGUMENT - MR. GOWEN

Page 42

1    unfold.

2                And that party could say, boy, we better

3    settle this thing; we think the other side is wrong,

4    but the publicity and embarrassment that would follow

5    a public trial or a summary judgment motion wouldn't

6    be worth the victory, so we better settle this, and

7    now is the time to do it because we're in discovery;

8    The Seattle Times says it's private; I'm sure the

9    other side will agree, if we stop it now, nothing

10   becomes public.

11               And you're right.  We can't technically

12   rely on the courts not unsealing some discovery

13   motions that have been filed, but those are -- we go

14   right back to the analysis.  Those are just discovery

15   motions.

16               THE COURT:  Yeah.

17               MR. GOWEN:  There's no right of access

18   to them.  Disclosing them would serve no public good,

19   the public in the Pansy sense of the word, and yet,

20   it would cause terrible embarrassment and invading

21   the privacy.

22               So, again, just conclude, it would

23   undermine the settlement here, and it would

24   [indiscernible] future settlements in similar cases.

25               THE COURT:  Um-hmm.  What about tainting

ARGUMENT - MR. GOWEN

Page 43

1    of the jury pool?  What do you think of that?

2                    MR. GOWEN:  I was surprised when I read

3    in The AP's brief that there's no more jury pool to

4    taint because, of course, we have this case in

5    Massachusetts pending against Mr. Cosby.

6                    And, again, that showing has to be

7    specific, but again, we now have specifics for the

8    court to look at, which, frankly, for the same

9    reasons that they would be embarrassing, would also

10   prejudice him in the eyes of the jury pool in

11   Massachusetts.

12                   THE COURT:  Um-hmm.

13                   MR. GOWEN:  Another word, Your Honor, if

14   you don't mind?

15                   THE COURT:  Yeah, please.

16                   MR. GOWEN:  I don't want to interrupt

17   your train of thought, but with respect to redaction,

18   with respect to the notion that not every single word

19   in a discovery motion can meet the balancing test,

20   obviously, that's true.

21                   And that's the reason -- I don't fault

22   Ms. Sproul for not knowing this -- we did submit

23   redacted copies of everything here.  We did early on,

24   when this was at issue in the case, and we filed a

25   brief in opposition to the lifting of the seal.  And

ARGUMENT - MR. GOWEN

Page 44

1    we called it a partial opposition to the lifting of

2    the seal.  We submitted to the court redacted copies.

3             Now, as I stand here today, with nine

4    years having lapsed and what I would think any public

5    interest in these materials having lapsed with it, I

6    don't think the court necessarily needs to go through

7    that, because there is no right of access, there are

8    no factors supporting disclosure, and there are lots

9    of factors encouraging sealing.

10            But if the court is inclined to do that,

11    we have the redactions in the file, and what I would

12    simply ask is, now that the time has gone by, that we

13    get a chance to make sure we've done everything and

14    redacted everything that was filed and provide you

15    with that.

16            So if that is the sort of -- I think it

17    would be an unnecessary use of judicial resources,

18    but if that's what the court wants --

19            THE COURT:  Now, would that be as to

20    each and every document or as to the deposition or --

21    or --

22            MR. GOWEN:  Well, the way it played out,

23    Your Honor -- and it was according to a terrific

24    procedure that --

25            THE COURT:  Yeah.

ARGUMENT - MR. GOWEN

Page 45

1               MR. GOWEN:  -- that the court

2    promulgated -- the pages of the depositions, I don't

3    believe -- perhaps with an exception or two, weren't

4    themselves attached, but rather, the parties retyped

5    them.  They produced them verbatim.

6               And often, and just as troubling here,

7    they characterized them.  Okay?  So you have

8    characterizations and cites to the record, and you

9    also have verbatim repetitions of testimony in the

10   motions itself.

11              THE COURT:  Well, the depositions

12   is [sic] questions and answers --

13              MR. GOWEN:  Right.

14              THE COURT:  -- and then there's a

15   back-and-forth by the lawyers.

16              MR. GOWEN:  Right.

17              THE COURT:  The back-and-forth probably

18   no -- no role here.  It really only would be -- be

19   that, unless you think that the back-and-forth put

20   the answers in context.

21              MR. GOWEN:  That's it, Your Honor.  When

22   we went through and redacted -- and, again, I'd like

23   a chance --

24              THE COURT:  Yeah.

25              MR. GOWEN:  -- to double check, we

ARGUMENT - MR. GOWEN

Page 46

1   didn't redact back-and-forth about, you know, the

2   form of a question or something like that or some of

3   the really [indiscernible] stuff.

4              THE COURT:  Would -- let me ask you to

5   clarify it.  And I think you -- is it document 63

6   that has some attachments?  Is that -- is that what

7   you're saying that you -- that you redacted?

8              MR. GOWEN:  We took, Your Honor, if

9   memory serves -- and, again, I'd like to double check

10  this.  We took plaintiff's motions for sanctions,

11  plaintiff's motion to compel, defendant's motion to

12  compel, plaintiff's motion to compel The National

13  Enquirer, all --

14             THE COURT:  Yeah, I think -- excuse me

15  for interrupting you, but I think you -- yeah, I'm

16  looking at 63, Memorandum of Law in Partial

17  Opposition to the Lifting of the Seal.  Is that the

18  one?  Okay.

19             MR. GOWEN:  Is that which one, Your

20  Honor?

21             THE COURT:  That's 63.

22             MR. GOWEN:  That's a brief that we

23  filed --

24             THE COURT:  Right, Memorandum of Law in

25  Part -- but I think it had -- it had attachments.

ARGUMENT - MR. GOWEN

Page 47

1   And maybe that's what you're referring to.  Those

2   attachments had the redactions.

3               MR. GOWEN:  Yes, Your Honor.  I'm sorry.

4               THE COURT:  Okay.

5               MR. GOWEN:  I misunderstood.  With that

6   brief --

7               THE COURT:  Yeah.

8               MR. GOWEN:  -- we submitted redacted

9   copies of, I think, all of the other briefs, all of

10  the other motions and briefs.

11              THE COURT:  Oh, okay.

12              MR. GOWEN:  So in that brief, which

13  itself was under seal and which itself we redacted

14  and submitted to the court, we argued if the court

15  would be more comfortable proceeding this way, we

16  have proposed redacted copies of all of the discovery

17  motions, thus limiting the sealing to the portions of

18  those papers that meet the balancing test.

19              THE COURT:  Okay.  I think I -- I follow

20  that.

21              MR. GOWEN:  Okay.

22              THE COURT:  Okay.  Bottom line?

23              MR. GOWEN:  The bottom line, Your Honor,

24  is that --

25              THE COURT:  You think you've met good

ARGUMENT - MS. SPROUL

Page 48

1   cause?

2               MR. GOWEN:  We do, Your Honor.  We do,

3   Your Honor.  I think it's very clear if you look at

4   even the first couple of pages of plaintiff's motion

5   for sanctions or plaintiff's motion to compel.  There

6   is no presumption of openness here.  We're on a blank

7   slate.

8               THE COURT:  Right.

9               MR. GOWEN:  And there are factors in

10  favor of sealing and zero factors under the Pansy

11  analysis in favor of unsealing.

12              And the concepts that have been offered

13  by The AP are novel, without authority.  Opening

14  these documents would serve no sanctioned public good

15  and would cause terrible impairment.

16              THE COURT:  Okay.  Thank you, Mr. Gowen.

17              MR. GOWEN:  Thank you, Your Honor.

18              THE COURT:  Okay.  Let me ask counsel,

19  Ms. Sproul, if you would like a rebuttal.

20              MS. SPROUL:  Thank you, Your Honor.

21  Just a couple of points.

22              There are under seal two pages of a

23  transcript --

24              THE COURT:  Right.

25              MS. SPROUL:  -- of a hearing that the

ARGUMENT - MS. SPROUL

1    court held on one or two or three of the motions.

2    There is a different standard for proceedings held in

3    court.  The closure --

4                THE COURT:  Yeah, there's a transcript.

5                MS. SPROUL:  Yeah.

6                THE COURT:  There are two pages of a

7    transcript --

8                MS. SPROUL:  8 and 9, pages 8 and 9.

9                THE COURT:  -- that are here somewhere.

10   We do have them.  Yeah.  Okay.  So that -- that would

11   be --

12               MS. SPROUL:  That would be a

13   constitutional standard.

14               THE COURT:  That would be a court --

15   court document.  Okay.

16               MS. SPROUL:  Yes.  And that would be --

17   it's a judicial record.  There would be a

18   presumption.

19               THE COURT:  Yes.

20               MS. SPROUL:  You know, we don't agree

21   that the law is that there's no -- there's no favor

22   either way for sealing or non-sealing.

23               We believe it's clear, even putting

24   aside the common law and the constitutional tests,

25   that Rule 5.15 embodies the court's dedication to the

Page 50

1   proposition that court proceedings should be held in

2   the open unless there is good cause, and it is the

3   defendant's burden to show it in this case because he

4   wants the sealing.

5            We have never said that everything

6   should be accessible.  We understand there is

7   something that is called good cause and sometimes it

8   can be met.  We are just saying that from what we

9   see, it isn't met here.

10          The fact that Mr. Cosby sat at his

11   deposition and gave testimony and gave his version of

12   the facts does not, you know, visit upon him a

13   particular injury.  In fact, it's his story.  It's

14   what he's saying to defend himself.  And we can't

15   really roll back the clock and pretend that this

16   happened nine years ago because so much has happened

17   in between.

18          And, in fact, the Green case in

19   Massachusetts is a defamation case that arises from

20   the fact that Mr. Cosby went out to the press and

21   talked about this and defended himself and gave his

22   version of the facts.

23          So, you know, how does that hurt -- how

24   does this hurt him, the fact that his deposition will

25   somehow -- parts of his deposition will come out?  I

1   don't know what those parts are.  I don't see that as

2   the particularized, specific, clearly demonstrated

3   injury that the Third Circuit specifically requires

4   here.

5              Just to say it's a sexual nature -- the

6   information is of a sexual nature and, therefore,

7   it's embarrassing, that's not enough.  You know, it

8   has to be explained.

9              Because if it's already out there and if

10  it's already in the public eye -- and I believe it

11  is; obviously, I can't attest to it because I don't

12  know what specifically he said -- then there's no

13  basis for keeping it secret in this court, especially

14  because this is a court.

15             And that brings me to the Condit case

16  and the Prince case that were cited in Mr. Gowen's --

17             THE COURT:  Where the -- where the

18  depositions were sealed?

19             MS. SPROUL:  Yeah.  Those were not --

20  those did not arise from matters that had been filed

21  in court.

22             In other words, the deposition

23  transcripts -- and I believe in the Condit -- no, it

24  wasn't the Condit.  In the Prince case, I don't know

25  if he had actually given his deposition yet.

ARGUMENT - MS. SPROUL

1          But in the Condit case, the deposition
2     that was at issue in that case was Dominick Dunne's
3     deposition.  Dominick Dunne at the time -- he's now
4     deceased -- had a show --
5               THE COURT:  Right.
6               MS. SPROUL:  -- on cable TV, and he
7     talked about Gary Condit and Chandra Levy, and he
8     gave the whole story from his perspective.  He was
9     sued by Gary Condit.
10          And so he was the defendant, and he was
11    going to give a deposition, and he wanted -- and he
12    gave a deposition, and he wanted it to be sealed.
13    And the court refused to seal it.
14          Now, I'm not really sure why they cited
15    that case, but it's true they said some things in the
16    course --
17              THE COURT:  You mean before the
18    deposition was taken?
19              MS. SPROUL:  No.  The deposition was
20    actually taken in that case, had been taken, and he
21    wanted it under seal because the plaintiff's lawyer,
22    Gary Condit's lawyer, Lin Wood, said -- said to
23    someone in the Daily News in New York something about
24    maybe distributing the transcript of the deposition.
25              And Dominick Dunne was enraged and

Page 53

1    didn't want that to happen, so he moved for a

2    sealing -- he moved for an order to seal.

3              But it wasn't an issue where the

4    deposition transcript or portions of it had been sent

5    to the court to evaluate a motion separately.

6              THE COURT:  Well, now, the

7    confidentiality agreement that was entered into in

8    this case was not presented to the court, but is that

9    confidentiality agreement within the scope of this

10   case?

11             Is that -- is that something in this

12   case even though it was -- you know, occurred outside

13   of the case?  Is the deposition transcript of this

14   case, perhaps other deposition transcripts that might

15   have been taken in this case, which are not in the

16   record of the -- of the -- that is, not in the

17   clerk's office -- are those within the scope of this

18   case that the court would have authority to either

19   cloak them in some kind of a protective order or

20   order their production?

21             MS. SPROUL:  I guess I have two answers

22   for that.

23             One is that I believe the court has some

24   authority in that regard because of the Pansy case,

25   because, as Your Honor will recall, the settlement

ARGUMENT - MS. SPROUL

Page 54

1 agreement was not filed of record in that case and

2 the court made a determination that it could not be

3 sealed even --

4           There was a corollary proceeding going

5 on there in Pansy. There was a right to know action

6 in the state court in Pennsylvania at the same time

7 by the newspaper seeking that settlement agreement.

8           And the court said, we're not going to

9 allow that agreement to be sealed. And that made it

10 accessible through the right to know case that was

11 proceeding on the side.

12           And so the court made a determination

13 with respect to that settlement agreement even though

14 it wasn't in the court file. There were two grounds

15 for them -- for the court's actions.

16           And so in -- in this case -- and we're

17 not asking the court to order the defendant or the

18 plaintiff to allow The Associated Press to see

19 unfiled discovery. That's The Seattle Times case.

20 We're not asking for that.

21           What we're asking for is what has been

22 filed with the court because that has a different

23 character, different personality, different judicial

24 importance. And in this case, what we're asking the

25 court to do is to look at these documents to see

Page 55

1    whether there is actually an affirmative injury that

2    will arise from them.

3                    THE COURT:  Okay.

4                    MS. SPROUL:  And it may not -- you know,

5    with the passage of time, it may not be as it once

6    was nine years ago.

7                    THE COURT:  Okay.  Thank you.

8                    Mr. Gowen, please.

9                    MR. GOWEN:  Brief rebuttal, Your Honor?

10                   THE COURT:  Yeah, sure.

11                   MR. GOWEN:  Just very briefly.

12                   Defendant never commented in public

13   about this case or about the subjects covered in the

14   depositions we're talking about today.  That just

15   never happened.

16                   It's -- counsel mentioned transcripts,

17   judicial proceedings versus [indiscernible] --

18                   THE COURT:  Is that -- you said he never

19   commented about this case in public?

20                   MR. GOWEN:  Not publicly, Your Honor.

21   There's no -- there's --

22                   THE COURT:  I thought in the -- I

23   thought there had been -- and my memory may not be

24   accurate, but I thought part of the debate during the

25   sanctions process was an interview that he had given

ARGUMENT - MR. GOWEN

Page 56

1    to The National Enquirer about the facts of the case.

2              MR. GOWEN:  Not this case, Your Honor.

3    That was about something else.  And that's an

4    important distinction.

5              The cases don't distinguish between

6    discovery motions, meaning the paper portion of it,

7    and the transcripts around them.  The cases, because

8    of Seattle Times, make a broad exception to the

9    common law right of access to discovery motions.

10             THE COURT:  Um-hmm.

11             MR. GOWEN:  There's no authority to

12   suggest that the transcripts deciding those motions

13   is different from the motions -- the pieces of paper

14   arguing them.

15             There is no authority for the idea that

16   Mr. Cosby, because of what he has done, meets the

17   public interest factors announced in Pansy.

18             The Condit case may be distinguishable,

19   as counsel mentions, but they have no authority for

20   their argument, their chief argument here, that

21   because of Mr. Cosby's status and who he is, he

22   deserves less of the privacy and embarrassment

23   factors announced in Pansy.  There's just no

24   authority for that, Your Honor.

25             Thank you.

Page 57

1              THE COURT:  Okay.  Very well.  I think

2    everything has been said.  If not -- by everybody,

3    and I will take the matter under advisement and will

4    get back to you.

5              MR. GOWEN:  Thank you, Your Honor.

6              THE COURT:  Okay.  Thank you.

7              COURTROOM DEPUTY:  All rise.

8                         -   -   -

9              (Whereupon, the proceeding was concluded

10    at 10:58 a.m.)

11                         -   -   -

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 58

1                 C E R T I F I C A T I O N

2

3

4              I, Judi Y. Olsen, Registered

5    Professional Reporter, do hereby certify that the

6    foregoing is a true and correct transcript from the

7    electronic sound recordings of the proceedings in the

8    above-captioned matter.

9

10

11

12

13   June 29, 2015              _____

     Date                       Judi Y. Olsen, RPR

14

15

16

17

18

19

20

21

22

23

24

25

| & | | | |
|---|---|---|---|

**&**  1:10

**0**

**01099**  1:3

**1**

**1**  4:3
**1001**  1:10
**10:07**  1:5
**10:58**  57:10
**11**  9:25
**1760**  1:10
**1800**  1:24
**1801**  1:24
**1900**  1:14
**19103**  1:11,14,24

**2**

**20**  16:15 25:14
**2006**  3:8
**2015**  1:4 58:13
**215**  1:11,15
**26**  1:4 2:4 13:15
   28:22
**29**  58:13
**2:05**  1:3

**3**

**3**  2:3

**4**

**48**  2:3

**5**

**5.15**  5:4 13:14 49:25
**50**  17:13
**55**  2:4

**6**

**63**  46:5,16,21
**665-2000**  1:15

**7**

**777-6690**  1:25

**8**

**8**  49:8,8

**888**  1:25

**9**

**9**  49:8,8
**988-9778**  1:11

**a**

**a.m.**  1:5 57:10
**able**  4:17
**absolutely**  41:23
**abstract**  31:5,9
**access**  10:19 12:21
   13:10,12,13 39:6
   42:17 44:7 56:9
**accessible**  50:6
   54:10
**accounting**  30:5
   32:9
**accurate**  55:24
**accused**  4:5 30:18
   30:19,23
**act**  18:3
**action**  54:5
**actions**  18:11 54:15
**adamant**  20:11
**add**  32:5 34:13
**addition**  9:8
**address**  17:21
**adds**  21:10
**admission**  27:13
**admit**  36:2
**admitted**  2:12
**advisement**  57:3
**affidavit**  34:16
**affidavits**  24:8
**affirmative**  55:1
**african**  16:14
**ago**  17:6 20:24,24
   20:25 22:14 26:8
   39:20 50:16 55:6
**agree**  9:16 12:20,22
   28:18 29:8 32:16
   42:9 49:20
**agreed**  9:23 10:25
   26:22

**agreement**  3:23 8:19
   8:21,23 9:5,12,16
   9:18 14:14 26:22
   38:11 40:1 53:7,9
   54:1,7,9,13
**agreements**  10:13
**agrees**  32:6
**ahead**  34:25
**allegations**  27:14
**allegedly**  22:16
**allow**  54:9,18
**amendment**  4:16
   22:25
**american**  16:14
**amidst**  29:6
**amount**  20:22 22:18
**analysis**  5:25 12:23
   13:9 14:24 16:24,25
   18:24 20:1 27:25
   28:3 29:3 40:4
   42:14 48:11
**analyze**  17:15
**analyzing**  16:20
   31:4
**andrea**  1:3
**announced**  29:12
   56:17,23
**answer**  25:16,17
   33:19 36:3 40:20
**answers**  30:4 33:4
   33:12 45:12,20
   53:21
**anticipate**  41:10
**anyway**  38:6
**ap**  4:11 20:17,18
   26:25 27:5,10,17
   28:1,9,12 31:5 32:5
   32:16 39:1 48:13
**ap's**  27:22 36:5 43:3
**apparently**  11:6
**appearances**  1:8
**application**  24:6
**apply**  11:19,20
   12:13,21 14:6

**applying**  13:25
**appreciate**  31:25
**approach**  6:13
   21:25
**arena**  41:15
**argued**  28:1 47:14
**argues**  3:22,24 6:11
**arguing**  5:21 6:8,9
   56:14
**argument**  2:3 6:4
   7:24 8:20 22:10
   31:23 35:14 36:5
   56:20,20
**arises**  50:19
**arrangement**  9:15
**articulate**  37:12
**articulated**  37:11
**aside**  21:16 49:24
**asked**  29:19 33:11
   40:1,18
**asking**  5:10 8:11
   17:14 54:17,20,21
   54:24
**asks**  30:22
**aspect**  33:7
**assault**  4:5 17:8
**assertions**  4:7
**associated**  1:9 3:10
   20:22 27:2 54:18
**assuming**  6:3,4
**assurances**  41:14
**atlantic**  1:23
**attached**  45:4
**attachments**  46:6,25
   47:2
**attempted**  16:13
**attempts**  4:10
**attention**  18:2
**attest**  51:11
**attorney**  17:7
**audio**  1:16
**authority**  4:13
   11:19 27:6 34:13
   36:7,8,10 48:13
   53:18,24 56:11,15

56:19,24
**available**  8:16
**avoiding**  38:9
**aware**  18:16

**b**

**b**  2:11
**back**  12:16 33:13
  36:11 39:19,25
  42:14 45:15,17,19
  46:1 50:15 57:4
**background**  35:21
**balance**  11:21 16:6
  36:1
**balancing**  13:21
  15:18 43:19 47:18
**barrage**  27:15
**based**  15:18 18:7
**basis**  10:7 24:18
  51:13
**bear**  29:4
**beginning**  41:24
**behave**  24:1
**believe**  4:24 7:22
  11:1 21:1 25:14
  36:21 45:3 49:23
  51:10,23 53:23
**believes**  7:4
**better**  42:2,6
**big**  31:2 41:1
**bit**  41:21
**blank**  29:4,7,17 48:6
**body**  15:15
**books**  16:16
**borough**  14:18
**bottom**  24:4 47:22
  47:23
**boy**  42:2
**brief**  6:23 8:2 9:4,7
  9:25 11:18 12:11
  16:10 27:5,22,24,24
  28:1 29:16 32:6
  36:5,6 43:3,25
  46:22 47:6,12 55:9

**briefly**  55:11
**briefs**  6:19 7:23
  27:2 47:9,10
**bring**  18:2 38:10
**brings**  12:15 34:10
  51:15
**broad**  56:8
**burden**  13:22 28:11
  28:23 29:4 50:3
**business**  30:5

**c**

**c**  1:6 13:15 28:22
  58:1,1
**cable**  17:12 52:6
**call**  11:20 17:15
  18:1 37:8
**called**  20:16 44:1
  50:7
**camera**  9:6
**captioned**  58:8
**career**  17:13
**careful**  21:20
**carefully**  23:7
**case**  3:17 4:2,4 5:10
  7:13 8:10 10:18
  11:8,21 14:17 21:7
  21:18,18 22:6,14,20
  22:22 23:10 24:7
  25:13 26:7,23 27:3
  27:10,11,19 28:9,10
  29:2,3 30:9,21,24
  31:10 32:9,9,10
  35:5 36:12,20 37:18
  38:6,7,25 40:5,16
  41:4,16,24 43:4,24
  50:3,18,19 51:15,16
  51:24 52:1,2,15,20
  53:8,10,12,13,14,15
  53:18,24 54:1,10,16
  54:19,24 55:13,19
  56:1,2,18
**cases**  9:24 10:11
  12:10 14:5 17:21
  21:16 23:3,3 37:9

42:24 56:5,7
**category**  17:25
**cause**  4:8 5:1 6:5,17
  8:13 13:25 14:6,7
  24:5,6,6 42:20 48:1
  48:15 50:2,7
**causes**  27:11
**cautious**  9:21
**celebrity**  16:10
  17:11 18:1 26:14
  27:20 37:3,4,17
**centerpiece**  20:16
  20:21
**certain**  12:6 21:10
**certainly**  27:4 29:10
  38:4 41:18
**certify**  58:5
**cetera**  35:20,21
**champion**  27:11
**chance**  25:24 44:13
  45:23
**chandra**  52:7
**character**  54:23
**characterizations**
  45:8
**characterize**  18:9
**characterized**  12:7
  20:5 45:7
**chatilo**  1:9
**check**  30:3 45:25
  46:9
**checked**  29:15
**checking**  15:21
**chief**  56:20
**cipollone**  4:9,24
**circuit**  4:21 12:23
  14:5 51:3
**circumstances**  5:13
**citations**  37:12
**cite**  4:14 9:24
**cited**  51:16 52:14
**cites**  8:2 45:8
**city**  16:12
**civil**  23:3

**claim**  30:1
**claims**  3:18,20 29:24
  29:25
**clarify**  12:17 46:5
**classified**  13:7
**clear**  4:21 7:24
  21:17 27:17 29:1
  37:13 48:3 49:23
**clearly**  4:19 29:22
  51:2
**clerk's**  53:17
**cloak**  53:19
**clock**  39:19 50:15
**closure**  49:3
**cognizable**  29:23
  30:24
**come**  3:12 8:13 34:9
  38:18 41:18 50:25
**comes**  18:14 19:1
  27:12 34:7 40:8
**comfortable**  47:15
**commented**  55:12
  55:19
**commitment**  5:6
**common**  13:12
  49:24 56:9
**commonwealth**
  13:21
**community**  16:14
  16:19
**companies**  26:12
**company**  1:23
**compel**  46:11,12,12
  48:5
**complaint**  30:12
**completely**  30:20
**components**  26:15
**concept**  18:14 22:3
  36:3
**concepts**  9:10 48:12
**concern**  3:20 20:8
**conclude**  34:22 36:4
  42:22
**concluded**  57:9

condit  36:21 51:15
  51:23,24 52:1,7,9
  56:18
condit's  52:22
conduct  21:23 22:4
conference  9:20
  13:13
confidential  9:13
  26:24 38:12,15
confidentiality  9:16
  10:8,11,14,16,23
  11:7,10,13 40:1
  53:7,9
conflated  35:3
connected  22:8
consider  21:14
considered  29:10,11
consolidated  11:8
constand  1:3
constitutional  13:11
  18:20 49:13,24
constitutionally
  21:24
content  25:9
contents  4:12
context  37:10 45:20
contract  10:23
controversy  19:22
convicted  22:17
copies  43:23 44:2
  47:9,16
corollary  54:4
correct  5:17 58:6
cosby  1:4 3:15 4:5
  6:24 7:10 8:3,21
  11:14 15:2 16:9
  20:8,14 21:1,13
  34:16 43:5 50:10,20
  56:16
cosby's  4:7 56:21
counsel  33:1 48:18
  55:16 56:19
couple  9:24 48:4,21
course  4:15 11:4
  20:18 29:3 34:16

41:19 43:4 52:16
court  1:1,23 3:2,6
  3:12,16 4:1,24 5:11
  5:14,18,20,24 6:2
  6:15,18 7:6,11,16
  7:19 8:7,11,14,18
  8:22 9:18,19 10:2,6
  11:17,19,23 12:2,15
  12:20,24 13:2,4,6,9
  13:19,22,25 14:3,9
  14:13,15,19 15:1,5
  15:7,13,20,23 16:1
  16:4,8,17,20,22
  17:14,17,20,23
  18:12,15,19,22,25
  19:4,7,10,17,21,25
  21:9,13,17,24 22:2
  22:12,15,19,23 23:1
  23:6,9,13,16,19,22
  23:25 24:4,15,19,22
  25:3,11,18,22,24
  26:2,4 27:1 28:3,7
  28:11,15,17,20 29:5
  29:8,13,22 30:6,9
  30:15,17 31:7,17,25
  32:3 33:5,21,24
  34:1,18,20,22,23,25
  35:2,8,10,13 36:9
  36:12,15,18,19,23
  36:25 37:2,5,20,23
  38:3,14,17,18,23
  39:7,9,9,18,23 40:1
  40:7,11,14,21,25
  41:6,8,22 42:16,25
  43:8,12,15 44:2,6
  44:10,18,19,25 45:1
  45:11,14,17,24 46:4
  46:14,21,24 47:4,7
  47:11,14,14,19,22
  47:25 48:8,16,18,24
  49:1,3,4,6,9,14,14
  49:15,19 50:1 51:13
  51:14,17,21 52:5,13
  52:17 53:5,6,8,18
  53:23 54:2,6,8,12

54:14,17,22,25 55:3
  55:7,10,18,22 56:10
  57:1,6
court's  28:3 49:25
  54:15
courtroom  57:7
courts  5:6 7:1 39:3
  39:24 42:12
coverage  20:5,15
covered  55:13
cozen  1:13
cozen.com  1:15
criminal  22:20,21
  23:3
crop  27:13
cross  16:1
current  3:25 11:2
  12:23
cut  37:25
cv  1:3

## d

d  2:1
daily  52:23
date  58:13
deal  21:19 22:1
deals  14:5 19:25
debate  19:5 55:24
deceased  52:4
decide  8:7 34:19
  39:20 40:4
decided  26:18,19
  29:2 39:10
deciding  56:12
decision  39:14,15
declaration  7:10 8:6
  9:3 34:11,12
dedication  49:25
deemed  4:22
defamation  4:6
  18:10 19:1 37:14
  50:19
defeat  31:22
defeating  33:19

defend  50:14
defendant  1:5,13
  7:4 17:5 26:5 27:14
  28:6 29:25 31:15,16
  31:19 38:21 52:10
  54:17 55:12
defendant's  32:24
  46:11 50:3
defendants  18:10
defended  50:21
defense  14:18
defined  4:9,19 24:10
  29:23 30:24
demonstrate  4:8,18
  21:4
demonstrated  7:21
  51:2
demonstrates  5:8
  25:8
denied  23:13
depending  11:20
deposition  7:14 25:4
  31:19 32:25 33:9
  36:16 41:9,13 44:20
  50:11,24,25 51:22
  51:25 52:1,3,11,12
  52:18,19,24 53:4,13
  53:14
depositions  25:5
  41:25 45:2,11 51:18
  55:14
deputy  57:7
description  2:12
deserves  56:22
designated  3:5
determination
  39:25 54:2,12
difference  16:13
  17:23 20:25 21:4
  25:4 31:2 35:4
different  11:13
  12:12,13,14,14 17:9
  21:15 49:2 54:22,23
  54:23 56:13

**dire** 21:20,23
**directly** 7:13 25:17
**disadvantage** 5:15
  31:6
**disclosed** 10:19
**disclosing** 10:25
  42:18
**disclosure** 4:20,25
  13:18 22:8 44:8
**disclosures** 20:15
**discouraged** 40:22
  40:23
**discovery** 9:15 12:7
  12:17,25 14:9,10,11
  22:8 26:18,21,23
  27:1 32:11 39:6
  40:2 41:3,24 42:7
  42:12,14 43:19
  47:16 54:19 56:6,9
**discretion** 9:12 10:4
**discussion** 26:6
**dispute** 16:21 26:9
  26:14,19 30:5
**distinction** 35:11
  56:4
**distinguish** 56:5
**distinguishable**
  56:18
**distributing** 52:24
**district** 1:1,1,7 4:4
  17:7 21:15 36:19
**divest** 9:11
**docket** 4:12 6:19
  8:16 20:19,20 21:6
  21:9
**document** 6:13,13
  24:18,18 44:20 46:5
  49:15
**documents** 13:23
  24:12,19 29:20 39:6
  39:10,14 48:14
  54:25
**doing** 19:23 39:16
**dominick** 52:2,3,25

**door** 19:12
**double** 45:25 46:9
**downplays** 10:6
**driven** 14:17
**drugs** 8:4 30:10
**dunne** 52:3,25
**dunne's** 52:2

### e

**e** 2:1,11 58:1
**earlier** 31:10
**early** 32:8 43:23
**eastern** 1:1
**eduardo** 1:6
**effect** 9:22 13:16,17
**efforts** 22:5
**eight** 27:10 39:19
**either** 18:2 25:4
  39:24 49:22 53:18
**electronic** 1:20 58:7
**elicited** 31:20 32:25
**eliminate** 19:13
**embarrass** 21:7
**embarrassed** 32:17
  33:16
**embarrassing** 30:15
  30:18 32:2,4,7,10
  32:13,15 33:1 34:5
  34:9,17,19 35:6
  43:9 51:7
**embarrassment**
  4:22,23 5:1 6:5,6,17
  7:13 30:8,10,22
  34:15 35:3 38:10
  42:4,20 56:22
**embodies** 49:25
**embody** 13:17
**emphasize** 11:14
**employee** 14:22
**encourage** 10:7
**encouraging** 27:7
  44:9
**ended** 26:7 29:3
  38:8,9,25

**enforce** 10:23
**engaged** 26:17
**enquirer** 11:8 46:13
  56:1
**enraged** 52:25
**ensuring** 10:8
**enter** 10:13
**entered** 8:21,23
  10:10 38:11 53:7
**entering** 9:15,21
**entertainer** 16:10
  35:16
**entity** 14:20
**er** 1:3
**especially** 51:13
**esquire** 1:9,13
**essentially** 7:1 8:12
**et** 35:20,21
**evaluate** 53:5
**events** 20:23
**everybody** 23:25
  57:2
**evidence** 7:12 9:7
  21:2
**exactly** 12:4 17:10
**examine** 5:12
**example** 14:18
  23:18 30:13
**exception** 45:3 56:8
**excuse** 46:14
**exhaustive** 15:19
**explain** 34:18
**explained** 21:3 51:8
**explicit** 11:10 14:15
**explicitly** 15:19
**extent** 10:22 13:6
**eye** 16:23 20:10
  26:16 51:10
**eyes** 43:10

### f

**f** 58:1
**fact** 4:7 5:3 9:19
  11:1,12,13 15:3
  32:5,8 50:10,13,18

  50:20,24
**factor** 16:25 17:1
  30:3 38:2
**factors** 11:20,24
  12:1 14:6,16 15:17
  15:24 24:7 29:9,10
  29:16,17 37:8,12,24
  44:8,9 48:9,10
  56:17,23
**facts** 7:25 8:1,9 9:9
  14:17 33:15,17 34:3
  50:12,22 56:1
**failed** 24:5
**fair** 22:24
**fall** 24:22
**falls** 7:2
**far** 16:11
**fashion** 16:24
**fault** 43:21
**favor** 29:18 48:10
  48:11 49:21
**favored** 21:25
**feel** 25:11
**female** 4:6
**figure** 15:9,10 18:13
  18:17,17 19:19 37:1
**file** 3:16 7:16 44:11
  54:14
**filed** 3:6,7 6:20 27:2
  28:3 42:13 43:24
  44:14 46:23 51:20
  54:1,22
**final** 24:16
**find** 17:20
**first** 3:18 4:10,16
  5:3 9:2 29:19 30:1
  31:3 48:4
**follow** 8:11 21:12
  23:20 42:4 47:19
**followed** 27:16
**following** 23:17
**footnote** 9:25,25
**forced** 32:21 33:10
**foregoing** 58:6

forever   26:24 39:3
form   46:2
former   14:21
forming   14:3
forth   33:13 45:15,17
  45:19 46:1
forward   27:12
frankly   32:22 34:12
  43:8
funds   37:15
further   20:20 21:7
  36:4
future   41:15 42:24

**g**

gag   22:5 23:4,13
gary   36:21 52:7,9,22
gather   39:13
gayle   1:9 3:9
gee   32:17
general   30:22
generally   32:7
george   1:13 26:5
getting   19:16 31:13
ggowen   1:15
give   6:1 25:24 41:13
  52:11
given   9:6 19:8 20:20
  51:25 55:25
giving   14:16 15:17
glenmede   4:9
go   11:23,25 12:16
  34:25 35:24 36:4
  42:13 44:6
goes   10:18 24:3
going   5:7 6:3 30:25
  40:7,19 52:11 54:4
  54:8
good   4:8 13:25 14:6
  14:7 24:5,5,6 29:13
  42:18 47:25 48:14
  50:2,7
government   26:12
  37:16

governmental   37:14
gowen   1:13 2:4 5:22
  8:2 26:2,3,5 28:8,13
  28:16,19,25 29:6,9
  29:15 30:1,7,14,16
  31:2,8,18 32:1
  33:18,22,25 34:2,21
  34:24 35:1,5,9,11
  36:2,11,14,17,20,24
  37:2,6,21 38:1,4,16
  38:20,24 39:8,17,22
  40:10,12,15,23 41:1
  41:7,20,23 42:17
  43:2,13,16 44:22
  45:1,13,16,21,25
  46:8,19,22 47:3,5,8
  47:12,21,23 48:2,9
  48:16,17 55:8,9,11
  55:20 56:2,11 57:5
gowen's   51:16
great   16:19
greater   40:6
green   4:3 50:18
grew   22:3
grounds   54:14
gsproul   1:12
guess   6:4 18:1 22:17
  53:21
guide   17:3 18:23
guy's   32:17

**h**

h   1:4 2:11
half   36:5
happen   24:11 30:25
  40:12 53:1
happened   20:22
  23:23 39:24 50:16
  50:16 55:15
happens   26:13
happy   34:11
hard   32:2 33:18
hear   3:2
heard   27:4,23

hearing   1:6 24:25
  48:25
hearted   36:6
hecht   29:2
heightened   18:18
held   17:2 49:1,2
  50:1
helpful   26:8
hmm   6:15 7:6,11,19
  8:14 12:19 13:19
  19:6,9 31:17 34:23
  35:10 40:14,25
  42:25 43:12 56:10
holds   36:8
home   19:11
honor   3:4,9,14,15
  4:3 6:9,21 7:2,9,17
  8:22 9:1,6,12 10:4
  12:1 14:8 15:4,12
  18:8,16 19:16 20:13
  20:19 21:4,13 22:11
  23:11 24:17 26:3,6
  28:8,14,25 30:8
  31:3,8 32:8,24
  33:18 34:11 36:2
  38:20,21 40:10
  41:20 43:13 44:23
  45:21 46:8,20 47:3
  47:23 48:2,3,17,20
  53:25 55:9,20 56:2
  56:24 57:5
honor's   31:14
honorable   1:6
hurt   50:23,24
hypothetical   33:23
  38:5 40:17
hypothetically   5:21
hypotheticals   41:21

**i**

icon   16:11,12
idea   56:15
identified   24:9 33:9
iii   1:13

imagine   32:3 41:24
imagined   35:11
  40:17
impact   5:9,24 15:8
impairment   48:15
importance   9:9
  54:24
important   7:9 9:10
  16:20 56:4
importantly   31:13
  32:23 37:11 39:5
improper   4:11,15
  20:1,5
inclined   44:10
include   13:10
included   41:3
incorporating   13:15
increasing   11:2
indiscernible   12:23
  19:24 21:17,18 22:1
  24:20 29:12 41:7
  42:24 46:3 55:17
individual   35:19
individuals   17:25
  26:10,13 38:8
information   3:19,21
  3:23 21:19 51:6
informed   24:6
inject   19:2
injected   26:16 31:21
injury   4:20,23 5:2
  24:10 29:23 30:6,7
  30:11,25 50:13 51:3
  55:1
innocent   30:20
inquiry   35:18
inspect   27:18
intend   4:25
interest   16:19 19:23
  35:17,19 37:3,4,8
  44:5 56:17
interesting   33:6
  36:3
interests   29:21

**interim** 38:22
**interrupt** 43:16
**interrupting** 46:15
**interview** 55:25
**invade** 3:21
**invading** 42:20
**investigated** 17:7
**involves** 30:10
**involving** 26:11,12
   30:9
**issue** 14:14 22:25
   23:10 25:9 30:2
   37:22 43:24 52:2
   53:3
**issues** 14:10 20:10

**j**

**jr** 1:4
**judge** 1:7 21:22 40:2
**judges** 23:15
**judging** 7:18
**judgment** 14:4
   41:11 42:5
**judi** 1:17 58:4,13
**judicial** 3:24 9:20
   11:2 12:14 13:13
   27:7,8,19 44:17
   49:17 54:23 55:17
**judiciary's** 5:6
**june** 1:4 58:13
**juris** 14:4
**jury** 21:14 22:1,3,7
   43:1,3,10

**k**

**kardashians** 18:4,9
**keep** 9:13,17 26:22
**keeping** 38:11,14
   39:3 51:13
**kentucky** 10:9
**kept** 36:18
**key** 38:13
**kind** 53:19
**kinds** 30:18
**know** 5:15 6:10 7:2
   7:14,25 8:5 9:17,20

12:4,8,13 13:4,5
14:16 16:12 17:3,9
17:10,11 20:7 21:10
22:7 23:2 24:2,11
24:12 25:12,19,20
33:3,3 34:4,5,8
35:20,25 37:24
38:21 40:19 46:1
49:20 50:12,23 51:1
51:7,12,24 53:12
54:5,10 55:4
**knowing** 43:22
**known** 27:6
**knows** 5:22
**koch** 1:10

**l**

**lapsed** 44:4,5
**latest** 20:15
**law** 13:12 19:2 28:7
   30:22 46:16,24
   49:21,24 56:9
**lawsuit** 17:6
**lawsuits** 17:5
**lawyer** 33:12 52:21
   52:22
**lawyers** 6:20 21:23
   22:4,5 45:15
**lead** 32:10
**leading** 29:4
**learned** 26:23
**left** 26:20
**legal** 7:24 41:18
**legitimate** 3:20
   19:23 20:8
**length** 28:9
**leucadia** 28:9,10,16
**level** 18:18
**levine** 1:9
**levy** 52:7
**life** 8:4 34:3
**lifting** 43:25 44:1
   46:17
**limit** 19:14

**limiting** 47:17
**lin** 52:22
**line** 14:4 24:4 47:22
   47:23
**list** 15:19
**little** 41:21
**llp** 1:10
**lodged** 27:14
**long** 26:7,18
**longer** 31:4
**look** 5:11 9:6 16:6
   27:22,23 34:21 37:8
   43:8 48:3 54:25
**looking** 46:16
**lot** 18:10 23:15
   28:20 34:2
**lots** 10:12 44:8
**lskslaw.com** 1:12

**m**

**m** 1:13
**maintain** 3:16
**maintained** 10:12
**making** 9:12
**marked** 2:12,13
**market** 1:10,14,24
**marriage** 8:3
**massachusetts** 4:4
   21:14,21 25:13 43:5
   43:11 50:19
**material** 20:25 21:4
   22:9 28:5,5 30:2,25
   32:12 34:7,9,22
**materials** 25:5 33:8
   40:3 44:5
**matter** 3:20 6:25
   10:5 11:16 15:15
   20:7 32:7,19 57:3
   58:8
**matters** 8:7 10:20
   35:17,19,23 51:20
**mean** 6:22 7:3 10:16
   18:23 20:3 25:10
   28:13 30:17 33:11
   37:24,25 38:15

52:17
**meaning** 6:7 56:6
**means** 14:24 38:21
**meant** 15:9,10 29:1
   33:14
**measure** 30:10
**media** 20:16,21
   27:15
**meet** 43:19 47:18
**meets** 56:16
**memoranda** 6:19
**memorandum** 7:24
   46:16,24
**memory** 46:9 55:23
**mentioned** 33:6
   55:16
**mentions** 38:1 56:19
**mere** 37:2,4,17
**merely** 29:1 39:2
   41:2
**met** 47:25 50:8,9
**mid** 1:23
**middle** 17:25
**mind** 43:14
**misunderstood** 47:5
**morality** 17:4 20:11
   35:20,25
**motion** 1:6 3:6,7
   12:17,18 41:4 42:5
   43:19 46:11,11,12
   48:4,5 53:5
**motions** 12:6,8,8,12
   12:14 13:2 27:2
   42:13,15 45:10
   46:10 47:10,17 49:1
   56:6,9,12,13
**movant** 1:9 3:3,5
**moved** 53:1,2
**murdered** 22:16
**murdering** 22:17

**n**

**n** 1:16 2:1 58:1
**name** 26:4

**named** 4:6
**national** 1:23 11:7
  46:12 56:1
**nature** 51:5,6
**necessarily** 25:9
  44:6
**need** 10:7 25:18,20
  36:4
**needs** 7:5 44:6
**never** 39:9,15 41:4
  50:5 55:12,15,18
**new** 27:13,15 52:23
**news** 4:14 20:4
  52:23
**newspaper** 54:7
**nine** 20:24 44:3
  50:16 55:6
**non** 25:6 49:22
**normally** 18:8
**notable** 20:9
**note** 7:9 20:13 32:1
**noted** 32:8 37:2
**noting** 27:9
**notion** 38:5 43:18
**novel** 48:13
**number** 2:12
**nutshell** 3:11,15

**o**

**o** 58:1
**o'connor** 1:13
**oath** 33:13
**object** 11:5
**obligation** 7:22
**obviously** 21:15
  34:15 43:20 51:11
**occur** 29:6
**occurred** 53:12
**occurs** 13:21 29:4,7
**offensive** 32:22
**offer** 36:7 37:21
**offered** 38:5 48:12
**office** 53:17
**official** 15:10,12
  17:24 26:11 35:15

36:22
**officials** 14:23,25
  26:10 37:15
**oh** 47:11
**okay** 3:2,9 10:2
  17:19 24:4 25:18,22
  26:1 28:15,19 29:9
  29:13 34:20 35:1,8
  37:20 45:7 46:18
  47:4,11,19,21,22
  48:16,18 49:10,15
  55:3,7 57:1,6
**olsen** 1:17 58:4,13
**once** 55:5
**open** 19:12 50:2
**opening** 48:13
**openness** 27:7 29:7
  48:6
**operator** 1:16
**opined** 35:16
**opining** 35:19
**opposing** 33:1
**opposite** 36:8
**opposition** 43:25
  44:1 46:17
**order** 9:18,22 23:13
  38:22 41:16 53:2,19
  53:20 54:17
**orders** 10:23 22:5
  23:4
**outset** 20:4
**outside** 53:12
**overcome** 28:6

**p**

**pa** 1:3,11,14,24
**pacer** 8:16
**page** 2:1 6:13,13
  24:20,21,24,24
**pages** 25:1 31:11,12
  45:2 48:4,22 49:6,8
**pansy** 4:9 6:14 10:6
  11:18,20,24 14:5,12
  14:15 15:8 20:1
  24:7 29:12,18,19

32:3 35:9 37:9,12
  37:13,18 38:1 40:3
  40:17 42:19 48:10
  53:24 54:5 56:17,23
**paper** 56:6,13
**papers** 47:18
**paragraph** 11:10
**part** 23:4 46:25
  55:24
**partial** 44:1 46:16
**particular** 17:6
  50:13
**particularized** 51:2
**particularly** 4:23
  5:2 6:6 16:11 17:21
**particulars** 27:19
**parties** 3:22 4:18
  9:11,14,23 10:13,15
  10:22 11:3,12 25:6
  25:10 26:17 38:5
  39:25 45:4
**parts** 7:15 50:25
  51:1
**party** 6:11 8:24
  13:23 25:4 28:23
  41:24 42:2
**passage** 5:8 55:5
**pending** 4:3 43:5
**pennsylvania** 1:1
  54:6
**people** 32:18,18
**person** 4:25 16:13
  16:23 17:10,17,24
  34:6 35:15,15 37:18
**personal** 26:14 34:2
**personality** 54:23
**perspective** 52:8
**pertains** 40:16
**ph** 29:2
**phase** 26:21
**philadelphia** 1:3,11
  1:14,24
**phillippi** 1:16
**pieces** 56:13

**place** 38:24
**plaintiff** 1:3 7:3
  8:22 11:4,5,6,9
  14:22 24:5,9 29:24
  39:5 54:18
**plaintiff's** 46:10,11
  46:12 48:4,5 52:21
**plaintiffs** 4:6 25:13
**play** 18:14
**played** 44:22
**please** 15:5 26:2,4
  33:24 43:15 55:8
**point** 5:21 7:9 12:16
  12:24 19:7 20:14
  21:22 24:16 29:1
  31:14 34:10 37:6
  41:15
**points** 8:25 48:21
**pool** 21:14 43:1,3,10
**portion** 56:6
**portions** 33:9 38:13
  47:17 53:4
**portray** 4:10
**portrays** 16:9
**prefer** 10:15
**preferable** 11:1
**preference** 13:17
**prejudice** 3:25
  43:10
**prescription** 8:4
**present** 33:12
**presented** 53:8
**press** 1:9 3:10 19:24
  25:15 50:20 54:18
**presumption** 28:4
  28:18 29:7 48:6
  49:18
**pretend** 50:15
**pretrial** 10:19 22:18
  26:17
**prince** 36:14 51:16
  51:24
**principles** 31:10
**privacy** 3:21 19:8
  29:19,21 35:2 42:21

56:22
**private** 10:23 26:17
26:21 30:2,3 35:7
35:15,22 38:7 41:13
41:25 42:8
**probably** 17:12 35:6
45:17
**procedure** 44:24
**proceed** 7:8 37:24
**proceeding** 3:25
7:21 31:23 47:15
54:4,11 57:9
**proceedings** 1:20
49:2 50:1 55:17
58:7
**process** 3:24 27:8,19
55:25
**produced** 1:20 21:2
45:5
**production** 53:20
**professional** 22:4
23:21 58:5
**prohibited** 22:4
**promulgated** 45:2
**proof** 28:12,24
**proper** 35:18
**proposed** 47:16
**proposition** 4:14
50:1
**prospect** 41:18
**protected** 4:16
**protecting** 29:20
**protection** 32:11
**protective** 9:15,22
53:19
**protest** 11:9
**prove** 18:18
**provide** 36:8 44:14
**provision** 11:15
**prudence** 14:4
**public** 3:20 4:12,12
5:7,9 8:16 10:19
14:19,22,23,24 15:9
15:10,10,12,15
16:23 17:3,17,24

18:13,17,17 19:19
20:8,10,19 21:6
26:10,11,11,16,20
27:7 28:2 31:21
35:14,17,18,19
36:22,25 37:8,13,15
37:15,18 38:9 39:6
41:11,14 42:5,10,18
42:19 44:4 48:14
51:10 55:12,19
56:17
**publication** 20:23
**publicity** 20:22
22:18 27:15 38:9
42:4
**publicly** 55:20
**purpose** 4:15 20:1,6
31:22 33:20
**purposes** 6:4
**put** 7:10 11:18
24:14 45:19
**puts** 20:19
**putting** 21:16 49:23

**q**

**question** 25:16
28:22 30:11,21
33:19 46:2
**questions** 30:4 33:4
33:11,14 45:12
**quote** 20:16
**quotes** 27:5,6
**quoting** 10:9

**r**

**r** 58:1
**rapper** 36:15
**reaching** 16:14
**read** 37:10,11 43:2
**reading** 34:13
**ready** 29:16
**really** 12:4 15:9 20:3
34:18 35:12 45:18
46:3 50:15 52:14
**reason** 5:5 12:3 21:9
25:8 43:21

**reasons** 10:12 43:9
**rebuttal** 48:19 55:9
**recall** 53:25
**recitation** 7:25
**recollection** 23:22
**record** 6:10 8:19
45:8 49:17 53:16
54:1
**recorded** 1:20
**recording** 1:20
**recordings** 58:7
**records** 12:14 27:18
30:5
**redact** 46:1
**redacted** 7:5 25:1
43:23 44:2,14 45:22
46:7 47:8,13,16
**redaction** 6:25
43:17
**redactions** 44:11
47:2
**reduce** 19:13
**referred** 4:2
**referring** 47:1
**reflection** 5:5
**refused** 23:12 52:13
**regard** 53:24
**region** 1:23
**registered** 58:4
**regular** 17:24 41:19
**related** 14:5
**relating** 20:10
**relationships** 26:15
**release** 3:21,22
**released** 8:8 31:1
**relevant** 16:5
**reliance** 8:24 40:5
41:17
**relied** 9:4,5 11:14
**relies** 27:5
**rely** 39:2,2 42:12
**remember** 26:9
**repetitions** 45:9
**reply** 25:25

**reporter** 58:5
**reporting** 1:23 4:14
**represent** 3:10
18:10 26:5
**require** 7:1
**required** 9:18
**requires** 6:14 51:3
**requiring** 5:11
**resources** 44:17
**respect** 7:23 11:3,9
20:10 43:17,18
54:13
**responsibility** 23:21
**restrict** 14:24 21:6
21:19
**restricts** 21:9
**retrospect** 40:13
**retyped** 45:4
**review** 24:17
**right** 3:7 12:21
13:10,12,12,24 14:2
14:8,13 15:25 16:3
19:13 22:15,25
24:13 28:2,25 29:5
30:14,16 31:7,25
33:2,21 36:17,23
38:23 39:1,6,7,17
39:22 42:11,14,17
44:7 45:13,16 46:24
48:8,24 52:5 54:5
54:10 56:9
**rise** 57:7
**robreno** 1:6
**role** 6:25 45:18
**roll** 50:15
**rolling** 39:18
**round** 20:15
**routine** 41:3
**rpr** 1:17 58:13
**rule** 5:4 8:12 13:16
22:3 49:25
**rules** 13:17 23:21
**run** 35:12 36:11

**s**

**s**  2:11
**sam**  22:14
**sanctioned**  48:14
**sanctions**  12:9 46:10
  48:5 55:25
**sat**  50:10
**saying**  14:15 15:16
  46:7 50:8,14
**says**  9:4,4 11:11
  24:9 31:15 34:17
  39:1 41:25 42:8
**scale**  21:11
**scandal**  27:21
**scandalous**  27:13
**schulz**  1:10
**scope**  53:9,17
**scrutiny**  27:7
**seal**  3:18,19 5:16,22
  6:3,11,12 7:15 8:10
  12:5,6 13:23 25:2
  27:3 28:23 33:8
  36:18 38:18 39:3
  40:2 43:25 44:2
  46:17 47:13 48:22
  52:13,21 53:2
**sealed**  3:17,18 5:12
  39:11,21 40:8 51:18
  52:12 54:3,9
**sealing**  8:13,15
  38:22 41:16 44:9
  47:17 48:10 49:22
  49:22 50:4 53:2
**seattle**  41:25 42:8
  54:19 56:8
**secondly**  10:6
**secrecy**  11:2
**secret**  51:13
**see**  6:24 8:17 11:21
  15:18 20:20 27:5
  28:2 32:20 50:9
  51:1 54:18,25
**seeking**  13:23 28:23
  54:7

**seen**  11:15 21:3
  22:10
**sees**  20:18
**sell**  27:20
**sense**  32:23 37:7,14
  37:15,18 39:18
  42:19
**sensitive**  8:1,6
**sent**  53:4
**sentence**  36:6
**separated**  31:11
**separately**  53:5
**serious**  4:19,23 5:2
  6:6
**serve**  42:18 48:14
**serves**  46:9
**service**  1:20
**set**  26:8
**settle**  10:17 26:19,19
  38:6 40:18,20 41:15
  42:3,6
**settled**  27:3,10
**settlement**  3:23 8:19
  8:21 9:5 10:13
  14:12 37:22 38:1
  40:24 42:23 53:25
  54:7,13
**settlements**  10:7,10
  42:24
**settling**  39:2
**sex**  8:4 30:10
**sexual**  4:5 51:5,6
**sheppard**  22:13,14
**show**  5:1 17:12 24:5
  28:24 50:3 52:4
**showing**  28:6 43:6
**shown**  32:12
**sic**  41:12 45:12
**side**  42:3,9 54:11
**signature**  58:12
**signed**  11:7,9
**signing**  9:21
**similar**  9:14 42:24
**simple**  27:25

**simply**  28:2 44:12
**single**  11:15 43:18
**sixth**  22:25
**slate**  29:4,7,17 48:7
**slip**  41:20
**solution**  23:3
**somebody**  40:8
**somewhat**  5:14,21
  24:10 35:3
**sorry**  7:4 29:24
  34:25 47:3
**sort**  4:11 7:25 17:18
  18:1 19:20 23:4,5
  30:22 32:10 44:16
**sound**  1:20 58:7
**specific**  20:11 24:10
  29:23 30:11,24
  32:12 43:7 51:2
**specifically**  32:12
  51:3,12
**specifics**  31:4,11,24
  32:15 43:7
**speculative**  24:11
**spend**  28:20
**sproul**  1:9 2:3 3:4,7
  3:9,14 5:17,19,23
  6:1,8,16,21 7:7,12
  7:20 8:15,25 10:3
  11:22,25 12:3,19,22
  13:1,3,5,8,11,20,24
  14:2,8,11,14,21
  15:2,6,11,14,22,25
  16:3,6,9,18 17:1,16
  17:19,22 18:7,13,16
  18:21,23 19:3,6,9
  19:15,18,22 20:2
  22:10,13,16,21,24
  23:2,8,11,14,17,20
  23:24 24:2,13,16,20
  24:24 25:7,20,23
  26:1 43:22 48:19,20
  48:25 49:5,8,12,16
  49:20 51:19 52:6,19
  53:21 55:4

**stage**  26:8
**stand**  44:3
**standard**  14:1 18:20
  21:8,8 49:2,13
**standards**  12:13
**start**  15:21
**state**  54:6
**statements**  25:5,15
**states**  1:1,7
**status**  56:21
**stay**  6:12 19:10
**stipulation**  11:6
**stop**  39:13 42:9
**story**  27:20 50:13
  52:8
**street**  1:10,14,24
**strong**  28:4,6
**students**  16:15,15
**stuff**  32:20 40:19
  46:3
**style**  27:15
**subject**  32:7
**subjective**  34:15
**subjects**  30:12 31:21
  32:2 33:1 55:13
**submit**  34:12,16,21
  43:22
**submitted**  44:2 47:8
  47:14
**sue**  10:24
**sued**  52:9
**suffer**  4:19
**suggest**  7:4 27:24
  56:12
**suggests**  15:2
**suite**  1:10,24
**suits**  10:24
**sullivan**  1:9
**summary**  41:11
  42:5
**supporting**  27:6
  44:8
**supreme**  21:24
**sure**  3:4 14:20 40:20
  42:8 44:13 52:14

55:10
**surprised** 43:2

**t**

**t** 2:11 58:1,1
**tabloid** 27:15
**tailored** 23:7
**taint** 43:4
**tainting** 22:2,7
42:25
**take** 5:11 6:12 10:3
57:3
**taken** 41:9,13 52:18
52:20,20 53:15
**talk** 12:12 18:4 22:5
31:23 33:25 35:24
38:6
**talked** 50:21 52:7
**talking** 14:23 15:12
15:14,17 31:3,9,14
31:15,18 32:24
37:13 55:14
**tasked** 9:19
**technically** 42:11
**tell** 6:18 25:11
**ten** 17:6 20:23,24
**tends** 4:25
**term** 4:8 6:7
**terrible** 42:20 48:15
**terribly** 34:8
**terrific** 44:23
**test** 4:17 19:18
43:19 47:18
**testimony** 8:2 9:3
20:24 31:20 32:25
45:9 50:11
**tests** 49:24
**thank** 3:14 25:22,23
26:3 48:16,17,20
55:7 56:25 57:5,6
**thing** 10:17 18:2,4
18:25 42:3
**things** 6:22 8:5 9:17
30:19 31:19 39:23
52:15

**think** 6:10,20,21
7:24 8:18,20 9:25
13:16 15:8,9 17:2,2
18:19 19:1 20:4
22:2,13 25:3,8 26:7
28:11,18,22 30:21
32:3 34:13 35:9
36:12 40:5 42:3
43:1 44:4,6,16
45:19 46:5,14,15,25
47:9,19,25 48:3
57:1
**thinking** 33:7
**third** 3:22 4:18,21
12:23 25:10 51:3
**thorough** 21:20
**thought** 43:17 55:22
55:23,24
**three** 4:6 49:1
**thrust** 19:4 20:9
**thrusts** 19:19
**thumb** 21:10
**time** 5:8 28:21 40:18
42:7 44:12 52:3
54:6 55:5
**times** 41:25 42:8
54:19 56:8
**today** 5:5 27:23 32:6
44:3 55:14
**today's** 5:13 31:23
**told** 40:7
**traditionally** 26:21
**train** 43:17
**transcriber** 1:17
**transcript** 1:6,20
48:23 49:4,7 52:24
53:4,13 58:6
**transcription** 1:20
**transcripts** 24:25
51:23 53:14 55:16
56:7,12
**transparency** 5:6
**tremendous** 20:21
22:18

**trend** 11:2
**trial** 10:18 21:22
22:24 38:10 41:4,11
41:19 42:5
**troubling** 45:6
**true** 30:17 34:3
43:20 52:15 58:6
**trust** 4:9
**trying** 39:20 40:15
**turning** 39:19
**tv** 17:11,12 52:6
**two** 8:25 9:8,10 25:1
35:4 39:23 45:3
48:22 49:1,6 53:21
54:14
**type** 17:9 18:4
**types** 12:12

**u**

**u.s.** 10:9
**um** 6:15 7:6,11,19
8:14 12:19 13:19
19:6,9 31:17 34:23
35:10 40:14,25
42:25 43:12 56:10
**undermine** 3:23
42:23
**understand** 31:5
39:12 50:6
**understood** 40:10
**unduly** 8:1,5
**unfiled** 54:19
**unfold** 42:1
**unfortunately** 7:2
**united** 1:1,7
**unnecessary** 44:17
**unquote** 20:16
**unseal** 27:1 40:9
**unsealed** 6:22 27:18
28:5
**unsealing** 11:5
29:18,20 42:12
48:11
**urge** 24:17

**urged** 21:13
**urging** 3:16
**use** 4:12 33:22 37:15
44:17
**uses** 37:12
**utilities** 10:10

**v**

**venture** 18:9
**verbatim** 45:5,9
**veritext** 1:23
**version** 33:15,16
34:3 50:11,22
**versus** 10:9 55:17
**victory** 42:6
**views** 11:13
**vigorous** 33:13
**villain** 4:11
**violate** 29:21
**violation** 30:8
**visit** 50:12
**voice** 10:21
**voir** 21:20,23
**vortex** 19:20
**vs** 1:4

**w**

**waiting** 6:24
**want** 30:23 34:4,5
40:2,20 43:16 53:1
**wanted** 52:11,12,21
**wants** 27:17,18,20
40:8 44:18 50:4
**way** 7:7,17 11:18
18:3,3 20:4 21:18
24:3,22,23 40:4
41:1,10 44:22 47:15
49:22
**ways** 17:3 29:18
**we've** 26:6 44:13
**weigh** 35:25
**went** 28:9 41:4
45:22 50:20
**wife** 22:17
**william** 1:4

**wish**  25:17
**women**  25:15
**wood**  52:22
**word**  15:3,8 37:19
   37:21,22 42:19
   43:13,18
**words**  6:2 10:12,24
   16:22 18:5 19:10
   38:17 41:12 51:22
**work**  18:8 41:10
**workings**  37:16
**worth**  27:9 42:6
**writing**  39:13
**written**  16:15
**wrong**  42:3

x

**x**  2:1,11

y

**y**  1:17 58:4,13
**yeah**  3:12,13,13
   11:22 12:2 13:1,3
   14:19 15:1,5,11,13
   15:20,22,25 16:8
   18:12,19,21,22
   19:17,21 22:12,19
   22:20,21,23,23 23:1
   23:9,16,19 24:1,15
   25:21 34:1 36:13,19
   37:5,20,23 38:3
   40:11 41:22 42:16
   43:15 44:25 45:24
   46:14,15 47:7 49:4
   49:5,10 51:19 55:10
**year**  17:13
**years**  17:6 20:23,24
   20:24 22:14 26:25
   27:10 39:19 44:4
   50:16 55:6
**york**  52:23
**young**  16:15

z

**zero**  48:10